





UNITED STATES DISTRICT COURT,
EASTERN DISTRICT OF NEW YORK
_____X

JEAN R. DANIEL

Plaintiff,

-against-

N.Y.S. DEPT. OF HEALTH, ALJ, KIMBERLY
A. O' BRIEN, OFFICE OF THE MEDICAID
INSPECTOR GENERAL (OMIG), THE DEPUTY
MEDICAID INSPECTOR GENERAL,
DANIEL V. COYNE, ASST. OF MEDICAID
INSPECTOR GENERAL, STETPHANIE E. PATON,
RN, WILLIAM ROGERS, EXECUTIVE ASST., AT
THE TOWN OF BROOKHAVEN DEPT. OF
PUBLIC SAFETY, THE TOWN OF BROOKHAVEN,
John Doe # 1 through John Doe # 10, representing
any additional agency, the State of New York,
or any additional Executive Official(s)
that is jointly liable,

Defendants
_____X

**SECTION 1983**
**SECOND AMENDED**
**COMPLAINT**
**JURY DEMAND**
Case No.: **21-cv-04097-DG-AKT**
Jurisdiction & Venue
is proper based on
where this controversy
originated.

## **JURISDICTION**

This action is brought pursuant to 42 U.S. Code Section 1981, Equal Rights under the

Law, pursuant to the 14th and 5th Amendments, pursuant to Article 1, Section 8, Clause 3, of the

U.S. Constitution, the Interstate Commerce Clause and its related enactments, which are all

part of and have been incorporated by the Courts and are guaranteed under the Constitution,

and enforceable under 42 U.S. Code Section 1983 and under Article 17B Section 498(2) of the

NYS DMV law.

The amount in controversy exceeds $75,000.00, which does not include interest and other cost(s).

## VEUNE

Plaintiff's limited partnership operated within the boundaries of the United States District Court for the Eastern District of New York. Plaintiff resides and did business within the boundaries of the United States District Court for the Eastern District of New York.

## PARTIES

1. Plaintiff was the senior partner of Dove Transport Service, LP **(DTS, LP)** that was formed under Section 121-201 of the N.Y.S. Revised Partnership Act on October 11, 2007. Plaintiff's limited partnership was a non-emergency medical transportation, NEMT)  provider, pursuant to the **Social Security Act,  Section 1902(a)(70)**, which is also codified under **42 U.S. Section 1396(a)70**. The primary reason for the formation and existence of Plaintiff's limited partnership, as a Medicaid transportation provider, was to (1) provide a twenty-four (24) hour service for the safe and efficient transport of persons with disabilities, sickness, injuries,  as well as persons on stretchers to and from their designated places. See Exhibit **"1"**. It's a copy of the Certificate of Limited Partnership of Dove Transport, LP.

2. Plaintiff's limited partnership did not begin its operation as a Medical Transportation Provider until July 3, 2015 when it received its first batch of the names of the Medicaid recipients in need of transportation from logistiCare. Plaintiff, a citizen of the U. S., decided to convert a room from his home as the limited partnership's primary place of business, at 72 Granada Circle, in Mount Sinai, N.Y, 11766. Plaintiff's limited partnership was accepted as a

Medical Transportation Provider and was given a provider ID #03882157 effective June 19, 2014. See Exhibit **"2"**. It's a copy of Dove Transport Service, LP's "Welcome" letter.

3. The Defendants N.Y.S. Dept. of Health **(DOH)** is the Department of New York State government that is responsible for Public Health, as part of the state's Executive branch, and not of the New York State's Judicial or the Legislative branch. And the Defendant, Administrative Law Judge **(ALJ)**, Kimberly A. O' Brien, is a servant of the Department of Health, an Executive Official and not a Judicial Officer assigned to preside over Plaintiffs' administrative hearing with the Office of the Medicaid Inspector General **(OMIG)**, which is also an independent, state, Executive office. See Exhibit **"3."** It's an April 1, 2021 letter from the Office of the Medicaid Inspector General's office.

4. The Defendants, the Deputy Medicaid Inspector General, Daniel V. Coyne **(DMIG)** and the Asst. Medicaid Inspector General **(AMIG)**, Stephanie E. Paton, RN are all officers of the Medicaid Inspector General's office. The Defendant, William Rogers, is the Executive Asst. at the Town of Brookhaven's Department of Public Safety who oversees the filing of taxi/livery vehicles, cabs, ambulettes and presumably, non-emergency medical transportation providers within the Town of Brookhaven **( TOB)**; the fourth Defendant(s) in this caption, John Doe #1 through John Doe # 10 represent any and all agency, the State of New York, or any other Executive official replacing the current ALJ which may preside over Plaintiff's Administrative hearing, found to be jointly responsible for Plaintiff's deprivation of his rights and Plaintiff's unequal treatment under the law.

## SHORT & PLAIN STATEMENT OF THE CLAIM

**(4A)**. This is an action arising from 42 U.S. Code Section 1981, the 5th and 14th

Amendments, Article 1 Section 8, Clause 3 of the U.S. Constitution, the Interstate Commerce

Clause, and its related enactments, enforceable under 42 U.S. Code Section 1983 and under

Article 17B Section 498(2) of the NYS DMV due to several acts and omission of several DOH's

employees, the OMIG, the Deputy Medicaid Inspector General, Daniel V. Coyne, the Asst. of

Medicaid Inspector General, Stephanie E. Paton, RN, including an Administrative Law Judge,

Kimberly A. O' Brien, and from several acts and omissions of a public official, William Rogers,

from the Town of Brookhaven, and from several acts and omissions of the TOB, all of which

occurred while in their official capacities. Their acts and omissions have led to Plaintiff's

deprivation of his rights, privileges, and the deprivation of his due process, causing Plaintiff to

be deprived of both his property and his liberty interests, without due process of law and

without compensation. Such acts and omission caused the Plaintiff to suffer irreparable

damages, special damages and general damages. And that each government official stated

above within this caption, through their official's own capacity, knew that their acts and

omissions, based upon preexisting laws, was illegal and has violated the Constitution.

**(4B)**. Plaintiff requests for a final injunctive and complete injunctive relief from DOH, the

ALJ and OMIG; and that Plaintiff may be compensated or awarded with punitive damages, inter

alia, in the aggregate amount of $3, 800.000.00 from the remaining Defendants, and not from

the ALJ, or that a greater amount may be awarded to him by the Court; or by a Jury of his peers,

in accordance with 42 U.S. Code 1983 on "Civil action for Depravation of Rights."

**COMPLAINT**

5. Plaintiff, respectfully allege upon information and belief as follows:

That the Defendant, NYS Dept. of Health, collectively, hereafter, as **"DOH"** was founded in February, 1901 by the New York State (N.Y.S.) law makers. It is responsible for the administration of several health insurance programs and institutions, inter alia, for the assignment and the designation of an impartial and competent Administrative Law Judge **(ALJ)** to preside over specific matters concerning DOH.

6. The defendant, Kimberly A. O' Brien, based upon information and belief, is an employee of DOH.  And based upon information and belief, was assigned to preside over Plaintiff's case in connection with the Office of the Medicaid Inspector General, collectively, hereafter as **"OMIG."** OMIG is an independent, Executive office of DOH.  And based upon information and belief, it is responsible for the investigation, detection and prevention of Medicaid fraud, waste and abuse, including sanctioning providers and recovering overpayments in the Medicaid program, pursuant to 42 CFR Sections 1003.200, and Sections 1007.11. And that DOH is jointly responsible for their acts and omissions.

7. And the Defendants, the Deputy of Medicaid Inspector General, Daniel V. Coyne, collectively, hereafter as the **"DMIG"**, Asst. of Medicaid Inspector General, Stephanie E. Patton, RN, collectively, hereafter as the **"AMIG"**, are officers of the OMIG with the full power to investigate, detect, and prevent Medicaid fraud, waste and abuse, including sanctioning providers and recovering overpayments in the Medicaid program.  The defendants, William Rogers, based upon information and belief is the Executive Asst. of the Town of Brookhaven, **(TOB's)**, Dept. of Public Safety within the Code Enforcement Division, and not within the Fire

Prevention Division. The Defendants described above are public executive officials and  Suffolk County town officials and their acts and or their omissions were done under the appearance of legal authorization, when, in fact, no such rights  existed, which will, periodically, be referred to as acts  being committed  **"Under Color of State Law"**.

### FACTS

8. On or about May 17, 2018, Plaintiff, Jean R. Daniel, received notification from the Department of State **(DOS)** informing him that his limited partnership has been dissolved.  This was a unanimous decision between the partners of DTS, LP at that time.  However, such dissolution did not mean that Plaintiff did not want to continue conducting his business as a non-emergency medical transportation provider **(NEMET)**. See **Ex. "4"**.

**8A.** It's a copy of the Certificate of Cancellation of DTS, LP, together with an Online Entity Information from DOS, together with a filing receipt showing that on March 26, 2019, a Corporation Certificate was filed on behalf of Plaintiff so that Plaintiff could resume his business as a NEMT provider; however, Plaintiff was advised that Plaintiff's current pending administrative proceeding and the unwarranted and unfounded chargers brought on by the Defendant, OMIG, would not allow him to participate in the program.  And that it would be best to wait until such litigation is finalized.

**8B.** As of May 25, 2017, Plaintiff no longer received <u>any</u> payments from the Defendant, DOH, and had no choice but to pay his employees with his personal funds for an entire year. See **Ex "52"**.  It's DTS, LP's Bank Statement covering the months of January 2017 through August 31, 2017.

**8C**. Plaintiff received a letter dated May 30, 2017 informing him that there has been an overpayment; and that the Defendant, DOH, will recover the same by withholding 25% from each weekly payment to Plaintiff for services and supplies. And that any retroactive lump sum payment due to Plaintiff may be withheld. The Defendant, DOH, further informed that such an action is taken pursuant to the statutory authority to administer the Medicaid Program (**Public Health Law, Article 1, Title 3 of the Social Service Law & Articles 1 and 11**) and applicable regulations (**18 NYCRR 504.8(d)** and **518.7**) <u>authorizing</u> the withholding of payments upon the program in whole or in part when OMIG has determined that a provider has abused the program or has committed an unacceptable practice". See Ex **"8"**.

**8D**. The Defendant, DOH, took or withheld all of Plaintiff's weekly service payments, even though the Defendant claimed that it will only withhold 25% of Plaintiff's weekly service payment. Defendant gave no explanation regarding such an "unacceptable practice and/or any explanation for believing that Plaintiff had been overpaid. The May 30, 2017 letter not only failed to provide Plaintiff with a clear explanation regarding the Defendant's alleged claim against Plaintiff, but according to such a statute that OMIG used as a pretext to withhold Plaintiff's payments, Plaintiff was not entitled to a hearing but to just submit written arguments and provide documents regarding the matter, which he did not know anything about at the time. The Defendant, OMIG and DOH, relied on its self-serving preliminary finding to justify its "unacceptable practices and/or significant overpayments" allegation to withhold Plaintiff's payments from him.

**8E**. Assuming that such a withholding would only last for (90) days, and especially when Plaintiff was pre-occupied with the administration of his business, Plaintiff decided to

weathered it out for that period of time until Plaintiff became financially stressed and had no choice but to closeout his business. Plaintiff had no idea that the Defendants, DOH and OMIG, in essence, intended to permanently take away Plaintiff's property interest rights and liberty interest rights away from him.  The Defendant, OMIG, did so by manufacturing a lie, alleging that Plaintiff's business was not licensed by the TOB, and compelling the Defendant, William Rogers, from the TOB to go along with such a contention and provide the Defendant, OMIG, with a letter stating so.

**8F.**Without such letter from the Defendants, TOB and William Rogers, the Defendants would not have an excuse to deprive Plaintiff of his procedural due process and his substantial due process; without the assistant of the Defendants, TOB and William Rogers, the Defendants', State actors', alleged claim against Plaintiff would be null and void. And that the Defendant, William Rogers, did recant via of his Declaration letter dated August 24, 2021. See Defendant's William Rogers' letter dated August 24, 2021. And the Defendant's TOB remained silent regarding the entire matter. There is a direct causal link between the Defendants' TOB's and William Rogers' acts and omissions that led to the Plaintiff's "takings" by the Defendants, State actors, and the deprivation of Plaintiff's Constitutional rights.

9. And on December 10, 2018, OMIG issued Plaintiff a Notice of Proposed Agency Action **(NOPAA)**.The NOPAA that was prepared by the DMIG, Daniel V. Coyne, did not contain any instruction on how to resubmit claims or bills. Prior to OMIG's issuance of such a NOPAA on December 10, 2018, OMIG did not return any of the claims submitted by Plaintiff between July 1, 2016 and May 13, 2017which it allegedly believed to have been missing the driver's license

and vehicle license plate numbers so that Plaintiff could correct. See **Ex. "5"**. It's a copy of

OMIG's NOAA letter dated December 10, 2018.

**9A.**   Such an exclusion is a violation of Plaintiff's Constitutional procedural due process;

in that, to begin with, based upon information that Plaintiff now has, the Defendant's, OMIG's

initial, alleged, preliminary investigation  was based on two (2) letters which Defendant claimed

to have received from the TOB's Public Safety Unit. Based on the facts that are contained in this

case, it is clear that it was the Defendant, OMIG, who initiated and coerced the Defendant,

William Rogers, to fabricate such a letter in order to provide the Defendant, OMIG, with such a

letter. See **Ex 33** and **Ex "49"**. Even assuming arguendo that the Defendant's preliminary

investigation originated from the TOB, after having been informed by the Defendant, William

Rogers, the Asst. Executive of Public Safety from the TOB who, apparently, did not believe that

Plaintiff's business had been operating illegally within the TOB from the very beginning,

recanted  concerning the two (2) letters that he signed in 2016, the Defendant, OMIG, should

have determined that such a complaint against Plaintiff is unwarranted; and Defendant,

therefore, should have immediately cease its investigation of Plaintiff's business. See **42 CFR**

**Section 455.14**.

**9B.** OMIG, its officers, specifically, the Medicaid Inspector General, Daniel V. Coyne,

failed to require Plaintiff to submit all claims no later than twelve (12) months from the date of

service by claiming, more than two (2) years later that Plaintiff's billing or claims were

submitted inadequately from the period of April of 2016 through May of 2017. The Defendant,

AMIG's letter is dated December 10, 2018. According to **42 CFR Section 447.45**, the Defendant,

AMIG,  did this by deliberately, and maliciously, and without just cause, while acting under

color of state law, disallowed Plaintiff's claims by claiming that those bills were incorrectly

billed, causing this overpayment crisis.

10. This failure is a violation of **42 CFR Section 447.45**, which states, in a nutshell that

OMIG must require Plaintiff to submit all claims no later than (12) months from the date of

service. And that within t2 month, Defendant, DOH, must pay all claims.  The Defendant, OMIG

and DOH, perhaps thought that the statute of limitation had been extended in order to do so.

According to **42 CFR Section 424.44**, specifically under **42 CFR Section 424.44(a)(1)**, the

Defendants, OMIG, DOH and its officers,  do not have a legitimate reason for assuming that

there time to file a claim against Plaintiff had been extended. **42 CFR Section 424.44**, in its

entirety, does not provide the Defendants an extension of time for the Defendants to file their

claim against Plaintiff. (Harassment and deliberate Indifference)

**10A.** OMIG's NOPAA also alleges that it spoke with the Plaintiff, Jean R. Daniel, on April

8, 2016 for the purpose of conducting a Credential Verification Review **(CVR)**; and that Plaintiff

informed OMIG that none of the drivers employed by Plaintiff were properly licensed to

operate a taxi service within the TOB; and that neither of Plaintiff's vehicles was licensed by the

TOB.  Such an accusation began nine (9) months before OMIG and the TOB allegedly started

their joint investigation cracking down on Taxi companies within the TOB. See **Ex. 6.** It is an

article posted on October 9, 2019-entitled, "Brookhaven Conducts Cab Crackdown."

**10B.** The Defendants, OMIG and its officers, did not speak with Plaintiff. In fact,

according to the Defendant's, OMIG's determination letter dated August 24, 2020, which is

contained within **Ex. "25**, pa. 3, OMIG clearly states, in pertinent parts, that 'it made an attempt

to contact Plaintiff via an **attempted CVR'**. In essence, no CVR was ever conducted as Plaintiff

had been saying within his responses to OMIG all alone. See Plaintiff's **Ex. 26  pa. 11.** See also
**Ex. 7, paras. 1-5**.

**10C.** Defendant, OMIG, within its response to Plaintiff's action, now allegedly claims
that it began an investigation of Plaintiff's business due to an anonymous person complaining
that Plaintiff's driver(s) is using Meth and using its personal car to transport Medicaid recipients
to and from there designated place. OMIG makes no mention of this within any of its
correspondence in connection with the administrative hearing (an issue of credibility).  OMIG
makes no mention of this within its final determination on August 24, 2020; nor within its
alleged CVR conference dated April 8, 2016 which, based on OMIG's own assertion, never
happened. See **Ex. "25" para 4**.

**10D.** OMIG might have had a legal obligation to report such an allegation of possible
criminal activity to the proper prosecutorial agency or to take the necessary steps to investigate
such a complaint, as prescribed under the Federal Health care program, in accordance with **42
CFR Section 1007.11(b) (3)(4)(c),** but decided, in its discretion, not to proceed on that route.
Yet Defendant, OMIG and its officers, in their discretion, decided to pursue such meritless claim
against Plaintiff, seeking to recoup alleged overpayments from Plaintiff even after Plaintiff have
informed the Defendant, OMIG, that most of Plaintiff's business records had been destroyed
due to an unforeseen circumstance (malicious prosecution). The Defendants' attorney chose to
include such a fact as a footnote within its response to Plaintiff's AC and pleading. Plaintiff
informed the Defendants' investigation Unit regarding such a loss; and upon the Unit's
conclusion of its investigation, it found no issue of abuse, fraud, misappropriation of funds and

neglect by Plaintiff's business. See Plaintiff's **Ex. "25"** and compare it with Plaintiff's response within **Ex. "26"**.

     **10E.** In fact, even if the Defendant, OMIG, were entitled to some form of a civil money penalty, assessment, and a legitimate reason to exclude Plaintiff from the Medicaid program, as defined under **42 CFR Section 1003.200**, Defendants, OMIG, together with its officers, DMIG, Daniel V. Coyne, AMIG, Stephanie, Paton, RN., would not be able to past the "basis for liability" rule under **42 CFR Section 1001.101**, as such basis requires a provider to have been convicted of some kind of a criminal offense for exclusion and for the imposition of any penalty and assessment. (Deliberate indifference, Harassment)

     **10F.** Again, the Defendant, DMIG, in preparing such a NOPAA, relied on two (2 ) New York Codes, Rules and Regulations **(NYCRR)**. **Title 18 NYCRR. 515.2**, which speaks of "unacceptable practices" and **Title 18 NYCRR 518.1**, which speaks of the collection of Medicaid overpayments due to "unacceptable practices, which authorized the Defendant, OMIG, to exclude Plaintiff as a provider in the Medicaid program and to recover overpayments, etc.

     11. On January 9, 2019, Plaintiff responded to OMIG, challenging its decision and objecting to such decision for its failure to adhere to certain mandatory administrative procedures within its NOPAA, pursuant to *42 CFR Section 1001. 101 on "Basis for liability" and pursuant to 42 CFR Section 1007.11*, pertaining to "On Duties and responsibilities of Unit, in its attempt to recoup certain alleged overpayments. See **Ex. "7"**. It's a copy of Plaintiff's' Objection to the proposed agency action.

     12. One of such procedures that had been challenged, as stated within Plaintiff's response letter dated January 9, 2019 is that OMIG should have also began an overpayment

procedure against the Medicaid recipients who received the services from Plaintiff as well. In accordance with **42 CFR Section 433.138** and **42 CFR Section 433.139**, OMIG should have sought recoupment from the Medicaid recipients who benefited from Plaintiff's non-emergency **interjurisdictional** Medical Transportation provider. Plaintiff continues to consider those Medicaid recipients that received services from it as individuals who should also respond to and take part in any administrative hearing or action in connection with this controversy. (Selecting only Plaintiff from its option to third-party activity)

(**12A**) Defendant's, OMIG's May 30, 2017 letter clearly indicated that its decision to withhold Plaintiff's payment was as a result of an independent review of Plaintiff's participation in the Medicaid Program. The letter further states that such a withholding is temporary. And that it would not continue for more than (90) days, unless OMIG would issue a written Draft Audit Report or a Notice of Proposed Agency Action and provide the same to Plaintiff in writing regarding its decision relating to the withholding of payments, which Plaintiff received on or about December 10, 2018, more than one (1) year after its May 30, 2017-Letter. See **Ex. "8"**. It's a copy OMIG's letter dated May 30, 2017. (Harassment targeting and indifferent treatment)

13. The Defendant, OMIG, presumably relies on Federal code **42 CFR 447.31** instead of **42 CFR 447.30**. Nonetheless, Defendant's, OMIG's May 30, 2017 letter was inadequate. It did not specifically state any reason for or **requested** any information in order to determine the alleged overpayment amount, if any, etc.  See **Ex. "8"** in its entirety. See also **42 CFR 447.31(B)(ii)(A)(B)**.

14. And that in September of 2019, nine (9) months after OMIG sent Plaintiff its NOPAA, the Defendants, TOB and OMIG allegedly opened a joint investigation within the TOB, cracking

down on Taxicab companies that are illegally conducting business within the TOB. So although

such a joint investigation began nine (9) months after OMIG provided Plaintiff with a NOPAA,

according to the contents of the NOPAA, both OMIG and the TOB had already numbered or

categorized Plaintiff's business as one of the several "so called" Taxicab companies that were

allegedly , illegally, operating within the TOB, even though that was not the case. See **Ex."5" &**

**Ex. "6"** above.

14A. However, a history of the Defendant's cases show no evidence that OMIG ever

prosecuted any NEMT provider or any other kind of Medical Transportation providers within

the TOB or within Long Island itself, except for Plaintiff's business. See **Ex "53"**. It's a ten (10)

page Medicaid Decision List.

14B Furthermore, in looking at those several cases, a total of twenty-eight (28) cases

which pertains to Medical Transportation, not one of them deals with a NEMET provider,

providing non-emergency Medical services via "Taxi cab" in Long Island. There are a few in NYC

where a TLC license is required but not for New York State drivers. Nevertheless, Plaintiff was

able to identify at least two of the cases that are relatively similar to Plaintiff's former business.

14C. The first case is, "In the Matter of the Request of IMI Transportation, Inc. "It's a

case that had been decided by the Defendant, ALJ, Kimberly O' Brien, on August and November

of 2015. The reason for its relevancy is that it pertains to ambulette services, which provides

non-emergency services and the business is or was located in Suffolk County, Bay Shore, NY,

similar to where Plaintiff's business was located.

14D. There we see that while an ambulette provider requires a special license from the

NYS Dept. of Motor Vehicles, under **NYS Article 19-A**, just as NEMET providers providing

services as "Taxicabs" are exempt from such a requirement and only requires a Written Confirmation from the NYS Dept. of Motor Vehicle, under **N.Y.S. Article 17B,** specifically under **Section 498(2)**, at no time did the Defendant, ALJ, inquired about or made mention to whether IMI Transportation was locally licensed. Similarly, a little more than three (3) years later, in March of 2019, OMIG's ALJ, James F. Horan, in the <u>Matter of Request of Sigma Transportation, Inc.,</u> no inquiry was made by the ALJ as to his local credentials. The ALJ was only concerned with whether the Appellant was licensed by the State of New York, as it did business within the Town of Hempstead.

    **14E.** Notwithstanding any local or town rules, ordinances or regulations, Plaintiff's business operated under the virtues of both Federal and State laws. Plaintiff's non-emergency medical transportation provider is defined under **42 CFR Section 457.1206** which states, "For purpose of this section Non-Emergency Medical Transportation (NEMET) Prepaid Ambulatory Health Plan (PAHP) means an entity that provides **only** NEMT services to enrollees under contract with the **State**, and on the basic of prepaid capitation payments, or other payment arrangements that do not use State plain payment rates, etc." **42 CFR 440.170** further describes NEMET as "Any other medical care or remedial care recognized under State law and specified by the Secretary."

    **14F.** Such a Code also states, under **Section 440.170(2)** that, "Except as provided in paragraph (a)(4)), transportation as defined in this section, is furnished **only** by a provider to whom a direct vendor payment can appropriately be made by the agency. Plaintiff's business, therefore, was not made available for the public and could not have been "hailed down" from anyone within the TOB, from the County or within the State of New York.  As stated in para 2

above, LogistiCare provided Plaintiff with a list of Medicaid recipients to pick up and to drop off, etc. Plaintiff did not and could not randomly pick up any passenger off the street, which would qualify Plaintiff's business as a regular Taxicab.

14G. The New York State Vehicle and Traffic Law, **Article 17B**, **Section 498** of 2006, in order to further promulgate the **Social Security Act Section 1902(a)(70)**, inter alia, passed such a law and classified NEMT providers as an  "**interjurisdictional pre-arranged for-hire vehicle operation".** Such a law also **clearly** identifies which **city** or **county** can have the "**Licensing Jurisdiction**". And that such a law clearly stated that, under **Section 498(b)**, "Licensing jurisdiction" shall mean a city with a population of one million or more, or a **county** with New York State contiguous to such city, that requires the issuance of a license permit, registration, certification or other approval for a vehicle to perform the pre-arranged pick up or drop off of one or more passengers in such jurisdiction for compensation". Therefore, even if the Defendant, the TOB, were considered as a county or a city,  the Defendant would still not be able to qualify as a "**Licensing Jurisdiction,**" since during the years in question, even up to now, its population was never more than a half a million. See **Ex. "47"**. They are evidence showing the TOB's population from 2016 through 2020.

14H. Under the Suffolk County law, also, specifically under **Article 1 on Taxi and Limousine Commission, Section 571-1** on the definition of "For-hire Vehicle. It states, "A motor vehicle carrying passengers on a prearranged for-hire basis, including, but not limited to, a taxicab, limousine, commuter van or private livery, but **shall not** include a bus operating along a fixed route, an ambulance, medical provider van, funeral car **or any** vehicle over which the County does not have jurisdiction pursuant to state and federal laws." To further elaborate,

under **Article 2, on For-Hire Vehicle Registration and For Hire Vehicle Driver's Licenses,**
**Section 571-6(B)(2)**, such a law clearly states, "This section shall not apply to a for-hire vehicle
that has obtained a for-hire vehicle registration, license or permit from a **Licensing Jurisdiction**
that has submitted evidence to the Department that it issues such for-hire registrations,
licenses, or permits in accordance with the standards set forth in **Section 498** of the New York
Vehicle and Traffic Law and where such vehicle is operated on an **interjurisdictional basis**.

14I. And that the same holds with the Defendant, TOB, under **Article 1 Section 67.1 on**
**"General Provisions"**, specifically under **Section 67.3 on "Exemptions", Section 67.3(B)** and/or
**Section 67.3(G) . Section 67.3(B)** states, "Business vehicles engaged in a business other than
transportation for hire, wherein said vehicles are used solely for transportation of clients of said
business, whether for a fee or not, and are not made available for hire by persons other than
clients of the principal business." And **Section 67.3(G)** states, "Vehicles for hire engaged in
transportation from a point within the Town to a point without the Town, or from a point
without the Town to a point within the Town, or from a point without the Town, through the
Town, to a point beyond the Town." Regardless of whether such laws allow the pick and drop
off within the Town, itself, Federal laws preempts the Defendants' laws.

14J. The Defendant TOB is therefore liable not only because it failed to appropriately
train the Defendant, William Rogers, as an Executive Assistant of Public Safety to be able to
decipher which category Plaintiff's business fell under, but it failed to adopt applicable and
appropriate forms or application  for Plaintiff's business as a NEMET provider. Plaintiff should
have been able to fill out the appropriate form from the TOB, classifying his business as such.
Plaintiff only received a genetic form for Taxicab business license and Taxicab Medallion, which

is inconsistent with all established County, State and Federal laws when it comes to NEMT providers. Such a failure, whether it is caused by a policy or custom, TOB's board should have corrected this, since such a law was in existence since 2006. See the Generic Taxi-Application form as **Ex. "48 "**.

    **14K**. Defendant, TOB, has an obligation to remedy this wrong. It has a responsibility to promulgate laws that are consistent with Federal codes. The Defendant, TOB, had ample time to do so prior to the initiating of this 2AC but chose not to do so. Defendant, TOB, is also liable due to its failure to promulgate clear and consistent local laws, so that its employees may be able to better interpret its laws. TOB has to make it clear that although NYS identifies NEMT as medical transportation providers who provide "Taxicab "services, according to both Federal and State laws, NEMT should be classified as an **interjurisdictional prepaid non-emergency medical transportation provider**. The Defendant, DOH, is also liable for its failure to promulgate laws that are consistent with Federal laws in categorizing NEMT as a Taxicab and not appropriately defining its function and purpose, according to Federal laws. See Federal code in par. **14E** above which will be fully elaborated upon below.

    **14L Ex "48"** is the same form that Plaintiff was forced to fill out. After all, it was the Defendant, William Rogers, who attended to Plaintiff's needs and provided Plaintiff with what he supposedly needed so that the Defendant, OMIG, would no longer ticket Plaintiff's vehicles. Even if the Defendant claims not to have reasonably known that he was violating a clear federal statute or was in contradiction to a specific, enumerated, Federal code, as described within paras **14A- 14K** above, which will be fully developed below, the fact that Defendant, William Rogers, began placing blame on the Defendant, OMIG, during his phone conversation

with Plaintiff's representative regarding the categorization or the classification of Plaintiff's business as a for-hire motor vehicle, and not as non-emergency, interjurisdictional, medical transportation provider, which does not require any licensing from the TOB, indicates that Defendant knew that such an action was inappropriate, at the very least, but was compelled to continue with his malfeasance by the Defendant, OMIG. (conspiracy between TOB and OIMG) to deprive Plaintiff of his Constitutional rights)

14M. No jury in its right mind will believe that **someone that has been working for at least four (4) years as the Executive Assistant of Public Safety within** the TOB did not know this. Plaintiff's cause of action against the Defendant, William Rogers, is no longer as the result of the 2 letters that the Defendant, William Rogers, have written or have endorsed, as his name and signature is clearly affixed within those letters for which Plaintiff seeks to be corrected, (See **Ex. "14")**, but because the Defendant's TOB and William Rogers' continuous deprivation of Plaintiff's substantive procedural rights, by refusing to correct their errors or restoring and acknowledging Plaintiff's right to freely pick up and drop off any qualified Medicaid recipient within its town or be able to freely pass through its town or pick up a Medicaid provider within its town to a next town, etc.. The Defendants are violating a clear Constitutional right, which Plaintiff will fully elaborate upon below.

14N. In addition, Defendant, William Rogers, does not show any real desire to assist Plaintiff with his coming Administrative hearing, since Plaintiff provided the Defendant with a copy of his March 9, 2020-Request for An Administrative hearing, which also informed the Defendant that he be made available for any coming hearing to provide his expertise regarding the different types of "for-hire" vehicles in order to correct and modify, for the record,

Plaintiff's business category, even though Plaintiff's business is no longer operable, since it will aid with Plaintiff's coming trial with the Defendants. It had been the Defendants, TOB and William Rogers, who primarily caused Plaintiff's depravation, yet Defendant refuses to correct the same, leading Plaintiff to believe that it was the Defendants' intention from the very beginning, as they were instructed by the Defendant, OMIG, to harm and to damage Plaintiff's substantive due process.

**14O.** Defendant's failure to timely respond to several email correspondences, failing to respond to Plaintiff's earlier calls, which occurred on or about early March of 2021 and continued thereafter is also clear evidence of Defendants' TOB and William Rogers' intent. See **Ex. "12", Ex. "34"** and **Ex. "35"**.  Defendant must be questioned regarding what he meant when he said that it was OMIG who determined that Plaintiff required a license for his business and not the TOB or the Defendant, William Rogers, when OMIG came to inquire about whether Plaintiff's business is operating legally within its town.

**14P** If that were the case, then why did the Defendant, William Rogers, provided the 2 letters to OMIG informing OMIG that Plaintiff's business was not licensed? And then Defendant, William Rogers, changed his mind on May 24, 2021 on a recorded phone call with Plaintiff's representative agreeing with Plaintiff's representative that no license was needed? It seems to Plaintiff that the Defendant, William Rogers, was coerced by OMIG's investigators. In essence, Defendant's, TOB's, vehicle law above was describing the "Interjurisdictional pre-arranged for hire vehicle operation" which had been enacted by the New York State Legislatures. So any deviation to such an enactment constitutes Plaintiff's violation of **NYS DMV Law Article 17B Section 498(2).**

14Q. In accordance with **Article 1, Section 8 Clause 3 of the U.S. Constitution**, which gives Congress the power to 'regulate commerce', for which cause Congress enacted **49 U.S. Code 13506,** to further regulate commerce within the several States, under the Interstate Commerce Clause **(ICC)**, which had been amended by Congress in 1995 to now be called the Surface Board Transportation **(SBT)**, which is relevant to motor vehicles or motor carriers doing business among the several States, in pertinent parts, states,

"In General, neither the Secretary nor the Board has jurisdiction under this part over (2) motor vehicle providing taxicab. **49 U.S. Code 13506(b)** states, "Except unless <u>otherwise</u> necessary to the extent the Secretary or Board, as applicable, finds it necessary to exercise <u>jurisdiction</u> to carry out <u>transportation</u> policy of **Section 13101**, neither the Secretary nor the Board has jurisdiction under this part over (1) transportation provided entirely in a municipality, in <u>contiguous</u> municipalities, or in a zone that is adjacent to, and commercially a part of, the municipality or municipalities, Except- (A) When the transportation is under common control, management, or arrangement for a continuous carriage or shipment to or from a place outside the municipality, municipalities, or zone; OR that in transporting <u>passengers</u> over a route between a place in a State and a place in another State, or between a place in a State and another place in the same State through another State, the transportation is exempt from jurisdiction under this part only if the motor carrier operating the motor vehicle also is lawfully providing intrastate transportation of passengers over the entire route under the laws of each State through which the route runs."

15. And that on or about January 17, 2020, OMIG sent Plaintiff with its Notice of Agency Action **(NOAA)** pursuant to **42 U.S. Code Section 1320a-7 on Exclusion of certain individuals and entities from participating in Medicare and State health care program',** determining to exclude Plaintiff for a period of three (3) years and to recover overpayments, jointly and severally, in the amount of $395, 387.59, plus interest. See Exhibit **"9"**. It's a copy of OMIG's NOAA.

15A. **42 CFR Section 1001. 2002** states, under section **1001.2002 (6),** "The appeal rights available to the excluded individual or entity", which would, in essence, Stay such an exclusion allowing Plaintiff to continue to do business as a non-emergency Medicaid Transportation

provider. **18 NYCRR 515.5**, **18 NYCRR 515, 10**, and **18 NYCRR 519.16(a)** do not mention the right to an appeal.  The Federal law above also mandates that such an "exclusion" be effective within 20 days from the date of the notice; however in order to preserve Plaintiff's <u>substantive procedure right,</u> which Plaintiff will tackle next, Plaintiff should have been able to at least appeal such a decision, which wasn't available for Plaintiff. See **42 CFR Section 1001.2002(6)**. The Defendants, therefore, are also in clear violation of this Federal law above, to the extent that the Defendant, OMIG, sent a presumptuous letter dated February 10, 2020 insisting that Plaintiff should call for payment arrangement prior to any hearing and response.

See **Ex. "10"**.

**15B.** Even if the Defendant, OMIG, believed that Plaintiff might have violated any of the provision set forth within such State codes above, Plaintiff was still entitled to a hearing before being excluded. Such determination was also taken as a result of State codes, **18 NYCRR 515.2**, **18 NYCRR 518.1** and **18 NYCRR 515.3**. Defendants did not realize that under NYS laws as well, specifically under the **N.Y. Agency Law,** more specifically under the **NYS GOL Section 5-1501**, that Plaintiff has a legitimate contract with the Defendant, DOH. Under such a law, Defendant, DOH, is the principal and LogistiCare is its agent with the power to act on behalf of the Defendant. Under **42 CFR Section 1396(a)(70 of the Social Security Act,** LogistiCare's contract with DOH also binds DOH with Plaintiff.

**15C.** Such a Federal statutes above, gave LogistiCare  "Actual Authority" to manage the Medicaid program on its behalf. And that LogistiCare bound Plaintiff as a Third-party with DOH, since LogistiCare provided Plaintiff with the Medicaid recipients, provided payments to Plaintiff,

on behalf of DOH, communicated with and provided Plaintiff with the necessary tools needed

to take part into such a program without the need to contact the actual Principal, DOH.

**15D.**This is also true under the Common law as well. Under the **Restatement (Second) of Agency**, in **Chapter 6, Section 140, on "Liability of Principal to Third-persons",** it states, "The Liability of the principal to a third person upon a transaction conducted by an agent, or the transfer of his interests by an agent may be based upon facts that: (a) the agent was authorized; (b) the agent was apparently authorized; or (c) the agent had a power arising from the agency relation and not dependent upon authority or apparent authority." And according to the language of the Social Security Act and/or **42 CFR Section 1396(a)70**, subsection (a), (b) and (c) all apply. See **42 CFR Section 1396(a)70**, in its entirety.

**15E.** In fact, the Defendant, DOH, had already breached its contract with Plaintiff under law, specifically under **42 CFR Section 431.10(e)** which states, "Authority of the Single State Agency, the Medicaid agency (DOH) may not delegate to other than its own officials, the authority to supersede the plan or to develop or issue policies, rules, and regulations in program matters." So while the Defendants' action, DOH and OMIG, also as part of DOH's independent agency, may be in conformity with New York State laws, it is a direct and clear violation of the Constitution, specifically under **42 CFR Section 1396(a)70**.

16. And that prior to responding to OMIG's NOAA dated January `7, 2020, as previously

stated above, on or about February 10, 2020, Plaintiff received a presumptuous letter from

OMIG suggesting that Plaintiff must make a payment selection within twenty (20) days from the

date of its letter, not taking into consideration that Plaintiff's time to respond to OMIG's NOAA

had not expired. The NOAA clearly gave Plaintiff sixty (60) days to respond not thirty days. See

**Ex. "10".** OMIG's presumption letter dated February 10, 2020. (Harassment indifference

treatment)

17. And on or about February 18, 2020, Plaintiff responded to OMIG's presumptuous

letter dated February 10, 2020. See **Ex. "11".** It's Plaintiff's response to OMIG's letter dated

February 10, 2020.

18. And on or about March 9, 2020, Plaintiff responded to OMIG's NOAA with an eight (8) page Notice of Request for an Administrative Hearing. See **Ex. "12"**. It's Plaintiff's response to OMIG's NOAA.

19. Nonetheless, on or about February 2, 2020, before Plaintiff responded to OMIG's NOAA and before any hearing, OMIG placed Plaintiff's name and his limited Partnership's name within OMIG's database, excluding Plaintiff from the State Health Care Program for failure to maintain adequate or accurate records. See **Ex. "13"**. It's a copy of OMIG's database report of exclusion and debarment letter.

**19A.** Such exclusion for a period of three (3) years was a deprivation of Plaintiff's Substantive due process and a Procedural due process and did cause Plaintiff to be stigmatized, which will further be elaborated upon below. Defendant's allegation for "failure to maintain adequate and/or accurate records" had not been heard within any hearing. laintiff's response dated March 9, 2020 was not considered since the Defendant had already made up its mind approximately one (1) month prior to Plaintiff's response. Defendant's, OMIG's, contention and determination that Plaintiff has committed an unacceptable practice within its participation into the Medicaid program also cannot be declared as being true, since such a determination was not challenged by Plaintiff and is still under Judicial review.

**19B.** Defendant relied on **18 NYCRR 515.3** in order to exclude Plaintiff from the Medicaid program for a period of three (3) years, a New York State rule and regulation. It's the law upon which the Defendants, DOH and OMIG are using to deprive Plaintiff of his Constitutional rights. The Defendants are also using **18 NYCRR 518** to recover "alleged" overpayments from Plaintiff.

20. OMIG primarily alleges within its NOAA that Plaintiff was operating his business without a license, in accordance with 2 letters that OMIG received from the Defendant, Mr. William Rogers.  See **Ex. "14"**. It's the 2 letters from William Rogers. Plaintiff made several attempts to obtain an explanation from Mr. William Rogers via phone and by mail regarding these 2 letters and for the reason why the TOB's Code II:  Sections 67.1 and 67. 3 (B), which exempts businesses like Plaintiff's business from obtaining such a license, does not apply to Plaintiff's business, to no avail. As Executive Assistant of the Public Safety Department, it was his duty to provide a clear explanation to OMIG regarding this and to provide OMIG with a letter correcting his previous contention, that Plaintiff did not require licensing by the TOB.

21. Mr. William Rogers' testimony is necessary and is imperative, not only because 60% of OMIG's claim(s) depends on Mr. William Rogers' testimony as the "Executive Assistant" of the Public Safety, but because his testimony will shed light into the scope or magnitude in which TOB's and OMIG's conspiracy against Plaintiff reaches. Plaintiff believes that he had unjustly been targeted prior to any joint investigation given the so many Constitutional torts that he endured and the lack of evidence that there was even a joint investigation being conducted by the Defendants in their alleged effort to "Crackdown" illegal Taxicabs within the TOB. See **Ex. "12"**.  See also **"Ex "53"**.

22. OMIG's second issue is that it is claiming that Plaintiff did not provide investigators with required trip slips or Trip Tickets **(TT's)** to support Plaintiff's billings as stated in OMIG's NOPAA and <u>not</u> within its NOAA. OMIG clearly abandoned that issue, since OMIG failed to mention such an issue within its NOAA. In any event, Plaintiff made it clear within its response to OMIG that an earnest attempt was made by Plaintiff to comply with OMIG's requests.

23. Plaintiff provided OMIG with the driver's license numbers of the drivers, a copy of the registrations of the cars that were being driven, etc., and did inform OMIG that any other driver's license would require additional time to retrieve. See **Ex. "7"** above, specifically under bullet number 24. See also bullet number 30 of **Ex "7"** above.

24. Unfortunately, the documents had already been destroyed and inadvertently thrown away due to water damage prior to Plaintiff's receipt of the NOPAA. And Plaintiff did not know about this until sometimes in February, 2020. Plaintiff, on the other hand, was able to retrieve more than 200 TTs from an old file cabinet of theirs and did provide a total of 20 TTs to OMIG and offered that it may inspect the remaining TTs if they so desire, to no avail. (OMIG already made up its mind since OMIG did not feel the need to further inquire about Plaintiff's contention) See **Ex. "15"**. It's Plaintiff's March 11, 2020 letter informing OMIG of its loss of record, together with 20 TTs.

25. Thirdly, OMIG claims that Plaintiff did not respond to two (2) of its letters dated June 1, 2016 and June 20, 2016 requesting TTs  for the period of March 7, 2016 through March 18, 2016. Plaintiff has and continues to make it clear to OMIG that it did not receive those letters in June of 2016. Plaintiff has always demanded OMIG to provide proof that such letters were actually mailed at the time OMIG claimed that they were mailed and to provide proof of receipt for the same, to no avail.  Plaintiff only received those letters when Plaintiff received OMIG's NOPAA  dated December 10, 2018. See **Ex. "16"** it's a copy of both letters June 1, 2016 and June 20, 2016.

26. OMIG contends within its fourth issue that Plaintiff did not include the driver's license and vehicle license plates numbers within their TTs as required effective July 1, 2016 in

billing information submitted. Plaintiff made it clear to OMIG that they were aware of this new requirement as of July 1, 2016. And that they have been in compliance with such a new regulation. However, Plaintiff could not find any TTs covering the months of July, August, September, October, November and December of 2016 due to the late, February 2018, unforeseen circumstance, where most of Plaintiffs documents were destroyed due to water damage and had inadvertently been thrown out.

27. And on or about March 11, 2020, a few days after Plaintiff learned of the possibility that its documents might have inadvertently been thrown away by Marjorie Joseph, a tenant at 72 Granada Circle in Mount Sinai, NY, where Plaintiff held its place of business, Plaintiff found it necessary to inform OMIG of its loss via email. See **Ex. "15"** above. And that on March 13, 2020, Plaintiff received an email correspondence from a Theresa Gallagher, an Investigative Specialist at the Self-Disclosure Unit acknowledging receipt of Plaintiff's Notice of Loss/Destruction of Records dated March 11, 2020. See Exhibit **"17"**.  It's a 1 page correspondence from Theresa Gallagher.

28. Theresa Gallagher immediately began an investigation of the water damage. She instructed Plaintiff to provide pictures of the building, the interior room where the documents were placed, the roof area where the damage occurred, and any bills or repair work from the roofing company, etc. And on March 19, 2020, Plaintiff provided the Investigative Specialist, Theresa Gallagher, with a letter from the contractor, which contains the name of his business, including his telephone number, informing the Investigative Specialist of the condition of the roof, and when he started the work and when the work was completed, etc., together with fifty (50) photos of the building, the interior room where Plaintiff's records where last placed, and

the roof area of where the damage occurred.  See **Ex. "18"**. They are the investigative documents from Plaintiff.

29. And that on July 15, 2020, Theresa Gallagher sent an email to Plaintiff informing Plaintiff that the Investigative Unit received Plaintiff's correspondences, including the fifty (50) photos that it submitted on March 19, 2020. Theresa Gallagher also requested for additional information. See Exhibit **"19"**. It's a July 15, 2020 email correspondence from Theresa Gallagher.

30. On July 18, 2020, Plaintiff provided the Investigative Unit with the information it needed. And again, a few hours later on that same day, July 18, 2020, Plaintiff corrected an error it had made within one of its responses to Theresa Gallagher. See **Ex. "20"**. It's Plaintiff's additional information.

31. And that on July 30, 2020, Theresa Gallagher from the Self-Disclosure Unit accepted and filed Plaintiff's March 11, 2020 Self-Disclosure notification and submitted a copy to OMIG, finalizing its investigation in connection with Plaintiff's  documents that have been destroyed due to water damage. See **Ex. "21"**. And on July 31, 2020, Plaintiff sent an email to Theresa Gallagher informing her of a crucial factual error she had made within her final report and requested that such an error be corrected.  See **Ex. "22"**. It's Plaintiff's July 31, 2021 letter, requesting that an error be corrected.

32. And on August 13, 2020, Theresa Gallagher sent Plaintiff an email correcting the record. See Exhibit **"23"**. And on August 19, 2020, Plaintiff responded to Theresa Gallagher's concerns and thanked her for completing such an investigation in a timely manner. See **Ex. "24"**. It's Plaintiff's August 19, 2020 responding to Theresa Gallagher's concerns, etc.

33. And on August 24, 2020, OMIG determined that no mitigating circumstance exists for failure to comply with 18 NYCRR 504.3. OMIG did not disagree with Plaintiff's facts, as it pertains to the case. OMIG did not object to nor challenged any portion of its own investigation or the investigation of Theresa Gallagher as it pertains to Plaintiff's Loss/Destruction of record. See **Ex. "25"**. It's a copy of OMIG's determination dated August 24, 2020 with no findings of any fraud, deliberate misrepresentation, misappropriation of funds, or abuse, etc.

34. OMIG failed to understand that Plaintiff is not contesting that the roof repair predates Plaintiff's loss of records claim; Plaintiff clearly states that such a loss and destruction of record was discovered in late February of 2020.  See **Ex. "12"** above, para 20. That was not the first time that Plaintiff informed OMIG that there contains no disputed facts about Plaintiff's loss of his record due to water damage. Plaintiff informed OMIG of this within his September 24, 2020 letter requesting for a fair hearing.

35. Within such a letter before mentioned above, Plaintiff informed OMIG that its August 24, 2020 determination is capricious and arbitrary based on the facts and circumstance in this case. See **Ex. "26"**. It's Plaintiff's September 24, 2020 letter requesting for a hearing.

36. And that on October 19, 2020, Plaintiff received an email correspondence from a Phillip Hoffman, Senior Attorney at OMIG. He informed Plaintiff that he will soon reach out to Plaintiff regarding Plaintiff's request for a hearing. See **Ex. "27'**. OMIG's email correspondence dated October 19, 2020.

37. On October 21, 2020, Plaintiff responded to OMIG's October 19, 2020 email correspondence informing OMIG, in a nutshell, that their August 24, 2020 determination was lacking. Plaintiff was waiting for a more detailed explanation for its reason(s) to believe that no

mitigating circumstance existed, even though Mr. Philip Hoffman's assignment into this case clearly implied that the office will not change its mind. See **Ex. "28"**. It's Plaintiff's October 21, 2020 email correspondence.

38. And that one (1) month later, when it was apparent that OMIG would not respond to Plaintiff's September 24, 2020 letter, on November 21, 2020,  and especially when Mr. William Rogers, the TOB's  Executive Assistant of the Department of Public Safety's testimony was needed to shed some light into this controversy and was also informed by Plaintiff on March 13, 2020 to be present during any scheduled hearing, failed to respond to or to communicate with Plaintiff after receiving a  copy of the Notice of Request for An Administrative Hearing, Plaintiff  was compelled to serve the parties with a Notice of Claim on or about November 21, 2020. See Exhibit **"29"**. It's Plaintiff's Notice of Claim.

39. And that on or about March 25, 2021, Plaintiff received a Notice of Hearing Conference from OMIG's senior attorney, Mr. Phillip Hoffman. See Exhibit **"30"**. It's a copy of OMIG's March 25, 2020 notice of hearing.

40. And that on March 27, 2021, Plaintiff responded to Mr. Phillip Hoffman, OMIG's attorney, and informed him that Plaintiff is in receipt of the Notice of Prehearing Conference and would like a Mr. George Joseph to represent Plaintiff during the coming conference and to obtain the name, address, and phone number of the Presiding officer, including information about his/her direct mailing address, etc. See Exhibit **"31"** It's Plaintiff's email response letter dated March 27, 2020.

41. Mr. Phillip Hoffman instructed, the Plaintiff, Mr. Jean Daniel, to have Mr. George Joseph get in contact with him directly in order to request these things. Although there was

some difficulties sending such a message via email, Mr. George Joseph provided such a letter to Plaintiff and instructed Plaintiff to send such a letter on his behalf on March 29, 2021. See **Ex. "32"**. They are Plaintiff's email correspondences dated March 29, 2021.

42. And after a final attempt to contact Mr. William Rogers, on March 29, 2021, Mr. George Joseph, on behalf of Plaintiff was successful. Mr. George Joseph, who was also the registered agent assigned within the State of New York to receive legal documents on behalf of Plaintiff,  spoke with Mr. William Rogers and surprisingly with a Mr. Moran, who identified himself as the TOB's attorney. And the information obtained from William Rogers was recorded by Mr. George Joseph. The transcript of such a conversation is annexed herein as **Ex. "33"**. It's Plaintiff's 3 page phone conversation transcript dated March 29, 2021.

43. It is also available for reproduction and for authentication by any party upon request. The conversation with the attorney, Mr. Moran, was also a success as well. The TOB's attorney agreed to review the error or hand it to someone who will review the error that no licensing requirement was necessary pursuant to any current applicable laws. Mr. Moran provided Mr. George Joseph with his email address. And Mr. George Joseph did email a few documents to Mr. Moran, including a copy of the Notice of Claim that was filed against the TOB on November 21, 2020. See **Ex. "29"** above.

44. And that during the conversation with Mr. William Rogers on March 29, 2021, Plaintiff obtained new facts from Mr. Rogers, although more is needed. As the Executive Assistant of the TOB, he stated that it **wasn't** him or the TOB that declared Plaintiff as an unlicensed limited partnership. Mr. Rogers' testimony implies that it was OMIG's own

aggressiveness and deliberate indifference that created this entire situation. See **Ex. "33"** above. See also Tr. p. 2, line 8 and p. 2, line 6.

45. Such a testimony is completely contrary to the 2 letters that the Defendant, William Rogers, provided to OMIG in May and August of 2016. And that on May 4, 2021, since Plaintiff did not hear from the TOB's attorney, Mr. Moran, Mr. George Joseph sent Mr. Moran another email reminding him that such a matter was urgent and that such a correction would assist in the resolution of this controversy. See **Ex. "34"**. It's Plaintiff's May 4, 2021 email correspondence.

46. And again, on May 18, 2021, after having been informed of Mr. William Rogers' work email, Mr. George Joseph, on behalf of Plaintiff, sent Mr. William Rogers and the TOB's attorney, an email correspondence, informing them to preserve any documents pertaining to Plaintiff. Plaintiff also informed the Defendant, William Rogers, to furnish the same within twenty (20) days of receipt of the email, etc. Plaintiff also informed him that his presence will be needed via of video on August 19, 2021 at 10:00 a.m. See **Ex. "35"**. It's Plaintiff's email correspondence dated May 18, 2021.

**(46A)** And on May 24, 2021, Plaintiff's representative called the Defendant, William Rogers. This was because the Defendant reached out to Plaintiff's representative, George Joseph, during his lunch break or before he left the office on Friday, May 22, 2021 and left a message to have George Joseph call him back. Plaintiff's representative did call Mr. William Rogers back. Plaintiff was advised that the Defendant was once more recorded. And during such a conversation with Mr. George Joseph, the Defendant, Mr. William Rogers, informed Plaintiff that he will send a copy of the email containing Plaintiff's business information for

review to a proper TOB's attorney, who will look into the matter; that Plaintiff did not require any licensing from the TOB, since Plaintiff's business was an Interjurisdictional, prearranged for-hire vehicle operation provider.

(46B) In fact, during such a phone conversation, on May 24, 2021, the Defendant, William Rogers, admitted to George Joseph that the Plaintiff is right, that Plaintiff did not need any licensing. A copy of such a transcript is attached as **Ex. "49"**. It is also available for reproduction and for authentication by any party upon request. The Defendant, William Rogers, instead, informed George Joseph "that Mr. Moran will sort things out or will take care of it". And that unfortunately, Plaintiff did not hear from any of the Town's Defendants.

(46C) The Defendants, TOB and William Rogers, were apprised by Plaintiff's intention of commencing this action. The Defendants were informed via several calls. The Defendants not only received a Notice of Claim allowing them to probe into the matter on or about November 21, 2021, but Defendant, William Rogers, also received a copy of Plaintiff's Notice of Request for an Administrative hearing. See **Ex. "12'** and **Ex. "29"**.

(46D) Furthermore, Defendant, William Rogers, had ample opportunity to address this matter to his Supervisor, or to the Town Board, if necessary. The Defendants could have written a letter or responded to Plaintiff's Notice of Claim and informed Plaintiff that they will soon resolve this matter. Even as an Executive Assistant of the Town of Brookhaven Department of Public Safety, Defendant claims that he was not qualified to make such a decision, while assuming such a responsibility until he felt that a lawsuit is forthcoming. And even then, Defendants chose not to resolve the matter.

47. And although Mr. Moran, a TOB's attorney also reached out to Plaintiff's representative on May 24, 2021, claiming that he is sincere about resolving this issue, based on the TOB's previous unwillingness to cooperate with Plaintiff, it is unlikely that the TOB will voluntarily correct such an error (deliberate indifference) . It was for this cause that the Plaintiffs filed a motion to compel witness & for the production of record on or about May 27, 2021 with a return date of June 15, 2021. See **Ex. "36".**It's Plaintiff's Motion to Compel dated May 27, 2021.

**47A**. The Defendants' decision and the Plaintiff's deprivation was as the result of the Defendants' own policy or due to their deliberate action that they have chosen to take when considering any other type of action that could have been made or taken.  Defendants deliberately chose to rely on **TOB's Article 2, Section 67.7** instead of **TOB's Article 2 Section 67.3(B)** or **Article 2, Section 67.(3)(G)**  in their interpretation of a vehicle rendering non-emergency Medical transportation to Medicaid recipients. In any event, the Defendant, TOB, would still be in violation of **Article 1, Section 8, Clause 3 of the U.S. Constitution**, and the **Interstate Commerce Clause** or **Commission** (ICC), which gives Congress power to "regulate commerce" among the several States. In 1995, Congress abolished the name **ICC** and simultaneously created or renamed it the **Surface Transportation Board** (STB).

**47B**. Defendants, therefore, believed that such a law does not apply. And under Title 49, Congress continued promulgating laws to better regulate commerce within the Several States. Plaintiff's application of **49 U.S. Code Section 13506,** in its entirety, is applicable in this case and will further be elaborated upon below.

48. And that on or about May 27, 2021, Plaintiff filed a Motion to Compel with a return date of June 5, 2001. See **Ex "36"**. Its Plaintiff's Motion to Compel dated May 27, 2021. Such a motion called for the attendance of Mr. Rogers Williams as a witness and for the production of any and all relevant books, documents, papers, correspondences and records pertaining to Plaintiff, including those of similar filings within his possession no later than seven (7) days prior to the hearing date, July 15, 2021. And any and all documents must be mailed to Attn: Mr. Jean R, Daniel, at 72 Granada Circle, Mount Sinai, New York 11766.

49. And that by June 1, 2021, both the Defendant, ALJ, Kimberly O' Brien, and the Defendant, OMIG, received Plaintiff's Motion to Compel Witness & for The Production of Any and All Record(s). The Defendant, OMIG had an obligation to respond to such a motion within ten (10) business days, in accordance with **42 CFR Section 1005.9** on "Subpoenas for attendance at hearing", but failed to do so. Instead, OMIG, through its attorney, emailed the Defendant, Kimberly A. O' Brien,  on June 10, 2021, nine (9) days after receiving a copy of Plaintiff's motion to (1) request that such a motion not be accepted; (2) or to adjourn the matter to allow OMIG to respond to Dove's motion, needless to say that such requests were untimely.  See **Ex. "37"**. OMIG's June 10, 2021 email correspondence request.

50. Plaintiff responded to OMIG's request and asked the ALJ, Kimberly A. O' Brien not to consider the Defendant's request. The Plaintiff also made it clear that the Defendant, OMIG, had been in possession of such a motion as early as June 1, 2021 and failed to respond. See also **Ex. "37"** at the top of such a correspondence.

51. And on June 16, 2021, the Defendant, ALJ, Kimberly A. O' Brien, granted OMIG's request and decided not to accept Plaintiff's motion to compel on the ground that "The parties

agreed to go forward with the hearing at 10:00 on August 19, 2021 via WebEx". This too is a violation of **42 CFR Section 1005.4** on "Authority of the ALJ", specifically within **Section 1005. (11)**, "Upon motion of a party, take official notice', and **Section 1005.(12)** The ALJ did not consider the scheduled Pre-hearing conference that was to be held on July 15, 2021 where the parties must exchange their list of witnesses. The ALJ did not consider Plaintiff's intention to compel a third-party defendant as a witness and that such an effort can be burdensome; and that ample notice, time and consideration should be afforded to that party.

52. The ALJ was aware of Plaintiff's intention, as such a matter was discussed with the ALJ during the May 4, 2021 WebEx meeting with her. See **Ex. "38"** It's the ALJ's email correspondence informing the parties that Plaintiff's motion to compel is not accepted. The Defendant, ALJ, knew the need for the attendance of the Defendant, William Rogers, to the extent that the Defendant stated that Plaintiff should file the motion, with an understanding that Plaintiff is seeking to obtain exculpatory evidence.

53. Plaintiff responded to the ALJ's email correspondence on June 17, 2021, requesting a review and informing the ALJ of Plaintiff's intention to appeal. The Plaintiff also requested that a formal decision be made in connection with such a decision and that he be provided with full instructions on how to conduct an internal appeal. See Exhibit **"39"**. It's Plaintiff's letter requesting for a formal decision.

54. On June 18, 2021, the ALJ responded by simply (1) reminding the parties that the prehearing conference is scheduled for July 16, 2021 and not for July 15, 2021, as OMIG's attorney contends; (2) by providing the parties with Rule 519.14 on "Pre-hearing conference", implying that Plaintiff need not worry and that Plaintiff will have such an opportunity to address

such an issue regarding obtaining the attendance of Mr. William Rogers during the Pre-hearing conference. See **Ex. "40"**. It's the ALJ's June 18, 2021 response letter to all parties, together with a copy of **Rule 519.14**.

55. Also on June 18, 2021 was Plaintiff's response to the Defendant's, ALJ's, reason for denying Plaintiff's motion. Plaintiff further informed the ALJ that Plaintiff still requires a review and would like to be notified of the Defendant's, Department of Health's **(DOH's)** internal review procedures on how to do so. Plaintiff further reminded the ALJ that **Rule 519.14** does not justify its decision. Plaintiff furthermore informed that such a law, in fact, requires a party to produce all of its documentary evidence and the identification of all of its witness(s) during the prehearing conference.

56. And that since the Defendant, ALJ, denied Plaintiff's request to compel the defendant, Mr. William Rogers, to attend the August 19, 2021 hearing and to obtain any and all relevant record from him prior to the prehearing conference, Plaintiff will not be prepared for such a coming pre-hearing conference on July 15, 2021. See **Ex. "41"**. Plaintiff's response to the ALJ's letter dated 18, 2021 addressed to "All parties".

57. In further support of Plaintiff's request, on June 29, 2021, Plaintiff prepared a 2 page letter, entitled, "Dove Transport Service, LP's Petition. The letter contained the relevant procedural history leading to the ALJ's refusal to allow Plaintiff to compel witness sand Plaintiff's official request that the Defendant, DOH, make a declaratory ruling, pursuant to **42 Section 1005.4(6)** on "Rule on motion', and its relevancy or applicability for denying Plaintiffs' motion to compel. See **Ex. "42"**. It's a copy of Plaintiff's official request, pursuant to **SAPA Section 204.1**.

58. And on July 9, 2021, DOH informed Plaintiff that there will be no declaratory ruling because there is an actual case in progress. See Exhibit "**43**".It's DOH's July 9, 2021 decision. And that judging from those facts above, as long as Plaintiff is allowed to fully prove his case in this Court, with no interruption from the Defendants in this caption, Plaintiff will wait until he can obtain a permanent injunction against the Defendants, DOH, ALJ and OMIG. Plaintiff will not be deprived of his Constitutional rights and permanently suffer an irreparable Constitutional harm so long as the factual issues are tried by a Jury of his peers. And that a declaratory relief was unavailable. It is for this cause that Plaintiff commenced this action against the Defendants in this caption to obtain a final or permanent injunction against the Defendants, before mentioned above.

58A. And again, in late July 2021, Plaintiff received an email from the Defendants, soliciting further administrative procedures. The Defendant, ALJ, a few days later, sent an email scheduling a September 28, 2021 administrative hearing, despite the ALJ's failure or unwillingness to rule on various issues, decided to set a date for a hearing. Plaintiff informed the parties of this Court's pending litigation. Plaintiff also sent a letter, together with exhibits, **Ex. "46"** informing the parties, including this Court regarding Plaintiff's position concerning the Defendants' desire to move forward with the administrative hearing. See **Ex. 46**. (Deliberate indifference)

58B. This too is a direct violation of Plaintiff's Constitutional rights. **42 CFR Section 1005.3(3)** on '"Conduct discovery of documents as permitted by this part". It's also a direct violation **42 CFR 1003.(6)** on "Present evidence relevant to the issues at the hearing. The main issue at a bar here is whether Plaintiff's business was entitled to be licensed by the TOB in order

to conduct his business. And the Defendant, William Rogers, who has been providing Plaintiff with conflicting information, must be compelled to answer as a witness to explain whether he is compromised by the Defendant, OMIG, since Defendant, William Rogers, did not fully come clean with Plaintiff.

**5BC**. Plaintiff was not given the opportunity to, as prescribed under **42 CFR Section 1005.13 on "Motions"**, specifically under **Section 1005.13(a)(c)(e)** , be heard, much less be considered. See Plaintiff's Notice of Motion to Compel, together with its Affidavit and its proof of service, as **Ex. "36"**. When Plaintiff required the Defendant, OMIG, to provide information regarding its decision to reduce Plaintiff's alleged overpayment amount, the Defendant did not respond; (indifference in treatment) and the ALJ allowed it, and insisted that a hearing be held regardless. That too is violation of Plaintiff's Constitutional rights, specifically under **42 CFR 1005.13(e)** on "Motion', which states, "The ALJ will make a reasonable effort to dispose of all outstanding motions prior to the beginning of the hearing. The Defendant, ALJ, was only interested in setting up a hearing date. (complete indifference towards Plaintiff)

**58D**. The Defendants, OMIG and its officers, only informed Plaintiff and this Court concerning its reason for such a reduction after Plaintiff began this present lawsuit against the Defendants. Plaintiff still requires a full discovery process so that Plaintiff may be able to rebut Defendant's, OMIG's contention that some of the rides were conducted outside the Town and therefore were removed from the original amount. Plaintiff will require a readable list, where he will be able to read. Defendants' unreadable document is insufficient. Plaintiff has a right to procure the appearance and testimony of his accuser, William Rogers, which is a violation of **42 C F R. Section 1005. 9**. See **Ex. "43"** in its entirety.

(58E) Defendant, OMIG, is also attempting to recoup an amount from Plaintiff without just cause, and without legal justification. The Defendant, OMIG, is creating the illusion that it is entitled to roughly $161,000.00 dollars while Defendant knows or should have known that there is a limitation on recoupment of payments, even imaginary ones. See **42 CFR Section 405.379** on **"Limitation on recoupment of provider and supplier overpayments".**

(58F) Defendant, OMIG, is also attempting to enforce an overpayment procedure against Plaintiff without just cause, and without legal justification. The Defendant, OMIG, is creating the illusion or is trying to blot out that portion of the facts within this case that Plaintiff's records were lost due to water damage yet still decided that no unforeseen circumstances existed and therefore is entitled to overpayments as early as 2016 while it knows or should have known that Federal law only provides a one (1) year look back for recoupment of any alleged payment.

### COUNT-ONE

**THE DEFENDANTS, OMIG, DMIG, DANIEL V. COYNE, AMIG, STEPHANIE E. PATON, RN, DEPRIVED PLAINTIFF OF HIS PROCEDURAL DUE PROCESSES, IN ACCORDANCE WITH SECTION 1 OF THE 14TH AMENDMENT AND ARE THEREFORE LIABLE TO PLAINTIFF UNDER 42 U.S.CODE SECTION 1983**

59. **Section 1 of the 14th Amendment** states, "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and the States wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

59A. Plaintiff, Jean R. Daniel, is a Citizen of the United States and can therefore be guaranteed that Plaintiff IS protected under **Section 1 of the 14th Amendment.** Beginning from

the time that Plaintiff was accepted into the Medicaid program, on June 19, 2014, Plaintiff

obtained a property interest as the owner of such a business. See Plaintiff's **Ex "2"**. See para

**15B-15E** above, demonstrating that Plaintiff did possess a property interest as a non-emergency

Medical Transportation provider.

**59B.** On or about May 30, 2017, Plaintiff received a letter from the Defendant, OMIG,

informing Plaintiff that it will withhold 25% of Plaintiff's weekly payment for services. See para

**8B-8E** above. Even if 25% of such a withholding was actually being withheld, such an act was a

violation of Plaintiff's Constitutional rights, and a violation of Plaintiff's procedural due process;

in that, **42 CFR Section 447.31(b)(1)** states,

"Agency notice to providers" (1) Before the agency requests recovery of a provider of Medicaid
overpayment through Medicare, the Agency must sent either or both of the following notices,
in addition to that required under paragraph (b)(2) of this section, to the provider. (i) Notice
that- (A) There has been an overpayment (ii) Information is needed to determine the amount of
overpayment if any; and (B) The provider has at least 30 days in which to supply the
information to the agency.

**59C.** So while the Defendant, OMIG, might have thought that it had provided an

adequate "Notice" to Plaintiff, such a notice was clearly lacking. The "Notice" did inform

Plaintiff to provide something in writing but did not say what the issue was or the reason for

the withholding to begin with. See **Ex "8"**.

**59D.** The Defendant, OMIG, not only withheld 25% of Plaintiff's weekly payments, but

withheld everything. Plaintiff's business bank statement shows that as of May 25, 2017, Plaintiff

no longer received payments from the Defendant, DOH. See **Ex "52"**. It's Plaintiff's business

bank statement covering December 31, 2016 through August 31, 2017. Also see Plaintiff's para

**8B-8E** above. OMIG made its decision pursuant to **18 NYCRR Section 504.8(d)** and **Section**

**518.7**.

**59E.** And again, on or about December 10, 2018, the Defendant, DMIG, Daniel V. Coyne, while acting under color of state law, in his Official capacity, on behalf of OMIG, deprived the Plaintiff of his procedural due process, by failing to provide the Plaintiff, within 12 months, all alleged bills that were deemed unacceptable in order for Plaintiff to correct the same; plaintiff received no letter from the Defendant, DMIG, regarding the resubmission of claims or bills that were considered unacceptable for processing. The Defendant, DMIG, failed to give full and an adequate notice, so that Plaintiff might have taken the appropriate action to timely correct any alleged unacceptable claims.

**59F.** The Defendants, OMIG and DMIG, Daniel V. Coyne, furthermore, within their NOPAA dated December 10, 2018, seek to recover alleged inappropriate claims that were submitted between July 1, 2016 and May 13, 2017, more than two (2) years from the date of their NOPAA. See Exhibit **"5"** above, p. 2, para 5. The Defendants, OMIG and DMIG, specifically violated Plaintiff's Constitutional rights, under Federal law **42 CFR Section 447.45(c)4), in further support of Section 1 of the 14th and the 5th Amendments**, since the NOPAA Notice that was issued to Plaintiff was inadequate.

60. Unless otherwise instructed on "Timely claims payment", under **42 CFR Section 447. 45 (d)(1)(4)**, which states, in pertinent parts, regarding "State plan requirements", "The Medicaid agency must require providers to submit all claims no later than 12 months from the date of service. According to such a law,' The Medicaid agency must require providers to submit all claims no later than 12 months from the date of service. The agency **must** pay all claims within 12 months of the date of receipt of any claims, which **implies** that any claim that had not been returned to a provider for correction is considered acceptable.

**60A**. Assuming, arguendo, that the Defendants, DOH, OMIG and DMIG, Daniel V. Coyne, were unaware of such a law, or that they were, in good-faith, relying on **42 CFR Section 447.45(d)(iii)**, where an exception to such a law may apply to claims from providers under investigation for fraud or abuse, the Defendants' allegation against Plaintiff did not rise to fraud and abuse. According to OMIG's investigation, Plaintiff's conduct allegedly fell within the category 'of an unacceptable practice'. Defendants are liable for those bills, since they failed to return the bills to Plaintiff or failed to give timely notice for its reason to deny Plaintiff's bill submission in order for Plaintiff to have timely taken the appropriate action to correct any alleged error.

**60B** On January 17, 2020, the Defendant, OMIG and AMIG, Stephanie E. Paton, RN, removed Plaintiff as a Medicaid program, and disallowed Plaintiff's claims without sufficient procedural due process, causing such an overpayment. See **Ex. "44"**. It's a letter dated June 14, 2021 from Defendant's former attorney adjusting Defendant's alleged claim with no evidence to support such a change. Contrary to Defendants' contention that no property interest exists within the Medicaid program, such a property interest exists, since Plaintiff is a subcontractor or a third-party, under contract with OMIG's Agent, LogistiCare , for the benefit of the Defendant, DOH. See para **15B-15E** above. Otherwise, if no contract between Defendant, DOH, and Plaintiff exists, then the Defendant's, OMIG's, alleged claim against Plaintiff is null, void and unenforceable in any court of law.

**60C.** These things that are described in paras **59-60B** above constitutes several violations of Plaintiff's procedural due process. They show that most, if not all, were committed as a result of some State or local statue or law, causing such a Constitutional deprivation; Such

a deprivation might have been caused due to inadequate laws. And that all were committed while the Defendants were acting in their official capacities. And that the State actors mentioned above, through their officials' own capacities, have violated the Constitution, causing, such an overpayment amount of $160, 441. 53. The Defendants knew or should have known that, based upon preexisting laws, that their acts and omissions were unlawful.

**60D.** Had the Defendants, DOH, OMIG, DMIG, Daniel V. Coyne and AMIG, Stephanie, Paton, RN not deprive Plaintiff of his procedural due process, Plaintiff would still be enrolled as a Medicaid provider; plaintiff would not have to closeout his business; plaintiff would not have to worry about any overpayments, since there would be no overpayment.

**60E.** Had the Defendants provided an appropriate appeal process to Plaintiff or timely provided the bills or claims that had to be corrected by Plaintiff, the circumstance surrounding Plaintiff's situation would have been different. And that the Defendants violation of Plaintiff's due process are directly connected to or linked with Plaintiff's current mental and emotional distress, as Plaintiff is trying to figure out how to pay for this overpayment amount of $160,442.53.

**60F.** Plaintiff will have to spend money and time in order to redress such a grievance. Plaintiff, therefore, in accordance with **42 U.S. Code Section 1983,** requests that he be awarded with general compensatory damages in the sum of $300, 000.00; plaintiff also requests that he be awarded with punitive damage in the sum of $500,000.00; or that he be awarded in any amount and with any other theory of recovery as the Court seems just and equitable; or that a jury may award Plaintiff for the Defendants' violation of his due process, as described above.

## COUNT-TWO

**THE DEFENDANT, OMIG, TOGETHER WITH THE TOB & WILLIAM ROGERS HAVE DEPRIVED THE PLAINTIFF OF HIS SUBSTANTIVE DUE PROCESSES, IN ACCORDANCE WITH SECTION 1 OF THE 14TH AMENDMENT & WITH THE 5TH AMENMENT AND ARE THEREFORE LIABLE TO PLAINTIFF IN ACCORDANCE WITH 42 U.S. CODE SECTION 1983**

61. **Section 1 of the 14th Amendment**, as previously stated above, in para **59**, also protects Plaintiff from the deprivation of any substantive due process violation by the part of the Defendants. Plaintiff had already established above, in para **15B-15E**, that Plaintiff has a protected property interest as owner of his business. Such a protected interest derives primarily under New York State laws.

61A. **The 5th Amendment** states, in pertinent parts, that, "No person shall be deprived of life, liberty, or property, without due process of law, nor shall private property be taken for public use, without just compensation.

62. Plaintiff enrolled as a provider in the Medicaid program on June 19, 2014 and was accepted as a Medicaid transportation provider on September 10, 2014. At which time, Plaintiff obtained a contractual duty to transport qualified Medicaid recipient to and from their medical facilities. On July 3, 2015, LogistiCare , DOH's agent, provided Plaintiff with its first batch of Medicaid recipients who requires to be transported to and from their designated medical facilities. See **Ex "45"**. It's the 2 sets of Trip orders from LogistiCare.

63. And that on or about December 10, 2018, Plaintiff received a NOPAA from the Defendant, OMIG, alleging, inter alia, that Defendant, OMIG, intends to exclude Plaintiff's business as a NEMT provider. The primary reason for the NOPAA was due to the fact that the Defendant, OMIG, obtained two (2) letters from the Defendant, William Rogers, who is the Executive Asst. of Public Safety from the TOB.  The Defendant, the TOB, under its agent or

employee, William Rogers, provided those letters to the Defendant, OMIG, informing the Defendant that Plaintiff's business did not apply for a Taxicab license within the TOB and Plaintiff's business, therefore, was operating illegally within the TOB.

64. As Plaintiff described in para **14G-14Q** above, in accordance with the U.S. Constitution, it is the will of Congress promote fairness in commerce among the several States. It protects states from discriminating against each other in dealing with interstate commerce and creating free trade zone among the states. When Congress enacted the **Social Security Act,** which is also codified under **42 U.S. Code 1396(a) 70**, the Secretary of Health and Human Resources or Congress intended that a State who willingly participates in such a program should provide for a broker or an agent to assure that qualified Medicaid recipients may be able to gain access to NEMT providers.

65. In participating into such a program, in 2006 NYS Dept. of Vehicles passed a bill which is now called **Article 17B Section 498** in an effort to regulate NEMT providers and allowing them to freely pick up and drop off Medicaid recipients anywhere within a State; to pass through from one municipality to another; to pick up and drop off from one town to another or within the same town, consistent with **49 U.S. Code 13506(b).**

66. **49 U.S. Code 13506(b)** and **Article 17B Section 498(2)** exempts Plaintiff from obtaining any licensing requirements from any local town. Both Federal and State laws are similar to the Suffolk County law, specifically **Article 1** on **Taxi and Limousine Commission, Section 571-1**. See para **14H** above. And the Defendant's TOB's code is also familiar with all 3 statute and codes. See the TOB's **Article 1 Section 67.1** on **"General Provisions" "Exempt interjurisdictional For-Hire-Vehicle.**

67. Yet on or about January 17, 2020, Plaintiff received a NOAA, excluding him from the Medicaid program, charging Plaintiff with committing an unacceptable practice for failure to obtain a license within the TOB.  Perhaps the Defendant, TOB, failed to train the Defendant, in accordance with Plaintiff's allegation in para **14J-14K** above or he intended to deliberately cause Plaintiff to be deprived of his substantive due process by refusing to provide the Defendant, OMIG, with a letter correcting is contention; that Plaintiff's business had been illegally operating his vehicles within the TOB while knowing that such a contention isn't true.

68. While the Defendant, William Rogers, now admits within his declaration letter dated August 24, 2021 and during a phone conversation with Plaintiff's representative that he agrees with Plaintiff that his business did not need any licensing during the time that Plaintiff was in business. Plaintiff's declaration, alone, should null and void the State actors' reliance on such letters, and would not necessarily exempt the Defendants, TOB and William Rogers, from liability, since the damage had already been done.

69. The Defendants' acts and omissions constitute a deprivation of Plaintiff's substantive due process right. Such acts and omissions led to an unwarranted investigation which led to Plaintiff's loss of his business and contract with the Defendant, DOH. As explained above, in para **14N**. Plaintiff believes the Defendant's acts were most likely deliberate and intentional; or that a State law or statute caused such a deprivation.

70.. The Defendant had ample time prior to the filing of this **Section 1983** Civil rights complaint to do so, since Plaintiff provided the Defendant with a Notice of Claim. Defendant claimed that such acts and omission was due to the sole cause of OMIG, who declared

Plaintiff's business as being unlicensed while Defendant, William Rogers and the TOB, provided those fabricated letters, which began such an investigation.

71. The fact that the Defendant, TOB, failed to review the Defendant's, William Rogers', letters and allowed the Defendant, William Rogers, to timely correct the error, since the TOB's attorney failed to "look into the matter" as promised, shows a complete disregard to Plaintiff's Constitutional rights. See **Ex "51"**, specifically Plaintiff's Memorandum of Law in Opposition dated October 1, 2021 paras **38-40**. To make it clear, both Defendants are currently in violation of **Article 1 Section 8 Clause 3 of the Constitution** and with **49 U.S. Code 13506(b)**

72. After all, it was the Defendant's, TOB's own policy that caused the deprivation of Plaintiff's substantive due process. Had the Town Board implemented an appropriate application to accommodate NEMT providers, even if the Defendants intended to conspire against Plaintiff for lucrative purposes, the Defendants would have to use some other pretense to deprive Plaintiff of his Constitutional rights.

73. Both Defendants, therefore, are in violation of **49 U.S. Code 13506(b)** because their policy, or their interpretation of, or their determination, inaction, place a burden on the **ICC**, its supporting Constitutional law above, to regulate commerce, or in transporting passengers over a route between a place in a State and a place in another State, or <u>between a place in a State and another place in the same State</u>, through another State, the transportation is <u>exempt</u> from jurisdiction under this part only if the motor carrier operating the motor vehicle also is lawfully providing <u>intrastate</u> transportation of passengers over the entire route under the laws of each State through which the route runs. And that Plaintiff's business had, in fact, been operated as

an intrastate transportation service (Interjurisdictional non-emergency Medical Transportation provider)

74. By requiring Plaintiff to obtain a license from the Defendant, TOB, where he was forced to pay a substantial amount of money for licensing each of Plaintiff's vehicles for providing intrastate transportation in New York State, and refusing to acknowledge, not denying his request to obtain a license, that Plaintiff has an absolute right to do so, the Defendants are in direct controversy with and are in violation of the U.S. Constitution.

75. And that there is a direct causal link between the Defendants, TOB's and William Rogers' acts and omissions which caused the Defendants, State actors, to deprive Plaintiff of his property interest right. Had the Defendant, William Rogers, not conspired with the Defendant, OMIG, in voluntarily providing the Defendant, OMIG, with two (2) letters declaring Plaintiff's business to be illegal, which the Defendant never really believed, Plaintiff would not have been deprived of his contract or of his property interest rights. Had the Defendants appropriately categorized Plaintiff's business, or told the truth about Plaintiff's business, there would be no investigation. Had the Defendants appropriately handled Plaintiff's application in light of the documents that it provided to the Defendant, William Rogers, Plaintiff would not have to pay for unnecessary taxi registration fees and licenses.

76. Had the Defendant, TOB, decided to supervise, review, edit or "look into the matter", as promised by the TOB's attorney, the action of his agent or employee, the Defendant, William Rogers, Plaintiff would not have been deprived of his property interest rights. Had the TOB appropriately train, informed and implemented clearer policies regarding the laws encompassing NEMT providers, Plaintiff would not have to suffer mental and

emotional distress trying to figure out how to pay for this overpayment amount of $160,

441.53. Plaintiff will have to spend money in order to maintain his action against the

Defendants, including time, in order to redress such a grievance.

77. And that the Defendants, State actors, as stated above, through their officials' own

capacities, have violated the U.S. Constitution. The Defendants, TOB and William Rogers, also,

through their officials' own capacities, have violated the U.S. Constitution. And that the

Defendants, State actors and the TOB and William Rogers, acts and omissions were done in

their official capacities. And that their State laws or statutes also caused this deprivation.

78. Therefore, Plaintiff requests, pursuant to **42 U.S. Code Section 1983**, that he be

compensated with special damages, general damages and punitive damages, in the sum of

$1,000.000.00; or that he may be awarded with any other sum and with any other theory of

recovery as a Jury or the Court seems just and equitable.

## COUNT-THREE
**THE DEFENDANT, OMIG, TOGETHER WITH THE DEFENDANTS, TOB AND WILLIAM ROGERS, HAVE DEPRIVED PLAINTIFF OF HIS LIBERTY INTEREST RIGHTS, IN ACCORDANCE WITH THE 14TH & THE 5TH AMEMDMENTS AND ARE THEREFORE LIABLE TO PLAINTIFF IN ACCORDANCE WITH 42 U.S. CODE 1983**

79. It was Plaintiff's intention to enroll as a NEMT provider in order to support his family

and himself. And when Plaintiff received the Defendant's, May 30, 2017 letter informing

Plaintiff that the Defendant, OMIG, intends to withhold 25% of Plaintiff's weekly payments for

current and future claims under the Medicaid program, in an attempt to continue to operate as

a NEMT provider, Plaintiff used his own funds to make sure that the employees were being paid

and to preserve the business until the ninety (90) days expired, as instructed by the Defendant,

OMIG; that such a withholding will not last for more than ninety (90) days.

80. And when it was apparent that the Defendant, OMIG, was not only withhold 25% of all weekly payments, but the Defendant stopped paying Plaintiff all together, Plaintiff had no choice but to closeout his business. It is estimated that Plaintiff spent over $100,000.00 of his own money to sustain the operation of his business until Plaintiff could no longer sustain. See **Ex "52"**. It is Plaintiff's business Bank Statements covering the month of December 31, 2016 through August 31, 2017. Based on this review, Plaintiff estimates that the Defendant, OMIG, also defrauded Plaintiff by withholding Plaintiff's lump sum and back payments, which Plaintiff was entitled to. Plaintiff requests that a referee or a master be appointed by this Court to look into this. Plaintiff would like to recover the same.

81. Furthermore, as previously discussed above, it was the Defendant, OMIG, who coerced the Defendant, William Rogers, to furnish a lie to support Its action of excluding Plaintiff from the Medicaid program. Plaintiff has a right to follow or to choose which profession to go into. But that unfortunately, his choice of profession quickly dissipated when the Defendants', OMIG's TOB's and William Rogers' conspiracy against him festered when he received a NOPAA.

82. On or about January 17, 2020, Plaintiff received a NOAA, ending Plaintiff's protected liberty interest as a NEMT provider and excluding him from the Medicaid program without due process of law for a period of three (3) years and seeking to recoup alleged overpayments from Plaintiff. The Defendant, OMIG, relied on some State law which caused this deprivation. Plaintiff became financially stressed, as a result of such exclusion and could no longer enjoy, at times, taking Medicaid recipients to and from their designated places for treatment, etc., and receive payment for such service.

83. There is a causal link between the deprivation of Plaintiff's liberty interest rights and the acts and omissions of the Defendants' TOB's and William Rogers'; in that, if the Defendant, William Rogers had not listen to the Defendant, OMIG, to provide him a letter to use as an excuse to initiate such an unwarranted procedure against the Plaintiff, the Defendant, OMIG, would not have been able to commence any overpayment proceeding against the Plaintiff.

84. Had the Defendant, TOB, timely responded to Plaintiff's several calls and supervised its employee, William Rogers, no letter would have been written by the Defendant, William Rogers. Plaintiff would not have been excluded from the Medicaid program by the State actors, who knew or should have known, based on preexisting laws, that their actions were unlawful. The Defendant, OMIG, also knew or should have known that its action, based on preexisting laws, was unlawful.

85. Plaintiff would not have to suffer mental and emotional distress trying to figure out how to pay for this overpayment amount of $160, 441.53. Plaintiff will have to spend money in order to maintain his action against the Defendants, including time, in order to redress such a grievance. And that the Defendant, State actor, through its official's own capacity, has violated the U.S. Constitution. And that the Defendant, TOB, through its official's own capacity has violated the U.S. Constitution. And that the Defendant, William Rogers, through its official's own capacity has violated the U.S Constitution.

86. And that all the Defendants acts and omissions were done in their official capacities. Therefore, Plaintiff requests, pursuant to **42 U.S. Code Section 1983**, that he be compensated with special damages, general damages and punitive damages, in the sum, all together of $2,

000.000.00; or that the Plaintiff may be awarded with any other sum and with any other theory

of recovery as a Jury or the Court seems just and equitable.

### COUNT FOUR

**THE DEFENDANT, ALJ'S, KIMBERLY O' BRIEN'S REFUSAL TO CONSIDER PLAINTIFF'S MOTION TO COMPEL WITNESS, INTER ALIA, & FOR THE PRODUCTION OF ANY AND ALL RELEVANT RECORD(S) WAS A VIOLATION & DEPRIVATION OF PLAINTIFF'S PROCEDURAL DUE PROCESS, UNDER THE 14TH AMENDMENT & A DEPRIVATION, UNDER 42 U.S.CODE SECTION 1981; AND, IN ACCORDANCE WITH 42 U.S. CODE SECTION 1983, THE ALJ IS LIABLE TO PLAINTIFF FOR SUCH DEPRIVATIONS**

87. **Section 1 of the 14th Amendment**, in pertinent parts states, "nor shall any State

deprive any person of life, liberty, or property, without due process of law;" See para **59** above.

**42 U.S. Code 1981** also states," All persons within the jurisdiction of the United States shall

have the same right in every State and Territory to make and enforce contracts, to sue, be

parties, give evidence, and to the full and equal benefit of all laws and proceedings for the

security of persons and property as is enjoyed by white citizens, and shall be subject to like

punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

88. The Defendant's, ALJ's, acts and omissions are set forth in paras **48-58C** above. The

deprivation of Plaintiff's procedural due process began on or about June 10, 2021, when the

Defendant, OMIG, nine (9) days after he and the Defendant, ALJ, received a copy of Plaintiff's

motion to compel. The Defendant, OMIG, emailed all parties, including the Defendant, ALJ, to

inquire whether the Defendant should respond to Plaintiff's motion.

89. Plaintiff responded via of email on June 10, 2021, opposing the Defendant's, OMIG's,

request, reminding The ALJ that the Defendant has an obligation to respond. And that the

Defendant had been in possession of Plaintiff's motion for more than nine (9) days.

On June 16, 2021, the ALJ emailed all parties and informed the parties that Plaintiff's motion is

not accepted, claiming that the parties had agree to go on with the hearing on August 19, 2021,

not considering that a pre-hearing conference had been scheduled for July 15, 2021 to exchange list of witnesses and that Plaintiff intended to include the Defendant, William Rogers, as a witness, etc.

90. The Defendant, ALJ, had longed been aware of Plaintiff's desire to compel the attendance of the Defendant, William Rogers, to testify in any scheduled hearing. The Defendant, William Rogers, was needed because he deliberately provided false information to the Defendant, OMIG, that Plaintiff's business was not licensed to operate within the TOB. Plaintiff requested for an administrative reviewl and for a formal decision and be provided with full instructions on how to appeal. The Defendant, ALJ, informed Plaintiff that an appeal is not available.

91. Defendant, on the other hand, provided all parties with a copy of rule **18 NYCRR 519.4** as its rationale for not considering Plaintiff's motion. Plaintiff responded and informed the ALJ defendant that such a rule does not apply. See par **55** above. Plaintiff informed the Defendant that he would not be prepared for the scheduled conference due to the fact that the attendance of the Defendant's, William Rogers', has not been secured and that it was imperative for the Defendant to testify during the coming hearing.

92. On June 29, 2021, Plaintiff prepared a letter and emailed it to DOH. Shortly thereafter, DOH responded to Plaintiff's letter via emailed and informed Plaintiff that there will be no declaratory ruling because the case is still in progress. And that despite the fact that Plaintiff had initiated his Civil rights action against the Defendants, the Defendants, OMIG and ALJ, continued to solicit Plaintiff to move forward with the hearing, despite the Defendant's refusal to rule on various issues.

93. The Defendant, ALJ, has violated **42 U.S. Code Section 1981**, in pertinent parts, specifically because the Defendant made every effort to circumvent Plaintiff of his right <u>to give evidence</u>, and to the full and equal benefit of all laws, etc. Although only one, clear, Constitutional law can be identified within this section relating to the Defendant's acts and omissions towards Plaintiff, that, in and of itself, should sustain Plaintiff's complaint. The following Constitutional laws were violated:

94. The ALJ deprived the Plaintiff of the following procedures:

(A) Failed to consider Plaintiff's motion to subpoena a non-party accuser as a witness in accordance with Code 42 CFR Section 1005.9 on "Subpoena for attendance at hearing."
(B) Failed to apply its authority as an Administrative Law Judge (ALJ) in accordance with Code 42 CFR Section 1005.4 on "Authority of the ALJ."
(C) Failed to consider Plaintiff's motion in accordance with Code 42 CFR Section 1005.(11) on "Upon motion of a party."
(D) Failed to take official notice in accordance with Code 42 CFR Section 1005,(12) on "Take official notice."
(E) Failed to rule on motion in accordance with Code 42 CFR Section 1005.4(6) on "Rule on motion."
FE) Failed to conduct discovery of documents in accordance with Code 42 CFR Section 1005.3(3) on "Conduct discovery of documents as permitted by this part."
(G) Failed to accept Plaintiff's evidence within his motion to compel that that would be relevant to the scheduled hearing, in accordance with Code 42 CFR Section 1003.(6) on "Present evidence relevant to the issues at the hearing."
(H) Failed to allow Plaintiff's motion to "speak" for itself, in accordance with Code 42 CFR Section 1005.13(a)(c)(e) on "Motions" "be heard."
(I) Failed to make a reasonable effort to dispose of all outstanding motions prior to the beginning of the hearing, in accordance with Code 42 CFR Section 1005.13(e) on "The ALJ will make a reasonable effort to dispose of all outstanding motions prior to the beginning of the hearing."
95. Although the latter, par **94(I)**, regarding the Defendant's failure to dispose of all outstanding motions prior to the beginning of the hearing is contingent upon the arrival of the actual hearing date, itself, based on the facts in this case, the Defendant, ALJ, made it clear that she would not consider the Plaintiff's motion to compel the Defendant, William Rogers, on its merit.  Defendant, ALJ, knew or should have known, under preexisting laws, that what she was

doing was unlawful. And that all of the acts and omissions described above were deliberate, indifferent, malicious and biased. They were acts and omissions which did violate Plaintiff's due process, in accordance with **Section 1** of the **14th Amendment.**

96. It was clear that the ALJ Defendant sought to deprive the Plaintiff of liberty and property without due process. And the existing NYS laws for which she relied on caused such a deprivation. Had Plaintiff not interfere with the Defendant's, ALJ's, continuous, procedural violations without initiating his action in Federal court, an erroneous decision would have been made and Plaintiff's rights to interpose any Federal claims against the Defendants would have dissipated.

97. Had the Defendant, ALJ, considered Plaintiff's motion to compel, the Defendant, ALJ, would have allowed the Defendant, William Rogers, to testify. Had the Defendant, William Rogers, attended such a hearing, Plaintiff would have been able to find out more than what his representative actually found out during his conversation with the Defendant, William Rogers. See **Ex "33"** and **Ex "49"**.

98. The Defendants' action against Plaintiff would have been dismissed. Plaintiff would not have to suffer mental and emotional distress trying to figure out how to pay for this overpayment amount of $160, 441.53. Plaintiff will have to spend money in order to maintain his action against the Defendants, including time in order to redress such a grievance. And that the Defendant, ALJ, violated Plaintiff's rights while acting under the color of state law, in her official capacity. And that the Defendant, Kimberly O' Brien, through her own official's capacity has violated the U.S. Constitution.

99. Therefore, Plaintiff requests, pursuant to **42 U.S. Code Section 1983**, that he be compensated with special damages, general damages and punitive damages, in the sum of $1,500.000.00; or that the Plaintiff may be awarded with any other sum and with any other theory of recovery as a Jury or the Court seems just and equitable.

**<u>COUNT- FIVE</u>**

**PLAINIFF WAS DENIED THE EQUAL PROTECTION OF THE LAW WHEN HIS BUSINESS HAD BEEN TARGETED AS AN UNLICENSED TAXICAB COMPANY WITHIN THE TOWN OF BROOKHAVEN AND WAS EXCLUDED FROM THE MEDICAID PROGRAM AS A RESULT OF SUCH A FALSE PROPAGANDA, IN ACCORDANCE WITH THE 14TH AMENDMENT'S EQUAL PROTECTION OF THE LAW; AND IN ACCORDANCE WITH 42 U.S. CODE SECTION 1983, THE DEFENDANTS ARE NOW LIABLE TO PLAINTIFF**

100. As stated above, Plaintiff began his operation as a NEMT provider on July 3, 2015 after he had been accepted into the Medicaid program on June 19, 2014. See **Ex "2"** and **Ex "45"**. On May 30, 2017, Plaintiff received a letter from the OMIG instructing Plaintiff that it will withhold 25% of Plaintiff's current and future payments without disclosing the reason for such a withholding. See **"Ex *8"**.

101. On or about December 10, 2018, Plaintiff received a NOPAA from OMIG proposing to exclude Plaintiff's business from the Medicaid program for a period of three (3) years and to recover overpayments, etc. OMIG claims, inter alia, that it received confirmation from the Defendant, William Rogers, the Executive Asst. of Public Safety, within the TOB, that prior to April 24, 2016 Plaintiff's business had not been licensed by the TOB. See **"14"** and **Ex "5"**.

102. And on or about January 17, 2020, OMIG excluded Plaintiff's from the Medicaid program, claiming that their investigation revealed that Plaintiff's business committed an "unacceptable practice"; namely, that Plaintiff's business had been allegedly operating within the TOB without obtaining the proper licensure. See **"Ex "9."**

103. While surfing the internet sometimes in 2020, Plaintiff came across an online article dated October 11, 2019 informing the public that OMIG and TOB were conducting a Joint Investigation as early as September of 2019. The article allegedly claims that such an investigation led to 52 tickets and up to $26,000.00 in fines. The article further stated that, "Among the various was Hometown Taxi, located in the town of Southampton, who was also found to be conducting Medicaid transportation pick-ups and drop-offs in the Brookhaven town, under Brookhaven 67.6, Taxicab business, etc.,"

104. Clearly, the Defendants' Joint investigation allegedly began nine (9) months after Plaintiff received the NOAA. There is no evidence that would imply otherwise. See **Ex "6"**. And upon a review of the Defendant's OMIG's past and present cases, there is no evidence on record that shows that OMIG ever initiated any Medicaid overpayment procedures against any of the 52 'so called cabs' that were ticked for allegedly  operating illegally within the TOB from September of 2019 to present, except for Plaintiff's business. See **"Ex 53"**. It's a ten (10) page list of cases that OMIG have conducted beginning from its inception to present.

105. Out of those several cases, only twenty-eight (28) cases deal with the transportation of patients which does not include Plaintiff's former business. Out of those twenty-eight cases, not one of them deals with NEMT providers, providing transportation service via Taxicab in Suffolk County or in Nassau County; so that Plaintiff was not able to find any case directly dealing with his particular case.

106. Plaintiff, however, was able to find only three (3) cases that are somewhat applicable to Plaintiff's business. And out of those three (3), OMIG had obtained a default judgment against Island Wide Ambulette Service, located in Bay Shore, NY. The second one is

"Sigma Transportation, Inc.", located in Hempstead, NY. And the last one is "IMI Transportation, Inc.", also located in Bay Shore, NY. See **Ex "53"**.

107. Out of those two (2) cases, not one of the ALJs mentioned the need to be locally licensed. In fact, ironically, it was the Defendant, ALJ, Kimberly O' Brien, who decided the "IMI Transportation Inc." case in 2016. Notably, although the issue of the licensing requirement was raised by OMIG, it was not pertaining to whether IMI Transportation Inc. was licensed by the Town of Islip. The concern was whether IMI Transportation Inc. was licensed by New York State, under **Article 19-A of the NYS Motor Vehicle Law**. The same applied to the "Sigma Transportation, Inc." as well. The only concern was whether <u>Sigma</u> had been licensed by New York State, under **Article 19-A**.

108. Using the "Class-of-one theory, given those facts above, DOH, OMIG, William Rogers, and the TOB, discriminated against Plaintiff's business. Plaintiff's business was intentionally treated differently from others similarly situated; and that there is no rational basis for the difference in treatment.

109. Had the Defendant, William Rogers, promptly provided a letter to OMIG, informing OMIG that Defendant's previous 2 letters were a mistake, as Defendant is now claiming, the Defendant, OMIG, would not begin an overpayment procedure against Plaintiff. Had the Defendants, OMIG and its officials, conducted an adequate investigation of Plaintiff's business and inquired from other reliable sources, such as the New York State Dept. of Motor Vehicle, Plaintiff's business would still be active, since Plaintiff's business was only required to be licensed under **Article 17B Section 498**.

110. And that a reasonable official, under preexisting laws, should have known that their acts and omissions were unlawful. And that such a deprivation was due to the Defendants' State law or statute. Had the TOB not take away Plaintiff's business file away from the Defendant, William Rogers, he would have been able to provide the same to Plaintiff. Plaintiff would have been able to find pertinent documents that would aid in the disposition of whether his business should have been licensed in the TOB. Plaintiff would not have to suffer mental and emotional distress trying to figure out how to pay for this overpayment amount of $160, 441.53.

111. Plaintiff will have to spend money in order to maintain his action against the Defendants, including time, in order to redress such a grievance. And that the Defendant, TOB, through its official's own capacity has violated the U.S. Constitution. And that the Defendant, William Rogers, through its official's own capacity has violated the U.S. Constitution.

112. And that OMIG, through its official's own capacity has violated the U.S. Constitution. And that DOH, through its official's own capacity has violated the U.S. Constitution. And that all the Defendants acts and omissions were done in their official capacities. Therefore, Plaintiff requests, pursuant to **42 U.S. Code Section 1983**, that he be compensated with special damages, general damages and punitive damages, in the sum of $1,200.000.00; or that the Plaintiff may be awarded with any other sum and with any other theory of recovery as a Jury or the Court seems just and equitable.

## COUNT-SIX
### THE DEFENDANTS, OMIG, TOB, AND WILLIAM ROGERS, HAVE "TAKEN" PLAITIFF'S LICENSE, MONEY & CONTRACT AWAY, IN ACCORDANCE WITH THE 5TH & THE 14TH AMENDMENT AND ARE THEREFORE LIABLE UNDER 42 U.S. CODE 1983

113. Plaintiff possessed a property interest right in connection with his license to transport Medicaid recipients once he obtained the right to transport Medicaid recipients from the Defendant, DOH, as a NEMT provider in June of 2014. Plaintiff exercised that right in June of 2015 when he received a batch of Medicaid recipient's names from LogistiCare in need of transportation. Plaintiff obtained such a right under Federal and State law. According to **Article 1, Section 8, Clause 3 of the U.S. Constitution**, more specifically under **49 U.S. Code 13506(b)**. See para **14Q** above.

114. And that on or about December 10, 2018, Plaintiff was informed by the Defendant, OMIG, while initiating its own "taking" procedure of Plaintiff's contract via of a NOPAA, that the Defendants, William Rogers and the TOB, provided the Defendant, OMIG, with a letter canceling his right to operate his vehicles as a NEMT provider within the TOB. See **Ex "5"** & **Ex "14"**. The letters informed the Defendant, OMIG, that Plaintiff had not been licensed by the Town, which took away all previous operation by the part of Plaintiff's business. Such a "taking" by the Town and its official led to the State actor's "taking", because had it not been for the Defendants' letters, as the main cause for Plaintiff's "takings", the Defendant, OMIG, would not have been able to exclude Plaintiff from the Medicaid program, which terminated his contract rights.

115. As stated above, par **15B-15E** clearly describes the specific NYS law which entitles him to have this contract right interest, the **NYS Agency Law,** the **NYS GOL Section 5-1501.** Plaintiff also demonstrated his contract right interest under the **Restatement (Second) of**

has violated the U.S. Constitution. And that all the Defendants acts and omissions were done in their official capacities.

Wherefore, and pursuant to **42 U.S. Code Section 1983**, Plaintiff requests the following injunctive relief from this Court: **(A)**) that this Court secures the attendance of William Rogers, the Defendant, in this caption, for any scheduled hearing **(B)** that this Court may compel Mr. William Rogers to  produce any and all relevant records pertaining to Plaintiff's business. **(C)** that a final and permanent injunction be granted against the Defendants, DOH, ALJ and OMIG **(D)** that the Defendant, OMIG, may remove Plaintiff's' name and the name of his business from its data base as being inadequate. **(E)**  Compensate Plaintiff for his and returning all lump sum that had been taken from him **(F)** restoring Plaintiff into the Medicaid program. **(G)** require that the TOB to comply with Federal law and provide a letter correcting its employee's assumption; that Plaintiff's business had been operating legally within the TOB. **(H)** transfer the Plaintiff's action to this Court.

**2)** That Plaintiff may be compensated with special damages, general damages, and punitive damages and presumed compensatory damages, money damage, or from any other applicable theory of recover, from all the Defendants, except from the Defendant, ALJ, in  the aggregate amount of **$6,500,000.00**; or that he may be awarded with any other sum as a Jury or this Court seems just and equitable.

Dated: 10/29/2021
Suffolk, County NY

Jean R. Daniel,
72 Granada Circle,
Mount Sinai, NY 11766
Tel.: 347-551-9786
Email: Goodtone450@aol.com

# STATE OF NEW YORK

# DEPARTMENT OF STATE

I hereby certify that the annexed copy has been compared with the original document in the custody of the Secretary of State and that the same is a true copy of said original.

WITNESS my hand and official seal of the Department of State, at the City of Albany, on April 22, 2015.



Anthony Giardina
Executive Deputy Secretary of State

Rev. 06/13

Exhibit "1"

071011 001082

# "Certificate of Limited Partnership of Dove Transport Service, L.P."

This Limited Partnership has been formed under Section 121-201 of the NYS Revised Partnership Act.

*1- The name of the limited partnership is: **DOVE TRANSPORT SERVICE, L.P.***

*2- The county within this state in which the office of the limited partnership is to be located is: the County of Suffolk.*

*3- The Secretary of State is designated as agent of the limited partnership upon whom process against it may be served. The address to which the Secretary of State shall forward copies of process accepted on behalf of the limited partnership is: 114-74 224th Street, Queens, NY 11411.*

*4- The name and address of each of the following General Partners of **DOVE TRANSPORT SERVICE, L.P.** is as follows:*
*(a) JEAN R. DANIEL, 114-74 224th Street, Queens, New York 11411*
*(b) MOHAMMED S. RAUSHAN, 109-68 131st Street, South Ozone Park, Queens, New York 11420*

*5- The name and address of each of the following Limited Partners of **DOVE TRANSPORT SERVICE, L.P.** is as follows:*
*(c) NIQUETTE DANIEL, 114-74 224th Street, Queens, New York 11411*
*(d) MOHAMMED E. RAUSHAN, 109-68 131st Street, South Ozone Park, Queens, New York 11420*

*6- The primary purposes for the formation and existence of **DOVE TRANSPORT SERVICE, L.P.** is as follows:*
*(a) to provide a twenty-four (24) hour service for the safe and efficient transport of persons with disabilities, sickness, injuries, as well as persons on stretchers to and from their designated places.*

*7- The effective date of filing of **DOVE TRANSPORT SERVICE, L.P.** shall be October 14, 2007*

*8- The latest date upon which **DOVE TRANSPORT SERVICE, L.P.** shall be dissolved is October 14, 2017.*

*(9) The name of the registered agent for **DOVE TRANSPORT SERVICE, L.P.** within the State of New York upon whom process against **IT** may be served is: George Joseph, residing at 114-74 224th Street, Queens, New York 11411.*

071011001082

**IN WITNESS WHEREOF,** this certificate has been executed this 7th day of ~~April,~~ September, 2007, by the undersigned who affirms that the statements made herein are true under the penalties of Perjury.

_____  
Jean R. Daniel, General Manager

JeAN R. DANiEL  
(Print Name)

_____  
Mohammad S. Raushan, General Manager

Mohammed Raushan  
(Print Name)

_____  
Niquette Daniel, First Class Limited Partner

N. Quette Daniel  
(Print Name)

_____  
Mohammed E. Raushan, First Class Limited Partner

Mohammed Raushan  
(Print Name)

STATE OF NEW YORK  
DEPARTMENT OF STATE  
FILED   OCT 1 1 2007  
TAX $ _____ O  
BY: _____ IA

## CERTIFICATE OF LIMITED PARTNERSHIP

### OF

### DOVE TRANSPORT SERVICE, L.P.

Under Section 121-201 of the NYS Revised Partnership Act.

**Filed by:**

Sign Name: _____

114-74 224th Street

Queens New York 11411

Print Name

George Joseph

1195

Computer Sciences Corporation
PO Box 4613
Rensselaer, NY  12144-8613

0000000013

DOVE TRANSPORT SERVICE LP
3911 211TH ST
BAYSIDE, NY  11361-1957

Notice: This communication and any attachments may contain information that is PRIVILEGED and CONFIDENTIAL under State and Federal law and is intended only for the use of the specific individual(s) to whom it is addressed. This information may only be used or disclosed in accordance with law, and you may be subject to penalties under law for improper use or further disclosure of the information in this communication and any attachments. If you have received this communication in error, please immediately notify NYHIPAADESK@CSC.COM or call 1-800-541-2831. Providers who do not have access to e-mail should contact 1-800-343-9000.

Exhibit "2"

**NEW YORK**
*state department of*
# HEALTH

Howard A. Zucker, M.D., J.D.
Acting Commissioner of Health

Sue Kelly
Executive Deputy Commissioner

Date: 09/10/2014
NPI:
Provider ID: 03882157

DOVE TRANSPORT SERVICE LP
3911 211TH ST
BAYSIDE, NY 11361-1957

Dear Provider:

Welcome!  Your application for enrollment in the New York State Medicaid Program has been approved effective JUNE 19, 2014 for the following Category(s) of Service:

        0603      TRANS: TAXI

Your first step as an enrolled provider is to familiarize yourself with the compilation of the Title 18 NYCRR, Part 504 rules and regulations established by the State of New York (NYCRR), which is available at the Department of Health's website, www.nyhealth.gov, in the Laws & Regulations section.

Please review this correspondence in its entirety as it contains critical information about specific rules governing the provision of your care and service to Medicaid beneficiaries.  It also identifies resources you should routinely review to keep current on the Medicaid Program, as well as specific instructions on how to submit a claim for rendered services.

Computer Sciences Corporation (CSC) is Medicaid's fiscal agent.  CSC maintains Medicaid's website, www.eMedNY.org.  This website is used to notify providers of current issues affecting Medicaid systems and transactions.  Please visit www.eMedNY.org and review the Provider Manual(s) associated with your new enrollment.  Provider Manuals can be downloaded or can be sent to you via regular mail.

The Medicaid Update, the monthly newsletter published by the NYS Department of Health, contains important policy and regulatory guidelines to assist you in caring for Medicaid beneficiaries.  Please refer to the enclosure, *Important Information for Medicaid Providers*, for more information on receiving the newsletter.

Unless you will be using an enrolled service bureau/billing agent to submit your claims and other transactions, as a new provider in the Medicaid program you will need to obtain an Electronic/Paper Transmitter Identification Number (ETIN) in order to submit claims or other transactions (including paper claim forms).

Institutional providers (only) must include a Medicaid rate code on their claims.  If you are an institutional provider, you will receive a rate code letter under separate cover.

Please familiarize yourself with the provider disclosure requirements found in Title 18 NYCRR, Part 502 available at the Department of Health's website.  Additionally, provider ownership changes must be reported to the Medicaid Program.  Whenever you undergo an ownership change or recognize the need to submit a new disclosure notification, please contact the Medicaid Program for more information.

The following addresses are associated with this enrollment.

HEALTH.NY.GOV
facebook.com/NYSDOH
twitter.com/HealthNYGov

Page 1 of 3

Report ID: PM-50400-R5004 Rev (11/05/2010)

NEW YORK STATE DEPARTMENT OF HEALTH
OFFICE OF THE MEDICAID INSPECTOR GENERAL

## NOTICE OF HEARING

In the Matter of

DOVE TRANSPORT SERVICE, LP & JEAN R. DANIEL
Provider ID: 02201009
Project Number: 17-1541

for a hearing pursuant to Part 519 of Title 18 of the Official Compilation of Codes, Rules and Regulations of the State of New York (NYCRR) to review a determination under 18 NYCRR Parts 515 and 518 to recover Medicaid overpayments and impose a sanction.

**Please take notice that a hearing will be held in the above case**

| | |
|---|---|
| **Before:** | Kimberly O'Brien, Administrative Law Judge |

**Appellant:**

| Dove Transport Service, LP | Jean R. Daniel |
|---|---|
| 3911 211th Street | 3911 211th Street |
| Bayside, NY 11361 | Bayside, NY 11361 |
| | |
| By:  Jean R. Daniel | By:  Jean R. Daniel |
|      Dove Transport Service, LP |      Dove Transport Service, LP |
|      72 Granada Circle |      72 Granada Circle |
|      Mount Sinai, NY 11766 |      Mount Sinai, NY 11766 |

**Department:**   Philip Hoffman, Senior Attorney
Phone: (212) 417-4569
Email: Philip.Hoffman@omig.ny.gov

| | | |
|---|---|---|
| **Date:** | Tuesday, April 27, 2021 | Tuesday, May 4, 2021 |
| **Time:** | 10:00 AM | 10:00 AM |
| **Place:** | PLEASE BE ADVISED that this hearing will be conducted electronically via WebEx. The link for connecting to the WebEx will be sent to Appellant via email to goodtone450@aol.com by the Bureau of Adjudications. | |

**SCHEDULED HEARING DATES ARE CONSIDERED DATES CERTAIN AND WILL NOT BE ADJOURNED WITHOUT A SHOWING OF GOOD CAUSE**

| | |
|---|---|
| Dated: | **April 1, 2021** |
| | Albany, New York |

Frank T. Walsh, Jr.
Acting Medicaid Inspector General

By: _Janine Daniels Rivera_
Janine Daniels Rivera
General Counsel, Office of Counsel
Office of the Medicaid Inspector General
800 North Pearl Street, 2nd Floor
Albany, New York 12204

USPS Certified Mail # 7018-1130-0001-2505-3535
goodtone450@aol.com

## READ OTHER SIDE OF THIS NOTICE FOR IMPORTANT INFORMATION

Exhibit "3"

# <u>READ THESE INSTRUCTIONS CAREFULLY</u>

**ISSUES**

The hearing will relate to the determination of the Office of the Medicaid Inspector General as set forth in the Notice of Agency Action dated January 17, 2020 that Appellant had been overpaid by the Medicaid program and that the Medicaid program is entitled to recovery of this overpayment pursuant to 18 NYCRR Part 515 and Part 518. Appellant was also sanctioned pursuant to 18 NYCRR Part 515

The issues to be considered shall be limited to the issues set forth in the Department's Notice of Agency Action and in Appellant's response to the Department's December 10, 2018 Notice of Proposed Agency Action.

**PROCEDURE**

- The hearing will be held in accordance with Section 22 of the Social Services Law, Article 3 of the State Administrative Procedures Act and 18 NYCRR Part 519.

- A stenographic record of all proceedings will be made and witnesses will be sworn and examined.

- The Appellant may appear in person or by an attorney, testify, present documentary evidence, produce witnesses, examine opposing witnesses and examine such evidence as may be produced.

- The burden of proof at the hearing will be in accordance with Section 306 of the State Administrative Procedures Act and 18 NYCRR § 519.18(d).

- At the conclusion of the hearing a written hearing decision will be made and issued by the Commissioner of Health, or by a person on behalf of the Commissioner, based exclusively on the record and testimony introduced at the hearing.

**SPECIAL NEEDS**

Pursuant to Section 301(6) of the State Administrative Procedures Act, if any party or witness to this proceeding is a deaf person, the Department, upon reasonable notice, will provide at no charge a qualified interpreter of the deaf to interpret the proceedings and the testimony of any deaf person.

**ADJOURNMENTS**

Any request for an adjournment of the hearing or change of venue must be made in writing to:

**Supervising Administrative Law Judge**
New York State Department of Health, Bureau of Adjudication
Riverview Center, Suite 510
150 Broadway
Menands, New York 12204
Phone: (518) 402-0748

Notice of any such request must also be provided to the Office of the Medicaid Inspector General's assigned attorney, whose name and telephone number appear on the first page of this Notice.



**NEW YORK**
STATE OF
OPPORTUNITY.

**Division of Corporations,
State Records and
Uniform Commercial Code**

New York State
Department of State
DIVISION OF CORPORATIONS,
STATE RECORDS AND
UNIFORM COMMERCIAL CODE
One Commerce Plaza
99 Washington Ave.
Albany, NY 12231-0001
www.dos.ny.gov

# CERTIFICATE OF CANCELLATION

## OF THE
## CERTIFICATE OF LIMITED PARTNERSHIP
## OF

### DOVE TRANSPORT SERVICE, L.P.

*(Insert Name of Domestic Limited Partnership)*

Under Section 121-203 of the Revised Limited Partnership Act

**FIRST:** The name of the limited partnership is:

### DOVE TRANSPORT SERVICE, L.P.

If the name of the limited partnership has been changed, the name under which it was formed is:

**SECOND:** The date of filing of the certificate of limited partnership is:

OCTOBER 11, 2007

**THIRD:** The event giving rise to the filing of this certificate is:

DUE TO A UNANIOUS DECISION BY BOTH GENERAL MANAGERS AND BY BOTH FIRST
CLASS LIMITED PARTNERS, THAT DOVE TRANSPORT SERVICE, L.P. SHOULD BE
CANCELLED ON JANUARY 15, 2018

X _____        JEAN R DANIEL
*(Signature of General Partner)*                         *(Type or Print Name)*

DOS-1390-f (Rev. 04/17)                    *Exhibit 11*                    Page 1 of 2

# CERTIFICATE OF CANCELLATION
## OF THE
## CERTIFICATE OF LIMITED PARTNERSHIP
## OF

### DOVE TRANSPORT SERVICE, L.P.

*(Insert Name of Domestic Limited Partnership)*

Under Section 121-203 of the Revised Limited Partnership Act

Filer's Name and Mailing Address:

*Name:*

**GEORGE JOSEPH**

*Company, if Applicable:*

**N/A**

*Mailing Address:*

**114-74 224TH STREET QUEENS, NY 11411**

*City, State and Zip Code:*

**NOTES:**

1. The name of the limited partnership and the date of filing of its certificate of limited partnership must exactly match the records of The Department of State.  This information should be verified on the Department of State's website at www.dos.ny.gov.
2. This form was prepared by the New York State Department of State for filing a certificate of cancellation of the certificate of limited partnership for a domestic limited partnership. It does not contain all optional provisions under the law. You are not required to use this form. You may draft your own form or use forms available at legal stationery stores.
3. The Department of State recommends that legal documents be prepared under the guidance of an attorney.
4. The certificate must be signed by all general partners or in accordance with §121-204(a)(3) of the Revised Limited Partnership Act.
5. This certificate must be accompanied by a fee of $60 made payable to the Department of State.

*(For office use only)*

DOS-1390-f  (Rev. 04/17)

**NEW YORK ALL-PURPOSE ACKNOWLEDGMENT**
REAL PROPERTY LAW §309-a

State of New York

County of _Suffolk_ } ss.

On the __3__ day of __April__ in the year __2018__ before me,
the undersigned personally appeared __Jean Daniel__
*Name of Signer*

(and _____,) personally known to me or
*Name of Additional Signer, if Any*

proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon
behalf of which the individual(s) acted, executed the instrument.

*Signature of Notary Public*
Notary Public — State of New York

Place Seal Below   OR   Complete Lines Below

_Lesley A. Bullis_
*Name of Notary*

_Suffolk_
*Name of County in Which Originally Qualified*

_11/9/19_
*Commission Expiration Date*

LESLEY A BULLIS
Notary Public - State of New York
NO. 01BU6332843
Qualified in Suffolk County
My Commission Expires Nov 9, 201

_____
*Name of County in Which Certificate of Official
Character Filed (if required)*

---
**OPTIONAL**
---

*Completing this information can deter alteration of the document or
fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document: _Certificate of Cancellation of Limited Partnership_

Document Date: _____   Number of Pages: __2__

Signer(s) Other Than Named Above: _____

©2017 National Notary Association



Postal Service
CERTIFIED MAIL RECEIPT
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com

ALBANY, NY 12231

| | | 0246 |
| Postage | $3.45 | $0.00 | 02 |
| Certified Fee | | $0.00 | |
| Return Receipt Fee (Endorsement Required) | | $0.00 | Postmark Here |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 | |
| | | $0.50 | |
| Total Postage & Fees | $ | $3.95 | 04/17/2018 |

Sent To  Dpt. of State, Div. of Corp: State Records &
Street, Apt. No.;  UCC   One Commerce Plaza, 99
or PO Box No.
City, State, ZIP+4  Washington Ave, Albany, NY 12231-0001

PS Form 3800, June 2002                  See Reverse for Instructions

---

UNITED STATES POSTAL SERVICE ®

CUSTOMER'S RECEIPT

SEE BACK OF THIS RECEIPT FOR IMPORTANT CLAIM INFORMATION

NOT NEGOTIABLE

KEEP THIS RECEIPT FOR YOUR RECORDS

Pay to  The Department of State, Division of
Address  Corporation, State Records & U.C.C
One Commerce Plaza, 99 Washington Ave
Albany, New York 12231-0001

| Serial Number | Year, Month, Day | Post Office | Amount | Clerk |
| 25085511810 | 2018-04-17 | 114111 | $60.00 | 21 |

In Re: Dove Transport L.P.'s Cancellation

# NYS Department of State

## Division of Corporations

### Entity Information

The information contained in this database is current through November 12, 2019.

Selected Entity Name: DOVE TRANSPORT SERVICE, L.P.
Selected Entity Status Information

| | |
|---|---|
| Current Entity Name: | DOVE TRANSPORT SERVICE, L.P. |
| DOS ID #: | 3579116 |
| Initial DOS Filing Date: | OCTOBER 11, 2007 |
| County: | SUFFOLK |
| Jurisdiction: | NEW YORK |
| Entity Type: | DOMESTIC LIMITED PARTNERSHIP |
| Current Entity Status: | INACTIVE - Dissolution (May 17, 2018) |

Selected Entity Address Information

**DOS Process (Address to which DOS will mail process if accepted on behalf of the entity)**
DOVE TRANSPORT SERVICE, L.P.
114-74 224TH STREET
QUEENS, NEW YORK, 11411

**Registered Agent**

GEORGE JOSEPH
114-74 224TH STREET
QUEENS, NEW YORK, 11411

**\*Stock Information**

| # of Shares | Type of Stock | $ Value per Share |
|---|---|---|
| | No Information Available | |

\*Stock information is applicable to domestic business corporations.

**Name History**

DEPARTMENT OF STATE
DIVISION OF CORPORATIONS AND STATE RECORDS                    ALBANY, NY 12231-0001

FILING RECEIPT

================================================================
ENTITY NAME: DOVE TRANSPORT SERVICE CORP.

DOCUMENT TYPE: INCORPORATION (DOM. BUSINESS)                    COUNTY: SUFF.

================================================================
FILED:03/26/2019 DURATION:PERPETUAL   CASH#:190326000153 FILM #:190326000144
                                      DOS ID:5520819

    FILER:                                               EXIST DATE
    ------                                               ----------
    JAMES E. MCELHONE, ESQ.                              03/26/2019
    LAW OFFICE OF JAMES E MCELHONE P.C.
    428 ROUTE 25A; P.O. BOX 5595
    MILLER PLACE, NY 11764

    ADDRESS FOR PROCESS:
    --------------------
    THE CORPORATION
    72 GRANADA CIRCLE
    MOUNT SINAI, NY 11766

    REGISTERED AGENT:
    -----------------

    STOCK:          200 NPV

The corporation is required to file a Biennial Statement with the Department
of State every two years pursuant to Business Corporation Law Section 408.
Notification that the biennial statement is due will only be made via email.
Please go to www.email.ebiennial.dos.ny.gov to provide an email address
to receive an email notification when the Biennial Statement is due.

================================================================
SERVICE COMPANY: GERALD WEINBERG, P.C. - 13           SERVICE CODE: 13 *

FEES        150.00                    PAYMENTS        150.00
            --------                                  --------
FILING      125.00                    CASH              0.00
TAX           0.00                    CHECK             0.00
CERT          0.00                    CHARGE            0.00
COPIES        0.00                    DRAWDOWN        150.00
HANDLING     25.00                    OPAL              0.00
                                      REFUND            0.00
================================================================
                                               DOS-1025 (04/2007)



NEW YORK STATE | Office of the
Medicaid Inspector
General

ANDREW M. CUOMO
Governor

DENNIS ROSEN
Medicaid Inspector General

December 10, 2018

Dove Transport Service, LP
3911 211th Street
Bayside, NY 11361

Dove Transport Service, LP
72 Granada Circle
Mount Sinai, NY 11766

Jean Daniel
72 Granada Circle
Mount Sinai, NY 11766

Jean Daniel
3911 211th Street
Bayside, NY 11361

Mohammed Raushan
72 Granada Circle
Mount Sinai, NY 11766

Mohammed Raushan
3911 211th Street
Bayside, NY 11361

## NOTICE OF PROPOSED AGENCY ACTION
## PURSUANT TO 18 NYCRR 515.6 (a)

Dove Transport Service, LP; Provider #03882157; Case #16-F-1959; PACS #17-1541
Jean Daniel; Provider #02201009; Case #16-F-1959; PACS #17-1541
Mohammed Raushan; Non-enrolled provider; Case #16-F-1959; PACS #17-1541

**THE NEW YORK STATE OFFICE OF THE MEDICAID INSPECTOR GENERAL (OMIG) PROPOSES TO EXCLUDE YOU FOR A PERIOD OF THREE (3) YEARS AND TO RECOVER OVERPAYMENTS, JOINTLY AND SEVERALLY, IN THE AMOUNT OF $395,387.59, PLUS INTEREST.**

1.   OMIG is an independent office within the New York State Department of Health (the "Department"). OMIG is responsible for the investigation, detection and prevention of

Medicaid fraud, waste and abuse, including sanctioning providers and recovering overpayments in the Medicaid program.

2. On April 8, 2016, Investigators from the Office of the Medicaid Inspector General ("OMIG") entered Dove Transport Service, LP's ("Dove") Mount Sinai location for the purposes of conducting a Credential Verification Review ("CVR"). OMIG Investigators spoke with Jean Daniel, co-owner of Dove, who confirmed that none of the drivers employed by Dove were properly licensed to operate a taxi service within the town of Brookhaven. He confirmed to investigators that he did not have, nor did he ever apply for, a town of Brookhaven Depot License, as required by Brookhaven Town Code. Daniel also confirmed that none of the vehicles used by Dove were licensed by the town of Brookhaven. As detailed below, the Brookhaven Town Code requires taxi businesses and their drivers/vehicles to be licensed in order to operate therein. OMIG Investigators confirmed with the town of Brookhaven that neither Dove nor their drivers were licensed by the Town. Additionally, the town of Brookhaven confirmed that it was unaware Dove was operating within their jurisdictions prior to the OMIG's notifications.

During the CVR, on April 8, 2016, OMIG Investigators requested trip tickets to support Dove's billings. These trip tickets were not immediately provided on site. On June 1, 2016, OMIG sent Dove a written request for the same trip tickets. **(See Exhibit #1A).** On June 20, 2016, OMIG sent a second written request to Dove for these trip tickets **(See Exhibit #1B)**. To date, OMIG has not received the documents requested.

Dove enrolled as a provider in the Medicaid program on June 19, 2014, with category of service 0603, "taxi." Dove did not start billing the Medicaid program until July 1, 2015. OMIG reviewed claims which Dove submitted to the Medicaid program between the dates of July 1, 2015 through May 13, 2017 ("Review Period"). **See Exhibit #3A**.

Per the Town of Brookhaven, Dove did not obtain proper town licensure until April 24, 2016 **(See Exhibit #2)**. OMIG has determined that Dove was improperly providing taxi services without licensure between June 19, 2014 to April 23, 2016. During this time period Dove submitted a total of 11,676 claims resulting in $262,636.12 in Medicaid payments, which are all being disallowed as a result of OMIG's determination that Dove was operating without licensure **(See Exhibit #3B).**

In addition, all of the claims which Dove submitted to the Medicaid program between July 1, 2016 and May 13, 2017 failed to include the driver's license and vehicle license plate numbers. Effective July 1, 2016, this information was required to be included in the billing information submitted by all taxi providers as established by the December 2015 New York State Medicaid Update. As a result of these omissions, all 6,025 claims submitted between July 1, 2016 and May 13, 2017, totaling $132,751.47 have been disallowed. **(See Exhibit #3C).**

The aggregate number of disallowed claims based on the findings above is 17,700 totaling $395,387.59 in Medicaid payments.

3. OMIG has determined that Dove has committed unacceptable practices under the Medicaid Program as defined in 18 NYCRR 515.2 and has receive Medicaid overpayments as defined

in 18 NYCRR 518.1.

A. OMIG has determined that, in accordance with 18 NYCRR 504.1(d)(1), Jean Daniel (Daniel), as an owner of Dove, had an overt with Dove such that he directly or indirectly controlled the business.

OMIG has also determined that, in accordance with 18 NYCRR 515.3, as an affiliate and owner of Dove, the conduct giving rise to the unacceptable practices alleged herein was accomplished within the course of the duties of Dove, and Daniel knew or should have known of the conduct, or the conduct was effected with Daniel's knowledge and consent.

B. OMIG has determined that, in accordance with 18 NYCRR 504.1(d)(1), Mohammed Raushan ("Raushan"), as an owner of Dove, had an overt relationship with Dove such that he directly or indirectly controlled the business.

OMIG has also determined that, in accordance with 18 NYCRR 515.3, as an affiliate and owner of Dove, the conduct giving rise to the unacceptable practices alleged herein was accomplished within the course of the duties of Dove, and Raushan knew or should have known of the conduct, or the conduct was effected with Mohammed's knowledge and consent.

C. OMIG has further determined that, in accordance with 18 NYCRR 518.3, both Daniel and Raushan furnished or supervised the furnishing of the transportation services provided under the Medicaid program, and Daniel and Mohammed are jointly and severely liable for any overpayments resulting from the furnished services.

4.  As a result of this determination, and in accordance with 18 NYCRR Part 515, OMIG proposes to:

A. exclude Dove Transport Service, L.P., from participation as a provider in the Medicaid program for a period of three (3) years, pursuant to 18 NYCRR 515.3, and until reinstated pursuant to 18 NYCRR 515.10;

B. exclude Jean Daniel from participation as a provider in the Medicaid program for a period of three (3) years, pursuant to 18 NYCRR 515.3, and until reinstated pursuant to 18 NYCRR 515.10;

C. exclude Mohammed Raushan from participation as a provider in the Medicaid program for a period of three (3) years, pursuant to 18 NYCRR 515.3, and until reinstated pursuant to 18 NYCRR 515.10; and

D. recover overpayments in the amount of $395,387.59 plus interest, from Dove, Daniel, and Raushan, jointly and severally, in accordance with 18 NYCRR Part 518.

5.  This determination is based on violations by Dove of the following provisions of Social Services regulations:

A. 18 NYCRR 515.2 (a)(1): An unacceptable practice is conduct by a person which is

contrary to the official rules and regulations of the department.

    i.    18 NYCRR 505.10 (e)(6)(iii): In order to receive payment for services provided to a Medicaid recipient, a vendor must be lawfully authorized to provide transportation services on the date the services are rendered. A vendor of transportation services is lawfully authorized to provide such services if it meets the following standards:

        (iii) taxicab or livery services must comply with all requirements of the local municipality concerning the operation of taxicab or livery service in that municipality and with all requirements of the Department of Motor Vehicles;

        a. Brookhaven Town Code: Article II: Business Owners Requirements §67-6 – License required for business owners.
        It shall be unlawful for any person to engage in a taxicab business in the Town of Brookhaven without first having secured a license from the Commissioner of Public Safety or his designee, hereinafter referred to as the "Commissioner."

OMIG's investigation determined that Dove was operating and dispatching vehicles without the proper licensure or registration required to operate lawfully within the town of Brookhaven when it submitted claims to the Medicaid program. Despite having knowledge of this event affecting its right to payment, Dove continued to submit claims for Medicaid reimbursements without disclosing said event with the intent that a payment be made when not authorized.

B.  18 NYCRR 515.2 (a)(1): An unacceptable practice is conduct by a person which is contrary to the official rules and regulations of the department.

    i.    18 NYCRR 504.3(a): Duties of the Provider: By enrolling the provider agrees: (a) to prepare and to maintain contemporaneous records demonstrating its right to receive payment under the medical assistance program and to keep for a period of six years from the date the care, services or supplies were furnished, all records necessary to disclose the nature and extent of services furnished and all information regarding claims for payment submitted by, or on behalf of, the provider and to furnish such records and information, upon request, to the department, the Secretary of the United States Department of Health and Human Services, the Deputy Attorney General for Medicaid Fraud Control and the New York State Department of Health;

During the course of OMIG's investigation, Dove, through its owners, failed to produce the records necessary to demonstrate its right to receive payment under the Medicaid program when expressly requested by OMIG investigators orally and in writing. To date, Dove has failed to produce any such records.

C.  18 NYCRR 515.2 (b)(3) Failure to Disclose: Having knowledge of any event affecting the right to payment of any person and concealing or failing to disclose the event with the intention that a payment be made when not authorized or in a greater amount than due.

OMIG's investigation found the owners of Dove were aware that Dove and its vehicles lacked the proper licensure and/or registration required to operate lawfully in the town of Brookhaven, when it submitted claims to the Medicaid program.   Despite having knowledge of this event affecting its right to payment, Dove, through its owners, continued to submit claims for Medicaid reimbursements without disclosing said event with the intent that a payment be made when not authorized.

D.   18 NYCRR 515.2 (a)(1): An unacceptable practice is conduct by a person which is contrary to the official rules and regulations of the department.

    i.   18 NYCRR 504.3(a)(i): Duties of the Provider: to comply with the rules, regulations and official directives of the department.

    ii.   New York State Medicaid Update, December 2015 Volume 31, Number 13: Updated Taxi (Category of Service 0603) And Livery (Category of Service 0605) Claims Requirement

       The Department has reached agreement with the Office of the Medicaid Inspector General and the Attorney General's Medicaid Fraud Control Unit to require that claims submitted by taxi/livery providers include both the driver license and vehicle license plate number. The Department agrees that reporting this information will aid in its intent to ensure quality services and program integrity.

       Effective July 1, 2016, claims that do not include the required fields will be denied for edit 00267, "VEHICLE LICENSE PLATE / DRIVER'S LICENSE NUMBER REQUIRED."

OMIG's investigation determined that Dove, through its owners, did not furnish certain information required in claims submitted for Medicaid payment. Specifically, all claims submitted after June 30, 2016 on behalf of Dove failed to include the vehicle license plate and driver's license number associated with the service provided, as required by the Medicaid program.

6.   You may submit written arguments and/or documentation in objection to this determination and proposed action.  Any documentation or written arguments submitted by you objecting to the proposed agency action must be mailed within thirty (30) days of receipt of this Notice. Receipt is presumed to be five (5) days after the date on this notice.

All written arguments and documents must be submitted to the following:

Russell Rizzo
Assistant Medicaid Investigator in Charge
Office of the Medicaid Inspector General
Division of Medicaid Investigations
90 Church St., 14th Floor
New York, New York 10007

7.    After a review of your arguments and documentation, if OMIG determines to sanction and/or seek to recover overpayments from you, OMIG will notify you of the final determination by issuance of a Notice of Agency Action.  If no arguments and/or documentation in objection to the proposed action are received within the time provided, this proposed action will become final by issuance of a Notice of Agency Action.  In conjunction with a Notice of Agency Action, the Provider will be further advised of appeal rights, including the right to request an administrative hearing to review the final determination. Pursuant to 18 NYCRR 519.18, the issues to be addressed at the hearing will be limited to those matters contained in your response to this Notice.

8.    OMIG reserves the right to conduct further reviews of your participation in the Medicaid program, take action where appropriate, and recover monies owed through any legal mechanism.

9.    Any questions pertaining to this action may be directed to Russell Rizzo at (212) 417-5582.

Sincerely,

Daniel V. Coyne
Deputy Medicaid Inspector General
Division of Medicaid Investigations

Exhibits: 1A, 1B, 2, 3A, 3B, and 3C

USPS CERTIFIED MAIL
RETURN RECEIPT REQUESTED
AND USPS 1ST CLASS MAIL

**Town Initiatives**

Posted on: October 11, 2019

## Brookhaven Conducts Cab Crackdown

*Joint investigation with NYS Office of the Medicaid Inspector General results in 52 tickets and up to $26,000 in fines, investigation into other cab companies continues*



**Farmingville, NY -** Brookhaven Supervisor Ed Romaine today announced that an investigation into taxi companies operating within the Town has resulted in one cab company receiving 52 appearance tickets which could result in fines in excess of $26,000 and facing further actions by the NYS Medicaid Inspector General. The taxicab companies, which were providing transportation services for Medicaid patients, were charged with violation of Brookhaven Town Code and face further violations of New York State regulations.

The joint investigation, which is being conducted by Town of Brookhaven Law and Public Safety investigators with Supervising Investigator Christopher Bedell of the NYS Office of the Medicaid Inspector General, is continuing to look into other taxi companies operating within the Town.

"Brookhaven Town and New York State take Medicaid violations very seriously and we will continue to pursue any company that operates without a license to the fullest extent of the law," said Supervisor Ed Romaine. "I have asked the Town Attorney to proceed with the investigation until every company is in compliance."

*Exhibit "6"*

### Tools

RSS

Notify Me®

View Archived

### Categories

- All Categories
- Animal Shelter
- Economic Development
- Adoptable Cats
- Adoptable Dogs
- Featured Town Initiatives
- Veteran Services
- Education
- Environmental
- Recycling, Garbage Collection
- Highway and Traffic Safety
- Notifications and Advisories
- Parks and Recreation
- Quality of Life
- Senior Citizens
- Special Events and Honors
- Town Initiatives
- Women's Services
- Youth Bureau
- Featured Parks and Recreation Initiatives

In September, the Brookhaven Town Attorney's office opened an investigation of unlicensed taxicab companies operating in the Town of Brookhaven, with at least one allegedly conducting Medicaid pick-ups and drop-offs without proper licensing from the Town of Brookhaven. The Town's Department of Public Safety began a review of taxicab companies that have not completed the licensing to conduct business in Brookhaven Town. Among the numerous companies that were found to be in violation of Town Code § 67-6 and§ 67-3, Hometown Taxi, located in the Town of Southampton, was also found to be conducting Medicaid transportation pick-ups and drop-offs in Brookhaven Town. Under Brookhaven Town Code§ 67-6, a taxicab business within the Town is required to secure a license from the Commissioner of Public Safety or the designee of the same.

The Town has been informed by the NYS Office of the Medicaid Inspector General that several other taxicab companies have been providing transportation services for medical care involving Medicaid recipients without the proper licensing under New York State code 18 NYCRR §500. According to the code, "To participate in the Medicaid Program, a taxi/livery provider must meet all applicable State, County, and Municipal requirements for legal operation. "Transportation for Medical Care and Services Providers must comply with 18 NY CRR section 505.10 in its entirety. As written 505.10 (e) (6) (iii) states "A vendor of transportation services is lawfully authorized to provide such services if it meets the following standards: (iii) taxicab or livery services must comply with all requirements of the local municipality concerning the operation of taxicab or livery service in that municipality and with all requirements of the Department of Motor Vehicles."

**Division of Public Information * Office of the Supervisor**

One Independence Hill • Farmingville • NY 11738 • Phone 631-451-6595

⇐ **Previous**
Brookhaven Saves Taxpayers $2.13 Million Thanks to Town's Sound Fiscal Practices

**Next** ⇒
Supervisor Romaine Presents the 2020 Tentative Operating Budget to the Town Board

## Other News in Town Initiatives

### Supervisor Romaine and LI Housing Partnership Announce Covid-19 Rental and Mortgage Arrears Program

Posted on: February 17, 2021



### Wall Street Rating Agencies Moody's, S&P Give Brookhaven Town Top Rating of Triple-A

Posted on: October 19, 2020



### Supervisor Romaine Submits 2021 Tentative Budget

Posted on: October 1, 2020

Enable Google Translate

• Featured Recycling Initiatives
• Disability Services
• Notice of Public Hearings
• District 2

### 2020 Down Payment Assistance Program for First-Time Home Buyers
Posted on: August 31, 2020



### Brookhaven Offers Parking Ticket Amnesty Program
Posted on: May 12, 2020



### Councilmen Foley and LaValle Join in Clean Up Efforts at Defaced Lake Ronkonkoma Mural
Posted on: February 21, 2020



### Town Partners with Suffolk County Department of Health for Inaugural Healing Communities Study
Posted on: January 24, 2020



### Brookhaven's Tenth Annual "Polar Plunge" Raises More than $155,000 to Benefit Special Olympics
Posted on: November 26, 2019



### Brookhaven to Install 2.4 MW Solar Car Canopy at Farmingville Amphitheater
Posted on: October 29, 2019



### Brookhaven Saves Taxpayers $2.13 Million Thanks to Town's Sound Fiscal Practices
Posted on: October 24, 2019



### Supervisor Romaine Presents the 2020 Tentative Operating Budget to the Town Board
Posted on: September 30, 2019



### Health and Wellness Fair to be Held on Saturday, September 21 at Brookhaven Town Hall
Posted on: September 20, 2019



### Receiver of Taxes Louis J. Marcoccia Unveils New, Two-Page Statement of Taxes Receipt
Posted on: August 14, 2019



### Brookhaven Opens "Municipal Market" on Town Website
Posted on: April 8, 2019

### Supervisor Romaine Presents his 2019 State of the Town Address
Posted on: March 11, 2019

Enable Google Translate

### Town of Brookhaven and LI Farm Bureau Celebrate Grand Opening of Weekly Farmers Market at Town Hall

Posted on: June 8, 2018



### Brookhaven Highway Department Awarded $87,500 Grant for Strategy for Climate Smart South Shore

Posted on: January 30, 2018



### Town's Holtsville and Manorville Renewable Energy Generating Facilities Begin Producing Solar Power

Posted on: January 19, 2018



### Town's "Brew to Moo" and "Coffee Grounds for Compost" Programs Off to a Great Start

Posted on: November 28, 2017

### Town Establishes Mutual Respect and Inclusion in the Workplace Training for All Employees

Posted on: October 26, 2017

### Supervisor Romaine and Councilwoman Cartright Announce Completion of Area Visioning Report

Posted on: October 25, 2017



### Brookhaven's Calabro Airport Voted Long Island's Preferred Location for Amazon HQ2

Posted on: October 12, 2017

### Solar Panel Installation Moving Ahead at the Manorville Compost Facility

Posted on: October 10, 2017



### Brookhaven Announces Bid for Amazon Headquarters at Calabro Airport in Long Island

Posted on: October 3, 2017



Brookhaven Announces Bid for Amazon ...rs ...b...

### Town Launches Coffee Grounds for Compost Recycling Program

Posted on: September 26, 2017



Airport in Long Island

### Supervisor Romaine Announces New Enhancements in the Town's Building Division

Posted on: August 22, 2017

## Superintendent Losquadro Announces New, Interactive Traffic Safety Section of Town Website

Posted on: August 17, 2017

---

## Supervisor Romaine announces Port Jefferson Brewing Company articipation in "Brew to Moo"

Posted on: August 17, 2017



---

## Supervisor Romaine, Councilman Foley and Councilman Panico Launch the Town's "Brew to Moo" Program

Posted on: August 2, 2017



---

## Town Awarded $25,000 State Grant to Help Crack Down on Illegal Junk Yards

Posted on: July 31, 2017

---

## Councilwoman Bonner Announces Hoops for Hope Barbecue and Basketball Tournament Fundraiser

Posted on: July 12, 2017



---

## Supervisor Romaine and Councilman Panico Launch Employee Food Scrap Composting Program at Town Hall

Posted on: June 13, 2017



---

## Supervisor Romaine Announces Extension of Town's Parking Violations Amnesty Program to June 15

Posted on: June 5, 2017

---

## Town Joins Forces with "End Drowning Now" for Water Safety Campaign

Posted on: May 22, 2017



---

## Town Clerk Launches Online Death Certificate Request and Payment Service for Funeral Directors

Posted on: May 10, 2017

---

## Newly Established Zoning Code Aims to Bolster and Protect Brookhaven's Golf Courses

Posted on: May 8, 2017



---

## PSEG Long Island Presents $77,800 Rebate Check to Town for Energy Efficient Lighting Upgrades

Posted on: April 28, 2017



---

## Councilwoman Bonner Celebrates Shoreham Solar Commons Groundbreaking

Enable Google Translate

Posted on: April 25, 2017

### Councilwoman Bonner to Host LI Green Homes "A Homeowner's Guide to Energy Efficiency" Event

Posted on: April 21, 2017

### Supervisor Romaine Announces First Fully Electric Car Added to Towns Vehicle Fleet

Posted on: January 20, 2017



### Councilman Panico Announces New Energy Efficient Lighting Installed at Brookhaven Aquatic Center

Posted on: January 11, 2017



# Brookhaven Town Hall

1 Independence Hill
Farmingville, NY 11738
Phone: 631-451-TOWN (8696)
Directions to Town Hall
Contact Us

# Comments/Concerns

One call does it all: 451-TOWN

Friendly, Courteous, Professional Service, available 5 days a week to help answer your questions.
*Learn More...*

# Popular Links

Commercial Property Registration

Channel 18 On Demand

Channel 18 Cable Schedule

Report a Vacant Home

# Site Links

Home

Site Map

Town Directory

Accessibility

Nondiscrimination Policy

Enable Google Translate

January 9, 2019

From: Jean R. Daniel, Dove Transport
Service, LP, at 72 Granada
Circle Mount Siani, NY 11766

To:   Russell Rizzo, Assistant Medicaid
Investigator in Charge Office of the
Medicaid Inspector General Division
of Medicaid Investigations, 90
Church St., 14th Floor, NY, NY 10007

Re:   A Response to the Notice of Proposed Agency
Action Pursuant to 18 NYCRR 515.6(a) dated
December 10, 2018

Subj.: **NOTICE OF OUR OBJECTION TO THE PROPOSED
AGENCY ACTION PURSUANT TO 18 NYCRR 515.6(a)**

Via:   Certified Mail No.: 7017 0530 0000 3652 8092 RR

Dear   Russell Rizzo:

We are in receipt of your letter dated December 10, 2018; and we are responding to your letter in the
following manner:

1- That on April 8, 2016 we did not speak to **any** investigators from the Medicaid Inspector
   General's Office.
2- That we are certain that no Investigators from the Office of Medicaid Inspector General entered
   the Office of Dove Transport Service, LP's and spoke to Jean R. Daniel, co-owner of Dove
   Transport, LP, located in Mount Sinai, NY for the purposes of conducting a Credential
   Verification Review ("CVR") on April 8, 2016.
3- That at no time did Jean R. Daniel confirmed that none of the drivers employed by Dove were
   properly License to operate a taxi service within the town of Brookhaven.
4- That at no time did Jean R. Daniel confirmed that he did not have, nor did he ever apply for, a
   town of Brookhaven Depot License, as required by Brookhaven Town Code.
5- That at no time did Jean R. Daniel confirmed that none of the vehicles used by Dove were
   licensed by the town of Brookhaven.
6- We lack sufficient information and belief to comment about what the Town of Brookhaven
   discussed with this Office much less agree to what this Office has confirmed with the Town of
   Brookhaven. We also lack sufficient information to decide whether such a confirmation is valid.
7- **OMIG fails to produce the names of these investigators that claimed to have spoken to Jean R.**
   **Daniel on April 8, 2016**
8- **OMIG and their investigators fail to produce an audio recording to show or to demonstrate**
   **that it spoke to Jean R. Daniel on April 8, 2016.**
9- **OMIG produced a CD and documents to demonstrate its claim but failed to produce a**
   **transcript of what it claimed to have happened on April 8, 2016.**
10- OMIG failed to provide a description of the person. We would like to know who pretended to
    be Jean R. Daniel. In essence, if this were a civil action, we would require a traverse hearing.

11- OMG is overstepping its boundary, assuming that the Town of Brookhaven informed them that Dove Transport Service, LP was operating inappropriately. Such a matter is Local and does not involve the State of New York. And even if the State of New York supersedes the Town of Brookhaven, it is the Town of Brookhaven that would decide to pursue this matter perhaps in conjunction with the State of New York.

12- Dove Transport did enroll in the Medicaid program on June 14, 2014 **but not as a taxi, with the category of service 0603. Dove enrolled and OMIG processed and funded this partnership as a livery service not as a taxi. The entire matter is a misunderstanding. OMIG can verify this by looking at its own payment history with Dove Transport. See OMIG's "Exhibit #3A". We inadvertently sought for and obtained a taxi license in 2016. But we were not obligated to do so.**

13- And that on or about July 1, 2015 Dove Transport Service, LP did began billing the Medicaid program. And that the matter regarding this **"overpayment"** issue began as a result of this Office's review of claims submitted by Dove Transport Service, LP beginning from July 1, 2015 through May 13, 2017. See OMIG's Exhibit #3A.

14- And that on or about May 30, 2017 OMIG sent a letter via certified mail numbered 7015 1520 0001 0830 1402, which letter we did receive, unlike some of this Office's self-serving letters. Such a letter dated May 30, 2017 informed us of OMIG's intention to withhold 25% percent for all current and future claims under the Medicaid Program due to its review of Dove Transport's participation in the Medicaid program; in essence, this Office preliminarily determined that we were ('supposedly') involved in unacceptable practices which led to significant overpayments.

15- This same letter furthermore stated that this withholding is **temporary** and would not continue for more than 90 days, **unless a written Draft Audit Report or Notice of Proposed Agency Action is issued, etc.** It further states that we would be notified in writing of the decision relating to the withholding of payments. See Dove Transport Service, LP's **Exhibit A.** An OMIG letter dated May 30, 2017. And that it was not until now, December 10, 2018 did this Office send its Notice of Proposed Agency Action, where more than 18 months have elapsed since this Office originally mailed its Notice to Withhold funds have been sent to us.

16- We received no letter from this Office requesting to extend the matter; we received no other communication from this Office requesting any documents or informing us of what's going on.

17- **OMIG fails to provide a link between, a clear collaboration with, the Town of Brookhaven, that Dove Transport, LP illegally operated its business within such a town. A mere letter from the Town of Brookhaven showing when Dove Transport Service, LP obtained a taxi license is, in and of itself, insufficient. Dove operated as a livery and its billing agent billed OMIG as such.**

18- OMIG fails to acknowledge that, assuming that this were the case, 'that Dove did not obtain a proper town license', would not be a violation any State or Federal laws. This would, at best, constitute an act as described in 18 NYCRR 515.2 (b)(6), which is an "Unacceptable recordkeeping. This is obviously something not defrauding or abusing the Medicaid program.

19- OMIG fails to acknowledge that the matter had been resolved between Dove Transport and the Town of Brookhaven and no other or additional action was taken by the Town.

20- OMIG has only requested repayments from Dove Transport, LP but fails to request or to begin this overpayment procedure against the person or persons receiving payment for the claims submitted. This is contrary to 18 CRR-NY 518.3(a) requiring the repayment from not just the person submitting the claim but the person receiving the payment and/or service as well. OMIG would have to reserve all parties and inform them of this procedure. Otherwise, we would have every reason to believe that we are being discriminated upon.

21- OMIG has commenced such an overpayment procedure against us while it had already adjusted and withheld Dove Transport's payments beginning from July 15, 2015 through the

middle of 2017. See Dove Transport's "Exhibit A" previously submitted above. Such an act is contrary to 18 CRR-NY 518.5(a)(b).

22- OMIG fails to realize that it accepted Dove Transport Service, LP's application beginning on June 19, 2014. At that time, it was aware of Dove Transport's proposed activities and OMIG did not object to or demanded additional documents prior to such an approval; and therefore it has forfeited its right to question Dove's legal status. See 18CRR-NY 504.4. OMIG had a maximum of 120 days as a maximum to either reject or accept Dove Transport's application; and it has decided to accept Dove's application without forcing Dove to provide proof of any license(s).

23- OMIG fails to acknowledge that the only wrongdoing by Dove Transport Service, LP is that it has not yet furnished the records to OMIG in a timely manner; and as such, Dove Transport Service, LP is required to pay a statutory authorized fine or penalty. See 18 CRR-NY 504.8.

24- To comply with OMIG's request that is contained within paragraph 6 number 2, it is now attaching a list of driver's which contains Dove Transport Service, LP's driver's licenses numbers, the registrations of the cars that they drove, etc. We will require more time to get the remaining missing driver's licenses. See "Dove Transport Service, LP's Exhibit C."A copy of a Driver's Log.

25- OMIG, upon accepting Dove Transport Service, LP into the Medicaid program, should have issued Dove with specific instructions concerning its participation into this program, which should have included what Dove was required to do or to obtain in order to fully render the services that Dove and its employees were to provide, but OMIG failed to do so. OMIG should not have assumed that Dove Transport or any of its owners should have known what to do in accordance with 18 CRR-NY 504.6. OMIG is therefore jointly liable for any overpayment that may have occurred as OMIG has stated in paragraph 3(a)(b) and (c) of its December 10, 2018-Letter.

26- OMIG cannot exclude Dove Transport Service, LP from participating as a provider in the Medicaid program for any period as stated within paragraph 4(a) of OMIG's letter. The partnership has been cancelled and no longer exists as of May of 2018.

27- Jean R. Daniel cannot be excluded from participating as a provider in the Medicaid program for a period of three (3) years, pursuant to 18 NYCRR 515.3 because he has currently moved on to a different field and has no intention of ever rejoining the Medicaid program.

28- OMIG must submit a complete claim, in its entirety, which would include the recipients or the person or persons (companies) (medical facilities), etc. that have received the services and the employees that have received the payments for the services they have rendered. Dove Transport Service, LP did not profit from any payments that have been made by this Office, except that it had paid the drivers a set amount per hour for the service that they have rendered. This current action lacks the necessary parties in accordance with 18 NY CRR-518(3)(a).

29- Please note that Dove Transport Service, LP, although it sought a taxi cab license, intended to, and this Office is aware of the fact that it, in fact, had been operated as a livery provider. As such, Dove Transport Service, LP was operating its business legally. This partnership cannot request the recipients to reimburse them for taking them to and fro just as this Office cannot single out this partnership and request that it repays this Office without including the drivers and the person or persons (companies), etc. that have received the services as part of this procedure.

30- And lastly, due to the fact that this partnership no longer exists, we will need more time to comply with the six (6) year rule in providing the necessary records needed to justify what was actually billed by us. We may need at least sixty (60) days. An in the event that the former employees refuse to cooperate with us, we will notify this Office at once.

Sincerely yours,

Mr. Jean R. Daniel, Co-owner of
   Dove Transport Service, LP
   72 Granada Circle
   Mount Sinai, NY 11766

18 NYCRR 518.7(d)(1)

NEW YORK STATE | Office of the
Medicaid Inspector
General

ANDREW M. CUOMO
Governor

DENNIS ROSEN
Medicaid Inspector General

May 30, 2017

CERTIFIED MAIL # 7015 1520 0001 0830 1402
Return Receipt Requested

DOVE TRANSPORT SERVICE LP
72 GRANADA CIR.
MOUNT SINAI, NY 11766-2811

RE:   Provider ID # 03882157
      Project # 17-1541

ATTENTION PROVIDER:

EFFECTIVE IMMEDIATELY, THE NEW YORK STATE DEPARTMENT OF HEALTH IS
WITHHOLDING A PERCENTAGE OF YOUR PAYMENTS FOR ALL CURRENT AND
FUTURE CLAIMS UNDER THE MEDICAID PROGRAM

1.  Overpayments may be recovered by withholding all or part of a provider's and
    affiliate's payments otherwise payable at the option of the NYS Department of Health
    (Department).

2.  The Office of the Medicaid Inspector General (OMIG) was established by Article 1,
    Title III of the Public Health Law as an independent office within the Department.

3.  The withholding will be twenty-five (25%) from each of your payments for services and
    supplies.  In addition to the withholding of payment from current and future claims, the
    Department reserves the right to withhold any retroactive, lump-sum payments
    otherwise due to you.

4.  This action is taken pursuant to the statutory authority to administer the Medicaid
    Program (Public Health Law, Article 1, Title 3; Social Services Law, Articles 1 and 11)
    and applicable regulations (18 NYCRR 504.8(d) and 518.7) authorizing the
    withholding of payments under the program, in whole or in part, when the OMIG has
    determined that a provider has abused the program or has committed an
    unacceptable practice.

5.  A review by the OMIG staff of your Medicaid participation has resulted in preliminary
    findings of unacceptable practices and/or significant overpayments.

Exhibit 18

392

18 NYCRR 518.7(d)(1)

6.  This withhold is temporary and will not continue for more than 90 days unless a written Draft Audit Report or Notice of Proposed Agency Action (NOPAA) is issued. Issuance of the Draft Audit Report or NOPAA may extend the withholding until an amount reasonably calculated to satisfy the overpayment is withheld, pending a final determination on the matter.

7.  A provider or its affiliate that is the subject of the withholding is not entitled to an administrative hearing in relation to the withholding of payments, but may, within thirty (30) days of the date of this notice, submit written arguments and documentation that the withhold should be removed.  Written arguments and documentation in relation to the withholding of payments should be submitted to:

>                   Office of the Medicaid Inspector General
>                             Office of Counsel
>                           800 North Pearl Street
>                             Albany, NY  12204
>                          ATTN:  Withhold Appeal

8.  You will be notified in writing of the decision in relation to the withholding of payments.

9.  If you need more information or have any questions concerning this action, you may correspondence to OMIG's Bureau of Collections Management at the above address, or Russell Rizzo (212)417-5582.

Very truly yours,

Gabrielle R. Ares
Deputy Medicaid Inspector General
for Administration

GRA: pf



| | Office of the Medicaid Inspector General |
|---|---|

ANDREW M. CUOMO
Governor

DENNIS ROSEN
Medicaid Inspector General

January 17, 2020

Dove Transport Service, LP
3911 211th Street
Bayside, NY 11361

Dove Transport Service, LP
72 Granada Circle
Mount Sinai, NY 11766

Jean Daniel
3911 211th Street
Bayside, NY 11361

Jean Daniel
72 Granada Circle
Mount Sinai, NY 11766

Mohammed Raushan
3911 211th Street
Bayside, NY 11361

Mohammed Raushan
72 Granada Circle
Mount Sinai, NY 11766

## NOTICE OF AGENCY ACTION
## PURSUANT TO 18 NYCRR 515.6 (b)

Dove Transport Service, LP; Provider #03882157; Case #16-F-1959; PACS #17-1541
Jean Daniel; Provider #02201009; Case #16-F-1959; PACS #17-1541
Mohammed Rausman; Non-enrolled provider; Case #16-F-1959; PACS #17-1541

**THE NEW YORK STATE OFFICE OF THE MEDICAID INSPECTOR GENERAL (OMIG) HAS DETERMINED TO EXCLUDE YOU FOR A PERIOD OF THREE (3) YEARS AND TO RECOVER OVERPAYMENTS, JOINTLY AND SEVERALLY, IN THE AMOUNT OF $395,387.59, PLUS INTEREST.**

1. OMIG is an independent office within the New York State Department of Health (the "Department"). OMIG is responsible for the investigation, detection and prevention of Medicaid fraud, waste and abuse, including sanctioning providers and recovering overpayments in the Medicaid program.

2. On December 10, 2018, based on the investigation as detailed below, OMIG issued a Notice of Proposed Agency Action ("NOPAA") seeking exclusion and restitution in amount of $395,387.59. On January 16, 2019, OMIG received a response to this NOPAA. OMIG has reviewed your response and determined there should be no changes to the findings as proposed in the NOPAA.


Exhibit

3.  On April 8, 2016, Investigators from the Office of the Medicaid Inspector General ("OMIG") entered Dove Transport Service, LP's ("Dove") Mount Sinai location for the purpose of conducting a Credential Verification Review ("CVR").  OMIG Investigators spoke with Jean Daniel, co-owner of Dove, who confirmed that none of the drivers employed by Dove were properly licensed to operate a taxi service within the town of Brookhaven.  He confirmed to investigators that he did not have, nor did he ever apply for, a town of Brookhaven Depot License, as required by Brookhaven Town Code. Daniel also confirmed that none of the vehicles used by Dove were licensed by the town of Brookhaven.  As detailed below, the Brookhaven Town Code requires taxi businesses and their drivers/vehicles to be licensed in order to operate therein.  OMIG Investigators confirmed with the town of Brookhaven that neither Dove nor their drivers were licensed by the Town.  Additionally, the town of Brookhaven confirmed that it was unaware Dove was operating within their jurisdictions prior to the OMIG's notification.

    During the CVR, on April 8, 2016, OMIG Investigators requested trip tickets to support Dove's billings. These trip tickets were not immediately provided on site.  On June 1, 2016, OMIG sent Dove a written request for the same trip tickets. **(See Exhibit #1A)**.  On June 20, 2016, OMIG sent a second written request to Dove for these trip tickets **(See Exhibit #1B)**.  To date, OMIG has not received the documents requested.

    Dove enrolled as a provider in the Medicaid program on June 19, 2014, with category of service 0603, "taxi."  Dove did not start billing the Medicaid program until July 1, 2015.  OMIG reviewed claims which Dove submitted to the Medicaid program between the dates of July 1, 2015 through May 13, 2017 ("Review Period") **(See Exhibit #3A)**.

    Per the Town of Brookhaven, Dove did not obtain proper town licensure until April 24, 2016 **(See Exhibit #2)**.  OMIG has determined that Dove was improperly providing taxi services without licensure between June 19, 2014 to April 23, 2016.  During this time period Dove submitted a total of 11,676 claims resulting in $262,636.12 in Medicaid payments, which are all being disallowed as a result of OMIG's determination that Dove was operating without licensure **(See Exhibit #3B)**.

    In addition, all of the claims which Dove submitted to the Medicaid program between July 1, 2016 and May 13, 2017 failed to include the driver's license and vehicle license plate numbers.  Effective July 1, 2016, this information was required to be included in the billing information submitted by all taxi providers as established by the December 2015 New York State Medicaid Update.  As a result of these omissions, all 6,025 claims submitted between July 1, 2016 and May 13, 2017, totaling $132,751.47 have been disallowed.  **(See Exhibit #3C)**.

    The aggregate number of disallowed claims based on the findings above is 17,701 totaling $395,387.59 in Medicaid payments.

4.  OMIG has determined that Dove has committed unacceptable practices under the Medicaid Program as defined in 18 NYCRR 515.2 and has received Medicaid overpayments as defined in 18 NYCRR 518.1.

    A. OMIG has determined that, in accordance with 18 NYCRR 504.1(d)(1), Jean Daniel (Daniel), as an owner of Dove, had an overt relationship with Dove such that he directly or indirectly controlled the business.

    OMIG has also determined that, in accordance with 18 NYCRR 515.3, as an affiliate and owner of Dove, the conduct giving rise to the unacceptable practices alleged herein was accomplished within the course of the duties of Dove, and Daniel knew or should have known of the conduct, or the conduct was effected with Daniel's knowledge and consent.

    B. OMIG has determined that, in accordance with 18 NYCRR 504.1(d)(1), Mohammed Rausman ("Rausman"), as an owner of Dove, had an overt relationship with Dove such that he directly or indirectly controlled the business.

OMIG has also determined that, in accordance with 18 NYCRR 515.3, as an affiliate and owner of Dove, the conduct giving rise to the unacceptable practices alleged herein was accomplished within the course of the duties of Dove, and Rausman knew or should have known of the conduct, or the conduct was effected with Rausman's knowledge and consent.

C.   OMIG has further determined that, in accordance with 18 NYCRR 518.3, both Daniel and Rausman furnished or supervised the furnishing of the transportation services provided under the Medicaid program, and Daniel and Rausman are jointly and severely liable for any overpayments resulting from the furnished services.

5.   As a result of this determination, and in accordance with 18 NYCRR Parts 515 and 518, OMIG will take the following actions:

A.   exclude Dove Transport Service, L.P., from participation as a provider in the Medicaid program for a period of three (3) years, pursuant to 18 NYCRR 515.3, and until reinstated pursuant to 18 NYCRR 515.10;

B.   exclude Jean Daniel from participation as a provider in the Medicaid program for a period of three (3) years, pursuant to 18 NYCRR 515.3, and until reinstated pursuant to 18 NYCRR 515.10;

C.   exclude Mohammed Rausman from participation as a provider in the Medicaid program for a period of three (3) years, pursuant to 18 NYCRR 515.3, and until reinstated pursuant to 18 NYCRR 515.10; and

D.   recover overpayments in the amount of $395,387.59 plus interest, from Dove, Daniel, and Rausman, jointly and severally, in accordance with 18 NYCRR Part 518.

6.   This determination is based on violations by Dove of the following provisions of Social Services regulations:

A.   18 NYCRR 515.2 (a)(1): An unacceptable practice is conduct by a person which is contrary to the official rules and regulations of the department.

    i.   18 NYCRR 505.10 (e)(6)(iii): In order to receive payment for services provided to a Medicaid recipient, a vendor must be lawfully authorized to provide transportation services on the date the services are rendered.  A vendor of transportation services is lawfully authorized to provide such services if it meets the following standards:

    ii.

        (iii) taxicab or livery services must comply with all requirements of the local municipality concerning the operation of taxicab or livery service in that municipality and with all requirements of the Department of Motor Vehicles;

        a. Brookhaven Town Code: Article II: Business Owners Requirements §67-6 – License required for business owners.
It shall be unlawful for any person to engage in a taxicab business in the Town of Brookhaven without first having secured a license from the Commissioner of Public Safety or his designee, hereinafter referred to as the "Commissioner."

OMIG's investigation determined that Dove was operating and dispatching vehicles without the proper licensure or registration required to operate lawfully within the town of Brookhaven when it submitted claims to the Medicaid program.  Despite having knowledge of this event affecting

its right to payment, Dove continued to submit claims for Medicaid reimbursements without disclosing said event with the intent that a payment be made when not authorized.

B. 18 NYCRR 515.2 (a)(1): An unacceptable practice is conduct by a person which is contrary to the official rules and regulations of the department.

    i.    18 NYCRR 504.3(a):  Duties of the Provider: By enrolling the provider agrees:  (a) to prepare and to maintain contemporaneous records demonstrating its right to receive payment under the medical assistance program and to keep for a period of six years from the date the care, services or supplies were furnished, all records necessary to disclose the nature and extent of services furnished and all information regarding claims for payment submitted by, or on behalf of, the provider and to furnish such records and information, upon request, to the department, the Secretary of the United States Department of Health and Human Services, the Deputy Attorney General for Medicaid Fraud Control and the New York State Department of Health;

During the course of OMIG's investigation, Dove, through its owners, failed to produce the records necessary to demonstrate its right to receive payment under the Medicaid program when expressly requested by OMIG investigators orally and in writing.  To date, Dove has failed to produce any such records.

C. 18 NYCRR 515.2 (b)(3) Failure to Disclose: Having knowledge of any event affecting the right to payment of any person and concealing or failing to disclose the event with the intention that a payment be made when not authorized or in a greater amount than due.

OMIG's investigation found the owners of Dove were aware that Dove and its vehicles lacked the proper licensure and/or registration required to operate lawfully in the town of Brookhaven, when it submitted claims to the Medicaid program.  Despite having knowledge of this event affecting its right to payment, Dove, through its owners, continued to submit claims for Medicaid reimbursements without disclosing said event with the intent that a payment be made when not authorized.

D. 18 NYCRR 515.2 (a)(1): An unacceptable practice is conduct by a person which is contrary to the official rules and regulations of the department.

    i.    18 NYCRR 504.3(a)(i): Duties of the Provider: to comply with the rules, regulations and official directives of the department.

    ii.    New York State Medicaid Update, December 2015 Volume 31, Number 13:
Updated Taxi (Category of Service 0603) And Livery (Category of Service 0605) Claims Requirement

The Department has reached agreement with the Office of the Medicaid Inspector General and the Attorney General's Medicaid Fraud Control Unit to require that claims submitted by taxi/livery providers include both the driver license and vehicle license plate number. The Department agrees that reporting this information will aid in its intent to ensure quality services and program integrity.

Effective July 1, 2016, claims that do not include the required fields will be denied for edit 00267, "VEHICLE LICENSE PLATE / DRIVER'S LICENSE NUMBER REQUIRED."

OMIG's investigation determined that Dove, through its owners, did not furnish certain information required in claims submitted for Medicaid payment. Specifically, all claims submitted after June 30, 2016 on behalf of Dove failed to include the vehicle license plate and driver's license number associated with the service provided, as required by the Medicaid program.

7. The effective date of this exclusion shall be twenty (20) days from the date of this Notice.

8. Pursuant to 18 NYCRR 515.5, the sanction of exclusion means that no payments will be made to or on behalf of any person for the medical care, services or supplies furnished by or under the supervision of the person during the period of exclusion. A person excluded from participation in the Medicaid program cannot be involved in any activity relating to furnishing medical care, services or supplies to Medicaid recipients for which claims are submitted to the Medicaid program, or relating to claiming or receiving payment from the Medicaid program for medical care, services or supplies.

9. Pursuant to 18 NYCRR 515.10 a person sanctioned under this Part may request reinstatement, or removal of any condition or limitation on participation in the medical assistance program, at any time after the date or time period specified in the notice of agency action, or upon the occurrence of an event specified in the notice, in this case after a period of three (3) years following the effective date of this notice. The requirements and procedures for reinstatement are contained in 18 NYCRR 515.10 and are attached hereto for your reference.

10. Pursuant to 18 NYCRR 515.9, any overpayments identified pursuant to any audit or investigation under this Part may be recovered in conjunction with a proceeding under this Part and in accordance with Parts 518 and 520 of Title 18.

11. In accordance with 18 NYCRR Part 518 which regulates the collection of overpayments, your repayment options are described below.  If you decide to pay the overpayment, one of the following repayment options must be selected within 20 days from the date of this letter:

OPTION #1: Make full payment by check or money order within 20 days of the date of the final report.  The check should be made payable to the New York State Department of Health and be sent with the attached Remittance Advice to:

Ms. Deborah Martins
New York State Department of Health
Medicaid Financial Management
GNARESP Corning Tower, Room 2739
**File # 17-1541**
Albany, New York 12237-0048

OPTION #2: Enter into a repayment agreement with the Office of the Medicaid Inspector General.  If your repayment terms exceed 90 days from the date of the final report, recoveries of amounts due are subject to interest charges at the prime rate plus 2%.  If the process of establishing the repayment agreement exceeds 20 days from the date of the final report, OMIG will impose a 50% withhold after 20 days until the agreement is established.  OMIG will provide notice to you no later than 5 days after the withholding of any funds.

OMIG's acceptance of the repayment agreement is based on your repaying the Medicaid overpayment as agreed.  OMIG will adjust the rate of recovery, or require payment in full, if your unpaid balance is not being repaid as agreed. In addition, if you receive an adjustment in your favor while you owe funds to the State, such adjustment will be applied against any amount owed. If you wish to enter into a repayment agreement, please contact the Bureau of Collections Management within 20 days at the following:

Bureau of Collections Management
New York State Office of the Medicaid Inspector General
800 North Pearl Street
Albany, New York 12204
Phone #: (518) 474-5878
Fax #: (518) 408-0593

Should you fail to select a payment option above, OMIG, in its discretion, may use any remedy allowed by law to collect the amount due, plus interest. Pursuant to the State Finance Law § 18(5), a collection fee may be added to the amount owed. OMIG's remedies may include, without limitation, filing this Notice as the final administrative determination for purposes of obtaining a judgment lien pursuant to § 145-a of the New York State Social Services Law; and withholding Medicaid payments otherwise payable to the provider or its affiliates pursuant to 18 NYCRR 518.6.

12. You have the right to challenge this action and determination by requesting an administrative hearing within sixty (60) days of the date of this notice. In accordance with 18 NYCRR 519.18(a), "The issues and documentation considered at the hearing are limited to issues directly relating to the final determination. An appellant may not raise issues regarding the methodology used to determine any rate of payment or fee, nor raise any new matter not considered by the department upon submission of objections to a draft audit or notice of proposed agency action."

If you wish to request a hearing, the request must be submitted in writing within sixty (60) days of the date of this notice to:

General Counsel
New York State Office of the Medicaid Inspector General
Office of Counsel
800 North Pearl Street
Albany, New York 12204

Questions regarding the request for a hearing should be directed to Office of Counsel, at (518) 408-5845.

If a hearing is held, you may have a person represent you or you may represent yourself. If you choose to be represented by someone other than an attorney, you must supply along with your hearing request a signed authorization permitting that person to represent you at the hearing; you may call witnesses and present documentary evidence on your behalf.

For a full listing of hearing rights please see 18 NYCRR Part 519.

13. OMIG reserves the right to conduct further reviews of your participation in the Medicaid program, take other administrative or legal action where appropriate and recover monies owed through any other lawful means.

Sincerely,

Stephanie E. Paton, RN
Assistant Medicaid Inspector General
Division of Medicaid Investigations
Office of the Medicaid Inspector General

Enclosures
USPS CERTIFIED MAIL
AND USPS 1ST CLASS MAIL
RETURN RECEIPT REQUESTED

**18 NYCRR § 515.10** - Reinstatement.

(a) A person sanctioned under this Part may request reinstatement, or removal of any condition or limitation on participation in the medical assistance program, at any time after the date or time period specified in the notice of agency action, or upon the occurrence of an event specified in the notice.

(b) A request for reinstatement or for removal of any condition or limitation on participation in the program is made as an application for enrollment under Part 504 of this Title and must be denominated as a request for reinstatement to distinguish it from an original application.

(c) The request for reinstatement must be sent to the provider enrollment unit of the department.

(d) The request must:

(1) include a complete ownership and control disclosure statement;

(2) state whether the party has been convicted of other offenses related to participation in the Medicare, Medicaid or social services programs which were not considered during the development of the sanction; and

(3) state whether any State or local licensing authorities have taken any adverse action against the party for offenses related to participation in the Medicare, Medicaid or social services programs which were not considered during the development of the sanction.

(e) The department may grant reinstatement only if it is reasonably certain that the violation(s) that led to sanction will not be repeated.

(f) If the department approves the request for reinstatement, it must give written notice to the party, and to all others who were informed of the sanction, specifying the date on which program participation may resume.

(g) If the department does not approve the request for reinstatement, it will notify the party of its decision.



**NEW YORK STATE** | Office of the Medicaid Inspector General

**ANDREW M. CUOMO**
Governor

**DENNIS ROSEN**
Medicaid Inspector General

February 10, 2020

Dove Transport Service, LP
3911 211th Street
Bayside, NY 11361
CERTIFIED MAIL # 7015 1520 0001 0830 2089

Dove Transport Service, LP
72 Granada Circle
Mount Sinai, NY 11766
CERTIFIED MAIL # 7015 1520 0001 0830 2157

Jean Daniel
3911 211th Street
Bayside, NY 11361
CERTIFIED MAIL # 7015 1520 0001 0830 2140

Jean Daniel
72 Granada Circle
Mount Sinai, NY 11766
CERTIFIED MAIL # 7015 1520 0001 0830 2133

Mohammed Raushan
3911 211th Street
Bayside, NY 11361
CERTIFIED MAIL # 7015 1520 0001 0830 2126

Mohammed Raushan
72 Granada Circle
Mount Sinai, NY 11766
CERTIFIED MAIL # 7015 1520 0001 0830 2119

RE:     Provider ID # 03882157
        Project # 17-1541

ATTENTION PROVIDER:

Please be advised that the debt owed the New York State Office of the Medicaid Inspector General for the above referenced audit has not been satisfied. This office has been unable to contact you to discuss the repayment of this debt.

It is imperative that you contact Pam Fitzgerald, of this office, no later than close of business on February 24, 2020 to discuss this debt. Failure to do so may result in further actions being taken to secure payment. These actions may include seeking and obtaining a judgment against you and your personal property.

*Exhibit 11*

February 18, 2020

From: Mr. Jean R. Daniel
      72 Granada Circle,
      Mount Sinai, NY 11766

To:   Michaela A. Schwenzfeier, Director
      Bureau of Collections Management,
      at New York State Office of the Medicaid
      Inspector General, 800 North Pearl St.,
      Albany, New Yok, 12204

Subj.: Your Letter Dated February 10, 2020

Re:    Provider ID # 03882157

Via:   Certified Mail No.: 7017 1000 0000 5839 8186 RR

Dear Michaela A. Schwenzfeier:

Dove Transport Service, LP and I are in possession of your letter dated February 10, 2020 which, apparently, suggests that Dove Transport Service, LP is in agreement with this Agency's action; that Dove Transport Service, LP does owe such a debt. We see no reason why this letter was written to begin with.

As we believe that you are aware of, we received multiple copies of this Agency's Notice of Agency Action dated January 17, 2020. Paragraph 11 of the Notice of Agency Action specifically states, "In accordance with 18 NYCRR Part 518 which regulates the collection of overpayments, <u>your repayment options are described below. If you decide to pay the overpayment, one of the following repayment options must be selected within 20-Days from the date of this letter."</u>

Since we did not respond within the twenty (20) day period, an assumption should have been made that Dove Transport Service, LP does not concede to the Agency's action; and that it will soon respond to the Agency's action. Your letter is presumptuous, which implies that we may have to seek justice elsewhere.

Please wait for our response. We do know that such a response must be sent prior to a particular time. The Agency's facts are at odds with reality. Should you have any question, please feel free to call me at 631-476-2159. Thank you for your cooperation in this matter.

Sincerely yours,

Mr. Jean R. Daniel

Exhibit "D"

**Page 1 of 8**

March 9, 2020

From: Jean R. Daniel
72 Granada Circle
Mount Sinai, NY 11766

To:   General Counsel New York State
Office of the Medicaid Inspector
General Office of Counsel, 800
North Pearl Street, Albany, NY 12204

Re:   The Notice of Agency Action
Pursuant to 18 NYCRR 515.6 (b)
Against Dove Transport Service, LP

Via: Certified Mail No.: 7017 1000 0000 5838 0723 **RR**

## NOTICE OF REQUEST FOR AN ADMINISTRATIVE HEARING

1. On December 10, 2018, the New York State Office of the Medicaid Inspector General **(OMIG)** did issue Dove Transport Service, LP **(DTS, LP)** with a Notice of Proposed Agency Action. On January 9, 2019, I responded to **OMIG**, challenging its decision and objecting for its failure to adhere to certain mandatory administrative procedures in its Notice of Proposed Agency Action Pursuant to 18 NYCRR 515.6(a) in its attempt to recoup any alleged overpayment. One of such procedures that had been challenged, as stated within our response letter dated January 9, 2019, is that **OMIG** should have also began an overpayment procedure against the Medicaid recipients that received the services from **DTS, LP** as well.

2. Another words, **OMIG,** in accordance with **18 CRR-NY 518.3(a),** should have sought recoupment from the Medicaid recipients and not just from **DTS, LP. DTS, LP** continues to consider those Medicaid recipients who received services from it as individuals who should also respond to and take part of any administrative hearing or action in connection with this controversy. Furthermore, according to **OMIG's** own letter dated May 30, 2017, it fails to consider the fact that it had already made up its mind to withhold 25% percent of all current and future claims under the Medicaid Program due to its independent review of **DTS, LP's** participation in the Medicaid Program.



Page 2 of 8

3. The letter further states that such a withholding is temporary and would not continue for more than (90) days, unless **OMIG** would issue a written Draft Audit Report or Notice of Proposed Action, etc. Hence, **DTS, LP** would then receive a notification from **OMIG** in writing regarding its decision relating to the withholding of payments. For the record, **DTS, LP**, its Officers or Owners, were never notified of such a decision. See **Exhibit "B"**. It's **DTS, LPs'** 4-Page-Notice of Our Objection to The Proposed Agency Action Pursuant To 18 NYCRR 515.6(a).

**AS TO OMIG'S CLAIN AND CONTENTION THAT DTS, FS WAS NOT OPERATING WITH THE PROPER  TAXI BUSINESS LICENSE**

4. Aside from **DTS, LP's** 30-cited objections and defenses within its 4-Page response to **OMIG's** proposed action, assuming arguendo that **OMIG's** contention is true, such an investigation which led to such action should not have been conducted to begin with because **DTS, LP** was not a "Taxi-business" as defined by the Town of Brookhaven's **(TOB's)** codes. And **OMIG** knew or should have known, prior to conducting any investigation, that **DTS, LP** is exempt under such a law. **DTS, LP** did enroll as a provider in the Medicaid program on June 19, 2014 with an O603-Taxi Category.

5. **DTS, LP** did not start billing the Medicaid Program until July 1, 2015 after obtaining the proper plates, the proper insurance, inter alia, to provide transportation service for Medicaid recipients. And on July 3rd, 4th and 5th of 2015, **DTS, LP** provided transportation service to several Medicaid recipients after it had been given full authorization from the New York State Department of Transportation **(NYSDOT)**.  See a 1-Page Email Correspondence by **DTS, LP's** Officers and other concerned individuals, together with a 4-Page scheduled trips from LogistiCare as **DTS, LP's Exhibit "D"**.

6. **OMIG** knew or should have known that **DTS, LP** did not commit an unacceptable practice, in accordance with any and all applicable  rules and regulations of the department as alleged in paragraph six (6) of its Notice of Action. Section 18NYCRR 515.2 (a) (1) state as follows:

(i) In order to receive payment for services provided to a Medicaid recipient, a vendor must be lawfully authorized to provide transportation services on the date the services are rendered.

**Page 3 of 8**

7. A vendor of transportation services is lawfully authorized to provide such services if it meets the following standards:

(ii) taxicab or livery services must comply with all requirements of the local municipality concerning the operation of taxicab or livery service in that municipality and with all requirements of the Department of Motor Vehicles:

a. Brookhaven Town Code Article II: Business Owners Requirements Section 67.6- License required for business owners. It shall be unlawful for any person to engage in a taxicab business in the Town of Brookhaven without first having secured a license from the Commissioner of Public Safety or his designee, thereinafter referred to as the "Commissioner."

8. However, what **OMIG** failed to also state is that **DTS, LP** was exempt from obtaining such a license in accordance with Brookhaven Town Code Article ii: Sections **67-1** and **67-3(B)**. Section **67-1**, under "Purpose" states, "It is the purpose and intent of this chapter **(which includes Section 67-6)** to control and regulate the activities of taxicabs in the Town of Brookhaven. History has shown that there is a need for licensing and review of taxicab companies, etc. etc.

9. And section **67.3** states, "The provisions of this chapter shall <u>not</u> apply to vehicles solely owned and operated for the activities set forth herein:

**(B)** Business vehicles engaged in a business other than transportation for hire, wherein said vehicles are used solely for transportation of clients of said business, whether for a fee or not, and are <u>not made available for hire by persons other than clients of the principal business.</u>

10. **DTS, LP** did not transport any other person(s) but Medicaid recipients. The General Partners of **DTS, LP's** only intention was to provide a twenty-four (24) hour service for the safe and efficient transport of persons with disabilities, sickness, injuries, etc. **DTS, LP** enrolled into the Medicaid program or the Medical Assistance **(MA)** program and had been given the authority to <u>solely</u> transport such individuals to and from there designated places for non-emergency medical appointments, which makes them clients of **DTS, LP**. See **Exhibit "E"**. It's a 3 Page Certificate of Limited Partnership of **DTS, LP**.

**Page 4 of 8**

11. **DTS, LP** was operating lawfully within the **TOB**. It lawfully submitted claims to the Medicaid program. **OMIG's** unwarranted investigation did cause panic and confusion between the General Partners of **DTS, LP** and its several employees. **DTS, LP's** employees were forced to apply for taxi licenses when they did not have to.

12. In fact, one of the Partners was forced to pay an unnecessary fine. The Partners of **DTS, LP**, on several occasions, spoke with Mr. William Rogers, the individual in charge at the **TOB's** Public Safety Department to inform him that **DTS, LP** is exempt from obtaining any license to operate as a taxi or livery transporting Medical recipients to and from their designated, non-emergency medical appointment, in accordance with the **TOB's** own law, but he never responded to such a fact. Mr. William Rogers only provided **DTS, LP** with 1 letter on or about May 24, 2016, informing "Whom it may concern" that **DTS, LP** is fully licensed and is certified as a taxi to operate within the **TOB**.

13. Mr. William Rogers never returned **DTS, LP's** calls to discuss **DTS, LP's** legal right to be exempt from those obligations before mentioned above. Instead, on or about August 11, 2016, Mr. William Rogers faxed a letter to Mr. Bedell who, at that time, was the Supervising Medical Investigator of **OMIG**. See **Exhibit "F"**. It's Mr. William Rogers' letters dated May 24, 2016 and August 11, 2016. To this day, **DTS, LP** continues to call the **TOB's** Department of Public Safety in order to speak with Mr. William Rogers to correct this error, but to no avail. A copy of this request for an administrative hearing will also be sent to Mr. William Rogers, as **DTS, LP** will make every attempt to call him as a witness during the coming hearing or to provide a sworn written statement that is acceptable to **OMIG**, since he plays a pivotal role in this controversy.

<u>**AS TO OMIG'S CLAIM AND ASSERTION THAT DTS, LP DID NOT PROVIDE INVESTIGATORS WITH REQUESTED TRIP SLIPS TO SUPPORT DTS, LP'S BILLINGS AS STATED WITHIN OMIG'S   NOTICE OF PROPOSED ACTION & NOT WITHIN ITS NOTICE OF ACTION**</u>

14. As stated on page 1, paragraphs 1 and 2, of <u>**DTS, LP's**</u> response to **OMIG's** proposed action dated December 10, 2018, assuming that a conversation between **OMIG's** investigators and someone at the office of **DTS, LP** occurred, the General Partners of **DTS, LP** were not informed of this. Neither **DTS, LP's** secretary nor its manager would know where the Trip Tickets **(TTs)** were kept. And since the General Partners were not told by **OMIG** that it intends

**Page 5 of 8**

to conduct a Credential Verification Review **(CVR)** of **DTS, LP**, the General Partners would not have informed any of **DTS, LP's**  employee(s) of the **TT's'** whereabouts.

15. Prior to July 3, 2015, when **DTS, LP** began providing its service to Medicaid recipients, my property sustained two (2) major floods. The first one occurred due to a Water Heater malfunction, causing a major flood throughout the entire house, including within **DTS, LP's** main office. DFS, LP's office was unfortunately situated next to where the Boiler room and the Water Heater was. See **DTS, LP's Exhibit "**⚡**"** It's a 1 Page Letter dated March 12, 2015 from my prior Insurance Company, Narragansett Bay Insurance.

16. The second loss was worse than the first. A large pipe beneath the kitchen floor ruptured, again causing major water damage to the entire house, including **DTS, LP's** office which was on the same floor where the kitchen is. Such an incidence occurred on or about the 4rd day of March, 2015 and was finally repaired on or about July 15, 2015.

17. Some of **DTS, LP's** documents were affected by the humidity due to such a devastation. And as Senior Officer of **DTS, LP**, I decided to remove **DTS, LPs'** entire file to a nearby room where such documents would be safe. I placed such documents within a sealed, plastic bag to assure that no further damage would occur due to moisture. See **DTS, LP's Exhibit "**⚡**2".** It's an 11 Page Insurance Claim Adjuster's report dated March 23, 2015.

18. And again, due to another and final unforeseen situation, on or around the end of February, 2018, the property sustained another loss. This time water was coming down from the roof. Such a leak was not confined only to the kitchen's ceiling, which had collapse but to the family room's ceiling, which appeared completely drenched.

19. Seeing this, I immediately observed the ceiling from the rest of the first floor's rooms. I then discovered that the room where **DTS, LP's** documents were kept was completely drenched. It was evident that water had been coming down in it for quite some time. It also appeared that water had also been seeping down from the corner walls, where the sealed plastic bag, which contained most of **DTS, LP's** documents was situated.

20. As I took a closer look towards the corner where I placed the sealed plastic bag, the bag was no longer there. When I asked a tenant of mine who had the authority to clean up

**Page 6 of 8**

the entire house about a black, plastic bag which had **DTS, LP's** name on it, she said, "no". She further stated that she did remove a large, black bag that had been completely soaked from both the inside and outside a few days ago, but she saw no markings on it.

21. The roof was covered on March 15, 2018 by Yves Laurore, a licensed contractor. During that day, Yves Laurore also inspected the entire roof. He informed us that the roof cannot be patched that it must be replaced. I agreed with him. And he began such a task to replace the roof on March 22, 2018 and completed such a task on March 29, 2018. See **DTS, LP's** Exhibit "**G3**". It's a letter from Yves Laurore dated March 12, 2020.

**AS TO OMIG'S CLAIM AND CONTENTION THAT DTS, LP'S FAILED TO RESPOND TO OMIG'S LETTERS DATED JUNE 1, 2016 AND JUNE 20, 2016, REQUESTING TRIP TICKETS FOR THE PERIOD OF MARCH 7, 2016 THROUGH MARCH 18, 2016**

19. Please note that **DTS, LP** did not receive those letters during those times. The only time that **DTS, LP** received those letters was on or about December 10, 2018 when **OMIG** served **DTS, LP** with its Notice of Proposed Action. Those letters before mentioned above were provided to **DTS, LP** within such a "Notice" as Exhibits **1A** and **1B**. We, the Officers of **DTS, LP**, diligently searched for those specific **TTs**, upon receipt of those letters; at which time, we were unable to find any **TTs**.

20. **DTS, LP** did not want to "sound of the alarm" informing **OMIG** that most of its documents were lost because we proud ourselves to providing the best for our Medicaid recipients. So we continued to look diligently for them. We were able to find several **TTs** that were still in **DTS, LP's** old file cabinet. However, on or about March 11, 2020, we found it necessary to inform **OMIG** of our loss via email. See **Exhibit "G"**. It's an email correspondence, together with its attached letter dated March 11, 2020.

21. Some of the **TTs** that were found did cover the Month of March, 2016. We found some that covered March 18, 19, and 21. But we could not find any other **TTs** that covered the month of March, 2016. See **Exhibit "H"**. It's a ten (10) page random **TTs**, covering March 18, 19, and 21.

22. Those **TTs** that were used during the period of March 1, 2016, did follow the new regulations; that all drivers must sign attesting that they have completed each trip.' **DTS, LP,**

**Page 7 of 8**

after learning of this new regulation, reordered new **TTs**. See **Exhibit "I"** .It's a ten (10) page random **TTs** covering some of the trips rendered from February 8 through 25 of 2016.

**AS TO OMIG'S CLAIM AND CONTENTION THAT DTS, LP DID NOT INCLUDE THE DRIVER'S LICENSE AND VEHICLE LICENSE PLATES NUMBERS WITHIN THEIR TRIP TICKET AS REQUIRED EFFECTIVE JULY 1, 2016 IN BILLING INFORMATION SUBMITTED**

23. **DTS, LP** also knew of this new regulation under the Medicaid program that as of July 1, 2016, all **DTS, LP's** drivers were to include their driver's license and their vehicle license plate numbers on their Trip Tickets. Unfortunately, **DTS, LP's** General Partners could not find any **TTs** covering the months of July, August, September, October, November and December of 2016 due to the unforeseen situation as described above. **OMIG** contends that during the period described above, July 1, 2016 through May of 2017, **DTS, LP** billed Medicaid without having the driver's license and the license plate numbers of the drivers.

24. Yet **OMIG** failed to exhibit a single bill that had been submitted by **DTS, LP** that would substantiate such a claim. **DTS, LP** is now suggesting and is now also making its official and legal request, since **DTS, LP** is still within the sixty (60) day period of **OMIG's** Notice of Action, that it may be given the opportunity to resubmit those claims. **OMIG** has denied those claims based on its own code 00267, which simply means that the billing lacks the driver's license and license plate numbers of the drivers. And by allowing **DTS, LP** to resubmit those claims, that branch of **OMIG's** contention would be resolved.

25. **DTS, LP** is confident that it properly submitted those claims, as it was aware of the new regulation. Nevertheless, in order to resolve that aspect of **OMIG's** contention, **DTS, LP** has timely made such a request and is willing to resubmit those claims upon **OIMG's** approval. **DTS, LP's** General Partners only ask that they be given a reasonable time to complete such a task; and that any correspondence coming from **OMIG** be sent via certified mail return receipt in order to assure that they have received the necessary documents.

**Page 8 of 8**

**IN SUMMARY**

26. **DTS, LP**, its Officers or Owners, did not commit any unacceptable practices under the Medicaid Program as defined under18 NYCRR 515.2. It did not receive Medicaid overpayments as defined under such a statute as described above. And that at no time did the Owner's or Officer's conduct, within the course of the duties of **DTS, LP** rose to any unacceptable practice, in accordance with 18 NYCRR 515.3. **DTS, LP** was totally legal and did fulfill all needed requirements under any Federal, State, Town, or County prior to providing transportation service to those Medicaid recipients.

27. **DTS, LP**, at all times, acted in good faith. Its General Partners and/or Owners did everything within their power to follow all rules and regulations at every level. **DTS, LP** had been construed by **TOB** as though it had been a 'taxi company' when it, in fact, had not been.

28. **DTS, LP** sustained several unforeseen situations and could not produce the specific documents needed; but nevertheless, is able to account for a few. And **DTS, LP** did act in accordance, with well establish laws by disclosing such a loss. The few **TTs** that **DTS, LP** furnished as exhibits and also possess does show that **DTS, LP** was in compliance with the new rules and regulations.

29. **DTS, LP** wherefore asks that it be reinstated into the Medicaid program. That **OMIG** may allow, in accordance with applicable laws, **DTS, LP** to resubmit its claims as applicable, since most of its **TTs** had been lost. And that **DTS, LP's** reputation be restored, removing its name from any unsatisfactory list as a Medicaid transportation provider.

Sincerely yours,

Mr. Jean B. Daniel

cc: To William Rogers, Executive Assistant,
at the Dept. of Public Safety, Peter O'
Leary, Commissioner, One
Independence Hill, Farmingville,
NY, 11738
Certified Mail Return Receipt No.:
7017 1000 0000 5838 0730



**NATIONAL PRACTITIONER DATA BANK**

# NPDB

P.O. Box 10832
Chantilly, VA 20153-0832

https://www.npdb.hrsa.gov

| |
|---|
| DCN: 5500000156521549 |
| Process Date: 02/03/2020 |
| Page: 1    of    2 |
| DOVE TRANSPORT SERVICE LP |
| For authorized use by: |
| DOVE TRANSPORT SERVICE LP |

## DOVE TRANSPORT SERVICE LP

### *NYS OFFICE OF MEDICAID INSPECTOR GENERAL*

**EXCLUSION/DEBARMENT ACTION**                **Date of Action:** 02/06/2020

**Initial Action**                **Basis for Initial Action**

- EXCLUSION FROM A STATE HEALTH CARE PROGRAM     - FAILURE TO MAINTAIN ADEQUATE OR ACCURATE
                                                           RECORDS

| A. REPORTING ENTITY | |
|---|---|
| Entity Name: | NYS OFFICE OF MEDICAID INSPECTOR GENERAL |
| Address: | 800 N PEARL ST |
| City, State, Zip: | MENANDS, NY 12204-1817 |
| Country: | |
| Name or Office: | DIVISION OF MEDICAID INVESTIGATIONS |
| Title or Department: | OFFICE OF THE MEDICAID INSPECTOR GENERAL |
| Telephone: | (518) 473-3782 |
| Entity Internal Report Reference: | |
| Type of Report: | INITIAL |

| B. SUBJECT IDENTIFICATION INFORMATION (ORGANIZATION) | |
|---|---|
| Organization Name: | DOVE TRANSPORT SERVICE LP |
| Other Organization Name(s) Used: | |
| Business Address: | 3911 211TH ST |
| City, State, ZIP: | BAYSIDE, NY 11361-1957 |
| Organization Type: | AMBULANCE SERVICE/TRANSPORTATION COMPANY (390) |
| Names and Titles of Principal Officers and Owners (POO): | DANIEL, JEAN   (OWNER) |
| | RAUSHMAN, MOHAMMED   (OWNER) |
| Federal Employer Identification Numbers (FEIN): | 300610666 |
| Social Security Numbers (SSN): | |
| Individual Taxpayer Identification Numbers (ITIN): | |
| State License Number, State of Licensure: | NO LICENSE |
| Drug Enforcement Administration (DEA) Numbers: | |
| Clinical Laboratory Act (CLIA) Numbers: | |
| Food and Drug Administration (FDA) Numbers: | |
| National Provider Identifiers (NPI): | |
| Medicare Provider/Supplier Numbers: | |
| Name(s) of Health Care Entity (Entities) With Which Subject Is Affiliated or Associated (Inclusion Does Not Imply Complicity in the Reported Action.): | |
| Business Address of Affiliate: | |
| City, State, ZIP: | |
| Nature of Relationship(s): | |

| C. INFORMATION REPORTED | |
|---|---|
| Type of Adverse Action: | EXCLUSION/DEBARMENT |
| Basis for Action: | FAILURE TO MAINTAIN ADEQUATE OR ACCURATE RECORDS (50) |
| Name of Agency or Program That Took the Adverse Action Specified in This Report: | NYS OFFICE OF MEDICAID INSPECTOR GENERAL |
| Adverse Action Classification Code(s): | EXCLUSION FROM A STATE HEALTH CARE PROGRAM (3507) |

CONFIDENTIAL DOCUMENT - FOR AUTHORIZED USE ONLY

**NATIONAL PRACTITIONER DATA BANK**

# NPDB

P.O. Box 10832
Chantilly, VA 20153-0832

https://www.npdb.hrsa.gov

DCN: 5500000156521549
Process Date: 02/03/2020
Page: 2   of   2
DOVE TRANSPORT SERVICE LP
For authorized use by:
DOVE TRANSPORT SERVICE LP

| | |
|---|---|
| Date Action Was Taken: | 01/17/2020 |
| Date Action Became Effective: | 02/06/2020 |
| Length of Action: | INDEFINITE |
| Is Subject Automatically Reinstated After Adverse Action Period Is Completed?: | |
| Description of Subject's Act(s) or Omission(s) or Other Reasons for Action(s) Taken and Description of Action(s) Taken by Reporting Entity: | Excluded pursuant to 18 NYCRR 515.2, as a result of the provider committing an unacceptable practice as defined in 18 NYCRR 515.2. |

☐ Subject identified in Section B has appealed the reported adverse action.

**D. SUBJECT STATEMENT**

If the subject identified in Section B of this report has submitted a statement, it appears in this section.

**E. REPORT STATUS**

Unless a box below is checked, the subject of this report identified in Section B has not contested this report.

☐ This report has been disputed by the subject identified in Section B.

☐ At the request of the subject identified in Section B, this report is being reviewed by the Secretary of the U.S. Department of Health and Human Services to determine its accuracy and/or whether it complies with reporting requirements. No decision has been reached.

☐ At the request of the subject identified in Section B, this report was reviewed by the Secretary of the U.S. Department of Health and Human Services and a decision was reached. The subject has requested that the Secretary reconsider the original decision.

☐ At the request of the subject identified in Section B, this report was reviewed by the Secretary of the U.S. Department of Health and Human Services. The Secretary's decision is shown below:

Date of Original Submission:     02/03/2020
Date of Most Recent Change:     02/03/2020

**This report is maintained under the provisions of:** Section 1921

The information contained in this report is maintained by the National Practitioner Data Bank for restricted use under the provisions of Section 1921 of the Social Security Act, and 45 CFR Part 60. All information is confidential and may be used only for the purpose for which it was disclosed. Disclosure or use of confidential information for other purposes is a violation of federal law. For additional information or clarification, contact the reporting entity identified in Section A.

———————————— **END OF REPORT** ————————————

**Town of Brookhaven**



May 24. 2016

To whom it may concern:

Please be advised that Dove Transport  is a fully licensed  and certified taxi operation within

The Town of Brookhaven.

William Rogers

Public Safety Dept.

Exhibit "4"



# Town of Brookhaven
# Long Island

Edward P. Romaine, Supervisor

August 11, 2016

Christopher Bedell
Supervising Medicaid Investigator
Office of the Medicaid Inspector General
Division of Medicaid Investigations
217 Broadway - 9th Floor
New York, NY 10007

Dear Mr. Bedell,

Jean Daniel registered his Taxi Business with the Town of Brookhaven on 4/24/16. His business name is Dove Transport and is located at 72 Granada Circle, Mount Sinai, N.Y. Prior to this date, Mr. Daniel made no attempt to obtain a valid Taxi license from the Town of Brookhaven. The reason he contacted the Town of Brookhaven to come into compliance was due to your on site inspection conducted by N.Y.S OMIG, prior to 4/24/16.

Thank you for all your help.

Bill Rogers
Executive Assistant

Town of Brookhaven
Department of Public Safety





# Town of Brookhaven
# Long Island

**Edward P. Romaine,** Supervisor

August 11, 2016

Christopher Bedell
Supervising Medicaid Investigator
Office of the Medicaid Inspector General
Division of Medicaid Investigations
217 Broadway - 9th Floor
New York, NY 10007

Dear Mr. Bedell,

Jean Daniel registered his Taxi Business with the Town of Brookhaven on 4/24/16. His business name is Dove Transport and is located at 72 Granada Circle, Mount Sinai, N.Y. Prior to this date, Mr. Daniel made no attempt to obtain a valid Taxi license from the Town of Brookhaven. The reason he contacted the Town of Brookhaven to come into compliance was due to your on site inspection conducted by N.Y.S OMIG, prior to 4/24/16.

Thank you for all your help.

Bill Rogers
Executive Assistant

Town of Brookhaven
Department of Public Safety

Department of Public Safety
Peter O'Leary, Commissioner
One Independence Hill ● Farmingville● NY 11738 ● (631) 451-6291
Fax: (631)451-6908 ●www.brookhaven.org



March 11, 2020

From: Mr. Jean R. Daniel
      72 Granada Circle
      Mount Sinai, NY 11766

To:   The New York State Office of the
      Medicaid Inspector General,
      800 North Pearl Street
      Albany, New York 12204

Re:   Dove Transport Service, LP
      72 Granada Circle, Mount Sinai, NY
      Provider ID# 03882157

Via:  Email Goodtone450@aol.com

Please be advised that Dove Transport Service, LP loss several of its business documents, including most of its Trip Slips covering the periods of March 1, 2015 through  March of 2017. This was due to water damage, a leaking roof which primarily affected a room that was adjacent to Dove Transport Service, LP's office.  The documents were place in a plastic bag and marked as "Important Dove Transport Service's Documents-Do Not-Discard."

Unfortunately, the marking had apparently been erased due to water damage and a tenant inadvertently threw the bag out as garbage. Nevertheless, some of Dove Transport Service, LP's documents are still intact, and more than 200 Trip Slips were found within Dove Transport Service, LP's old file cabinet; and Dove Transport Service, LP is more than happy to account for those documents in its possession. We are now in the process of obtaining evidence from the roof company that replaced the entire roof to attest to these things.

And although we are no longer in service, we are open to any suggestion from this agency so that we may be in complete compliance with Title 18 of the New York Code of Rules & Regulations, under Section 504.3. Should you have any question or suggestion, please feel free to call me at 631-476-2159. Or if you so desire, you may make those suggestions via email at Goodtone450@aol.com  ; and we will promptly respond.

Sincerely yours,

Mr. Jean R. Daniel

Exhibit ((15))



Address: PO Box 716, Mt. Sinai, NY, 11766
Email: DoveTransport@optimum.net
Web: www.DoveRide.com
Ph/Fax: 631-743-9333

## Providing Rides To Clients With Diverse Needs

Driver: _E D_

Date: _2|8|16_

(1)    Trip ID _11115_
#

A: 4:30
15 primose Ln, Roosevelt, N.y
256 Bdwy, huntington station N.y

Client Name: _Anthony brown_     Client ID: _____

Huntington Artificial Kidney Center
256 Broadway
Huntington Station, NY 11746

Client Signature: _____

WE HOPE YOU ENJOYED YOUR RIDE WITH DOVE TRANSPORT.

WE WELCOME SUGGESTIONS ON HOW TO IMPROVE OUR SERVICE.

PLEASE CALL US  631-743-9333





**Address: PO Box 716, Mt. Sinai, NY, 11766**

**Email: Admin@doveride.com**

**Web: www.DoveRide.com**

**Ph/Fax: 631-743-9333**

## Providing Rides To Clients With Diverse Needs

Date: _3/18/16_          Vehicle ID: _____

(9)

Client Name: _Matilde Sabillo_ Medicaid ID: _DD9487D_

P/U Loc: _61 _____ Wisconsin Ave_   _bayshore N.y_   P/U Time: _2:30_

D/O Loc: _225 Howels Rd_   _bayshore N.y_   D/O Time: _2:45_

Driver Name: _Leo Daniel_          Driver ID: _____

\# (631) 961-1546

*** By signing below I attest to completing this trip. ***

Driver Signature: _Eligen _____

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Date: _3/18/16_          Vehicle ID: _____

Client Name: _Michael G_   Medicaid ID: _DC3C749C_

P/U Loc: _3171 Jericho T.pke_   _Cumack, Ny_   P/U Time: _3:00_

D/O Loc: _169 Hawthorne Ave_   _Central Islip_   D/O Time: _____

Driver Name: _Leo Daniel_          Driver ID: _____

\# (631) 598-9167

*** By signing below I attest to completing this trip. ***

Driver Signature: _Cancelled_





**Dove TRANSPORT**
**631-743-9333**

Address: PO Box 716, Mt. Sinai, NY, 11766
Email: Admin@doveride.com
Web: www.DoveRide.com
Ph/Fax: 631-743-9333

## Providing Rides To Clients With Diverse Needs

Date: 3/18/16                     Vehicle ID: _____

(10)

Client Name: Jameeda K        Medicaid ID: FR39536R
P/U Loc: 319 Little E. Neck        P/U Time: 3/3:03:23
         Rd. W. babylon
D/O Loc: 760 Sunrise Hwy          D/O Time: 3:30
         babylor N.y

Driver Name: Leo Daniel           Driver ID: _____

(631) 746-7989

**_** By signing below I attest to completing this trip. **_**

Driver Signature: _Elejio Daniel_

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

(11)

Date: 3/18/16                     Vehicle ID: _____

Client Name: Matilbe S.        Medicaid ID: DD94871)
P/U Loc: 225 howels Rd.           P/U Time: will call
         bayshcie N.y                       4:15 pm
D/O Loc: 61 Wisconsin Ave         D/O Time: 4:58
         Central Islip N.y

Driver Name: Leo Daniel           Driver ID: _____

**_** By signing below I attest to completing this trip. **_**

Driver Signature: _Elejio Daniel_



**Address: PO Box 716, Mt. Sinai, NY, 11766**
**Email: Admin@doveride.com**
**Web: www.DoveRide.com**
**Ph/Fax: 631-743-9333**

## Providing Rides To Clients With Diverse Needs

Date: _3/19/16_          Vehicle ID: _____

(1)
Client Name: _Wayne Butt_  Medicaid ID: _PD6546C_
P/U Loc: _113 S 33rd street_
_Wyandanch Ny_          P/U Time: _5:00_
D/O Loc: _50 Route 25 A_
_Smithtown N.y_          D/O Time: _5:30_

Driver Name: _Leo Daniel_          Driver ID: _____
_(631) 639-9530_

**_** By signing below I attest to completing this trip.**_**

Driver Signature: _Elysio David_

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Date: _3/19/16_          Vehicle ID: _____

Client Name: _Wayne Butt_  Medicaid ID: _PD6546C_
P/U Loc: _50 Route 25A_
_Smithtown N.y_          P/U Time: _will call_
D/O Loc: _113 S 33rd stree_
_Wyandanch N.y_          D/O Time: _____

Driver Name: _Leo Daniel_          Driver ID: _____

**_** By signing below I attest to completing this trip.**_**

Driver Signature: _____



**Dove TRANSPORT**
**631-743-9333**

Address: PO Box 716, Mt. Sinai, NY, 11766
Email: Admin@doveride.com
Web: www.DoveRide.com
Ph/Fax: 631-743-9333

## Providing Rides To Clients With Diverse Needs

Date: 3/19/16     Vehicle ID: _____

Client Name: Vyolet Cirku     Medicaid ID: AP16538T
P/U Loc: 36 E Locust Street Central Islip N.Y     P/U Time: 7:15 Am
D/O Loc: 220 E Main street E. Islip N.Y     D/O Time: 7:30 Am

Driver Name: Leo Daniel     Driver ID: _____
# (631) 382-2376  482-2376

***By signing below I attest to completing this trip.***

Driver Signature: Elysio Daniel

- - - - - - - - - - - - - - - - - - - - - - - - - - - -

Date: 3/19/16     Vehicle ID: _____

Client Name: Vyolet Cirku     Medicaid ID: AP16538T
P/U Loc: 220 E. Main street E. Islip Ny     P/U Time: will call 8:10
D/O Loc: 36 E. Locust street Central Islip     D/O Time: _____

Driver Name: Leo Daniel     Driver ID: _____

***By signing below I attest to completing this trip.***

Driver Signature: Elysio Daniel



**Dove TRANSPORT**
**631-743-9333**

Address: PO Box 716, Mt. Sinai, NY, 11766
Email: Admin@doveride.com
Web: www.DoveRide.com
Ph/Fax: 631-743-9333

## Providing Rides To Clients With Diverse Needs

Date: 3/19/16                Vehicle ID: _____

Client Name: Latisha Gorgone  Medicaid ID: DW82662J
P/U Loc: 329 Glynn street
         North babylon N.y        P/U Time: 10:00
         400 sunrise Hwy
D/O Loc: Amityville N.y           D/O Time: 10:30

Driver Name: Leo Daniel           Driver ID: _____
(631) 438-6495

**\*\* By signing below I attest to completing this trip. \*\***

Driver Signature: Elijah Daniel

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Date: 3/19/16                Vehicle ID: _____

Client Name: Latisha Gorgon  Medicaid ID: DW82662J
         379 G 400 sunrise
P/U Loc: Hwy Amityville, Ny        P/U Time: 12:00
         329 Glynn street
D/O Loc: North babylON N.y        D/O Time: 12:30

Driver Name: Leo Daniel            Driver ID: _____

**\*\* By signing below I attest to completing this trip. \*\***

Driver Signature: Elijah Daniel



**Address: PO Box 716, Mt. Sinai, NY, 11766**
**Email: Admin@doveride.com**
**Web: www.DoveRide.com**
**Ph/Fax: 631-743-9333**

## Providing Rides To Clients With Diverse Needs

Date: 3/19/16          Vehicle ID: _____

Client Name: Adan Rivas      Medicaid ID: FN97528A
P/U Loc: 34 Mill St Amityville N.Y      P/U Time: 1:30
D/O Loc: 3460 Great NECK Rd Amityville N.Y      D/O Time: _____

Driver Name: Leo Daniel      Driver ID: _____
FF (516) 462-6824

** By signing below I attest to completing this trip. **

Driver Signature: Cancelled
— outstanding order —

Date: 3/19/16          Vehicle ID: _____

Client Name: Adan Rivas      Medicaid ID: FN97528A
P/U Loc: 3460 Great NECK Rd Amityville N.Y      P/U Time: 6:15
D/O Loc: 34 Mill Street Amityville N.Y      D/O Time: _____

Driver Name: Leo Daniel      Driver ID: _____

** By signing below I attest to completing this trip. **

Driver Signature: Cancelled



Address: PO Box 716, Mt. Sinai, NY, 11766
Email: Admin@doveride.com
Web: www.DoveRide.com
Ph/Fax: 631-743-9333

## Providing Rides To Clients With Diverse Needs

Date: 3/21/16            Vehicle ID: _____

Client Name: Jennifer Portues  Medicaid ID: DB09184V
P/U Loc: 39 huron street
Port Jefferson station         P/U Time: 7:00 Am
D/O Loc: 200 wireless blvd
Hauppauge N.y             D/O Time: 8:20 Am

Driver Name: Leo Daniel          Driver ID: _____
(631) 740-2736

**\*\* By signing below I attest to completing this trip. \*\***

Driver Signature: _____

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

③ Date: 3/21/16          Vehicle ID: _____

Client Name: Jennifer Portues  Medicaid ID: DB09184V
P/U Loc: 200 wireless blvd
Hauppauge Ny              P/U Time: 8:25
D/O Loc: 39 huron street
Port Jefferson station       D/O Time: 9:16

Driver Name: Leo Daniel          Driver ID: _____

**\*\* By signing below I attest to completing this trip. \*\***

Driver Signature: _____



**Dove TRANSPORT**
**631-743-9333**

Address: PO Box 716, Mt. Sinai, NY, 11766
Email: Admin@doveride.com
Web: www.DoveRide.com
Ph/Fax: 631-743-9333

## Providing Rides To Clients With Diverse Needs

Date: 3/21/16      Vehicle ID: _____

Client Name: Maria Davidou   Medicaid ID: AA709 83U
P/U Loc: 7 Woodland Rd
Centereach N.y      P/U Time: 7:45
D/O Loc: 200 Wireless blvd
Hauppauge N.y      D/O Time: 8:20

Driver Name: Leo Daniel      Driver ID: _____
(631) 846-8183

*** By signing below I attest to completing this trip. ***

Driver Signature: _____

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

④ Date: 3/21/16      Vehicle ID: _____

Client Name: Maria Davidou   Medicaid ID: AA709 83U
P/U Loc: 200 Wireless blvd
Hauppauge N.y      P/U Time: 8:25
D/O Loc: 7 Woodland Rd
Centereach N.y      D/O Time: 8:51

Driver Name: Leo Daniel      Driver ID: _____

*** By signing below I attest to completing this trip. ***

Driver Signature: _____



**Address: PO Box 716, Mt. Sinai, NY, 11766**
**Email: Admin@doveride.com**
**Web: www.DoveRide.com**
**Ph/Fax: 631-743-9333**

## Providing Rides To Clients With Diverse Needs

Date: _3/31/16_          Vehicle ID: _____

Client Name: _Dougherty J._   Medicaid ID: _EM42828U_
P/U Loc: _53 Bogart St   Hunt. station_   P/U Time: _3:45 PM_
D/O Loc: _55 Horizon Drive   Hunt. NY._   D/O Time: _4:42 PM_

Driver Name: _Jean R. Daniel_          Driver ID: _____

*** By signing below I attest to completing this trip.***

Driver Signature: _____

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Date: _3/31/16_          Vehicle ID: _____

Client Name: _Dougherty J._   Medicaid ID: _____
P/U Loc: _55 Horizon Drive   Hunt stat_   P/U Time: _5:45 PM_
D/O Loc: _53 Bogart St. Hunt. Stat._   D/O Time: _6:57_

Driver Name: _Jean R. Daniel_          Driver ID: _____

*** By signing below I attest to completing this trip.***

Driver Signature: _____

**Dove TRANSPORT**
631-743-9333

Address: PO Box 716, Mt. Sinai, NY, 11766
Email: Admin@doveride.com
Web: www.DoveRide.com
Ph/Fax: 631-743-9333

Date: 3/21/16          Vehicle ID: _____

Client Name: Victoria Megill   Medicaid ID: C031147V
2,805 Veterans Memor
3. Soundview Ave  P/U Time: 10:00
D/O Loc: E. Northport N.y   D/O Time: _____

Driver Name: Leo Daniel          Driver ID: _____

** By signing below I attest to completing this trip. **

Driver Signature: Cancelled —

---

⑤ Date: 3/21/16          Vehicle ID: DX 3120ST

Client Name: Christine Q   Medicaid ID: _____
100 Highland Blvd
P/U Loc: Port Jefferson N.y   P/U Time: 12:15
114 Gail Ct
D/O Loc: E. Northport N.y   D/O Time: 12:54

Driver Name: Leo Daniel          Driver ID: _____
# (631) 759-1640

** By signing below I attest to completing this trip. **

Driver Signature: L. Daniel



**Address: PO Box 716, Mt. Sinai, NY, 11766**
**Email: DoveTransport@optimum.net**
**Web: www.DoveRide.com**
**Ph/Fax: 631-743-9333**

## Providing Rides To Clients With Diverse Needs

Driver: _EiD_          Date: _2/8/16_

② 5:05    Trip ID _11117_

A: ~~5:30~~

11 W. hills Rd, huntington Station
256 Bdwy huntington station Ny

Client Name: _Edward Feiler_    Client ID: _____

Huntington Artificial Kidney Center
256 Broadway
Huntington Station, NY 11746

Client Signature: _____

WE HOPE YOU ENJOYED YOUR RIDE WITH DOVE TRANSPORT.

WE WELCOME SUGGESTIONS ON HOW TO IMPROVE OUR SERVICE.

PLEASE CALL US 631-743-9333



**Address: PO Box 716, Mt. Sinai, NY, 11766**
**Email: DoveTransport@optimum.net**
**Web: www.DoveRide.com**
**Ph/Fax: 631-743-9333**

## Providing Rides To Clients With Diverse Needs

**Driver:** _J. Daniel/Jen Portuose_   **Date:** _2/12/16_

**Trip ID** _01-22423-A+D_

_6PM-8PM_                    _516-493-7239_

_36 Gabos Lane, Coram NY. 11727_
_998 Crooked Hill Apt. 2_
_Brentwood NY. 11717_

**Client Name:** _Alethia Jacobs_   **Client ID:** _BT88767D_

**Client Signature:** _X [signature]_

WE HOPE YOU ENJOYED YOUR RIDE WITH DOVE TRANSPORT.

WE WELCOME SUGGESTIONS ON HOW TO IMPROVE OUR SERVICE.

PLEASE CALL US  631-743-9333



**Address: PO Box 716, Mt. Sinai, NY, 11766**
**Email: DoveTransport@optimum.net**
**Web: www.DoveRide.com**
**Ph/Fax: 631-743-9333**

# Providing Rides To Clients With Diverse Needs

**Driver:** _Ed_

**Date:** _2/18/16_

(B)

B. 5.00

**Trip ID** _____

270 park Ave, huntington N.y.
118 Hickory Pl, huntington station N.y

**Client Name:** _Jeanne Hart_

**Client ID:** _____

**Client Signature:** _Jeanne Hart_

WE HOPE YOU ENJOYED YOUR RIDE WITH DOVE TRANSPORT.

WE WELCOME SUGGESTIONS ON HOW TO IMPROVE OUR SERVICE.

PLEASE CALL US  631-743-9333



**Address: PO Box 716, Mt. Sinai, NY, 11766**
**Email: DoveTransport@optimum.net**
**Web: www.DoveRide.com**
**Ph/Fax: 631-743-9333**

## Providing Rides To Clients With Diverse Needs

Driver: _Ei D_                                    Date: _2/19/16_

A                    Trip ID _113083-A+B_        (3:30)

9:30                    B: 00:00     C:1115

A 79 Booth St, Hempstead N.y
B 645 Stewart St, Garden city
C 600 old country Rd → N.y

Client Name: _Vicki Cox_                    Client ID: _____
                    _Victory_

Client Signature: _____

(917) 741-7482

WE HOPE YOU ENJOYED YOUR RIDE WITH DOVE TRANSPORT.

WE WELCOME SUGGESTIONS ON HOW TO IMPROVE OUR SERVICE.

PLEASE CALL US  631-743-9333



**Address: PO Box 716, Mt. Sinai, NY, 11766**
**Email: DoveTransport@optimum.net**
**Web: www.DoveRide.com**
**Ph/Fax: 631-743-9333**

## Providing Rides To Clients With Diverse Needs

Driver: _ED_                     Date: _2/19/16_

Trip ID _2517-A_

A:
    9:00            B: 1:30
------------------------------------------
68 E. 19 St, huntington station N.y
300 Community dr, Manhasset N.y

Client Name: _Danielle Reel_     Client ID: _____

Client Signature: _____

WE HOPE YOU ENJOYED YOUR RIDE WITH DOVE TRANSPORT.

WE WELCOME SUGGESTIONS ON HOW TO IMPROVE OUR SERVICE.

PLEASE CALL US  631-743-9333



**Address: PO Box 716, Mt. Sinai, NY, 11766**
**Email: DoveTransport@optimum.net**
**Web: www.DoveRide.com**
**Ph/Fax: 631-743-9333**

## Providing Rides To Clients With Diverse Needs

Driver: _E D_                    Date: _2/23/16_

A                Trip ID _107652 A+B_

6:30                B: 9:00

64 Volta Dr Deer Park, N.y
281 Phelps Ln, North babylon N.y

Client Name: _Carl Guillouette_    Client ID: _____

Client Signature: _Carl Guilen_

WE HOPE YOU ENJOYED YOUR RIDE WITH DOVE TRANSPORT.

WE WELCOME SUGGESTIONS ON HOW TO IMPROVE OUR SERVICE.

PLEASE CALL US  631-743-9333



**Address: PO Box 716, Mt. Sinai, NY, 11766**
**Email: DoveTransport@optimum.net**
**Web: www.DoveRide.com**
**Ph/Fax: 631-743-9333**

# Providing Rides To Clients With Diverse Needs

**Driver:** _ED_

**Date:** _2-23/16_

(1)

**Trip ID** _7006-A_

(2)

2:30      P: 413

_83 Lake Rd, Greenlawn NY_
_55 horizon Dr, huntington NY_

**Client Name:** _Matthew Anderson_      **Client ID:** _____

**Client Signature:** _____

WE HOPE YOU ENJOYED YOUR RIDE WITH DOVE TRANSPORT.

WE WELCOME SUGGESTIONS ON HOW TO IMPROVE OUR SERVICE.

PLEASE CALL US  631-743-9333



**Address: PO Box 716, Mt. Sinai, NY, 11766**
**Email: DoveTransport@optimum.net**
**Web: www.DoveRide.com**
**Ph/Fax: 631-743-9333**

## Providing Rides To Clients With Diverse Needs

Driver: _E1D_          Date: _2/25/16_

Trip ID _9169_

A: _12:30_          B: _2:17_

_92 Folsom Ave, Huntington Station_
_2 Leefield Gate, Melville NY NY_

Client Name: _Philip Stubbolo_     Client ID: _____

Client Signature: _[signature]_

WE HOPE YOU ENJOYED YOUR RIDE WITH DOVE TRANSPORT.

WE WELCOME SUGGESTIONS ON HOW TO IMPROVE OUR SERVICE.

PLEASE CALL US  631-743-9333



**Address: PO Box 716, Mt. Sinai, NY, 11766**
**Email: DoveTransport@optimum.net**
**Web: www.DoveRide.com**
**Ph/Fax: 631-743-9333**

## Providing Rides To Clients With Diverse Needs

Driver: ___EiD___        Date: __2/25/16__

Trip ID __9169__

A: 12:30        B: 2:17

92 Folsom Ave, Huntington Station
2 Leefield Gate, Melville N.y N.y

Client Name: __Philip Stubbolo__   Client ID: _____

Client Signature: _____

WE HOPE YOU ENJOYED YOUR RIDE WITH DOVE TRANSPORT.

WE WELCOME SUGGESTIONS ON HOW TO IMPROVE OUR SERVICE.

PLEASE CALL US  631-743-9333



Office of the
Medicaid Inspector
General

ANDREW M. CUOMO
Governor

DENNIS ROSEN
Medicaid Inspector General

Dove Transport Services LP
72 Granada Circle
Mount Sinai, NY 11766
Provider Number 03882157

Subject: Document Request

Dear Provider,

The New York State Department of Health (the "Department") is the State agency responsible for monitoring payments made under the New York State Medicaid Program. As part of this responsibility, the Office of the Medicaid Inspector General (OMIG), an independent office within the Department, conducts reviews of various providers of Medicaid reimbursable services, equipment and supplies. These audits and reviews are directed at ensuring provider compliance with applicable laws, regulations, rules and policies of the Medicaid program as set forth by the Departments of Health, Mental Hygiene and Social Services [Title 10, 14 and 18, respectively, of the Official Compilation of Codes, Rules and Regulations of the State of New York], the Medicaid Management Information System (MMIS) provider manuals and all other applicable guidance material.

This letter is to advise you that we are here today to ask you to produce patient documentation to support Medicaid billing claims.

The following citations provide examples of legal authority for the OMIG's request for records:

1. <u>Social Security Act Section 1902 (42 USC 1396a)</u>

"(a) A State plan for medical assistance must...(27) provide for agreements with every person or institution providing services under the State plan under which such person or institution agrees (A) to keep such records as are necessary fully to disclose the extent of the services provided to individuals receiving assistance under the State plan, and (B) to furnish the State agency...with such information, regarding any payments claimed by such person or institution for providing services under the State plan, as the State agency...may from time to time request."

2. <u>18 NYCRR Part 500</u>

Regulation 504.3 states: "By enrolling the provider agrees: (a) to prepare and to maintain contemporaneous records demonstrating its right to receive payment under the medical assistance program and to keep for a period of six years from the date the care, services or supplies were   furnished, all records necessary to disclose the nature and extent of services furnished and all  information regarding claims for payment submitted by, or on behalf of, the         provider

*An Equal Opportunity/Affirmative Action Employer* 

and to furnish such records and information, upon request, to the department, the
Secretary of the United States Department of Health and Human Services, the Deputy
Attorney General for Medicaid Fraud Control and the New York State Department of
Health."

Regulation 515.2(b)(6) states: "It is an unacceptable practice for a provider to fail to make
available for audit or investigation records necessary to disclose the nature and extent of
medical care, services or supplies furnished."

The Department and Medicaid providers are covered entities pursuant to the Health Insurance
Portability and Accounting Act of 1996 (Public Law 104-191).  Federal Regulations, at 42 CFR 164.506 (c)(4)(ii),
provide that a covered entity may disclose protected health information to another covered entity where the disclosure is
for the purpose of health care fraud or abuse detection or compliance.  Accordingly,
there is no violation of HIPPA when releasing records to the OMIG.

**All Driver Trip Tickets for the period Listed Below:**
**Monday March 7, 2016 thru Friday march 18, 2016**

Although the OMIG has the statutory authority pursuant to Public Health Law Section 32(10) to "remove
documents or records of any kind related to the medical assistance program…" examining the medical records and, if
necessary, photocopying selected portions of the records should suffice and not require the removal of any original
records.

If you have any questions regarding this request, please call Senior Investigator Christopher Bedell at (212) 417-
4627.  Thank you for your cooperation in this matter.

Sincerely,

Philip C. Tricolla
Medicaid Investigator
Division of Medicaid Investigations

Dated: 6.20.2016

FACTS # 16-F-1959

*An Equal Opportunity/Affirmative Action Employer*

 **NEW YORK STATE** | Office of the Medicaid Inspector General

**ANDREW M. CUOMO**
Governor

**DENNIS ROSEN**
Medicaid Inspector General

Dove Transport Services LP
72 Granada Circle
Mount Sinai, NY 11766
Provider Number 03882157

Subject: Document Request

Dear Provider,

The New York State Department of Health (the "Department") is the State agency responsible for monitoring payments made under the New York State Medicaid Program. As part of this responsibility, the Office of the Medicaid Inspector General (OMIG), an independent office within the Department, conducts reviews of various providers of Medicaid reimbursable services, equipment and supplies. These audits and reviews are directed at ensuring provider compliance with applicable laws, regulations, rules and policies of the Medicaid program as set forth by the Departments of Health, Mental Hygiene and Social Services [Title 10, 14 and 18, respectively, of the Official Compilation of Codes, Rules and Regulations of the State of New York], the Medicaid Management Information System (MMIS) provider manuals and all other applicable guidance material.

This letter is to advise you that we are here today to ask you to produce patient documentation to support Medicaid billing claims.

The following citations provide examples of legal authority for the OMIG's request for records:

1. <u>Social Security Act Section 1902 (42 USC 1396a)</u>

   "(a) A State plan for medical assistance must…(27) provide for agreements with every person or institution providing services under the State plan under which such person or institution agrees (A) to keep such records as are necessary fully to disclose the extent of the services provided to individuals receiving assistance under the State plan, and (B) to furnish the State agency…with such information, regarding any payments claimed by such person or institution for providing services under the State plan, as the State agency…may from time to time request."

2. <u>18 NYCRR Part 500</u>

   Regulation 504.3 states: "By enrolling the provider agrees: (a) to prepare and to maintain contemporaneous records demonstrating its right to receive payment under the medical assistance program and to keep for a period of six years from the date the care, services or supplies were   furnished, all records necessary to disclose the nature and extent of services furnished and all information regarding claims for payment submitted by, or on behalf of, the    provider

*An Equal Opportunity/Affirmative Action Employer*

and to furnish such records and information, upon request, to the department, the
Secretary of the United States Department of Health and Human Services, the Deputy
Attorney General for Medicaid Fraud Control and the New York State Department of
Health."

Regulation 515.2(b)(6) states: "It is an unacceptable practice for a provider to fail to make
available for audit or investigation records necessary to disclose the nature and extent of
medical care, services or supplies furnished."

The Department and Medicaid providers are covered entities pursuant to the Health Insurance
Portability and Accounting Act of 1996 (Public Law 104-191).  Federal Regulations, at 42 CFR 164.506 (c)(4)(ii),
provide that a covered entity may disclose protected health information to another covered entity where the disclosure is
for the purpose of health care fraud or abuse detection or compliance.  Accordingly,
there is no violation of HIPPA when releasing records to the OMIG.

**All Driver Trip Tickets for the period Listed Below:**
**Monday March 7, 2016 thru Friday march 18, 2016**

Although the OMIG has the statutory authority pursuant to Public Health Law Section 32(10) to "remove
documents or records of any kind related to the medical assistance program…" examining the medical records and, if
necessary, photocopying selected portions of the records should suffice and not require the removal of any original
records.

If you have any questions regarding this request, please call Senior Investigator Christopher Bedell at (212) 417-
4627.  Thank you for your cooperation in this matter.

Sincerely,

Philip C. Tricolla
Medicaid Investigator
Division of Medicaid Investigations

Dated: 6/1/16

FACTS # 16-F-1959

*An Equal Opportunity/Affirmative Action Employer*

From: r <goodtone450@aol.com>
To: coachraushan <coachraushan@gmail.com>
Subject: Fwd: 20-3456 Dove Transport Service, LP's Loss Disclosure
Date: Fri, Mar 13, 2020 7:09 pm

-----Original Message-----
From: r <goodtone450@aol.com>
To: jeanandnicky <jeanandnicky@optonline.net>
Sent: Fri, Mar 13, 2020 7:09 pm
Subject: Fwd: 20-3456 Dove Transport Service, LP's Loss Disclosure

-----Original Message-----
From: r <goodtone450@aol.com>
To: jeanandnicky <jeanandnicky@yahoo.com>
Sent: Fri, Mar 13, 2020 7:08 pm
Subject: Fwd: 20-3456 Dove Transport Service, LP's Loss Disclosure

-----Original Message-----
From: Gallager, Theresa A (OMIG) <Theresa.Gallager@omig.ny.gov>
To: 'r' <goodtone450@aol.com>
Sent: Fri, Mar 13, 2020 7:21 am
Subject: 20-3456 Dove Transport Service, LP's Loss Disclosure

Good morning, Mr. Daniel:

I have received the notice of loss/destruction of records that you sent dated March 11, 2020.  The project number assigned to this disclosure is:  **20-3456.**  Please refer to this number in any correspondence.

Please direct any future emails to this email address, as I will be handling your case.  If you would be so kind, please provide the following items to me via email by Friday, March 20, 2020:

1. Pictures of the building, interior of the room and the roof area of where the damage occurred.
2. Any bills or repair work from the roofing company that you mentioned that you hired to repair the water damaged area.
3. The name and contact information of the tenant that discarded the bag.
4. Any other information that you feel supports your claim.

I want to take this opportunity to thank you for notifying us of this loss. If you have any questions or concerns, please do not hesitate to contact me.

Sincerely,

# Theresa A. Gallager
Investigative Specialist
**Self-Disclosure Unit**
Office of Medicaid Inspector General
800 North Pearl Street, Albany, NY 12204

518-473-2989 Theresa.Gallager@omig.ny.gov
518-486-7192 FAX #

*Exhibit* "17"

**From:** goodtone450@aol.com,
**To:** Theresa.Gallager@omig.ny.gov,
**Subject:** A Letter from the Roof Contractor & The Information of the Tenant
**Date:** Thu, Mar 19, 2020 7:54 pm
**Attachments:** YVES LORAURE'S MARCH 12, 2020-LETTER.pdf (52K)

From: Jean R. Daniel

To:   Theresa A. Gallager

Re:   Disclosure # 20-3456

Dear Theresa A. Gallager:

Attach is a letter from Yves Laurore. The name of his business is YLR Home Improvement. His last known business address is 139 North Franklyn St. Hempstead, NY 11550. His office number is 516-544-4500.

His cell number is 516-779-1266. The name of the Tenant who accidentally through away Dove Transport's documents is Marjorie Joseph. My wife's sister who has been living with for years. Her telephone number is 631-871-1152. Should you have any question, please feel free to call me at 631-508-8208. Or, if you so desire, you may contact me via email.

Sincerely yours,

Mr. Jean R. Daniel ,

*Exhibit A "18"*

March 12, 2020

From: YLR Home Improvement,

139 North Franklyn Street,

Hempstead, NY 11550

To:  Whom it may concern

Please note that on March 15,2018, I was hired by Mr. & Mrs. Jean R. Daniel, who reside at 72 Granada Circle, Mount Sinai, NY. I was hired to investigate the condition of their roof because each time it rained water seeped right through their ceiling and walls. They specifically complained of water coming down from the ceiling of their family room, their business room and a room on the left side of the first floor.

Upon my investigation, it was determined that the entire roof needed replacement. There were missing shingles, and brittle shingles throughout the entire roof. There were missing nails and cracks as well which would cause the leaks that the Daniels complained of.  I then began my work on March 22, 2018 and did complete the same on March 29, 2018. I am providing a copy of my card, which has any and all needed information of my business, including a number to call me if you so desire.

Yours truly,

Yves Laurore, President

**From:** goodtone450@aol.com,
**To:** jeanandnicky@yahoo.com,
**Subject:** Fwd: Photos 1, 2 & 3
**Date:** Thu, Mar 19, 2020 7:57 pm
**Attachments:** 20200318_120342.jpg (3888K), 20200318_120350.jpg (3458K), 20200318_115845.jpg (5671K)

-----Original Message-----
From: r <goodtone450@aol.com>
To: Theresa.Gallager <Theresa.Gallager@omig.ny.gov>
Sent: Thu, Mar 19, 2020 6:01 pm
Subject: Photos 1, 2 & 3

From: Mr. Jean R. Daniel

To:    Theresa A. Gallager

Re:    Project No.: 20-3456

Dear Theresa A. Gallager:

The first 3 photos are photos of the house or building itself, the boiler room's entrance towards the left and Dove Transport's former office towards the right side of both photos.

-----Original Message-----
From: goodtone450@aol.com <goodtone450@aol.com>
To: goodtone450@aol.com <goodtone450@aol.com>
Sent: Thu, Mar 19, 2020 5:23 pm

*Sent from my MetroPCS 4G LTE Android device*

3 Attached Images









**From:** goodtone450@aol.com,
**To:** Theresa.Gallager@omig.ny.gov,
**Subject:** Photos 4, 5, 6 & 7
**Date:** Thu, Mar 19, 2020 6:10 pm
**Attachments:** 20200318_115837.jpg (4302K), 20200318_120105.jpg (5727K), 20200318_120101.jpg (6295K), 20200318_120103.jpg (6551K)

Photos 4, 5, 6 and 7 all show the area of concern. Dove Transport's room was situated towards the far right. The room towards its left is a storage room to this day. The room where the windows are was the actual room where most of Dove Transport's documents were kept. All 4 photos show that the roof is fairly new.


-----Original Message-----
From: goodtone450@aol.com <goodtone450@aol.com>
To: goodtone450@aol.com <goodtone450@aol.com>
Sent: Thu, Mar 19, 2020 5:24 pm


*Sent from my MetroPCS 4G LTE Android device*


4 Attached Images








**From:** goodtone450@aol.com,
**To:** Theresa.Gallager@omig.ny.gov,
**Subject:** Photo # 8
**Date:** Thu, Mar 19, 2020 6:19 pm
**Attachments:** 20200318_120605.jpg (3959K)

Photo number 8 shows water damage which also affected the family room. Even after the roof had been replaced, you can still see the damaged area.

-----Original Message-----
From: goodtone450@aol.com <goodtone450@aol.com>
To: goodtone450@aol.com <goodtone450@aol.com>
Sent: Thu, Mar 19, 2020 5:27 pm

*Sent from my MetroPCS 4G LTE Android device*

1 Attached Images





**From:** goodtone450@aol.com,
**To:** Theresa.Gallager@omig.ny.gov,
**Subject:** Photos 9, 10, 11, 12 & 13
**Date:** Thu, Mar 19, 2020 6:26 pm
**Attachments:** 20200318_120350.jpg (3458K), 20200318_120359.jpg (3426K), 20200318_120439.jpg (4163K), 20200318_120442.jpg (4709K), 20200318_120525.jpg (3689K)

Photos 9 through 13 show new flooring. It also shows the room where the boiler and Dove Transport's room was and the actual door entrance of where Dove Transport's room was. The room is currently being rented right now.

-----Original Message-----
From: goodtone450@aol.com <goodtone450@aol.com>
To: goodtone450@aol.com <goodtone450@aol.com>
Sent: Thu, Mar 19, 2020 5:27 pm

*Sent from my MetroPCS 4G LTE Android device*

5 Attached Images








**From:** goodtone450@aol.com,
**To:** Theresa.Gallager@omig.ny.gov,
**Subject:** Fwd:
**Date:** Thu, Mar 19, 2020 6:48 pm
**Attachments:** 20200314_145249_resized.jpg (726K), 20200314_145308_resized.jpg (727K), 20200314_145341_resized.jpg (962K), 20200314_145336_resized.jpg (1050K), 20200314_145351_resized.jpg (464K)

Photos 14, 15, 16, 17 & 18 show the interior of the room where Dove Transport's documents were kept. It had been completely redone by contractor by the name of John Petsco. His number is 631-252-7965. The last known address for him on record is 12 Beach Avenue Port Jefferson Station, NY 11776. His last known email address is jp@liccinc.com. We were able to reach him via phone. He promised to send us a letter or the actual copy of the worksheet, but has not yet done so.


-----Original Message-----
From: goodtone450@aol.com <goodtone450@aol.com>
To: goodtone450@aol.com <goodtone450@aol.com>
Sent: Thu, Mar 19, 2020 5:31 pm


*Sent from my MetroPCS 4G LTE Android device*


5 Attached Images








**From:** goodtone450@aol.com,
**To:** Theresa.Gallager@omig.ny.gov,
**Subject:** Photos 19, 20, 21, 22 & 23
**Date:** Thu, Mar 19, 2020 7:04 pm
**Attachments:** 20200314_144722_resized.jpg (1864K), 20200314_144738_resized.jpg (2033K), 20200314_144736_resized.jpg
(2039K), 20200314_144753_resized.jpg (1167K), 20200314_144740_resized.jpg (2021K)

Photos 19 though 23 show the roof's current condition. Photo 22, where the satellite dish can be seen, show the upper
portion of the roof. We were not able to take any photos from the upper portion of the roof because we do not have a letter
to place on top of the roof in order to get there. Any attempt to do so would be a risk. The left side of the bottom of the
upper roof where the lower portion of the roof meets is where the rain water was primarily coming from.

-----Original Message-----
From: goodtone450@aol.com <goodtone450@aol.com>
To: goodtone450@aol.com <goodtone450@aol.com>
Sent: Thu, Mar 19, 2020 5:35 pm

*Sent from my MetroPCS 4G LTE Android device*

5 Attached Images







**From:** goodtone450@aol.com,
**To:** Theresa.Gallager@omig.ny.gov,
**Subject:** Photos 24, 25, 26, 27 & 28
**Date:** Thu, Mar 19, 2020 7:07 pm
**Attachments:** 20200314_144705_resized.jpg (2203K), 20200314_144712_resized.jpg (1925K), 20200314_144709_resized.jpg (2083K), 20200314_144719_resized.jpg (1992K), 20200314_144659_resized.jpg (1923K)

Photos 24, 25, 26, 27 and 28 show the roof's current condition.in its entirety.

-----Original Message-----
From: goodtone450@aol.com <goodtone450@aol.com>
To: goodtone450@aol.com <goodtone450@aol.com>
Sent: Thu, Mar 19, 2020 5:36 pm

*Sent from my MetroPCS 4G LTE Android device*

5 Attached Images



Case 2:21-cv-04097-DG-AKT   Document 55   Filed 10/29/21   Page 160 of 444 PageID #: 1726

**From:** goodtone450@aol.com,
**To:** Theresa.Gallager@omig.ny.gov,
**Subject:** Photos 29, 30, 31, 32, 33 & 34
**Date:** Thu, Mar 19, 2020 7:14 pm
**Attachments:** 20200314_144606_resized.jpg (1949K), 20200314_144614_resized.jpg (1980K), 20200314_144609_resized.jpg (2067K), 20200314_144646_resized.jpg (1724K), 20200314_144644_resized.jpg (1928K), 20200314_144657_resized.jpg (2057K)

Photos 29 through 24 show continues to show the overall condition of the roof. Photos 32 & 33 show the right side of the upper portion of the roof, together with its right side lower portion. Rain water also seeped through that side as well. The photos which show water damage to the family room is consistent with that area above.


-----Original Message-----
From: goodtone450@aol.com <goodtone450@aol.com>
To: goodtone450@aol.com <goodtone450@aol.com>
Sent: Thu, Mar 19, 2020 5:37 pm


*Sent from my MetroPCS 4G LTE Android device*


6 Attached Images



**To:** Theresa.Gallager@omig.ny.gov,

**Subject:** Photos 35, 36, 37, 38, 39 & 40

**Date:** Thu, Mar 19, 2020 7:18 pm

**Attachments:** 20200314_144512_resized.jpg (2305K), 20200314_144458_resized.jpg (1490K), 20200314_144527_resized.jpg (1427K), 20200314_144523_resized.jpg (1193K), 20200314_144601_resized.jpg (1588K), 20200314_144657_resized.jpg (2057K)

Photos 35 though 40 continues to show the overall condition of the roof. They focus more towards the corner, the edge of the front of the house.


-----Original Message-----
From: goodtone450@aol.com <goodtone450@aol.com>
To: goodtone450@aol.com <goodtone450@aol.com>
Sent: Thu, Mar 19, 2020 5:38 pm


*Sent from my MetroPCS 4G LTE Android device*



6 Attached Images



From: goodtone450@aol.com
**To:** Theresa.Gallager@omig.ny.gov,
**Subject:** Photos 41, 42, 43, 44, 45, 46, 47 & 48
**Date:** Thu, Mar 19, 2020 7:21 pm
**Attachments:** 20200314_144445_resized.jpg (1562K), 20200314_144442_resized.jpg (1892K), 20200314_144456_resized.jpg (2288K), 20200314_144455_resized.jpg (2011K), 20200314_144512_resized.jpg (2305K), 20200314_144458_resized.jpg (1490K), 20200314_144609_resized.jpg (2067K), 20200314_144437_resized.jpg (1374K)

Photos 41 through 48 show additional photos and angle of the new roof as it is to this day.


-----Original Message-----
From: goodtone450@aol.com <goodtone450@aol.com>
To: goodtone450@aol.com <goodtone450@aol.com>
Sent: Thu, Mar 19, 2020 5:39 pm


*Sent from my MetroPCS 4G LTE Android device*


8 Attached Images

**From:** goodtone450@aol.com,
**To:** Theresa.Gallager@omig.ny.gov,
**Subject:** Photo 49
**Date:** Thu, Mar 19, 2020 7:24 pm
**Attachments:** 20200318_120123_resized.jpg (2876K)

Photo 49 may be a repeat but it shows the extended portion of the house. It is the room next to the entrance door towards its left. The upper roof of such an extension had also been replaced on the same day as indicated by the Contractor. That is where documents where kept.

-----Original Message-----
From: goodtone450@aol.com <goodtone450@aol.com>
To: goodtone450@aol.com <goodtone450@aol.com>
Sent: Thu, Mar 19, 2020 6:29 pm


*Sent from my MetroPCS 4G LTE Android device*


1 Attached Images



**From:** goodtone450@aol.com,
**To:** Theresa.Gallager@omig.ny.gov,
**Subject:** Photo # 50
**Date:** Thu, Mar 19, 2020 7:26 pm
**Attachments:** 20200318_115845.jpg (5671K)

Photo #50 is a better photo of photo number 49, clearly showing such an extension.

-----Original Message-----
From: goodtone450@aol.com <goodtone450@aol.com>
To: goodtone450@aol.com <goodtone450@aol.com>
Sent: Thu, Mar 19, 2020 6:30 pm

*Sent from my MetroPCS 4G LTE Android device*

1 Attached Images



 , Inc.

**Insurance Claims Adjusters**

11405 North Community Road
Suite 400
Charlotte, NC 28277

| | | Home: | (631) 846-6497 |
| Insured: | Daniel, Jean | Cell: | (347) 551-9786 |
| Property: | 72 GRANADA CIR | | |
| | MOUNT SINAI, NY 11766 | | |
| Home: | 72 GRANADA CIR | | |
| | MOUNT SINAI, NY 11766 | | |

Claim Rep.:   Jose Flores

| Estimator: | Jonathan Abrandt | Business: | (631) 379-0981 |
| Business: | 7 Berkshire Ct | E-mail: | abrandj@gmail.com |
| | Huntington Station, NY 11746 | | |

**Claim Number:** 02NY10539590      **Policy Number:** 10539590      **Type of Loss:** XNET IMPOR

| Date Contacted: | 3/20/2015 | | |
| Date of Loss: | 3/4/2015 | Date Received: | 3/19/2015 |
| Date Inspected: | 3/25/2015 | Date Entered: | 3/23/2015 8:57 AM |
| Date Est. Completed: | 5/14/2015 11:42 AM | | |

| Price List: | NYLI8X_MAR15 |
| | Restoration/Service/Remodel |
| Estimate: | DANIEL__JEAN2 |



**Insurance Claims Adjusters**

11405 North Community Road
Suite 400
Charlotte, NC 28277

**DANIEL__JEAN2**

**Main Level**



| Dining Room | | | | | Height: 8' |
|---|---|---|---|---|---|

313.33  SF Walls
464.13  SF Walls & Ceiling
16.75  SY Flooring
49.17  LF Ceil. Perimeter

150.79  SF Ceiling
150.79  SF Floor
37.17  LF Floor Perimeter

| Missing Wall - Goes to Floor | 6' 4" X 6' 8" | Opens into Exterior |
|---|---|---|
| Missing Wall - Goes to Floor | 5' 8" X 6' 8" | Opens into KITCHEN |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 1.  Remove Ceramic/porcelain tile | 301.58 SF | 2.44 | 0.00 | 147.18 | 883.04 | (0.00) | 883.04 |
| 2.  Ceramic/porcelain tile Continuous with kitchen | 150.79 SF | 11.40 | 53.06 | 343.80 | 2,115.87 | (265.81) | 1,850.06 |
| 3.  R&R Baseboard - 3 1/4" | 18.58 LF | 4.32 | 1.76 | 16.06 | 98.09 | (10.57) | 87.52 |
| 4.  Paint baseboard - two coats | 18.58 LF | 1.45 | 0.18 | 5.38 | 32.50 | (4.07) | 28.43 |
| 5.  Baseboard heat - steam or hot water - Detach & reset | 9.29 LF | 17.63 | 0.00 | 32.76 | 196.54 | (0.00) | 196.54 |
| 6.  Final cleaning - construction - Residential | 150.79 SF | 0.27 | 0.00 | 8.14 | 48.85 | (0.00) | 48.85 |
| **Totals:  Dining Room** | | | **55.00** | **553.32** | **3,374.89** | **280.45** | **3,094.44** |

| Kitchen | | | | | Height: 8' |
|---|---|---|---|---|---|

385.89  SF Walls
648.31  SF Walls & Ceiling
29.16  SY Flooring
68.17  LF Ceil. Perimeter

262.42  SF Ceiling
262.42  SF Floor
49.00  LF Floor Perimeter

| Missing Wall - Goes to Floor | 6' 11" X 6' 8" | Opens into Exterior |
|---|---|---|
| Missing Wall - Goes to Floor | 5' 8" X 6' 8" | Opens into DINING_ROOM |
| Missing Wall - Goes to Floor | 6' 7" X 6' 8" | Opens into DEN |
| Window | 7' 11" X 4' | Opens into Exterior |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 7.  R&R 1/2" drywall - hung, taped, floated, ready for paint | 115.77 SF | 2.76 | 5.09 | 63.90 | 388.52 | (0.00) | 388.52 |
| 8.  R&R Countertop - flat laid plastic laminate | 18.00 LF | 54.88 | 40.38 | 197.56 | 1,225.78 | (228.35) | 997.43 |
| 9.  R&R Custom cabinets - base units | 14.00 LF | 231.26 | 205.55 | 647.54 | 4,090.73 | (822.06) | 3,268.67 |



**Insurance Claims Adjusters**

11405 North Community Road
Suite 400
Charlotte, NC 28277

**CONTINUED - Kitchen**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 10. R&R Custom cabinets - full height units | 3.00 LF | 321.59 | 63.42 | 192.96 | 1,221.15 | (247.10) | 974.05 |
| 11. R&R Custom cabinets - wall units - 30" tall | 21.00 LF | 196.34 | 194.82 | 824.64 | 5,142.60 | (1,021.38) | 4,121.22 |
| 12. Remove Ceramic/porcelain tile | 524.83 SF | 2.44 | 0.00 | 256.12 | 1,536.71 | (0.00) | 1,536.71 |
| 2 layers present | | | | | | | |
| 13. Ceramic/porcelain tile | 262.42 SF | 11.40 | 92.35 | 598.32 | 3,682.26 | (770.99) | 2,911.27 |
| 14. R&R Baseboard - 3 1/4" | 24.50 LF | 4.32 | 2.32 | 21.18 | 129.34 | (18.59) | 110.75 |
| 15. Excavate by hand | 2.00 CY | 53.71 | 0.00 | 21.48 | 128.90 | (0.00) | 128.90 |
| 16. Bedding sand | 2.00 CY | 27.39 | 3.45 | 10.96 | 69.19 | (14.56) | 54.63 |
| 17. Sink - single - Detach & reset | 1.00 EA | 152.13 | 0.00 | 30.42 | 182.55 | (0.00) | 182.55 |
| 18. Range - gas - Remove & reset | 1.00 EA | 163.60 | 0.00 | 32.72 | 196.32 | (0.00) | 196.32 |
| 19. Refrigerator - Remove & reset | 1.00 EA | 41.41 | 0.00 | 8.28 | 49.69 | (0.00) | 49.69 |
| 20. Dishwasher - Detach & reset | 1.00 EA | 278.29 | 0.00 | 55.66 | 333.95 | (0.00) | 333.95 |
| 21. Paint more than the walls - two coats | 590.42 SF | 0.91 | 9.68 | 107.46 | 654.42 | (109.40) | 545.02 |
| 22. Paint baseboard - two coats | 24.50 LF | 1.45 | 0.23 | 7.10 | 42.86 | (5.36) | 37.50 |
| 23. R&R Concrete slab on grade - 4" - finished in place | 48.00 SF | 7.99 | 6.25 | 76.70 | 466.47 | (0.00) | 466.47 |
| 24. Miscellaneous Concrete - Labor Minimum | 1.00 EA | 342.81 | 0.00 | 68.56 | 411.37 | (0.00) | 411.37 |
| 25. Remove Thin brick veneer | 21.00 SF | 2.55 | 0.00 | 10.72 | 64.27 | (0.00) | 64.27 |
| 26. Baseboard heat - steam or hot water - Detach & reset | 10.00 LF | 17.63 | 0.00 | 35.26 | 211.56 | (0.00) | 211.56 |
| 27. Seal part of the walls w/anti-microbial coating - one coat | 115.77 SF | 1.57 | 5.89 | 36.36 | 224.01 | (0.00) | 224.01 |
| 28. Sewer clean-out - 6" diameter | 1.00 EA | 218.17 | 7.38 | 43.64 | 269.19 | (0.00) | 269.19 |
| 29. Contents - move out then reset | 1.00 EA | 57.24 | 0.00 | 11.44 | 68.68 | (0.00) | 68.68 |
| 30. Plumber - per hour | 8.00 HR | 124.36 | 0.00 | 198.98 | 1,193.86 | (0.00) | 1,193.86 |
| Initial excavation to determine extent of damage to plumbing | | | | | | | |
| 31. Final cleaning - construction - Residential | 262.42 SF | 0.27 | 0.00 | 14.18 | 85.03 | (0.00) | 85.03 |
| **Totals:  Kitchen** | | | 636.81 | 3,572.14 | 22,069.41 | 3,237.79 | 18,831.62 |



**Insurance Claims Adjusters**

11405 North Community Road
Suite 400
Charlotte, NC 28277

**Den**                                                                                     Height: 8'

385.44 SF Walls                    242.74 SF Ceiling
628.18 SF Walls & Ceiling          242.74 SF Floor
26.97 SY Flooring                  53.21 LF Floor Perimeter
59.79 LF Ceil. Perimeter

| | | |
|---|---|---|
| **Missing Wall - Goes to Floor** | 6' 7" X 6' 8" | **Opens into KITCHEN** |
| **Window** | 3' 8" X 4' | **Opens into Exterior** |
| **Window** | 5' 7" X 4' | **Opens into Exterior** |
| **Window** | 3' X 4' | **Opens into Exterior** |

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 32. R&R 1/2" drywall - hung, taped, floated, ready for paint | 62.00 SF | 2.76 | 2.73 | 34.24 | 208.09 | (0.00) | 208.09 |
| 33. Remove Carpet | 182.05 SF | 0.41 | 0.00 | 14.92 | 89.56 | (0.00) | 89.56 |
| Remaining post mitigation | | | | | | | |
| 34. Carpet - High grade | 279.15 SF | 4.44 | 85.23 | 247.88 | 1,572.54 | (264.94) | 1,307.60 |
| 15 % waste added for Carpet - High grade. | | | | | | | |
| 35. Remove Carpet pad | 182.05 SF | 0.17 | 0.00 | 6.20 | 37.15 | (0.00) | 37.15 |
| 36. Carpet pad | 242.74 SF | 0.58 | 9.42 | 28.16 | 178.37 | (30.04) | 148.33 |
| 37. Paint part of the walls - two coats | 269.81 LF | 0.91 | 4.42 | 49.10 | 299.05 | (37.49) | 261.56 |
| 38. Door dummy knob - Detach & reset | 2.00 EA | 10.08 | 0.00 | 4.04 | 24.20 | (0.00) | 24.20 |
| 39. R&R Bookcase - built in 10" - (SF of face area) | 80.00 SF | 15.27 | 43.88 | 244.32 | 1,509.80 | (297.17) | 1,212.63 |
| To access plumbing lines | | | | | | | |
| 40. R&R Paneling - Premium grade | 154.17 SF | 4.31 | 23.94 | 132.90 | 821.31 | (156.31) | 665.00 |
| 41. R&R Baseboard - 3 1/4" | 53.21 LF | 4.32 | 5.05 | 45.98 | 280.90 | (50.48) | 230.42 |
| 42. R&R Casing - 2 1/4" | 105.00 LF | 3.28 | 7.61 | 68.90 | 420.91 | (68.31) | 352.60 |
| 43. Seal & paint bookcase | 80.00 SF | 2.51 | 3.38 | 40.16 | 244.34 | (51.05) | 193.29 |
| 44. Paint casing - two coats | 105.00 LF | 1.45 | 1.00 | 30.46 | 183.71 | (38.31) | 145.40 |
| 45. Seal the floor w/anti-microbial coating - one coat | 242.74 SF | 1.57 | 12.35 | 76.22 | 469.67 | (0.00) | 469.67 |
| 46. R&R Door opening (jamb & casing) - 32"to36"wide - paint grade | 3.00 EA | 121.90 | 14.12 | 73.14 | 452.96 | (88.01) | 364.95 |
| 47. Paint door slab only - 2 coats (per side) | 3.00 EA | 35.36 | 1.59 | 21.22 | 128.89 | (26.92) | 101.97 |
| 48. R&R Interior door unit | 2.00 EA | 226.55 | 16.58 | 90.62 | 560.30 | (103.61) | 456.69 |
| 49. Excavate by hand | 2.00 CY | 53.71 | 0.00 | 21.48 | 128.90 | (0.00) | 128.90 |
| 50. Bedding sand | 2.00 CY | 27.39 | 3.45 | 10.96 | 69.19 | (14.56) | 54.63 |
| 51. R&R Concrete slab on grade - 4" - finished in place | 60.00 SF | 7.99 | 7.81 | 95.88 | 583.09 | (0.00) | 583.09 |
| 52. Contents - move out then reset - Large room | 1.00 EA | 85.86 | 0.00 | 17.18 | 103.04 | (0.00) | 103.04 |
| 53. Final cleaning - construction - Residential | 242.74 SF | 0.27 | 0.00 | 13.10 | 78.64 | (0.00) | 78.64 |
| **Totals: Den** | | | 242.56 | 1,367.06 | 8,444.61 | 1,227.20 | 7,217.41 |

DANIEL__JEAN2                                                        5/14/2015                    Page: 4



**Insurance Claims Adjusters**

11405 North Community Road
Suite 400
Charlotte, NC 28277



**Guest Bedroom**                                                        Height: 8'

330.37 SF Walls                       105.73 SF Ceiling
436.09 SF Walls & Ceiling            105.73 SF Floor
11.75 SY Flooring                     41.30 LF Floor Perimeter
41.30 LF Ceil. Perimeter

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 54. 1/2" drywall - hung, taped, floated, ready for paint | 82.59 SF | 2.13 | 3.63 | 35.18 | 214.73 | (0.00) | 214.73 |
| 55. Carpet - High grade | 121.59 SF | 4.44 | 37.12 | 107.98 | 684.96 | (86.55) | 598.41 |
| 15 % waste added for Carpet - High grade. | | | | | | | |
| 56. Carpet pad | 105.73 SF | 0.58 | 4.10 | 12.26 | 77.68 | (9.82) | 67.86 |
| 57. Remove T & G paneling - knotty pine paneling (unfinished) | 247.78 SF | 0.50 | 0.00 | 24.78 | 148.67 | (0.00) | 148.67 |
| Remaining paneling | | | | | | | |
| 58. T & G paneling - knotty pine paneling (unfinished) | 330.37 SF | 5.29 | 48.73 | 349.54 | 2,145.93 | (628.74) | 1,517.19 |
| Water damage at base of walls | | | | | | | |
| 59. Seal & paint paneling | 330.37 SF | 1.19 | 4.84 | 78.62 | 476.60 | (99.50) | 377.10 |
| 60. Baseboard - 3 1/4" | 30.97 LF | 3.70 | 2.94 | 22.92 | 140.45 | (29.39) | 111.06 |
| 61. Contents - move out then reset | 1.00 EA | 57.24 | 0.00 | 11.44 | 68.68 | (0.00) | 68.68 |
| 62. Final cleaning - construction - Residential | 105.73 SF | 0.27 | 0.00 | 5.72 | 34.27 | (0.00) | 34.27 |
| **Totals: Guest Bedroom** | | | **101.36** | **648.44** | **3,991.97** | **854.00** | **3,137.97** |



**Utility Room**                                                        Height: 8'

279.78 SF Walls                       65.16 SF Ceiling
344.94 SF Walls & Ceiling            65.16 SF Floor
7.24 SY Flooring                      34.97 LF Floor Perimeter
34.97 LF Ceil. Perimeter

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 63. Boiler (Bid Item) - Pelco Fuel Corp.* | 1.00 EA | 5,200.00 | 0.00 | 0.00 | 5,200.00 | (1,820.00) | 3,380.00 |
| Plumbing failure caused the boiler to seize. Bid item based on replacement estimate from Pelco Fuel Corp. | | | | | | | |
| 64. R&R 1/2" drywall - hung, taped, floated, ready for paint | 69.94 SF | 2.76 | 3.08 | 38.62 | 234.73 | (0.00) | 234.73 |
| 65. Paneling | 69.94 SF | 2.76 | 3.98 | 38.60 | 235.61 | (0.00) | 235.61 |
| Repair, front wall | | | | | | | |
| 66. R&R Vinyl tile | 65.16 SF | 5.07 | 11.01 | 66.08 | 407.45 | (0.00) | 407.45 |
| 67. Floor preparation for resilient flooring | 65.16 SF | 0.69 | 0.56 | 9.00 | 54.52 | (0.00) | 54.52 |



**Insurance Claims Adjusters**
, Inc.

11405 North Community Road
Suite 400
Charlotte, NC 28277

### CONTINUED - Utility Room

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 68. R&R Baseboard - 2 1/4" | 17.49 LF | 3.49 | 1.16 | 12.22 | 74.42 | (10.48) | 63.94 |
| 69. Paint baseboard - two coats | 17.49 LF | 1.45 | 0.17 | 5.08 | 30.61 | (6.38) | 24.23 |
| 70. Paint the walls - two coats | 279.78 SF | 0.91 | 4.59 | 50.92 | 310.11 | (64.80) | 245.31 |
| 71. Excavate by hand | 0.50 CY | 53.71 | 0.00 | 5.38 | 32.24 | (0.00) | 32.24 |
| 72. Bedding sand | 0.50 CY | 27.39 | 0.86 | 2.74 | 17.30 | (3.65) | 13.65 |
| 73. R&R Concrete slab on grade - 4" - finished in place | 4.00 SF | 7.99 | 0.52 | 6.40 | 38.88 | (0.00) | 38.88 |
| 74. Washing machine - Remove & reset | 1.00 EA | 44.67 | 0.00 | 8.94 | 53.61 | (0.00) | 53.61 |
| 75. Detach & Reset Dryer - Gas | 1.00 EA | 106.13 | 0.00 | 21.22 | 127.35 | (0.00) | 127.35 |
| 76. Final cleaning - construction - Residential | 65.16 SF | 0.27 | 0.00 | 3.52 | 21.11 | (0.00) | 21.11 |
| **Totals: Utility Room** | | | **25.93** | **268.72** | **6,837.94** | **1,905.31** | **4,932.63** |

### General

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 77. Plumber - per hour | 32.00 HR | 124.36 | 0.00 | 795.90 | 4,775.42 | (0.00) | 4,775.42 |
| To facilitate replacement of plumbing lines in slab | | | | | | | |
| 78. General Laborer - per hour | 32.00 HR | 41.96 | 0.00 | 268.54 | 1,611.26 | (0.00) | 1,611.26 |
| Compact sand in trench, trenching | | | | | | | |
| 79. General Demolition - per hour | 32.00 HR | 67.91 | 0.00 | 434.62 | 2,607.74 | (0.00) | 2,607.74 |
| Additional removal of floor tile & slabs | | | | | | | |
| 80. Dumpster load - Approx. 12 yards, 1-3 tons of debris | 1.00 EA | 500.00 | 0.00 | 100.00 | 600.00 | (0.00) | 600.00 |
| 81. Job-site cargo/storage container - 16' long - per month | 2.00 MO | 79.85 | 13.77 | 34.70 | 208.17 | (0.00) | 208.17 |
| **Totals: General** | | | **13.77** | **1,633.76** | **9,802.59** | **0.00** | **9,802.59** |
| **Total: Main Level** | | | **1,075.43** | **8,043.44** | **54,521.41** | **7,504.75** | **47,016.66** |
| **Line Item Totals: DANIEL__JEAN2** | | | **1,075.43** | **8,043.44** | **54,521.41** | **7,504.75** | **47,016.66** |



**Insurance Claims Adjusters**

11405 North Community Road
Suite 400
Charlotte, NC 28277

## Grand Total Areas:

| | | | | | |
|---|---|---|---|---|---|
| 1,694.80 | SF Walls | 826.83 | SF Ceiling | 2,521.64 | SF Walls and Ceiling |
| 826.83 | SF Floor | 91.87 | SY Flooring | 215.64 | LF Floor Perimeter |
| 0.00 | SF Long Wall | 0.00 | SF Short Wall | 253.39 | LF Ceil. Perimeter |
| | | | | | |
| 826.83 | Floor Area | 898.06 | Total Area | 1,694.80 | Interior Wall Area |
| 1,370.35 | Exterior Wall Area | 171.04 | Exterior Perimeter of Walls | | |
| | | | | | |
| 0.00 | Surface Area | 0.00 | Number of Squares | 0.00 | Total Perimeter Length |
| 0.00 | Total Ridge Length | 0.00 | Total Hip Length | | |



**Insurance Claims Adjusters**

11405 North Community Road
Suite 400
Charlotte, NC 28277

## Summary for Dwelling

| | |
|---|---:|
| Line Item Total | 45,402.54 |
| Storage Rental Tax | 13.77 |
| Subtotal | 45,416.31 |
| Overhead | 4,021.72 |
| Profit | 4,021.72 |
| Mat Tax (Cap Impr) | 1,061.66 |
| **Replacement Cost Value** | **$54,521.41** |
| Less Depreciation | (7,504.75) |
| **Actual Cash Value** | **$47,016.66** |
| Less Deductible | (1,000.00) |
| Less Prior Payment(s) | (16,049.79) |
| **Net Claim Remaining** | **$29,966.87** |
| Total Recoverable Depreciation | 7,504.75 |
| **Net Claim Remaining if Depreciation is Recovered** | **$37,471.62** |

Jonathan Abrandt



**Insurance Claims Adjusters**

11405 North Community Road
Suite 400
Charlotte, NC 28277

## Recap of Taxes, Overhead and Profit

| | Overhead (10%) | Profit (10%) | Mat Tax (Cap Impr) (8.625%) | Clothing Local Tax (4.625%) | Clothing State Tax (4%) | Manuf. Home Tax (8.625%) | Storage Rental Tax (8.625%) |
|---|---|---|---|---|---|---|---|
| **Line Items** | 4,021.72 | 4,021.72 | 1,061.66 | 0.00 | 0.00 | 0.00 | 13.77 |
| **Total** | 4,021.72 | 4,021.72 | 1,061.66 | 0.00 | 0.00 | 0.00 | 13.77 |



**Insurance Claims Adjusters**

11405 North Community Road
Suite 400
Charlotte, NC 28277

### Recap by Room

**Estimate: DANIEL__JEAN2**

**Area: Main Level**

| | | |
|---|---|---|
| Dining Room | 2,766.57 | 6.09% |
| Kitchen | 17,860.46 | 39.34% |
| Den | 6,834.99 | 15.05% |
| Guest Bedroom | 3,242.17 | 7.14% |
| Utility Room | 6,543.29 | 14.41% |
| General | 8,155.06 | 17.96% |
| **Area Subtotal:  Main Level** | **45,402.54** | **100.00%** |
| **Subtotal of Areas** | **45,402.54** | **100.00%** |
| **Total** | **45,402.54** | **100.00%** |



**Insurance Claims Adjusters**

, Inc.

11405 North Community Road
Suite 400
Charlotte, NC 28277

## Recap by Category with Depreciation

| O&P Items | RCV | Deprec. | ACV |
|---|---|---|---|
| APPLIANCES | 634.10 | | 634.10 |
| CABINETRY | 8,771.29 | 2,192.83 | 6,578.46 |
| CLEANING | 223.24 | | 223.24 |
| CONCRETE & ASPHALT | 817.69 | | 817.69 |
| CONTENT MANIPULATION | 360.04 | | 360.04 |
| GENERAL DEMOLITION | 6,561.74 | | 6,561.74 |
| DOORS | 397.84 | 99.46 | 298.38 |
| DRYWALL | 703.54 | | 703.54 |
| EXCAVATION | 364.96 | 30.83 | 334.13 |
| FLOOR COVERING - CARPET | 1,981.40 | 366.23 | 1,615.17 |
| FLOOR COVERING - VINYL | 275.63 | | 275.63 |
| FINISH CARPENTRY / TRIMWORK | 2,270.49 | 553.65 | 1,716.84 |
| FINISH HARDWARE | 20.16 | | 20.16 |
| FIRE PROTECTION SYSTEMS | 3,979.52 | | 3,979.52 |
| HEAT, VENT & AIR CONDITIONING | 340.08 | | 340.08 |
| LABOR ONLY | 1,342.72 | | 1,342.72 |
| PLUMBING | 1,365.18 | | 1,365.18 |
| PANELING & WOOD WALL FINISHES | 2,541.95 | 762.00 | 1,779.95 |
| PAINTING | 2,540.37 | 436.72 | 2,103.65 |
| TILE | 4,710.60 | 1,005.75 | 3,704.85 |
| **O&P Items Subtotal** | 40,202.54 | 5,447.47 | 34,755.07 |

| Non-O&P Items | RCV | Deprec. | ACV |
|---|---|---|---|
| HEAT, VENT & AIR CONDITIONING | 5,200.00 | 1,820.00 | 3,380.00 |
| Non-O&P Items Subtotal | 5,200.00 | 1820.00 | 3,380.00 |
| O&P Items Subtotal | 40,202.54 | 5,447.47 | 34,755.07 |
| Storage Rental Tax | 13.77 | | 13.77 |
| Overhead | 4,021.72 | | 4,021.72 |
| Profit | 4,021.72 | | 4,021.72 |
| Mat Tax (Cap Impr) | 1,061.66 | 237.28 | 824.38 |
| **Total** | 54,521.41 | 7,504.75 | 47,016.66 |

7/18/2020                                         20-3456 DOVE TRANSPORT SERVICE LP

**From:** Theresa.Gallager@omig.ny.gov,
**To:** goodtone450@aol.com,
**Cc:** Elisa.Nunziato@omig.ny.gov, Joseph.Scialdo@omig.ny.gov,
**Subject:** 20-3456 DOVE TRANSPORT SERVICE LP
**Date:** Wed, Jul 15, 2020 5:38 am

Good morning Mr. Daniel,

I hope this email finds you well. We are in receipt of your correspondence from March 19, 2020 advising that certain records were lost/destroyed, along with photos. We thank you for submitting that information to us. "Pursuant to the May 2015 Medicaid Update (Volume 31, No. 5), please provide responses to the following:"

1. When did the provider become aware of the water damage occurring?
2. When did you become aware of the loss of records?
3. What were the dates of service for the lost/destroyed records?
4. Were there any attempts to remediate/mitigate the damaged records?
5. When did your tenant throw out the bag? Was it placed at the curb for pick up? Brought to the dump? Please detail.
6. Was a Homeowners Insurance claim filed?
7. Can you please supply the bill from the Contractor?
8. What was the date that the pictures were taken?
9. Do you have a police report?

Due to the current situation with the COVID-19 Virus, I continue to work from outside of the office with limited phone access, but you may continue to contact me at this address with any requests or questions.

Thank you in advance for your cooperation.

Regards,
Theresa


Theresa A. Gallager
Investigator Specialist
Self-Disclosure Unit
NYS Office of Medicaid Inspector General
800 North Pearl Street
Albany, NY 12204 518-473-2989

---

**From:** r [goodtone450@aol.com]
**Sent:** Thursday, March 19, 2020 10:54 PM
**To:** Gallager, Theresa A (OMIG)
**Subject:** A Letter from the Roof Contractor & The Information of the Tenant

ATTENTION: This email came from an external source. Do not open attachments or click on links from unknown senders or unexpected emails.

From: Jean R. Daniel
To:   Theresa A. Gallager
Re:  Disclosure # 20-3456

Dear Theresa A. Gallager:



7/18/2020                                        Fwd: 20-3456 DOVE TRANSPORT SERVICE LP

**From:** goodtone450@aol.com,
**To:** coachraushan@gmail.com,
**Subject:** Fwd: 20-3456 DOVE TRANSPORT SERVICE LP
**Date:** Sat, Jul 18, 2020 12:47 pm

A Response to Theresa Gallager.

-----Original Message-----
From: r <goodtone450@aol.com>
To: coachraushan@gmail.com <coachraushan@gmail.com>
Sent: Sat, Jul 18, 2020 12:46 pm
Subject: Fwd: 20-3456 DOVE TRANSPORT SERVICE LP

Hey Mohammed! Hope all is well with you and yours with that Covid-19 thing.I am sending you a response from Theresa Gallager, the Investigator Specialist from the Office of Medicaid Inspector General. She sent us an email on July 15, 2020 requesting additional information. Should you have any question, please feel free to call me.

-----Original Message-----
From: r <goodtone450@aol.com>
To: jeanandnicky@yahoo.com <jeanandnicky@yahoo.com>
Sent: Sat, Jul 18, 2020 12:41 pm
Subject: Fwd: 20-3456 DOVE TRANSPORT SERVICE LP

-----Original Message-----
From: r <goodtone450@aol.com>
To: jeanandnicky@optonline.net <jeanandnicky@optonline.net>
Sent: Sat, Jul 18, 2020 12:40 pm
Subject: Fwd: 20-3456 DOVE TRANSPORT SERVICE LP

-----Original Message-----
From: r <goodtone450@aol.com>
To: jeanandnicky@opt.net <jeanandnicky@opt.net>
Sent: Sat, Jul 18, 2020 12:40 pm
Subject: Fwd: 20-3456 DOVE TRANSPORT SERVICE LP

-----Original Message-----
From: r <goodtone450@aol.com>
To: Theresa.Gallager@omig.ny.gov <Theresa.Gallager@omig.ny.gov>
Sent: Sat, Jul 18, 2020 12:40 pm
Subject: Re: 20-3456 DOVE TRANSPORT SERVICE LP

Date: 7/18/2020

From: Jean R. Daniel, (Dove Transport Service, LP

To: Theresa Gallager

Re; 20-3456-Dove Transport Service, LP

Good afternoon Theresa Gallager:

Exhibit "20"

7/18/2020                                      Fwd: 20-3456 DOVE TRANSPORT SERVICE LP

We are in receipt of your email dated July 15, 2020 requesting additional information about the loss documents. And the following information will further shed some light into the matter;

1. The provider became aware of the loss due to water damage on or around March 9, 2020 after having been informed by the Tenant, Marjorie Joseph, that she inadvertently threw away Dove Transport's documents in late February of 2020.

2. We did not give up hope that the records or documents were loss even though we could not find it. We, however, learned that such documents were definitely loss since Ms. Joseph admitted that she threw away a drenched, large, black plastic bag sometimes in late February of 2020. We believe that the tag which clearly identified those records had been erased due to water damage.

3. Most of the service records for the years of 2015, 2016, and 2017 were lost. Nevertheless, there were a few service records that were found within Dove's Transport's old file cabinet covering some of the Trip Slips for 2016.

4. I did everything I could to mitigate the damage to Dove Transport's record from a prior water damage by placing the records within a sealed plastic bag in order to assure that no further damage would occur due to moisture. However, I could not do anything about the water damage that destroyed the records coming from the roof. I did not learn of this until late February 2020.

5. Marjorie informed me that she threw the bag a few days prior. She placed the entire bag at the curb to be picked up.

6. A Homeowners' claim was filed and John Pesco handled the claim and repaired the damaged room(s) as stated previously. I provided you with the needed information to contact John Pesco. He has a copy of such a bill. He has not responded to me to this day.

7. If your'e referring to the bill from Yves Laurore, the individual who fixed the roof, you also have his information. We have misplaced that bill as well. Feel free to contact him at 516-779-1266 or 516-544-4500.

8. Those pictures were taken a few days after you requested them.and was sent to you on or about March 19, 2020. So those pictures were taken between March 12 through 19 of 2020.

9. I didn't file a police report, as no crime was committed.

Should you have any question, please feel free to call me at 631-508-8208. Thank you.

-----Original Message-----
From: Gallager, Theresa A (OMIG) <Theresa.Gallager@omig.ny.gov>
To: goodtone450@aol.com <goodtone450@aol.com>
Cc: Nunziato, Elisa (OMIG) <Elisa.Nunziato@omig.ny.gov>; Scialdo, Joseph (OMIG) <Joseph.Scialdo@omig.ny.gov>
Sent: Wed, Jul 15, 2020 5:38 am
Subject: 20-3456 DOVE TRANSPORT SERVICE LP

Good morning Mr. Daniel,

I hope this email finds you well. We are in receipt of your correspondence from March 19, 2020 advising that certain records were lost/destroyed, along with photos. We thank you for submitting that information to us. "Pursuant to the May 2015 Medicaid Update (Volume 31, No. 5), please provide responses to the following:"

1. When did the provider become aware of the water damage occurring?
2. When did you become aware of the loss of records?
3. What were the dates of service for the lost/destroyed records?
4. Were there any attempts to remediate/mitigate the damaged records?
5. When did your tenant throw out the bag? Was it placed at the curb for pick up? Brought to the dump? Please detail.
6. Was a Homeowners Insurance claim filed?
7. Can you please supply the bill from the Contractor?

7/18/2020                           Fwd: 20-3456 DOVE TRANSPORT SERVICE LP

8. What was the date that the pictures were taken?
9. Do you have a police report?

Due to the current situation with the COVID-19 Virus, I continue to work from outside of the office with limited phone access, but you may continue to contact me at this address with any requests or questions.

Thank you in advance for your cooperation.

Regards,
Theresa

Theresa A. Gallager
Investigator Specialist
Self-Disclosure Unit
NYS Office of Medicaid Inspector General
800 North Pearl Street
Albany, NY 12204 518-473-2989

From: r [goodtone450@aol.com]
Sent: Thursday, March 19, 2020 10:54 PM
To: Gallager, Theresa A (OMIG)
Subject: A Letter from the Roof Contractor & The Information of the Tenant

ATTENTION: This email came from an external source. Do not open attachments or click on links from unknown senders or unexpected emails.

From: Jean R. Daniel
To:   Theresa A. Gallager
Re:  Disclosure # 20-3456

Dear Theresa A. Gallager:

Attach is a letter from Yves Laurore. The name of his business is YLR Home Improvement. His last known business address is 139 North Franklyn St. Hempstead, NY 11550. His office number is 516-544-4500.

His cell number is 516-779-1266. The name of the Tenant who accidentally through away Dove Transport's documents is Marjorie Joseph. My wife's sister who has been living with for years. Her telephone number is 631-871-1152. Should you have any question, please feel free to call me at 631-508-8208. Or, if you so desire, you may contact me via email.

Sincerely yours,

Mr. Jean R. Daniel ,

Theresa A. Gallager
Investigator Specialist
Self-Disclosure Unit
NYS Office of Medicaid Inspector General
800 North Pearl Street
Albany, NY 12204 518-473-2989

9/24/2020

Fwd: 20-3456 DOVE TRANSPORT SERVICE LP

From: goodtone450@aol.com,
To: coachraushan@gmail.com,
Subject: Fwd: 20-3456 DOVE TRANSPORT SERVICE LP
Date: Sat, Jul 18, 2020 2:02 pm

-----Original Message-----
From: r <goodtone450@aol.com>
To: Theresa.Gallager@omig.ny.gov <Theresa.Gallager@omig.ny.gov>
Sent: Sat, Jul 18, 2020 2:00 pm
Subject: Fwd: 20-3456 DOVE TRANSPORT SERVICE LP

7/18/2020

From: Mr. Jean R. Daniel

To:   Theresa Gallager

Re: 20-3456-Dove Transport Service

Dear Theresa Gallager"

I am clarifying te following dates and information in my #2 response:

Marjorie informed us in February, of 2020 that she threw away the plastic bag in late February, 2018. .

The following information is added to my #5 response for clarity:

Marjorie informed me that she threw away the bag a few days prior to the reparation of the roof. She placed the bag at the
curb to be picked up.

Should you have any further question, please feel free to email me. Thank you.

Sincerely yours,

Mr. Jean R. Daniel

-----Original Message-----
From: r <goodtone450@aol.com>
To: Theresa.Gallager@omig.ny.gov <Theresa.Gallager@omig.ny.gov>
Sent: Sat, Jul 18, 2020 12:40 pm
Subject: Re: 20-3456 DOVE TRANSPORT SERVICE LP

Date: 7/18/2020

From: Jean R. Daniel, (Dove Transport Service, LP

To: Theresa Gallager

Re; 20-3456-Dove Transport Service, LP

Good afternoon Theresa Gallager:

We are in receipt of your email dated July 15, 2020 requesting additional information about the loss documents. And the
following information will further shed some light into the matter;

1. The provider became aware of the loss due to water damage on or around March 9, 2020 after having been informed by
the Tenant, Marjorie Joseph, that she inadvertently threw away Dove Transport's documents in late February of 2020.

9/24/2020                                           Fwd: 20-3456 DOVE TRANSPORT SERVICE LP

2. We did not give up hope that the records or documents were loss even though we could not find it. We, however, learned that such documents were definitely loss since Ms. Joseph admitted that she threw away a drenched, large, black plastic bag sometimes in late February of 2020. We believe that the tag which clearly identified those records had been erased due to water damage.

3. Most of the service records for the years of 2015, 2016, and 2017 were lost. Nevertheless, there were a few service records that were found within Dove's Transport's old file cabinet covering some of the Trip Slips for 2016.

4. I did everything I could to mitigate the damage to Dove Transport's record from a prior water damage by placing the records within a sealed plastic bag in order to assure that no further damage would occur due to moisture. However, I could not do anything about the water damage that destroyed the records coming from the roof. I did not learn of this until late February 2020.

5. Marjorie informed me that she threw the bag a few days prior. She placed the entire bag at the curb to be picked up.

6. A Homeowners' claim was filed and John Pesco handled the claim and repaired the damaged room(s) as stated previously. I provided you with the needed information to contact John Pesco. He has a copy of such a bill. He has not responded to me to this day.

7. If your'e referring to the bill from Yves Laurore, the individual who fixed the roof, you also have his information. We have misplaced that bill as well. Feel free to contact him at 516-779-1266 or 516-544-4500.

8. Those pictures were taken a few days after you requested them.and was sent to you on or about March 19, 2020. So those pictures were taken between March 12 through 19 of 2020.

9. I didn't file a police report, as no crime was committed.

Should you have any question, please feel free to call me at 631-508-8208. Thank you.

-----Original Message-----
From: Gallager, Theresa A (OMIG) <Theresa.Gallager@omig.ny.gov>
To: goodtone450@aol.com <goodtone450@aol.com>
Cc: Nunziato, Elisa (OMIG) <Elisa.Nunziato@omig.ny.gov>; Scialdo, Joseph (OMIG) <Joseph.Scialdo@omig.ny.gov>
Sent: Wed, Jul 15, 2020 5:38 am
Subject: 20-3456 DOVE TRANSPORT SERVICE LP

Good morning Mr. Daniel,

I hope this email finds you well. We are in receipt of your correspondence from March 19, 2020 advising that certain records were lost/destroyed, along with photos. We thank you for submitting that information to us. "Pursuant to the May 2015 Medicaid Update (Volume 31, No. 5), please provide responses to the following:"

1. When did the provider become aware of the water damage occurring?
2. When did you become aware of the loss of records?
3. What were the dates of service for the lost/destroyed records?
4. Were there any attempts to remediate/mitigate the damaged records?
5. When did your tenant throw out the bag? Was it placed at the curb for pick up? Brought to the dump? Please detail.
6. Was a Homeowners Insurance claim filed?
7. Can you please supply the bill from the Contractor?
8. What was the date that the pictures were taken?
9. Do you have a police report?

Due to the current situation with the COVID-19 Virus, I continue to work from outside of the office with limited phone access, but you may continue to contact me at this address with any requests or questions.

9/24/2020                                        Fwd: 20-3456 DOVE TRANSPORT SERVICE LP

Thank you in advance for your cooperation.

Regards,
Theresa


Theresa A. Gallager
Investigator Specialist
Self-Disclosure Unit
NYS Office of Medicaid Inspector General
800 North Pearl Street
Albany, NY 12204 518-473-2989

From: r [goodtone450@aol.com]
Sent: Thursday, March 19, 2020 10:54 PM
To: Gallager, Theresa A (OMIG)
Subject: A Letter from the Roof Contractor & The Information of the Tenant

ATTENTION: This email came from an external source. Do not open attachments or click on links from unknown senders or unexpected emails.

From: Jean R. Daniel
To:   Theresa A. Gallager
Re:  Disclosure # 20-3456

Dear Theresa A. Gallager:

Attach is a letter from Yves Laurore. The name of his business is YLR Home Improvement. His last known business address is 139 North Franklyn St. Hempstead, NY 11550. His office number is 516-544-4500.

His cell number is 516-779-1266. The name of the Tenant who accidentally through away Dove Transport's documents is Marjorie Joseph. My wife's sister who has been living with for years. Her telephone number is 631-871-1152. Should you have any question, please feel free to call me at 631-508-8208. Or, if you so desire, you may contact me via email.

Sincerely yours,

Mr. Jean R. Daniel ,


Theresa A. Gallager
Investigator Specialist
Self-Disclosure Unit
NYS Office of Medicaid Inspector General
800 North Pearl Street
Albany, NY 12204 518-473-2989



| NEW YORK STATE | Office of the Medicaid Inspector General |

ANDREW M. CUOMO
Governor

ERIN IVES
Acting Medicaid Inspector General

July 30, 2020

Attn: Mr. Daniel
DOVE TRANPORT SERVICE, LP
21 Granada Circle
Mount Sinai, NY 11766-2811

Re:   DOVE TRANPORT SERVICE, LP
      Provider ID # 03882157
      Self-Disclosure Project # **20-3456**

Dear Mr. Daniel,

The New York State Office of the Medicaid Inspector General (OMIG) has received the self-disclosure notification of lost/destroyed records submitted for DOVE TRANSPORT SERVICE, LP on March 12, 2020. This documentation disclosed that due to several business documents, including most of their Trip Slips covering the periods of March 1, 2015 through March of 2017, Dove Transport Service, LP's records were lost/destroyed. OMIG was told that this was due to water damage, a leaking roof which primarily affected a room that was adjacent to Dove Transport Service, LP's office. Additionally, the documents were placed in a plastic bag and marked as "Important Dove Transport Service's Documents – Do Not Discard." The provider states that he became aware of the loss on or about March 9, 2020 but was told by the tenant that the loss occurred at the end of February 2020.

OMIG staff reviewed the disclosure documentation submitted and has assigned project number **20-3456** to this disclosure. Please refer to this number in any correspondence. DOVE TRANSPORT SERVICE, LP's report of this event has been accepted and filed. In the event of an audit or investigation, OMIG will evaluate whether your report of the loss or destruction of the records constitutes mitigating circumstances for the failure to maintain these documents.

Please note that acceptance of this self-disclosure does not absolve DOVE TRANSPORT SERVICE, LP from recordkeeping responsibilities. The paid claims and/or program associated with the lost/destroyed records remain available for future audit, review or investigation.

We would like to thank DOVE TRANSPORT SERVICE, LP for reporting the disclosure and thank you for your assistance in facilitating the process. If you have any questions, please contact OMIG Self Disclosures by phone at 518-402-7030 or by e-mail at: selfdisclosures@omig.ny.gov.

Sincerely,

Self-Disclosure Unit

Exhibit 20

"21 Y

7/31/2020                              Fwd: Dove Transport Service LP Project No/: 20-3456

**From:** goodtone450@aol.com,
**To:** coachraushan@gmail.com,
**Subject:** Fwd: Dove Transport Service LP Project No/: 20-3456
**Date:** Fri, Jul 31, 2020 8:01 am

-----Original Message-----
From: r <goodtone450@aol.com>
To: jeanandnicky@opt.net <jeanandnicky@opt.net>
Sent: Fri, Jul 31, 2020 8:00 am
Subject: Fwd: Dove Transport Service LP Project No/: 20-3456

-----Original Message-----
From: r <goodtone450@aol.com>
To: jeanandnicky@optonline.net <jeanandnicky@optonline.net>
Sent: Fri, Jul 31, 2020 8:00 am
Subject: Fwd: Dove Transport Service LP Project No/: 20-3456

-----Original Message-----
From: r <goodtone450@aol.com>
To: jeanandnicky@yahoo.com <jeanandnicky@yahoo.com>
Sent: Fri, Jul 31, 2020 8:00 am
Subject: Fwd: Dove Transport Service LP Project No/: 20-3456

-----Original Message-----
From: r <goodtone450@aol.com>
To: jeanandnicky@optonline.net <jeanandnicky@optonline.net>
Sent: Fri, Jul 31, 2020 7:53 am
Subject: Fwd: Dove Transport Service LP Project No/: 20-3456

-----Original Message-----
From: r <goodtone450@aol.com>
To: jeanandnicky@yahoo.com <jeanandnicky@yahoo.com>
Sent: Fri, Jul 31, 2020 7:52 am
Subject: Fwd: Dove Transport Service LP Project No/: 20-3456

-----Original Message-----
From: r <goodtone450@aol.com>
To: selfdisclosures@omig.ny.gov <selfdisclosures@omig.ny.gov>
Sent: Fri, Jul 31, 2020 7:49 am
Subject: Dove Transport Service LP Project No/: 20-3456

July 31, 2020

From: Mr. Jean R. Daniel

*Exhibit "22"*

7/31/2020                                    Fwd: Dove Transport Service LP Project No/: 20-3456

To: Whom it may concern at OMIG

Re: The July 30, 2020-Letter from the Self-Disclosure Unit

Subj.: Dove Transport Service, LP Provider ID# 03882157

Dear Theresa Gallager:

We are in receipt of your letter dated July 30, 2020 finalizing your investigation of our present situation where most of Dove Transport Service, LP's documents were destroyed and inadvertently thrown away. Dove Transport Service, LP also would like to thank you for processing the investigation in a timely manner. We are writing to you and to so that the record can accurately be corrected. The first paragraph of your letter, in pertinent parts states, "The provider states that he (Jean R. Daniel) became aware of the loss on or about March 9, 2020 but was told by the tenant that the loss occurred at the end of February 2020.

Please be aware that the following statement is incorrect. I became aware of the loss on or about the end of February 2020 but was told by the tenant that the loss occurred at the end of February 2018. If my March 9, 2020-Self-Disclosure letter that was sent via email to this agency was not clear, we clarified this within the letter which we sent to Theresa Gallager via email on July 18, 2020. So while the matter may still be up for further review, Dove Transport Service, LP fulfilled its legal obligation under this unforeseen incident or occurrence. Should you have any question, please feel free to call me at 631-508-8208.

Sincerely yours,

Mr. Jean R. Daniel  .



NEW YORK STATE | Office of the Medicaid Inspector General

ANDREW M. CUOMO
Governor

ERIN IVES
Acting Medicaid Inspector General

August 13, 2020

DOVE TRANPORT SERVICE, LP
Attn: Mr. Jean R. Daniel
21 Granada Circle
Mount Sinai, NY 11766-2811

Re:   DOVE TRANPORT SERVICE, LP
      Provider ID # 03882157
      Self-Disclosure Project # **20-3456**

Dear Mr. Daniel,

The New York State Office of Medicaid Inspector General (OMIG) sent a letter to you on July 30, 2020 acknowledging your Self-Reporting Notification of lost/destroyed records. After the letter was sent, it was noted that it did not reference the date of loss as contained within your last email on July 18, 2020.

To clarify, you stated in your second email of July 18, 2020 that you became aware of the February 2018 loss of records in February of 2020. According to your initial letter received on March 12, 2020, these records were Trip Slips for the period of March 1, 2015 through March of 2017.

Please note that OMIG's receipt of your Self-Reporting Notification does not absolve DOVE TRANSPORT SERVICE LP of its recordkeeping responsibilities. The paid claims and/or program associated with the lost/destroyed records remain available for audit, review or investigation. OMIG will evaluate whether there are mitigating circumstances for the failure to maintain these documents in conjunction with any audit, review or investigation that involves the reportedly lost/destroyed records.

We would like to thank you for your Self-Reporting Notification and assistance in facilitating the process. If you have any questions, please contact OMIG Self Disclosures Unit by phone at 518-402-7030 or by e-mail at: selfdisclosures@omig.ny.gov.

Sincerely,

Self-Disclosure Unit

Exhibit 4

**From:** goodtone450@aol.com,
**To:** Theresa.Gallager@omig.ny.gov,
**Subject:** Re: 20-3456 Dove Transportation
**Date:** Wed, Aug 19, 2020 11:27 am

August 19, 2020

From: Mr. Jean R. Daniel

Re:   Dove Transport Service, LP
      Re: 20-3456

Via: Goodtone450@aol.com

Dear Gallager Theresa:

I am in receipt of your letter dated August 13, 2020 revising and correcting the date of loss, in accordance with my letter dated July 16, 2020. The letter, like your previous letter, informs me that such a loss does not absolve Dove Transport Service LP of its record-keeping responsibilities, etc. And that the paid claims and/or program associated with the loss/destroyed records remain available for audit, etc. Please note that Dove Transport Service, LP appropriately provided the appropriate services to the Medicaid clients during those years in question. No complaint had been filed against the limited partnership for failing to perform any of the services that OMIG have paid during its inception to the time that it dissolved. Any further investigation of Dove Transport Service, LP, as, OMIG did in 2019 and early this year, outside of any evidence of fraud or misconduct will constitute an harassment. The circumstances in which those documents were loss are due to unforeseen circumstances, where Dove Transport Service, LP could not have controlled.

Thank you for your correction and I trust that the same will be noted on file. Should you have any question, please feel free to call me at 347-551-9786.


Sincerely yours,

Mr.Jean R. Daniel




-----Original Message-----
From: Gallager, Theresa A (OMIG) <Theresa.Gallager@omig.ny.gov>
To: 'r' <goodtone450@aol.com>
Cc: Nunziato, Elisa (OMIG) <Elisa.Nunziato@omig.ny.gov>; Scialdo, Joseph (OMIG) <Joseph.Scialdo@omig.ny.gov>
Sent: Thu, Aug 13, 2020 11:10 am
Subject: 20-3456 Dove Transportation

Good afternoon Mr. Daniel,

Please find attached is a revised Final Letter noting that it did not reference the date of loss as contained within your last email on July 18, 2020.

Thank you for your cooperation and patience during this time of Covid-19. If you have any questions, I cans still be reached via email.

Regards,
Theresa Gallager


**Theresa A. Gallager**
Investigative Specialist

Exhibit "24"

Self-Disclosure Unit
Office of Medicaid Inspector General
800 North Pearl Street, Albany, NY 12204

518-473-2989 Theresa.Gallager@omig.ny.gov
518-486-7192 FAX #

www.omig.ny.gov

**Please help STOP Medicaid Fraud & Abuse:**
**Hotline: 1-877-873-7283 or 1-877-87FRAUD**
BMFA@omig.ny.gov



| | Office of the |
| NEW YORK STATE | Medicaid Inspector |
| | General |

ANDREW M. CUOMO
Governor

ERIN IVES
Acting Medicaid Inspector General

August 24, 2020

Dove Transport Service, L.P.
72 Granada Circle
Mount Sinai, NY 11766
Attn: Jean R. Daniel

Re:      Case No.: 16-F-1959 / 20-3456
Provider ID No.:    03882157

Dear Mr. Daniel:

This letter is in response to your notification dated March 11, 2020 to the New York State Office of the Medicaid Inspector General (OMIG), reporting the loss of records. Specifically, you stated that Dove Transport Service, L.P.'s (Dove) business documents were lost, including trip slips from March 1, 2015 through March 2017 due to a roof leak. You reported that the documents were in a bag marked "Important Dove Transport Service's Documents – Do Not Discard" but the water damage erased this marking and a tenant inadvertently disposed of these documents. You further stated that some documents are still intact, and that more than 200 trip slips were found in an old file cabinet. In this letter you did not disclose when the roof leak took place and when the documents were destroyed and thrown away.

OMIG requested additional information from you on July 15, 2020. You responded to this request in an email on July 18, 2020. In your email you stated that Dove became aware of the loss of records on or around March 9, 2020, but learned that the tenant threw away the documents in February of 2020. You also stated in the same response that you learned of the water damage in February of 2020. At the request of OMIG you provided a letter from your home improvement contractor for the repairs which was dated March 12, 2020. This letter states that the home improvement contractor was hired by Jean R. Daniel who resides at 72 Granada Circle, Mount Sinai, NY on March 15, 2018 to investigate the condition of the roof because each time it rained water seeped through the ceilings and walls. The home improvement contractor claims that he began work to fix the roof on March 22, 2018 and completed the work on March 29, 2018.

Also on July 18, 2020, you sent a follow up e-mail to OMIG with clarifications to your earlier email sent on the same day. In this e-mail you state that your tenant threw away the bag with the Dove documents in February 2018, additionally, you verify that the roof work was done in 2018.

OMIG issued a Notice of Proposed Agency Action (NOPAA) to Dove and its listed owners, Jean R. Daniel and Mohammed S. Raushan on December 10, 2018. In that NOPAA OMIG cited the following:
- Credential Verification Review (CVR) conducted with Jean R. Daniel on April 8,

2016, Town of Brookhaven licensure, Suffolk County Taxi & Limousine licensure, drivers licenses, vehicle insurances and registrations, and trip tickets were requested but were not given at the conclusion of the CVR

- 1st Official records request letter for trip tickets mailed to Dove at 72 Granada Circle in Mount Sinai, NY on June 1, 2016, no response to letter and letter not returned
- 2nd Official records request letter for trip tickets mailed to Dove at 72 Granada Circle in Mount Sinai, NY on June 20, 2016, no response to letter and letter not returned
- The Town of Brookhaven issued a letter to OMIG on August 11, 2016 stating that "Jean Daniel registered his Taxi Business with the Town of Brookhaven on 4/24/16. Prior to this date, Mr. Daniel made no attempt to obtain a valid Taxi license from the Town of Brookhaven. The reason he contacted the Town of Brookhaven to come into compliance was due to your on site inspection conducted by N.Y.S. OMIG, prior to 4/24/16."
- The NOPAA issued on December 10, 2018 had copies of the above-referenced letters attached, and had Findings including but not limited to:

  - Improperly providing taxi services without licensure between June 19, 2014 to April 23, 2016;
  - Submitting claims to the Medicaid program between July 1, 2016 and May 13, 2017 without the driver's license and vehicle plate numbers; and
  - Failing to produce records requested by OMIG investigators in order to demonstrate the right to receive payment under the Medicaid program pursuant to 18 NYCRR 504.3(a): Duties of the Provider.

On January 16, 2019 OMIG received your response to the NOPAA, in which you state in bullet point #30 that "we will need more time to comply with the six (6) year rule in providing the necessary records needed to justify what was actually billed by us. We need at least sixty (60) days." Nowhere in the response do you cite the leak or the loss of records, but rather you ask for more time to produce the records. At the time that OMIG issued the Notice of Agency Action (NOAA) on January 17, 2020, you had not produced any of the requested records.

On March 9, 2020, you submitted a formal Hearing Request in response to the NOAA. As part of this Hearing Request, you state for the first time that Dove's office located at 72 Granada Circle in Mount Sinai, NY had a flood occur from a water heater breaking on March 12, 2015 and a pipe in the kitchen bursting causing water damage on March 4, 2015. The letter goes on to state that water damage occurred from a roof leak on or about March 2018 and records were thrown out by a tenant.

The procedure for providers to report lost or destroyed records is set forth in a Medicaid Update of May of 2015 (Volume 31, No. 5), Loss of Records Due to Unforeseen Event. In relevant part, this Update sets forth that:

Federal law and State regulations require all Medicaid providers to maintain records necessary to fully disclose the extent of services, care, and supplies provided to Medicaid enrollees. This is stated in Title 18 of the New York Codes Rules and Regulations at Section 504.3:
By enrolling the provider agrees:
• (a) To prepare and maintain contemporaneous records demonstrating its right to receive payment under the Medicaid program and to keep for a period of six

years from the date the care, services or supplies were furnished, all records necessary to disclose the nature and extent of services furnished and all information regarding claims for payment submitted by, or on behalf of, the provider and to furnish such records and information, upon request.
Other record-keeping requirements for providers can be found in the Provider Policy Manuals located online at:
https://www.emedny.org/ProviderManuals/index.aspx
Providers whose records are unexpectedly damaged, lost, or destroyed are required to notify, immediately upon discovery of the loss, the Self-Disclosure Unit of the New York State Office of the Medicaid Inspector General (OMIG).

This self-reporting notification must include specific details of the event causing the loss, destruction or damage to records, the type of required records lost, destructed or damaged, the date/s of service of the records, documents/photographs substantiating damaged records and any efforts made to remediate/mitigate the damaged records. Other evidence of loss, e.g., police reports, must accompany the self-reporting notification.

PLEASE NOTE that in the event of an audit for the time period in which the loss, destruction, or damage occurred, OMIG will evaluate, on a case-by-case basis, whether there are mitigating circumstances for missing or damaged documents.

Pursuant to the above Medicaid Update, OMIG evaluated whether there are mitigating circumstances for missing or damaged documents.  In this case OMIG has determined that:

- The hire date, work date and completion date for the roof repair all predate your loss of records claim by nearly 2 years.
- OMIG made contact with Dove as referenced above via an attempted CVR, two records requests and an issued NOPAA. Throughout each of these contacts no reference to the loss of records was made including in your response to the NOPAA.
- Rather, in your NOPAA response, you requested 60 more days to produce the records.
- Over one year passed since your NOPAA response without any further information or documentation being submitted. Only after the NOAA was issued on January 17, 2020 did you submit anything further as part of your hearing request and your Self-Reporting Notification to OMIG's Self-Disclosure Unit, both in March of 2020.

Based on the underlying investigation, submissions, and events as stated above, OMIG does not find there to be mitigating circumstances for the failure to comply with 18 NYCRR 504.3.

Sincerely,
Daniel V. Coyne
Deputy Medicaid Inspector General
Division of Medicaid Investigations
Office of the Medicaid Inspector General

_CB___ 8/29/2020

By: Christopher Bedell
Investigative Specialist 2

VIA CERTIFIED MAIL – RETURN RECEIPT REQUESTED
CC:  David R. Ross, Esq. – O'Connell and Aronowitz

90 Church Street, 14th Floor, New York, New York 10007  |  (212) 417-4570  |  www.omig.ny.gov

September 24, 2020

From: Mr. Jean R. Daniel
       72 Granada Circle,
       Mount Sinai, NY 11766

To:   Christopher Bedell, Investigative
       Specialist 2, at the Office of Medicaid
       Inspector General, 90 Church Street,
       14th Floor, New York, Ny 10007

Re:   Case No.: 16-F-1959/20-3456
       provider ID No.: 03882157

Via:  Certified Mail No.: 7019 2280 0000 2811 4630 RR

Dear Mr. Christopher Bedell:

### DOVE TRANSPORT SERVICE REQUESTS FOR A HEARING

1. We are in receipt of your letter dated August 24, 2020 determining that no mitigating circumstances exist for the failure to comply with 18 NYCRR. Dove Transport Service, LP hereby requests for a hearing to demonstrate that OMIG's version of the facts are incorrect, and its findings that no mitigating circumstances exists is capricious and arbitrary based on the facts and circumstances in this case.

2. On or about March 11, 2020, as the Senior Partner of Dove Transport Service, LP, I did report the loss of records to the New York State Office of the Medicaid Inspector General (OMIG). I specifically stated that **(several of Dove Transport's documents were lost not Dove's entire business documents)** See Par. 1 of my Notice of Request for an Administrative Hearing dated March 11, 2020 that is already on record.

3. I specifically stated, inter alia, that **most of** Dove Transport's trip slips from March 1, 2015 through May 2017 were lost, **not the entire trip slips from March 1, 2015 through May 2017 were loss**, as OMIG implies in par. 1 of its August 24, 2020-Letter. And that such trip slips were loss **due to water damage, a leaking roof which primarily affected a room that was adjacent to Dove Transport Service, LP's office.** OMIG did not include this additional fact within its August 24, 2020-Determination letter in par. 1.

4. I did state that the documents were in a bag marked "Important Dove Transport Service Documents-Do Not Discard" but the water damage erased this marking and a tenant inadvertently disposed of these documents. I did state that more than 200 trip slips were found in an old file cabinet. And that my letter dated March 11, 2020 did not disclose when the roof leak took place and when the documents were destroyed and thrown away.

5. Also, on or about July 15, 2020, OMIG did request additional information from me. And on or about July 18, 2020, I responded to OMIG via 2 email correspondences. The two (2) emails informed OMIG that Dove Transport Service, LP became aware of the loss of records in late February 2020. But I was **informed by the Tenant, Marjorie, that she inadvertently threw away documents in late February 2018.** That error was corrected on that same day. Those 2 email correspondences were sent to OMIG on July 15, 2020 and are part of the record.

*Exhibit "26"*

6. And although the Tenant informed me that she inadvertently threw away the bag two (2) years ago, I, together with the rest of Dove Transport's officers, continued to search for other documents pertaining to Dove Transport. I came across an old cabinet of Dove Transport and was able to find several trip slips. See p. 6, par. 20 of  Dove Transport's Notice of Request for an Administrative Hearing dated March 9, 2020.

7. And after searching the entire house for several days hoping to find additional documents pertaining to Dove Transport, on March 11, 2020, I found it necessary to inform OMIG of our loss. See Dove Transport's Self-Disclosure letter dated March 11, 2020 which was sent to OMIG via email. Such a letter is already on record and had been attached to Dove Transport's March 9, 2020-Notice of Request for an Administrative Hearing as "Ex.G4".

8. At the request of OMIG, I did provide OMIG with a letter from my home improvement contractor for the repairs which is dated March 12, 2020. This letter does state that the home improvement contractor was hired by Jean R. Daniel who resides at 72 Granada Circle, in Mount Sinai, New York. And that on March 18, 2018, the Contractor did investigate the condition of the roof because each time it rained water seeped through the ceilings and walls.

9. The contractor did began working on the roof on March 22, 2018 and completed the work on March 29, 2018. And that as stated earlier, I did clarify to my earlier email sent on the same day that the tenant threw away the bag with the Dove documents in late February 2018. And that I did verify that the roof work was done in 2018.

10. And that Dove Transport Service, LP and its Officers, a few days after December 10, 2018, did receive OMIG's Notice of Proposed Agency Action (NOPAA) dated December 10, 2018.  And that such a Notice did cite the following, although neither I nor Mohammed Raushan ever attended a Credential Verification Review with any of OMIG's investigators on April 8, 2016 nor on any other date: See para. 1 & 2 of Dove Transport Service, LP's Notice of Our Objection to the Proposed Agency Action Pursuant to 18 NYCRR 515. 6(a).

11. And since Raushan and I did not attend the Credential Verification Review nor received those letters dated June 1, 2016 and June 20, 2016, Dove Transport Service, LP could not have responded to OMIG during those dates in question. See para 2 through 5 of Dove Transport's March 9, 2020-Notice of Our Objection to the Proposed Agency Action Pursuant to 18 NYCRR 515. 6(a). OMIG has not, neither will it be able to show that someone from Dove Transport signed for those letters which it describes on p. 2, par. 4 of its determination letter dated August 24, 2020. Also see p. 6, par. 19 of Dove Transport's Notice of Request for an Administration Hearing dated March 9, 2020.

12. Dove Transport Service only became aware of those letters on or about December 10, 2018 after OMIG served Dove Transport with its Notice of Proposed Action. OMIG did attach those letters before mentioned as "Ex. 1A" and "Ex. 1B"within its Notice of Proposed Action dated December 10, 2018. See Dove Transport's para 14 & 15 of its January 9, 2019-Notice of Our Objection to the Proposed Agency Action Pursuant to 18 NYCRR 515.(6)a.

13. Dove Transport Service, on the other hand, received 2 letters from the Town of Brookhaven's Public Safety Department. The first letter dated May 24, 2016 seems to indicate that Dove Transport Service is fully licensed. Within the second letter from the Town of Brookhaven Public Safety, Bill Rogers, the

Town's Executive Assistant of Brookhaven Department of Public Safety, forwarded a letter to you informing you that Dove Transport Service registered its business as a taxi on April 24, 2016. **Such a registration was not necessary; and Dove Transport was forced to do so, knowing full well that such a law did not apply to Dove Transport Service.** See p. 2, para 4 through 13 of Dove Transport's March 9, 2020-Notice of Request for an Administration Hearing.

14. And that Dove Transport's Notice of Our Objection to the Proposed Agency Action Pursuant to 18 NYCRR 515. 6(a) dated January 9, 2019 and received by OMIG on January 16, 2019, on bullet point #30 or par. 30, did state that Dove Transport Service will need more time to comply with the six (6) year rule in providing the necessary records needed to justify what was actually billed by us; and that Dove Transport did feel as though IT needed at least sixty (60) days to do so. **I did not mention anything about the leak or the loss of records <u>because neither I nor any officers from Dove Transport Service knew that the Tenant inadvertently threw away the documents due to its destrcution by water during that time.</u>**

15. We requested additional time with the hope that we would retrieve Dove Transport's documents and provide the same to OMIG within sixty (60) days. We also sought to reproduce those documents, to no avail. There was no reason to initially equate the initial leak from the roof to any loss of documents due to water damage. It wasn't until Late February of 2020, after the tenant informed me of what she did towards the end of February of 2018 did I realize that there is this possibility that most of Dove Transport Service's documents might have gotten destroyed and inadvertently thrown away due to water damage. See p. 6, para 18 through 20 of Dove Transport's March 9, 2020-Notice of Request for an Administration Hearing.

16. And that upon OMIG's request dated January 17, 2020, **Dove Transport Service did produce documents, unlike OMIG's contention within p 2, par. 5 of its August 24, 2020.** Out of 200 trip slips that Dove Transport recovered, Dove Transport provided a total of 20 trip slips which covered March 18, 19 and 21 of 2016 and February 8 through 25 of 2016. But Dove Transport did not find any other Trip Slips which covered the earlier days of March 2016 as requested by OMIG. See pa. 6, par. 21 of Dove Transport's March 9, 2020-Notice of Request for an Administrative Hearing. They were attached as "Ex. H" and "Ex. I" to Dove's March 9, 2020-Notice of Request for an Administrative Hearing.

17. On or about March 9, 2020, I did submit a formal hearing request in response to the NOAA. As part of this Hearing Request, I did state for the first time that Dove Transport Service, located at 72 Granada Circle, Mount Sinai, NY was flooded due to a water heater breaking on March 12, 2015; and that a pipe in the kitchen did burse, which caused water damage on or about March 4, 2015. My letter also did mention, **not for the first time,** that water damage occurred from a roof leak on or about **late February of 2018 not March of 2018** and Dove Transport documents were **inadvertently thrown away.**

18. Dove Transport Service, LP, its officers, were made aware of the procedures to report lost or destroyed records as set forth within the Medicaid Update dated May of 2015 (Volume 31, No. 5) on "Loss of Records Due to Unforeseen Event" and Title 18 Section 504.3 of the New York Codes Rules and Regulations requiring all Medicaid providers to maintain records necessary to fully disclose the extent of services, care, and supplies provided to Medicaid enrollees and did report on March 11, 2020, that most of its records have been destroyed due to water damage.

19. And that on August 24, 2020, OMIG determined that it does not find there to be mitigating circumstances for the failure to comply with 18 NYCRR 504.3 for the following reasons: The hire date, work date and completion date for the roof repair all predate your loss of records claim by nearly 2 years. **This conclusion is unsupported by the facts in this case. The following facts are undisputed:**

A-The hire date to fix the roof is: **March 15, 2018.**
The date work began: **March 22, 2018**
The date work was completed: **March 29, 2018**
The date of loss: **Late February 2018**
**Clearly, OMIG's contentions are unsupported by the facts.**

B- Date OMIG attempted to contact Dove via CRV: **April 8, 2016. Dove Transport has longed denied having any CRV with OMIG.**

C-Dates OMIG claimed to have made two (2) records requests: **June 1, 2016 and June 20, 2016. As stated above, OMIG has not and will not be able to show that someone from Dove Transport Service signed for those letters because they were never sent.**

**D-Date OMIG issued its NOPAA: December 10, 2018, which Dove did receive within which the June 1, 2016 and June 20, 2016 letters were attached.**

E-Date Dove Transport Service was aware that its records were destroyed and thrown away: **Late February 2020. No reference to the loss of records could have been made prior to late February of 2020.**

20. To respond to OMIG's last reason for its determination, please note that after we've sent the Notice of our Objection to the Proposed Agency Action Pursuant to 18 NYCRR 515. 6 (a), we continued to diligently look for Dove's documents. That is why we requested an additional sixty (60) day, hoping to find the documents. And since we were unable to find any additional documents, no additional information or documentations could have been submitted to OMIG.

21. We submitted documents to OMIG after the January 17, 2020's NOAA because we were able to find a few documents that were still within Dove Transport Service's old file cabinet sometimes prior to March 9, 2020. We provided 20 out of at least 200 trip slips to OMIG and did inform OMIG that Dove Transport is more than happy to account for them. And on or about March 11, 2020, Dove Transport Service self-disclosed this information via internet to the appropriate agency as required by law. And lastly, please be advised that Dove Transport Service, LP has not waived its defenses, counterclaims, setoffs and crossclaims that are contained within any of its correspondences to OMIG, specifically within its Notice of Objection to the Proposed Agency Action Pursuant to 18 NYCRR 515. 6(a).

**Wherefore,** and based on those cited facts above, Dove Transport Service, LP requests that OMIG reverses its determination; in the interim, set up a hearing date where an independent individual may hear and decide on the merits.

Sincerely yours,

Mr. Jean R. Daniel



CAMBRIA HEIGHTS
22901 LINDEN BLVD
CAMBRIA HEIGHTS, NY 11411-9997
(800)275-8777

09/25/2020                          04:14 PM

| Product | Qty | Unit Price | Price |
|---------|-----|------------|-------|
| Rate Inquiries | 1 | | $0.00 |
| First-Class Mail® | 1 | | $0.70 |

Letter
  New York, NY  10007
  Weight: 0 lb 1.10 oz
  Estimated Delivery Date
  Mon 09/28/2020
  Certified Mail®                   $3.55
    Tracking #:
    70192280000028114630
  Return Receipt                    $2.85
    Tracking #:
    9590 9402 6135 0209 9008 16
Total                               $7.10

Grand Total:                        $7.10

Debit Card Remitted                 $7.10
  Card Name: VISA
  Account #: XXXXXXXXXXXX0491
  Approval #
  Transaction #: 805
  Receipt #: 025255
  Debit Card Purchase: $7.10
  AID: A0000000980840        Chip
  AL: US DEBIT
  PIN: Verified

************************************
   Due to limited transportation
     availability as a result of
       nationwide COVID-19 impacts
   package delivery times may be
   extended. Priority Mail Express®
     service will not change.
************************************

Text your tracking number to 28777 (2USPS)
to get the latest status. Standard Message
 and Data rates may apply. You may also
 visit www.usps.com USPS Tracking or call
           1-800-222-1811.

        Preview your Mail
        Track your Packages
        Sign up for FREE @
        www.informeddelivery.com

All sales final on stamps and postage.
Refunds for guaranteed services only.
      Thank you for your business.

   Tell us about your experience.
  Go to: https://postalexperience.com/Pos
     840-5110-0125-003-00043-28059-01
  or scan this code with your mobile device.



     or call 1-800-410-7420.



U.S. Postal Service™
CERTIFIED MAIL® RECEIPT
Domestic Mail Only

For delivery information, visit our website at www.usps.com®.

New York, NY 10007    OFFICIAL USE

| Certified Mail Fee | $3.55 | | 0211 |
| | | | 21 |
| Extra Services & Fees (check box, add fee as appropriate) | | | |
| ☐ Return Receipt (hardcopy) | $ $0.00 | | |
| ☐ Return Receipt (electronic) | $ $0.00 | | Postmark |
| ☐ Certified Mail Restricted Delivery | $ $0.00 | | Here |
| ☐ Adult Signature Required | $ $0.00 | | |
| ☐ Adult Signature Restricted Delivery | $ | | |
| Postage | $0.70 | | |
| $ | | | 09/25/2020 |
| Total Postage and Fees | | | 10007 |
| $ | $7.10 | | |

Sent To _Christopher Bedell, Investigative Agent_
Street and Apt. No., or PO Box No. _at the Office of Medicaid Inspector_
City, State, ZIP+4® _General, 90 Church St, 11thFl NY NY_
PS Form 3800, April 2015 PSN 7530-02-000-9047    See Reverse for Instructions

**From:** goodtone450@aol.com,
**To:** jeanandnicky@yahoo.com,
**Subject:** Fwd: Dove Transport Service, LP [Case No.: 16-F-1959, Audit No.: 17-1541]
**Date:** Mon, Oct 19, 2020 1:21 pm

-----Original Message-----
From: Hoffman, Philip (OMIG) <Philip.Hoffman@omig.ny.gov>
To: goodtone450@aol.com <goodtone450@aol.com>
Sent: Mon, Oct 19, 2020 11:49 am
Subject: Dove Transport Service, LP [Case No.: 16-F-1959, Audit No.: 17-1541]

Good Afternoon Mr. Daniel,

I am the assigned attorney for the hearing in this matter pursuant to your hearing request.  I will be reaching out to you shortly with respect to the hearing and prehearing conference.  Please note that a hearing request was also submitted on behalf of Mohammed Raushan.

Please let me know if you should have any questions at this time or wish to discuss this matter further.

Thank you,
Phil Hoffman


# Philip Hoffman
Senior Attorney

Office of the Medicaid Inspector General

90 Church Street, 14th Floor, New York, NY 10007
(212) 417-4569  | philip.hoffman@omig.ny.gov
www.omig.ny.gov

Exhibit "27"

3/30/2021                         Re: Dove Transport Service, LP [Case No.: 16-F-1959, Audit No.: 17-1541]

**From:** goodtone450@aol.com,
**To:** Philip.Hoffman@omig.ny.gov,
**Subject:** Re: Dove Transport Service, LP [Case No.: 16-F-1959, Audit No.: 17-1541]
**Date:** Wed, Oct 21, 2020 8:04 am

10/21/2020

From: Mr. Jean R. Daniel.

Good morning Mr. Hoffman.We are in receipt of your email dated 10/19/2020. Please note that since the office has not yet responded to my letter dated September 25, 2020, it is unclear what will be discussed at the prehearing conference. Once the office makes its official determination as to whether it will or not reverse its original determination, a preconference hearing can then be schedule. The office must provide a detail explanation for its reason(s) to believe that no mitigating circumstance existed in this case at a bar, even though your assignment in this case clearly implies that the office will not change its mind.


-----Original Message-----
From: Hoffman, Philip (OMIG) <Philip.Hoffman@omig.ny.gov>
To: goodtone450@aol.com <goodtone450@aol.com>
Sent: Mon, Oct 19, 2020 11:49 am
Subject: Dove Transport Service, LP [Case No.: 16-F-1959, Audit No.: 17-1541]

Good Afternoon Mr. Daniel,

I am the assigned attorney for the hearing in this matter pursuant to your hearing request.  I will be reaching out to you shortly with respect to the hearing and prehearing conference.  Please note that a hearing request was also submitted on behalf of Mohammed Raushan.

Please let me know if you should have any questions at this time or wish to discuss this matter further.

Thank you,
Phil Hoffman


# Philip Hoffman

Senior Attorney

Office of the Medicaid Inspector General

90 Church Street, 14th Floor, New York, NY 10007
(212) 417-4569  | philip.hoffman@omig.ny.gov
www.omig.ny.gov

*Exhibit "28"*

November 21, 2020

From: Jean R. Daniel, Former Senior
Partner of Dove Transport
Service, LP, 72 Granada
Circle Mount Sinai, NY 11766

&  Mohammad S. Raushan, Former Junior
Partner of Dove Transport
Service, LP, 39-11 211 Street,
Bayside, New York 11361

To:  Russell Rizzo, Assistant Medicaid
Investigator in Charge Office of the
Medicaid Inspector General Division
Of Medicaid Investigations, 90
Church St., 14th Floor, NY, NY 10007

To:  General Counsel New York State
Office of the Medicaid Inspector
General Office of Counsel, 800
North Pearl Street, Albany, NY 12204

To:  Christopher Bedell, Investigative
Specialist 2, at the Office of
Medicaid Inspector General,
90 Church Street, 14th Floor,
New York, NY 10007

To:  William Rogers, Executive Assistant
Of the Department of Public Safety,
One Independence Hill
Farmingville, New York 11738

Re:  Case No.: 16-F-1959/20-3456
Provider ID: No.: 03882157

## NOTICE OF CLAIM

**Nature of the Claim:**

This is a malfeasance claim, under Tort. Such a claim arose as a result of certain deliberate action(s) taken by at least three (3) public officials, Christopher Bedell and Daniel V. Coyne, the Deputy Medicaid Inspector who, despite all the facts which should have led them to believe that a mitigating circumstance did exist within this current case above which prevented Dove Transport Service, LP to comply with 18 NYCRR, as they were aware of and did notate certain pertinent and undisputed facts within their August 24, 2020-Determination, tortuously, maliciously, capriciously and arbitrary, in their findings, determined that no mitigating circumstances existed for the failure to comply with 18 NYCRR. And William Rogers, the Executive Assistant of the Department of Public Safety, who tortuously, maliciously, capriciously, and arbitrary, provided Christopher Bedell with inaccurate information; that

*Exhibit "20"*

Dove Transport Service, LLP had been operating without the proper licensure, knowing full well that Dove Transport Service, LLP was exempt from such a regulation within the Town of Brookhaven. William Rogers also maliciously and arbitrary caused Dove Transport Service, LLP to pay for taxes and fees in connection with this regulations and refuses to reimburse Dove Transport Service, LLP for the same.

Furthermore, this is a claim challenging the agency's current administrative procedures. This agency's procedure's seems to be incomplete and is totally self-serving. On March 11, 2020, after Dove Transport Service, LLP appropriately reported that most of its business documents were loss due to water damage, etc., Christopher Bedell and Daniel V. Coyne determined that no mitigating circumstances existed for Dove's failure to comply with 18 NYCRR.

Even after Dove Transport Service, LLP provided all the required documents and proof to substantiate its claim, according to OMIG's regulation or policy, it can still decide to hold a particular limited partnership or corporation liable.  If the facts are in dispute, as here, where OMIG does not believe Dove's assertions, the matter must be tried by a jury not by an individual administrative judge. Both Federal and New York State laws support the right to be tried by a jury and this agency should promulgate a similar policy mirroring both Federal and New York State laws.

**Claim Reliance:**
Dove Transport Service, LP, its Partners or Officers will rely upon their current Notice of Claim, together with their initial response to OMIG dated January 9, 2019, together with any of its attachments, exhibits, arguments, defenses, setoffs, counterclaims, crossclaims, if any, and references; they will also rely on their March 9, 2020-Letter Request, together with any of its attachments, exhibits, arguments, defenses, setoffs, counterclaims, crossclaims, if any, and references therein. And lastly, they will rely on their September 24, 2020-Letter Request, together with any of its attachments, exhibits, arguments, defenses, setoffs, counterclaims, crossclaims.

**Time When Claim Arose:**
This claim arose as a result of this agency's determination dated August 24, 2020. In addition, Dove Transport Service, LLP timely requested for OMIG to reverse its findings and for a hearing on September 25, 2020.  Instead, Dove Transport Service, LP received an email correspondence from the appointed administrative attorney who will hear the matter with no official response to Dove's official response. Dove Transport also sent a letter on August 24, 2020 to William Rogers in an attempt to provide Mr. Bedell with the appropriate information; that Dove Transport Service, LP was exempt from those requirements. As always, he chooses to ignore Dove's request and did has not respond to this day.

**The Place Where the Claim Arose:**
That does not apply in this present case at a bar.

**The Damages and Injuries Claimed to Have Been Sustained:**
Dove Transport Service, LLP, its Officers, Partners, as a result of those tortuous acts, have now been financially damaged in the sum of $285, 000.00 dollars. They have sustained irreparable injuries, in that their reputation, Dove Transport Service, LP's reputation, for which they have worked so hard for, have been damaged, since OMIG and/or its subdivisions have provide Dove Transport Service, LP with a negative rating, undue stress, psychological pain and suffering and harassment, etc. Dove Transport Service, LP cannot put a price on that and will leave that to a jury and judge to decide. Dove Transport Service, LP also claims at least $3, 500.00 dollars on actual costs. Dove Transport Service, LP was forced to unlawfully pay fees for unnecessary licenses, registrations and taxes, etc. Dove Transport Service, LP

reserves the right to add to its list of damages and injuries sustained, since there is the possibility of initiating its lawsuit against OMIG which will require additional expenses. Total actual sum so far is $288, 500.00 dollars.

Sworn to me this Day 2/
Of November , 2020

JEAN R. DANIEL

LESLEY A BULLIS
Notary Public - State of New York
NO. 01BU6332843
Qualified in Suffolk County
My Commission Expires Nov 9, 2023

I, Jean R. Daniel, certify that all the information contained in this Notice of Claim is true and correct to the best of my knowledge and belief. I understand that the willful making of any false statement of material fact herein will subject me to criminal penalties and civil liabilities.

Russell Rizzo
Certified Mail Numbered RR
7019 2280 0001 0393 1411

General Counsel
Certified Mail Numbered RR
7019 2280 0001 0393 1404

Christopher Bedell:
Certified Mail Numbered RR
7019 2280 0001 0393 1398

William Rogers
Certified Mail Numbered RR
7020 1810 0000 7090 9240

March 13, 2020

From: Mr. Jean R. Daniel

To:    Mr. William Rogers

Re:    Notice of Request for an Administrative Hearing

Subj.: DOVE TRANSPORT SERVICE, LP

Via:   Certified Mail No.: 7017 1000 0000 5838 0730

Dear Mr. William Rogers:

I am attaching this cover letter together with an 8-Page Notice of Request for an Administrative Hearing You are not receiving this due to an error. You are getting this because your presence will be needed during the coming hearing before the New York State Office of the Medicaid Inspector General.  The reason for the need of your presence can be found in paragraphs 12 and 13 of my Notice of Request for and Administrative Hearing.

Sincerely yours,

Mr. Jean R. Daniel









# USPS Tracking®

FAQs >

## Track Another Package +

**Tracking Number:** 70171000000058380730

Remove ✕

Your item was delivered at 9:04 am on March 16, 2020 in FARMINGVILLE, NY 11738.

## ⊘ Delivered

March 16, 2020 at 9:04 am
FARMINGVILLE, NY 11738

Get Updates ⌄

| | |
|---|---|
| **Text & Email Updates** | ⌄ |
| **Tracking History** | ⌄ |
| **Product Information** | ⌄ |

See Less ⌃

Feedback

## Can't find what you're looking for?

Go to our FAQs section to find answers to your tracking questions.

**FAQs**

Feedback

NEW YORK STATE DEPARTMENT OF HEALTH
OFFICE OF THE MEDICAID INSPECTOR GENERAL
.................................................................X

IN THE MATTER OF THE REQUEST OF

Dove Transport Service, LP and Jean Daniel,

        Provider ID # 03882157 (Dpve Transport)
        02201009 (Jean R. Daniel)

        Appellants,

for a Hearing Pursuant to Part 519 of Title 18 of the Official
Compilation of Codes, Rules and Regulations of the State of
New York to review the Determination under 18 NYCRR
Parts 515 and 518 to recover $395,387.59, plus interest in
Medicaid overpayments, and to exclude the Appellants for
three years and until reinstated.
.................................................................X

**NOTICE OF
PREHEARING
CONFERENCE**

**Case # 16-F-1959**
**PACS #17-1541**

        **PLEASE TAKE NOTICE** that a prehearing conference will take place at the following date, time and place:

| | |
|---|---|
| **DATE:** | **April 6, 2021** |
| **TIME:** | **2:00 PM** |
| **PLACE:** | **To be held via WebEx. A link to connect to this WebEx meeting will be sent by email to goodtone450@aol.com and The Office of the Medicaid Inspector General's disclosure will be sent by electronic delivery in an encrypted password protected format prior to the prehearing conference. Any disclosure by the Provider pursuant to 18 NYCRR §519.14 must be disclosed prior to the prehearing conference, preferably by electronic delivery in an encrypted password protected format to philip.hoffman@omig.ny.gov or in the alternative a link to securely upload documents may be requested. Prior to sending any hard copies of disclosure, please email philip.hoffman@omig.ny.gov to obtain delivery address and schedule delivery in order to ensure receipt.** |

        This prehearing conference is in accordance with 18 NYCRR §519.14, which provides as follows:

(a) A prehearing conference will be held at least seven days in advance of the hearing date at which time each party must disclose the evidence that the party intends to introduce at the hearing, including documentary evidence and identification of witnesses, and consider:

1   Exhibit "20"

(1) simplification of the issues;

(2) amendments to any pleadings, notices or replies for purposes of clarification;

(3) stipulations, admissions of fact, contents or authenticity of documents, or the accuracy of any photocopy or reproduction intended to be introduced at the hearing;

(4) limitations on the number of witnesses; and

(5) other matters which would expedite the disposition of the proceeding.

(b) Any stipulations and procedural issues not resolved at the prehearing conference must be submitted to the hearing officer upon commencement of the hearing for a determination on the record or other further proceedings as the hearing officer may require. Any party who fails to attend the prehearing conference or who unreasonably denies or refuses to admit a fact, authenticate a document, exchange witness lists or proposed exhibits, will be precluded from denying the fact, or denying the authenticity or accuracy of the document or from introducing the exhibit or the testimony of the witness or objecting to the introduction of the exhibit or the testimony of witnesses.

At the prehearing conference, the Office of the Medicaid Inspector General intends to produce for your inspection, authentication and/or verification the following exhibits to be offered into evidence at the administrative hearing:

1. Notice of Proposed Agency Action and attachments;
2. Notice of Agency Action and attachments;
3. Provider Response; and
4. Documents from the Investigation file.

**PLEASE TAKE FURTHER NOTICE** that the above regulation requires you to produce at the prehearing conference a list of your proposed witnesses and any exhibits or other evidence you intend to introduce at the administrative hearing.  Failure to do so may result in the exclusion of such witnesses, exhibits or other evidence at the administrative hearing.

Dated:  New York, NY
        March 25, 2021

Frank T. Walsh, Jr.
Acting Medicaid Inspector General

By: _____

Philip Hoffman, Senior Attorney
Office of the Medicaid Inspector General
90 Church Street, 14th Floor
New York, NY  10007
Phone: (212) 417-4569
philip.hoffman@omig.ny.gov

2

To:    Jean Daniel
       Dove Transport Service, LP
       72 Granada Circle
       Mount Sinai, NY  11766

**From:** goodtone450@aol.com,
**To:** Philip.Hoffman@ny.gov,
**Subject:** Re: Notice of Prehearing Conference -- Dove Transport Service, LP and Jean Daniel
**Date:** Sat, Mar 27, 2021 3:28 pm

3/27/2021

From: Mr. Jean R. Daniel

To:    Mr. Phillip Hoffman, Sr. Attorney

Good afternoon! I am in receipt of the Notice of Prehearing Conference which does not contain the name of the Presiding officer and his or her address and telephone number. Please provide the same via email by Monday, March 29, 2021. Also on Monday, March 29, 2021, please provide me with your full address, including any suite, if applicable. I will mail the documents to you instead of sending it electronically. I will provide a letter to let you know that I am authorizing a Mr. George Joseph to represent me during the prehearing conference and will provide the appropriate letter informing the Presiding officer of this.as well. Please let me know sometimes by Monday, March 29, 2021 if you have any objection to this. Should you have any question, please include the same in your response on Monday, March 29, 2021. If I don't hear from you by the end of the day on Monday, March 29, 2021, I will request for an adjournment.

Sincerely yours,

Mr. Jean R. Daniel . .


-----Original Message-----
From: Hoffman, Philip (OMIG) <Philip.Hoffman@omig.ny.gov>
To: goodtone450@aol.com <goodtone450@aol.com>
Sent: Thu, Mar 25, 2021 12:41 pm
Subject: Notice of Prehearing Conference -- Dove Transport Service, LP and Jean Daniel

Good Afternoon Mr. Daniel,

Attached please find a Notice of Prehearing Conference that is being mailed to you as well. The conference will be held on April 6, 2021 at 2:00 P.M. by WebEx.  Kindly confirm receipt of the Notice of Prehearing Conference at this time.

Please contact me should you have any questions or concerns.

Thank you,,
Phil Hoffman


# Philip Hoffman
Senior Attorney

Office of the Medicaid Inspector General
90 Church Street, 14th Floor, New York, NY 10007
(212) 417-4569  | philip.hoffman@omig.ny.gov
www.omig.ny.gov

*Exhibit 31*

3/29/2021                                    The Letter from George Joseph

**From:** goodtone450@aol.com,
**To:** philip.hoffman@omig.ny.gov,
**Subject:** The Letter from George Joseph
**Date:** Mon, Mar 29, 2021 8:29 pm
**Attachments:** The Letter from George Joseph.pdf (189K)

From: Mr. Jean R, Daniel

To:     Mr. Phillip Hoffman

I am attaching an email letter that Mr, Joseph tried to send to your email but for some reason or the other, it had been blocked from your email address. It is not clear whether such a computer glitch occurred from your end or mine. As you requested, I am sending you a letter from Mr. George Joseph asking for the same things I previously asked. If you wish to contact him, you may send an email using this email address. Thank you.



Exhibit "32"

From: sunset3drive@aol.com,
To: phillip.hoffman@omig.ny.gov,
Subject: The Notice of Prehearing Conference Case # 16-F-1959 PACS # 17-1541
Date: Mon, Mar 29, 2021 8:12 pm

March 29, 2021

From: Mr. George Joseph

To:    Mr. Phillip Hoffman, Senior Attorney

Re:    Dove Transport Service, LP
       Provider ID # 03882157 (Dove Transport Service, LP)
       & 022010099 (Jean R. Daniel)

Dear Mr. Phillip Hoffman:


As Mr. Jean R.Daniel informed you, I will be representing him during the prehearing conference. .
Please provide me with your personal mailing address, including any suite number if applicable. I prefer mailing the
documents to you. The WebEx link can be sent to Goodtone450@aol.com. Your prehearing notice did not include the
name, the full address of the Presiding officer and his or her telephone number. It is imperative that I receive those
documents by tomorrow. Thank you in advance for your cooperation. My number had been provided by Mr. Daniel as 347-
551-9786 should you wish to contact me.  .

Sincerely,

Mr. George Joseph

NEW YORK STATE DEPARTMENT OF HEALTH
OFFICE OF THE MEDICAID INSPECTOR GENERAL
————————————————————————X

DOVE TRANSPORT SERVICE, LP and Jean Daniel,
Provider ID # 03882157 (Dove Transport)

Appellants,

for a Hearing, Pursuant to Part 519 of Title 18 of
the Official Compilation of Codes, Rules and
Regulations of the State of New York to review
the Determination under 18 NYCRR Parts 515
and 518 to recover $395, 387.59, plus interest in
Medicaid overpayments, and to exclude the
Appellants for three years and until reinstated
————————————————————————X

CASE NO.: 16-F-1959
PACS # 17-1541
TELEPHONE TRANSCRIPT
BETWEEN MR. ROGERS
& MR. JOSEPH

Dated: 03/29/2021
Time:  3:13-3:15 PM
CALLER'S FULL NAME: MR. GEORGE JOSEPH
RECEIVER'S FULL NAME: MR. WILLIAM ROGERS

TELEPHONE TRANSCRIPT BETWEEN MR. WIILLIAM ROGERS & MR. GEORGE JOSEPH

PURSUANT TO CPLR 4501

MR. JOSEPH

1. Yes, Good afternoon, my name is Mr. Joseph. Is Mr. Rogers available?

MR. ROGERS

2. Speaking

MR. JOSEPH

3. Oh, hi. Mr. Rogers.  This is Mr. Joseph. This is in reference to Dove Transport

MR. ROGERS

4. Ok

1



MR. JOSEPH

5 Right, I know you are familiar with Mr. Daniel and myself and Mr. Raushan. I mailed you some papers, a couple of letters, certified letters and I've been trying to reach you for a long time and it's actually a miracle that I have finally got you. The issue is that they were never Taxi. I am not sure if Mr. Daniel or Mr. Raushan showed you their documents that they were working for the State, they were transporting patients; they were working for the Medicaid program.

MR. ROGERS

6. Right, but they were running a cab business out of their home out of Northshore. Cause, a quick question, now from the OMIG that runs Brunswick for the State they were out there 3 or 4 times about 7 years ago and they were running a cab business and they were not up to code and stuff and its' not up to us.

MR. JOSEPH

7. Wait, wait, wait Mr. Rogers, I just heard. No, No, the State law clearly states it is up to the County the town of Brookhaven and your saying that the State told you that they were running a taxi and that they were illegal instead of you telling then that? Now I want to get the story right.

MR. ROGEERS

8. The OMIG that hands out the Medical runs they have an enforcement division and I can remember the day 5, 6, 7 years ago that they went out to their house and ticked their vehicles for not being in compliance. The town has nothing to do with that.

MR. JOSEPH

9. No, wait, wait, wait, wait, Mr. Mr. you know like I said before, yeah; Thank you for listening to me. I am gonna be very kind with you, because,

MR, ROGERS

10. It's going to be short

MR. JOSEPH

11. Yes, it's going to be short. It's going to be short.

MR. ROGERS

12. because I have dealt with these people before.

MR. JOSEPH

13. I understand that.  Listen. The problem is that OIMG wants to know the rules according to the code of the town of Brookhaven running a Medicaid transport business is not a taxi. You gave them information and therefore led them to do stupid things against my company as an officer of this company and with my brother and a friend. So you sent. I have the letters in front of me August 11, 2016 and sometimes in May the Town of Brookhaven running a

MR. ROGERS

14. As a Taxi company, yes.

MR. JOSEPH

15. No Sir, but they are not a Taxi Company they were working for Medicaid. They were.

MR. ROGERS

16. They applied here for CSI. I am not going to talk to you. You can call the Law Department. I have all my old records. They put themselves in this.

MR. JOSEPH

17. Wait, wait, wait, what is the number for your Law department?

WILLIAM ROGERS HUNG UP THE PHONE.

3

5/25/2021                                   Fwd: DOVE TRANSPORT SERVICE, LP

**From:** goodtone450@aol.com,
**To:** dmoran@brookhavenny.gov,
**Subject:** Fwd: DOVE TRANSPORT SERVICE, LP
**Date:** Tue, May 4, 2021 9:40 am
**Attachments:** DOVE TRANSPORT PROOF OF SERVICE P.   3.pdf (471K), WILLIAM ROGERS' LETTER #1.pdf (157K),
WILLIAM ROGERS' LETTER #2.pdf (235K), DOVE'S NOTICE OF CLAIM P. 1.pdf (304K),
DOVE'S NOTICE OF CLAIM P. 2.pdf (534K), DOVE'S NOTICE OF CLAIM P. 3.pdf (213K),
DOVE'S CERTIFICATE P. 1.pdf (198K), DOVE'S CERTIFICATE P. 2.pdf (376K), DOVE'S CERTIFICATE P. 3.pdf (294K)

Good afternoon Mr. Moran.

This is Mr. George Joseph on behalf of Mr. Jean R. Daniel & Dove Transport Service, LP. As you know, on March 29, 2021,we spoke over the phone and upon your request, I provided you documents pertaining to Dove Transport Service, LP's certificate which outlined their purpose for their existence; that they were not a Taxi business, servicing the public at the Town but existed under the laws and regulations of the State of New York Medicaid system, providing services only for Medicaid recipients.

I informed you and did provide you with that fact that Mr. Roger William inadvertently categorized Dove as a Taxi business and did require Dove to pay certain fees for the same. You told me that you would either look into it or have another attorney on your Staff look into it. Dove Transport Service, LP is in dire need of this correction, as it is currently in prelitigation with OMiG. Your quick response and correction of this matter is greatly needed. I will also give you a call today and hopefully speak to you or leave a message informing you of this email.

Should you have ant question, please feel free to call me at 347-551-9786. Thank you for your cooperation in this matter. I am resubmitting the same documents I previously submitted to you on March 29, 2021.

Sincerely,

Mr. George Joseph


-----Original Message-----
From: r <goodtone450@aol.com>
To: dmoran@brookhavenny.gov <dmoran@brookhavenny.gov>
Sent: Mon, Mar 29, 2021 2:39 pm
Subject: DOVE TRANSPORT SERVICE, LP

03/29/2021

From: Mr. George Joseph
        P.O. Box 3168
        Patchogue, NY 11772

To:    Mr. Moran, attorney at Law
        at the Town of Brookhaven

Re:    Our Recent Conversation about Dove Transport Service

Via:    Goodtone450@aol.com

As we discussed, I am attaching a few documents pertaining to Dove Transport Service, LP which will support my contention that Mr. Rogers' letters erroneously claimed that the Limited Partnership was a Taxi-business. Should you have any question or desire additional documents, please feel to call me at 347-5519786. Thank you.

Sincerely,

Mr. George Joseph

*Exhibit "3 #"*

5/25/2021                                  Fwd: Willima Rogers, Executive Asst. of Public Safety

From: goodtone450@aol.com,
  To: dmoran@brookhavenny.gov,
Subject: Fwd: Willima Rogers, Executive Asst. of Public Safety
  Date: Tue, May 18, 2021 9:15 am

-----Original Message-----
From: r <goodtone450@aol.com>
To: wrogers@brookhavenny.gov <wrogers@brookhavenny.gov>
Sent: Tue, May 18, 2021 9:13 am
Subject: Fwd: Willima Rogers, Executive Asst. of Public Safety

-----Original Message-----
From: r <goodtone450@aol.com>
To: www.brookhaven.org@aol.com <www.brookhaven.org@aol.com>
Sent: Tue, May 18, 2021 8:50 am
Subject: Willima Rogers, Executive Asst. of Public Safety

From: Mr. George Joseph
       P.O. Box 3168
       Patchogue, NY 11772

To:    Mr. William Rogers, Executive Assit. of Public Safety,
       at the Town of Brookhaven

Re:    DOVE TRANSPORT SERVICE, LP'S FILE/RECORD

Dear Sir:

As per our conversation on March 29, 2021 regarding Dove Transport Service, LP, please keep all of Dove Transport Service, LP intact.As you know, they will be needed for reproduction, and examination. Dove Transport Service, LP is currently in litigation with OMIG and would like you to furnish all records pertaining to Dove Transport Service, LP in your possession within (20) twenty days of receipt of this email and a response email must be sent to me within five (5) business days upon receipt as proof that such an email has been received by you.

Please mail all documents to 72 Granada Mount Sinai, New York, 11766 Attn: Jean R. Daniel. In addition, your presence will be required on August 19, 2021 at 10:00 am via of video. Upon the approval of the Administrative Law Judge, you will receive a link to attend. Prior to such a hearing, however, you will require to produce any and all documents pertaining to or in connection with Dove Transport Service, LP's interaction with you and your department at the Town of Brookhaven.

Should you have any question, please feel free to call me at 347-551-9786. Thank you for your assistance in this matter.

Sincerely yours,

Mr. George Joseph

*Exhibit "38"*

NEW YORK STATE DEPARTMENT OF HEALTH
OFFICE OF THE MEDIAID INSPECTOR GENERAL
_____X

IN THE MATTER OF THE REQUEST OF

Dove Transport Service, LP and Jean Daniel,
Provider ID # 03882157 (Dove Transport)
& ID # 02201009 (Jean R. Daniel)

Appellants,

for a Hearing Pursuant to Part 519 of Title 18 of
the Official  Compilation of Codes, Rules and
Determination under 18 NYCRR Parts 515 and
518 to recover $395,387.59, plus interest in
Medicaid overpayments, and to exclude the
Appellants for three years and until reinstated.
_____X

**NOTICE OF MOTION
TO COMPEL WITNESS
& FOR THE PRODUCTION
OF ANY AND ALL RELE-
VANT RECORD(S)**
Case No.: 16-F-1959
PACS #17-1541

PLEASE TAKE NOTICE:  that the Appellants Dove Transport Service, LP and Jean R. Daniel

will move before the Presiding officer, on **Tuesday, June 15, 2021, at 2:00 pm.,** in the forenoon,

or whenever Appellants may be heard, via **WebEx.,** pursuant to **Title 18 Section 493.10 (b),**

pursuant to the **N.Y. Comp. Codes Rules & Regulations, Title 9,  Section 465.14,**  pursuant to

the **General Municipal Law Section 382 (d)(3)**  or pursuant to any relevant law in connection

with this administrative proceeding, for an Order to compel  Mr. William Rogers,  the Executive

Assistant of Public Safety at the Town of Brookhaven **(TOB),**  located at One Independence Hill,

in Farmingville, New York, 11738, his  attendance as a witness on August 19, 2021 and to

*Exhibit "36"*

produce any books, documents, papers, correspondence, and records, including those of similar filings with **DTS, LP,**  seven (7) days prior to the pre-hearing date, on July 15, 2021.

In support of their motion, Appellants will rely upon their entire record on appeal, including a most recent phone conversation that they had with Mr. William Rogers.

<u>PROCEDURAL HISTORY</u>

**1.** On December 10, 2018, the New York State Office of the Medicaid Inspector General **(OMIG)** issued Dove Transport Service, LP **(DTS, LP)** with a Notice of Proposed Agency Action. See Exhibit **A1**. On January 9, 2019, Appellants responded to **OMIG,** challenging its decision and objecting for its failure to adhere to  certain mandatory administrative procedures in its Notice of Proposed Agency Action Pursuant to 18 NYCRR 515.6(a) in its attempt to recoup certain alleged overpayment. See Exhibit **A2**.

**2.** One of such procedures that had been challenged, as stated within our response letter dated January 9, 2019 is that **OMIG** should have also began an overpayment procedure against the Medicaid recipients who received the services from **DTS, LP** as well. In accordance with **18 CRR-NY 518.3(a), OMIG** should have sought recoupment from the Medicaid recipients who benefited from **DTS, LP's** transportation service. **DTS, LP** continues to consider those Medicaid recipients that received services from it as individuals who should also respond to and take part in any administrative hearing or action in connection with this controversy.

**3.** Furthermore, according to **OMIG's** own letter dated May 30, 2017, it fails to consider the fact that it had already been withholding 25% percent of all current and future claims under the Medicaid Program due to its independent review of **DTS, LP's** participation in the Medicaid

Program. The letter further states that such a withholding is temporary. And that it would not continue for more than (90) days, unless **OMIG** would issue a written Draft Audit Report or Notice of Proposed Action and provide the same to **DTS, LP** in writing regarding its decision relating to the withholding of payments, which **DTS, LP** received in December of 2018, more than one (1) year after its May 30, 2017-Letter.

    **4.** On or about January 17, 2020, **OMIG** sent **DTS, LP** with its "Notice of Agency Action Pursuant to **18 NYCRR 515. 6 (b)**, determining to exclude **DTS, LP** for a period of three (3) years and to recover overpayments, jointly and severally, in the amount of $395, 387.59., plus interest. See Exhibit **A3.** And that prior to responding to **OMIG's** Notice of Action dated January `7, 2020, on or about February 10, 2020, Appellants received a presumptuous letter from **OMIG** suggesting that Appellants must make a payment selection within twenty (20) days from the date of its letter, not taking into consideration that their time to respond to **OMIG's** Notice of Action had not expired. See Exhibit **A4.**

    **5.** And on or about February 18, 2020, Appellants responded to **OMIG's** letter dated February 10, 2020. See Exhibit **A5.** And on or about March 9, 2020, Appellants responded to **OMIG's** Notice of Action with an eight (8) page Notice of Request for an Administrative Hearing. Appellants' request addressed all four (4) issues for which **OMIG** believes an overpayment has occurred. See Exhibit **A6.**

**THE ISSUES AT A BAR**
**OMIG'S HISTORY OF ARGUMENTS & DTS, LP's POSITION**

    **6. OMIG** primarily believes that Appellants were operating their business as a Taxi-business within the Town of Brookhaven **(TOB)**. Such an error in law was understandable due to

two (2) erroneous letters sent to **OMIG** by the **TOB's** Executive Assistant of the Public Safety

Department, William Rogers, dated May 24, 2016 and August 11, 2016. See Exhibit **7A.**

**7.** Appellants have, and continue to, made several attempts to summon Mr. William

Rogers to explain via phone and by mail regarding Code II: **Sections 67.1** and **67.3(B)** of the

**TOB**, which exempts **DTS, LP** from obtaining such a license. As Executive Assistant of the Public

Safety Department, he has a duty to provide a clear explanation for this or provide a letter

correcting his previous contention and comply with those sections above. Mr. William Rogers'

testimony is necessary and imperative, as 60% of **OMIG's** claim depends on Mr. William Rogers'

testimony as the "Executive Assistant" of the Public Safety. See Exhibit 8**A.**

**8. OMIG's** second issue is that **DTS, LP** did not provide investigators with required trip

slips or Trip Tickets **(TT's)** to support **DTS, LP's** billings as stated in **OMIG's** Notice of Proposed

Action and <u>not</u> within its Notice of Action. **OMIG** clearly abandoned that issue, since **OMIG**

failed to mention such an issue within its Notice of Action. In any event, **DTS, LP** made it clear

within its response to **OMIG** that it made an earnest attempt to comply with **OMIG's** requests.

**9. DTS, LP** provided **OMIG** with the driver's license numbers of the drivers, a copy of the

registrations of the cars that were being driven, etc., and did inform **OMIG** that any other

driver's license would require additional time to retrieve. See Exhibit **A2** above under bullet

number 24. See also bullet number 30 of Exhibit **2A.** Unfortunately, the documents had already

been destroyed due to water damage prior to **DTS, LP's** receipt of the Notice of Proposed

Action. And **DTS, LP** did not know about this until sometimes in February, 2020.

**10. OMIG's** claims, in its third issue, that **DTS, LP** did not respond to two (2) of its letters

dated June 1, 2016 and June 20, 2016 requesting **TTs** for the period of March 7, 2016 through

March 18, 2016. **DTS, LP** has and continues to make it clear to **OIMG** that it did not receive those letters in June of 2016. **DTS, LP** has always demanded **OMIG** to provide proof that such letters were actually mailed at the time **OMIG** claims that they were mailed and to provide proof of receipt for the same, to no avail. **DTS, LP** only received those letters when it received **OMIG's** Notice of Proposed Action dated December 10, 2018 as such a correspondence was mailed via certified mail, with return receipt. See Exhibit **A9.** See also Exhibit **2A** par. 19.

      **11. OMIG's** contends within its fourth issue that **DTS, LP** did not include the driver's license and vehicle license plates numbers within their **TTs** as required effective July 1, 2016 in billing information submitted. **DTS, LP** made it clear to **OIMG** that they were aware of this new requirement as of July 1, 2016. And that they have been in compliance with such a new regulation. However, **DTS, LP** could not find any **TTs** covering the months of July, August, September, October, November and December of 2016 due to the late, February 2018, unforeseen circumstance, which will further be elaborated upon below.

### THE ULTIMATE ISSUE AT A BAR
**WHETHER THE DESTRUCTION OF DTS, LP's DOCUMENTS DUE TO WATER DAMAGE WAS A MITIGATING CIRCUMSTANCE FOR ITS FAILURE TO COMPY WITH 18 NYCRR 504.3.**

      **12.** And on or about March 11, 2020, a few days after **DTS, LP** learned of the possibility that its documents might have inadvertently been thrown away by Marjorie Joseph, a tenant at 72 Granada Circle in Mount Sinai, NY, where **DTS, LP** held its place of business, **DTS, LP** found it necessary to inform **OMIG** of their loss via email. See Exhibit **A10.** And that on March 13, 2020, **DTS, LP** received an email correspondence from a Theresa Gallager, an Investigative Specialist at the Self-Disclosure Unit, acknowledging receipt of **DTS, LP's** Notice of Loss/Destruction of Records dated March 11, 2020. See Exhibit **A11.**

13. Theresa Gallager immediately began an investigation of the water damage. She instructed **DTS, LP** to provide pictures of the building, the interior room where the documents were placed, and the roof area where the damage occurred, any bills or repair work from the roofing company, etc. etc., And on March 19, 2020, **DTS, LP** provided the Investigative Specialist, Theresa Gallager, with a letter from the contractor, which contains the name of his business, including his telephone number, informing the Investigative Specialist of the condition of the roof, and when he started the work and when the work was completed, etc. etc., together with fifty (50) photos of the building, the interior room of where **DTS, LP's** records where last placed, and the roof area of where the damage occurred.  See Exhibit **A12**.

14. And that on July 15, 2020, Theresa Gallager sent an email to **DTS, LP** informing **DTS, LP** that the Investigative Unit received **DTS, LP's** correspondences, including the fifty (50) photos that it submitted on March 19, 2020. Theresa Gallager also requested for additional information. See Exhibit **A13**.

15. On July 18, 2020, **DTS, LP** provided the Investigative Unit with the information it needed. See Exhibit **A13**. And again, a few hours later on that same day, July 18, 2020, **DTS, LP** corrected an error it had made within one of its responses to Theresa Gallager. See Exhibit **A14**.

16. And that on July 30, 2020, Theresa Gallager from the Self-Disclosure Unit accepted and filed **DTS, LP's** March 11, 2020 Self-Disclosure notification and submitted a copy to **OMIG**, finalizing its investigation in connection with **DTS, LP's** documents that have been destroyed due to water damage. See Exhibit **A15**. And on July 31, 2020, **DTS, LP** sent an email to Theresa Gallager informing her of a crucial factual error she had made within her final report and requested that such an error be corrected.  See Exhibit **A16**.

17. And on August 13, 2020, Theresa Gallager sent **DTS, LP** an email correcting the record. See Exhibit **A17.** And on August 19, 2020, **DTS, LP** responded to Theresa Gallager's concerns and thanked her for completing such an investigation in a timely manner. See Exhibit **A18.**

18. And on August 24, 2020, **OMIG** determined that no mitigating circumstance exists for failure to comply with **18 NYCRR 504.3. OMIG** did not disagree with **DTS, LP's** facts, as it pertains to the case. **OMIG** did not object to nor challenged any portion of its own investigation as it pertains to **DTS, LP's** Loss/Destruction pf record(s). See Exhibit **A19.** And that on September 24, 2020, **DTS, LP** requested a hearing and informed **OMIG** that its August 24, 2020 determination is capricious and arbitrary based on the facts and circumstance in this case. See Exhibit **A20.**

## POST-APPEAL PROCEDURAL HISTORY

19. On October 19, 2020, **DTS, LP** received an email correspondence from a Phillip Hoffman, Senior Attorney at **OMIG.** He informed **DTS, LP** that he will soon reach out to us regarding **DTS, LP's** request for a hearing. See Exhibit **A21.** On October 21, 2020, **DTS, LP** responded to **OMIG's** October 19, 2020 Email correspondence informing **OMIG,** in a nutshell, that their August 24, 2020 Determination was lacking. **DTS, LP** was waiting for a more detailed explanation for its reason(s) to believe that no mitigating circumstance existed within this present case, even though Mr. Philip Hoffman's assignment in this case clearly implies that the office will not change its mind. See Exhibit **A22.**

20. One (1) month later, when it was apparent that **OMIG** would not respond to **DTS, LP;s** September 24, 2020 letter which, in and of itself, was also a Motion for Reconsideration,

on November 21, 2020,  and especially when William Rogers, the **TOB's** Executive Assistant of the Department of Public Safety's testimony was needed to shed some light into this controversy and was informed by **DTS, LP**  on March 13, 2020 to be present during any scheduled hearing, failed to respond to or to communicate with **DTS, LP** after receiving a  copy of the Notice of Request for An Administrative Hearing, **DTS, LP** was compelled to serve the parties with a Notice of Claim on or about November 21, 2020. For the record, **DTS, LP** took the first required step to sue a state agency. See Exhibit **A23.**

21. And that on or about March 25, 2021, **DTS, LP** received a Notice of Hearing Conference from **OMIG's** senior attorney, Mr. Phillip Hoffman. See Exhibit **A24.** And that n March 27, 2021, **DTS, LP** responded to Mr. Phillip Hoffman and informed him that they are in receipt of the Notice of Prehearing Conference and would like a Mr. George Joseph to represent Jean Daniel during the coming conference and to obtain the name, address, and phone number of the Presiding officer, including information about his/her direct mailing address, etc.

22. Mr. Phillip Hoffman instructed Mr. Jean Daniel to have Mr. George Joseph get in contact with him directly in order to request these things. Although there was some difficulties sending such a message via email, Mr. George Joseph provided such a letter to Mr. Daniel and instructed Mr. Daniel to send such a letter on his behalf on March 29, 2021. Up to that point in time, Mr. Phillip Hoffman did not provided the requested information. See Exhibit **A25.**

23. And after a final attempt by **DTS, LP** to contact Mr. William Rogers over the phone, on March 29, 2021, Mr. Jean Daniel and Mr.  George Joseph were successful, **DTS, LP** and Mr. George Joseph, who was also the registered agent assigned within the State of New York to

receive legal documents on behalf of **DTS, LP**, spoke with Mr. William Rogers and surprisingly with a Mr. Moran, who identified himself as the **TOB's** attorney. And the information obtained from William Rogers was recorded by Mr. George Joseph. The transcript of such a conversation is annexed herein as Exhibit **A26.** It is also available for reproduction and for authentication by any party upon request.

24. The conversation with the **TOB's** attorney, Mr. Moran was also a success that day also. He agreed to review the error or hand it to someone at the **TOB** for reconsideration or review. Mr. Moran provided Mr. George Joseph with his email address. And Mr. George Joseph did email a few documents to Mr. Moran, including a copy of the Notice of Claim that was filed against the **TOB** on November 21, 2020. See Exhibit **A23** above.

25. And that during the conversation with Mr. William Rogers on March 29, 2021, **DTS, LP** obtained new facts from Mr. Rogers. As the Executive Assistant of the **TOB,** he stated that it wasn't him or the **TOB** that declared **DTS, LP** as an unlicensed limited partnership. And that it was **OMIG's** own aggressiveness that created this entire ordeal. See Exhibit **A26**, p. 2 line 8. See also p. 2, line 6. Such a testimony is completely contrary to the 2 letters that he provided to **OMIG** in May and August of 2016.

26. And that on May 4, 2021, since I did not hear from the **TOB's** attorney, Mr. Moran, I sent Mr. Moran another email reminding him that such a matter was urgent and that such a correction would assist in the resolution of this controversy. See **A27.**

27. And again, on May 18, 2021, after having been informed of Mr. William Roger's work email, I sent him and the **TOB's** attorney a letter informing them to preserve any and all documents pertaining to **DTS, LP. DTS, LP** and to furnish the same within twenty (20) days of

receipt of the email, etc. **DTS, LP** also informed him that his presence will be needed via of video on August 19, 2021 at 10:00 a.m. See Exhibit **A28.**

28. And although William Rogers and Mr. Moran, who claims that he is sincere about resolving this issue, reached out to **DTS, LP** through its representative, George Joseph, on Monday, May 24, 2021, based on the **TOB's** previous unwillingness to cooperate, it isn't certain as to when, if ever, the **TOB** will correct such an error. It is for this cause that an order to compel Mr. William Rogers' attendance as a witness on August 19, 2021  and for him to produce any and all relevant books, documents, papers, correspondence, and records, including those of similar filings with **DTS, LP** seven (7) days prior to the pre-hearing date, on July 15, 2021 is required. Any and all documents must be mailed to Attn: Mr. Jean R. Daniel, at **72 Granada Circle, Mount Sinai, NY 11766.**

**Wherefore, DTS, LP** request that the Administrative Law Judge **(ALJ)**, Kimberly O' Brien, issues out a Subpoena to Mr. William Rogers, the Executive Assistant of Public Safety, at the **TOB,** located at One Independence Hill, Farmingville, New York, 11738, compelling his attendance as a witness on August 19, 2021 and to produce any and all relevant books, documents, papers, correspondence, and records, including those of similar filings with **DTS, LP's** for comparison within seven (7) days prior to the pre-hearing date, on July 15, 2021. Any of such documents should be mailed to Attn: Mr. Jean R. Daniel, at **72 Granada Circle, Mount Sinai, NY 11766.**

Dated: May 25, 2021
Suffolk County, NY

_____
GEORGE JOSEPH

NEW YORK STATE DEPARTMENT OF HEALTH
OFFICE OF THE MEDIAID INSPECTOR GENERAL
_____X

IN THE MATTER OF THE REQUEST OF

Dove Transport Service, LP and Jean Daniel,
Provider ID # 03882157 (Dove Transport)
& ID # 02201009 (Jean R. Daniel)

Appellants,

for a Hearing Pursuant to Part 519 of Title 18 of
the Official  Compilation of Codes, Rules and
Determination under 18 NYCRR Parts 515 and
518 to recover $395,387.59, plus interest in
Medicaid overpayments, and to exclude the
Appellants for three years and until reinstated.
_____X

**AFFIDAVIT IN SUPPORT
OF MOTION TO COMPEL
WITNESS & FOR THE
PRODUCTION OF ANY
AND ALL RELEVANT
RECORD(S)**
Case No.: 16-F-1959
PACS #17-1541

I, JEAN R. DANIEL, am the primary Appellant in this case. I am familiar with the facts that

are contained in this case. I am making this Affidavit in further support of my Motion to Compel

Witness & for The Production of Amy and All Relevant Record(s).

**1**. On December 10, 2018, the New York State Office of the Medicaid Inspector General

**(OMIG)** issued me a Notice of Proposed Agency Action. On January 9, 2019, I responded to

**OMIG**, challenging its decision and objecting for its failure to adhere to  certain mandatory

administrative procedures in its Notice of Proposed Agency Action Pursuant to 18 NYCRR

515.6(a) in its attempt to recoup certain alleged overpayment.

2. One of such procedures that had been challenged, as stated within my response letter dated January 9, 2019 is that **OMIG** should have also began an overpayment procedure against the Medicaid recipients who received the services from me as well. In accordance with **18 CRR-NY 518.3(a)**, **OMIG** should have sought recoupment from the Medicaid recipients who benefited from **DTS, LP's** transportation service. I continue to consider those Medicaid recipients that received services from me as individuals who should also respond to and take part in any administrative hearing or action in connection with this controversy.

3. Furthermore, according to **OMIG's** own letter dated May 30, 2017, it fails to consider the fact that it had already been withholding 25% percent of all current and future claims under the Medicaid Program due to its independent review of my participation in the Medicaid Program. The letter further states that such a withholding is temporary. And that it would not continue for more than (90) days, unless **OMIG** would issue a written Draft Audit Report or Notice of Proposed Action and provide the same to me in writing regarding its decision relating to the withholding of payments, which I received in December of 2018, more than one (1) year after its May 30, 2017-Letter.

4. On or about January 17, 2020, **OMIG** sent me its "Notice of Agency Action Pursuant to **18 NYCRR 515. 6 (b)**, determining to exclude me for a period of three (3) years and to recover overpayments, jointly and severally, in the amount of $395, 387.59., plus interest. And that prior to responding to **OMIG's** Notice of Action dated January `7, 2020, on or about February 10, 2020, I received a presumptuous letter from **OMIG** suggesting that I must make a payment selection within twenty (20) days from the date of its letter, not taking into consideration that my time to respond to **OMIG's** Notice of Action had not expired.

5. And on or about February 18, 2020, I responded to **OMIG's** letter dated February 10, 2020. And on or about March 9, 2020, I responded to **OMIG's** Notice of Action with an eight (8) page Notice of Request for an Administrative Hearing. I  addressed all four (4) issues for which **OMIG** believes an overpayment has occurred.

6. **OMIG** primarily believes that I was operating my business as a Taxi-business within the Town of Brookhaven **(TOB)**. Such an error in law was understandable due to two (2) erroneous letters sent to **OMIG** by the **TOB's** Executive Assistant of the Public Safety Department, William Rogers, dated May 24, 2016 and August 11, 2016. I have, and continued to, make several attempts to summon Mr. William Rogers to explain via phone and by mail regarding Code II: **Sections 67.1** and **67.3(B)** of the **TOB**, which exempts me from obtaining such a license.

7. As Executive Assistant of the Public Safety Department, he has a duty to provide a clear explanation for this or provide a letter correcting his previous contention and comply with those sections above. Mr. William Rogers' testimony is necessary and imperative, as 60% of **OMIG's** claim depends on Mr. William Rogers' testimony as the "Executive Assistant" of the Public Safety. **OMIG's** second issue is that I did not provide investigators with required trip slips or Trip Tickets **(TT's)** to support my billings as stated in **OMIG's** Notice of Proposed Action and not within its Notice of Action.

8. **OMIG** clearly abandoned that issue, since **OMIG** failed to mention such an issue within its Notice of Action. In any event, I made it clear within its response to **OMIG** that I made an earnest attempt to comply with **OMIG's** requests. I provided **OMIG** with the driver's license numbers of the drivers, a copy of the registrations of the cars that were being driven, etc., and

did inform OMIG that any other driver's license would require additional time to retrieve. Unfortunately, the documents had already been destroyed due to water damage prior to my receipt of the Notice of Proposed Action. And I did not know about this until sometimes in February, 2020.

9. OMIG's claims, in its third issue, that I did not respond to two (2) of its letters dated June 1, 2016 and June 20, 2016 requesting TTs for the period of March 7, 2016 through March 18, 2016. I have and continue to make it clear to OIMG that I did not receive those letters in June of 2016. I always demanded OMIG to provide proof that such letters were actually mailed at the time OMIG claims that they were mailed and to provide proof of receipt for the same, to no avail. I only received those letters when I received OMIG's Notice of Proposed Action dated December 10, 2018 as such a correspondence was mailed via certified mail, with return receipt.

10. OMIG's contends within its fourth issue that I did not include the driver's license and vehicle license plates numbers within my TTs as required effective July 1, 2016 in billing information submitted. I made it clear to OIMG that I was aware of this new requirement as of July 1, 2016. And that I have been in compliance with such a new regulation. However, I could not find any TTs covering the months of July, August, September, October, November and December of 2016 due to the late, February 2018, unforeseen circumstance.

11. And on or about March 11, 2020, a few days after I learned of the possibility that my documents might have inadvertently been thrown away by Marjorie Joseph, a tenant at 72 Granada Circle in Mount Sinai, NY, where I held my place of business, I found it necessary to inform OMIG of my loss via email. And that on March 13, 2020, I received an email

correspondence from a Theresa Gallager, an Investigative Specialist at the Self-Disclosure Unit

acknowledging receipt of my Notice of Loss/Destruction of Records dated March 11, 2020.

**12.** Theresa Gallager immediately began an investigation of the water damage. She

instructed me to provide pictures of the building, the interior room where the documents were

placed, and the roof area where the damage occurred, any bills or repair work from the roofing

company, etc. etc., And on March 19, 2020, I provided the Investigative Specialist, Theresa

Gallager, with a letter from the contractor, which contains the name of his business, including

his telephone number, informing the Investigative Specialist of the condition of the roof, and

when he started the work and when the work was completed, etc. etc., together with fifty (50)

photos of the building, which included the interior room of where my records where last

placed, and the roof area of where the damage occurred.

**13.** And that on July 15, 2020, Theresa Gallager sent an email to me informing me that

the Investigative Unit received my correspondences, including the fifty (50) photos that I

submitted on March 19, 2020. Theresa Gallager also requested for additional information.

And on July 18, 2020, I provided the Investigative Unit with the information it needed. And

again, a few hours later on that same day, July 18, 2020, I corrected an error that I made within

one of my responses to Theresa Gallager.

**14.** And that on July 30, 2020, Theresa Gallager, from the Self-Disclosure Unit, accepted

and filed my March 11, 2020 Self-Disclosure notification and submitted a copy to **OMIG**,

finalizing its investigation in connection with my  documents that have been destroyed due to

water damage. And on July 31, 2020, I sent an email to Theresa Gallager informing her of a

crucial factual error she had made within her final report and requested that such an error be

corrected.  And on August 13, 2020, Theresa Gallager sent me an email correcting the record. And on August 19, 2020, I responded to Theresa Gallager's concerns and thanked her for completing such an investigation in a timely manner.

**15.** And on August 24, 2020, **OMIG** determined that no mitigating circumstance exists for failure to comply with **18 NYCRR 504.3. OMIG** did not disagree with my version of the facts, as it pertains to the case. **OMIG** did not object to nor challenged any portion of its own investigation as it pertains to my Loss/Destruction pf record(s). And that on September 24, 2020, I requested a hearing and informed **OMIG** that its August 24, 2020 determination is capricious and arbitrary based on the facts and circumstance in this case.

**16.** And that on October 19, 2020, I received an email correspondence from a Phillip Hoffman, a Senior Attorney at **OMIG**. He informed me that he will soon reach out to me regarding my request for a hearing. On October 21, 2020, I responded to **OMIG's** October 19, 2020 Email correspondence informing **OMIG**, in a nutshell, that its August 24, 2020 Determination was lacking. I was waiting for a more detailed explanation for its reason(s) to believe that no mitigating circumstance existed within this present case, even though Mr. Philip Hoffman's assignment in this case clearly implies that the office will not change its mind.

**17.** One (1) month later, when it was apparent that **OMIG** would not respond to my September 24, 2020 letter which, in and of itself, was also a Motion for Reconsideration, on November 21, 2020,  and especially when William Rogers, the **TOB's** Executive Assistant of the Department of Public Safety's testimony was needed to shed some light into this controversy and was informed by me on March 13, 2020 to be present during any scheduled hearing, failed to respond to or to communicate with me after receiving a  copy of the Notice of Request for

An Administrative Hearing, I was compelled to serve the parties with a Notice of Claim on or about November 21, 2020. For the record, I took the first required step to sue a state agency. And that on or about March 25, 2021, I received a Notice of Hearing Conference from **OMIG's** senior attorney, Mr. Phillip Hoffman.

18. And that on March 27, 2021, I responded to Mr. Phillip Hoffman and informed him that I am in receipt of the Notice of Prehearing Conference and would like a Mr. George Joseph to represent me during the coming conference and to obtain the name, address, and phone number of the Presiding officer, including information about his/her direct mailing address, etc. Mr. Phillip Hoffman instructed Mr. Jean Daniel to have Mr. George Joseph get in contact with him directly in order to request these things. And although there was some difficulties sending such a message via email, Mr. George Joseph provided such a letter to Mr. Daniel and instructed Mr. Daniel to send such a letter on his behalf on March 29, 2021.

19. Up to that point in time, Mr. Phillip Hoffman did not provide the requested information. And after a final attempt by me to contact Mr. William Rogers over the phone, on March 29, 2021, Mr. Joseph and I were successful.  Mr. Joseph and I spoke with Mr. William Rogers and a Mr. Moran, who identified himself as the **TOB's** attorney. And the information obtained from William Rogers was recorded by Mr. George Joseph. The transcript of such a conversation is annexed herein is annexed as Exhibit A26 as part of the motion.
It is also available for reproduction and for authentication by any party upon request.

20. The conversation with the **TOB's** attorney, Mr. Moran, was also a success as well. He agreed to review the error or hand it to someone at the **TOB** for reconsideration or review. Mr. Moran provided Mr. George Joseph with his email address. And Mr. George Joseph did email a

few documents to Mr. Moran, including a copy of the Notice of Claim that was filed against the TOB on November 21, 2020.

21. And that during the conversation with Mr. William Rogers on March 29, 2021, I obtained new facts from Mr. Rogers. As the Executive Assistant of the **TOB,** he stated that it wasn't him or the **TOB** that declared my business as an unlicensed limited partnership. And that it was **OMIG's** own aggressiveness that created this entire ordeal. Such a testimony is completely contrary to the 2 letters that he provided to **OMIG** in May and August of 2016.

22. And that on May 4, 2021, since Mr. Joseph did not hear from the **TOB's** attorney, Mr. Moran, Mr. Joseph sent Mr. Moran another email reminding him that such a matter was urgent and that such a correction would assist in the resolution of this controversy. And again, on May 18, 2021, after Mr. Joseph had been informed of Mr. William Roger's work email, he sent him and the **TOB's** attorney a letter informing them to preserve any and all documents pertaining to my business and to furnish the same within twenty (20) days of receipt of the email, etc. Mr. George Joseph also informed Mr. William Rogers that his presence will be needed via of video on August 19, 2021 at 10:00 a.m.

23. And although Mr. William Rogers and Mr. Moran, who claims that he is sincere about resolving this issue, reached out to Mr. George Joseph on Monday, May 24, 2021, based on the **TOB's** unwillingness to cooperate, it isn't certain as to when, if ever, the **TOB** will correct such an error. It is for these causes that an order to compel Mr. William Rogers' attendance as a witness on August 19, 2021 and to produce any and all relevant books, documents, papers, correspondence, and records, including those of similar filings with my limited partnership

within seven (7) days prior to the pre-hearing date, on July 15, 2021. Any and all documents

must be mailed to me, Mr. Jean R. Daniel, at **72 Granada Circle, Mount Sinai, NY 11766.**

JEAN R. DANIEL

Sworn  to  me  this       Day

Of   May      , 2021

NOTARY PUBLIC

William Turcios
Notary Public State of New York
No. 01TU6381465
Qualified in Suffolk County
Commission Expires October 1  2022

NEW YORK STATE DEPARTMENT OF HEALTH
OFFICE OF THE MEDIAID INSPECTOR GENERAL
————————————————————————X

IN THE MATTER OF THE REQUEST OF

Dove Transport Service, LP and Jean Daniel,
Provider ID # 03882157 (Dove Transport)
& ID # 02201009 (Jean R. Daniel)

**AFFIDAVIT OF SERVCE**

Appellants,

for a Hearing Pursuant to Part 519 of Title 18 of
the Official  Compilation of Codes, Rules and
Determination under 18 NYCRR Parts 515 and
518 to recover $395,387.59, plus interest in
Medicaid overpayments, and to exclude the
Appellants for three years and until reinstated.

Case No.: 16-F-1959
PACS #17-1541

————————————————————————X

I, GEORGE JOSEPH, certify that a copy of Jean R. Daniel's and Dove Transport Service,

LP's Notice of Motion to Compel Witness & For The Production of Any and All Relevant

Record(s), together with its exhibits, together with its Affidavit in Support of Motion to Compel

Witness & For The Production of Any and All Record(s) has been mailed to the NYS Office of the

Medicaid Inspector General, on behalf of its counsel, Phillip Hoffman, on **May 27, 2021**, via of

**Priority Mail, at NYS Office of the Medicaid Inspector General, Attn: Office of Counsel, 800**

**North Pearl Street, Albany, NY 12204.**

I, GEORGE JOSEPH, also certify that a copy of the same documents described above, which had been mailed to the Office of Counsel on May 27, 2021 via Priority Mail, was also sent to Mr. Mohammed Raushan, the former Junior Partner of Dove Transport Service, LP, at his last known address, 3911 211th Street, Bayside, NY  11361, via Certificate of Mailing,  on May 27, 2021.

GEORGE JOSEPH

Sworn to me this 27 Day

Of   May   , 2021

NOTARY PUBLIC

KIMBERLY C LEWIS
Notary Public - State of New York
No. 01LE6335563
Qualified in Nassau County
My Commission Expires Jan. 19, 2024



**UNITED STATES POSTAL SERVICE**

```
               CAMBRIA HEIGHTS
              22901 LINDEN BLVD
         CAMBRIA HEIGHTS, NY 11411-9997
                (800)275-8777

05/27/2021                        05:11 PM
------------------------------------------
Product            Qty   Unit      Price
                         Price
------------------------------------------
Priority Mail® 2-Day 1             $8.55
   Albany, NY  12204
   Weight: 1 lb 11.30 oz
   Expected Delivery Date
      Tue 06/01/2021
   Tracking #:
      9505 5141 9372 1147 2511 03
   Insurance                       $0.00
      Up to $50.00 included
Total                              $8.55

Mailer 10.5 x 16    1    $1.49     $1.49

Priority Mail® 2-Day 1             $7.95
Flat Rate Env
   Albany, NY  12204
   Flat Rate
   Expected Delivery Date
      Tue 06/01/2021
   Tracking #:
      9505 5141 9372 1147 2511 10
   Insurance                       $0.00
      Up to $50.00 included
Total                              $7.95

Priority Mail® 1-Day 1             $7.95
Flat Rate Env
   Bayside, NY  11361
   Flat Rate
   Expected Delivery Date
      Fri 05/28/2021
   Tracking #:
      9505 5141 9372 1147 2511 27
   Insurance                       $0.00
      Up to $50.00 included
Total                              $7.95

------------------------------------------
Grand Total:                      $25.94
------------------------------------------
Debit Card Remitted               $25.94
   Card Name: VISA
   Account #: XXXXXXXXXXXX6819
   Approval #: 041117
   Transaction #: 145
   Receipt #: 020832
   Debit Card Purchase: $25.94
   AID: A0000000980840         Chip
   AL: US DEBIT
   PIN: Verified
------------------------------------------
```

USPS Tracking®

Track Another Package ✛

Remove ✕

**Tracking Number:** 9505514193721147251103

Your item was delivered in or at the mailbox at 9:41 am on May 29, 2021 in ALBANY, NY 12204.

USPS Tracking Plus™ Available ⌄

## ✓ Delivered, In/At Mailbox

May 29, 2021 at 9:41 am
ALBANY, NY 12204

Feedback

**Get Updates** ⌄

| | |
|---|---|
| Text & Email Updates | ⌄ |
| Tracking History | ⌄ |
| USPS Tracking Plus™ | ⌄ |
| Product Information | ⌄ |

See Less ⌃

Can't find what you're looking for?

FAQs

Feedback

FAQs ›

USPS Tracking®

## Track Another Package  +

Remove ✕

**Tracking Number:** 9505514193721147251110

Your item was delivered to an individual at the address at 11:03 am on June 1, 2021 in ALBANY, NY 12204.

USPS Tracking Plus™ Available ∨

## ✓ Delivered, Left with Individual

June 1, 2021 at 11:03 am
ALBANY, NY 12204

Get Updates ∨

Feedback

Text & Email Updates ∨

Tracking History ∨

USPS Tracking Plus™ ∨

Product Information ∨

See Less ∧

Go to our FAQs section to find answers to your tracking questions.

**FAQs**

Feedback

6/27/2021                         Re: Dove Transport Service LP, Jean R. Daniel, and Mohammed Raushan [Audit 17-1541]

From: goodtone450@aol.com,
To: Philip.Hoffman@omig.ny.gov,
Subject: Re: Dove Transport Service LP, Jean R. Daniel, and Mohammed Raushan [Audit 17-1541]
Date: Thu, Jun 10, 2021 1:02 pm

June 10, 2021

From: Mr. George Joseph

Re:    Dove Transport Service. LP

Good evening Judge O' Brien:

We are in receipt of OMIG's response to Dove Transport Service, LP's  well anticipated motion to compel and would like to remind OMIG that Dove Transport Service, LP has a fundamental right to such a request under this present administrative proceeding. Now If OMIG has any trouble reading  or understanding Dove Transport Service, LP's opening request(s) and its "Wherefore" clause, I will be more than happy to read it at loud to them so that they can understand. Now USPS's record indicates that OMIG has been in receipt of this motion on June 1, 2021. Why should your Honor give OMIG any additional time to respond? Dove Transport Service, LP, therefore, ask that OMIG's request for an adjournment to respond be denied.

Sincerely,

Mr. George Joseph


-----Original Message-----
From: Hoffman, Philip (OMIG) <Philip.Hoffman@omig.ny.gov>
To: Obrien, kimberly A (HEALTH) <kimberly.obrien@health.ny.gov>
Cc: r <goodtone450@aol.com>; sunset3drive@aol.com <sunset3drive@aol.com>; Mohammed Raushan <coachraushan@gmail.com>
Sent: Thu, Jun 10, 2021 9:30 am
Subject: Dove Transport Service LP, Jean R. Daniel, and Mohammed Raushan [Audit 17-1541]

Good afternoon Judge O'Brien,

OMIG is in receipt of a copy of motion papers of Appellants Dove Transport Service, LP and Jean Daniel, with a return date of June 15, 2021.  As with their previous motion, this does not appear to be an appropriate proceeding pursuant to any regulation, and it is also unclear as to the relief being sought.  I would therefore request that the motion not be accepted.  If however your Honor permits the motion practice, I would ask that the date be adjourned and OMIG allowed an opportunity to respond.

Thank you,
Phil Hoffman

**Philip Hoffman**
Senior Attorney

Office of the Medicaid Inspector General
90 Church Street, 14th Floor, New York, NY 10007
(212) 417-4569  | philip.hoffman@omig.ny.gov
www.omig.ny.gov

Exhibit "37"

6/27/2021                          RE: Dove Transport Service LP, Jean R. Daniel, and Mohammed Raushan [Audit 17-1541]

From: kimberly.obrien@health.ny.gov,
To: Philip.Hoffman@omig.ny.gov,
Cc: goodtone450@aol.com, sunset3drive@aol.com, coachraushan@gmail.com,
Subject: RE: Dove Transport Service LP, Jean R. Daniel, and Mohammed Raushan [Audit 17-1541]
Date: Wed, Jun 16, 2021 11:03 am

Dear Parties:  The parties  should cc one another on all communications with my office.  The Appellant's "motion" is not accepted.  The parties agreed to go forward with the hearing at 10:00am, on August 19, 2021, via WebEx.  An invitation to join the hearing will be emailed to  each of the parties closer in time to the hearing.


Thank you

Kimberly A. O'Brien

Administrative Law Judge

518-402-0748




From: Hoffman, Philip (OMIG) <Philip.Hoffman@omig.ny.gov>
Sent: Thursday, June 10, 2021 12:30 PM
To: Obrien, kimberly A (HEALTH) <kimberly.obrien@health.ny.gov>
Cc: r <goodtone450@aol.com>; sunset3drive@aol.com; Mohammed Raushan <coachraushan@gmail.com>
Subject: Dove Transport Service LP, Jean R. Daniel, and Mohammed Raushan [Audit 17-1541]


Good afternoon Judge O'Brien,


OMIG is in receipt of a copy of motion papers of Appellants Dove Transport Service, LP and Jean Daniel, with a return date of June 15, 2021.  As with their previous motion, this does not appear to be an appropriate proceeding pursuant to any regulation, and it is also unclear as to the relief being sought.  I would therefore request that the motion not be accepted.  If however your Honor permits the motion practice, I would ask that the date be adjourned and OMIG allowed an opportunity to respond.


Thank you,

Phil Hoffman

Exhibit "38"

5/27/2021                    RE: Dove Transport Service LP, Jean R. Daniel, and Mohammed Raushan [Audit 17-1541]

Philip Hoffman

Senior Attorney


Office of the Medicaid Inspector General

90 Church Street, 14th Floor, New York, NY 10007

(212) 417-4569  | philip.hoffman@omig.ny.gov

www.omig.ny.gov

5/27/2021

Re: Dove Transport Service LP, Jean R. Daniel, and Mohammed Raushan [Audit 17-1541]

**From:** goodtone450@aol.com,
    **To:** kimberly.obrien@health.ny.gov,
**Subject:** Re: Dove Transport Service LP, Jean R. Daniel, and Mohammed Raushan [Audit 17-1541]
    **Date:** Thu, Jun 17, 2021 1:29 am

June 17, 2021

From: Dove Transport Service, LP and Jean R. Daniel

To:   Kimberly A. O' Brien, Administrative Law Judge

Re:   Your Decision Dated June 16, 2021

Subj.:  Notice of Dove Transport Service, LP's Intent  or Notice to Appeal

Dear Judge:

Dove Transport Service, LP is in receipt of your decision dated June 16, 2021 denying our request to compel witness & for the reproduction of any and all relevant record(s). We are hereby informing you that we intend to appeal this decision. And because this is an informal decision, we';re asking that the same be made formal, with full instructions on how to request for an internal appeal, if applicable.

Sincerely yours,

Mr. George Joseph


-----Original Message-----
From: Obrien, kimberly A (HEALTH) <kimberly.obrien@health.ny.gov>
To: Hoffman, Philip (OMIG) <Philip.Hoffman@omig.ny.gov>
Cc: r <goodtone450@aol.com>; sunset3drive@aol.com <sunset3drive@aol.com>; Mohammed Raushan
<coachraushan@gmail.com>
Sent: Wed, Jun 16, 2021 11:03 am
Subject: RE: Dove Transport Service LP, Jean R. Daniel, and Mohammed Raushan [Audit 17-1541]

Dear Parties:  The parties  should cc one another on all communications with my office.  The Appellant's "motion" is not accepted.  The parties agreed to go forward with the hearing at 10:00am, on August 19, 2021, via WebEx.  An invitation to join the hearing will be emailed to  each of the parties closer in time to the hearing.

Thank you
Kimberly A. O'Brien
Administrative Law Judge
518-402-0748


**From:** Hoffman, Philip (OMIG) <Philip.Hoffman@omig.ny.gov>
**Sent:** Thursday, June 10, 2021 12:30 PM
**To:** Obrien, kimberly A (HEALTH) <kimberly.obrien@health.ny.gov>
**Cc:** r <goodtone450@aol.com>; sunset3drive@aol.com; Mohammed Raushan <coachraushan@gmail.com>
**Subject:** Dove Transport Service LP, Jean R. Daniel, and Mohammed Raushan [Audit 17-1541]

Good afternoon Judge O'Brien,

OMIG is in receipt of a copy of motion papers of Appellants Dove Transport Service, LP and Jean Daniel, with a return date of June 15, 2021.  As with their previous motion, this does not appear to be an appropriate proceeding pursuant to any regulation, and it is also unclear as to the relief being sought.  I would therefore request that the motion not be accepted.  If however your Honor permits the motion practice, I would ask that the date be adjourned and OMIG allowed an opportunity to respond.

Exhibit "39"

6/27/2021

Re: Dove Transport Service LP, Jean R. Daniel, and Mohammed Raushan [Audit 17-1541]

Phil Hoffman

## Philip Hoffman
Senior Attorney

**Office of the Medicaid Inspector General**
90 Church Street, 14th Floor, New York, NY 10007
(212) 417-4569 | philip.hoffman@omig.ny.gov
www.omig.ny.gov

OMIG Dove Transport Service LP Audit 17-1541

3/27/2021

From: kimberly.obrien@health.ny.gov,
To: goodtone450@aol.com, Philip.Hoffman@omig.ny.gov, coachraushan@gmail.com,
Subject: OMIG Dove Transport Service LP Audit 17-1541
Date: Fri, Jun 18, 2021 11:40 am
Attachments: OMIG 18 NYCRR 519.14.docx (13K)

Dear Parties:  During our  WebEx meeting  on  May 4, 2021,  the  parties agreed to  meet  for a prehearing conference on  July 16, 2021 at  2:00pm. As we  discussed,  the ALJ does not attend the  prehearing conference. Attached please find the  prehearing conference regulation,  among other things  it addresses  the exchange of  documents and  witness lists .    Thank you

Kimberly A. O'Brien

Administrative Law Judge

518-402-0748

## 519.14 Prehearing conference.

(a) A prehearing conference will be held at least seven days in advance of the hearing date at which time each party must disclose the evidence that the party intends to introduce at the hearing, including documentary evidence and identification of witnesses, and consider:

(1) simplification of the issues;

(2) amendments to any pleadings, notices or replies for purposes of clarification;

(3) stipulations, admissions of fact, contents or authenticity of documents, or the accuracy of any photocopy or reproduction intended to be introduced at the hearing;

(4) limitations on the number of witnesses; and

(5) other matters which would expedite the disposition of the proceeding.

(b) Any stipulations and procedural issues not resolved at the prehearing conference must be submitted to the hearing officer upon commencement of the hearing for a determination on the record or other further proceedings as the hearing officer may require. Any party who fails to attend the prehearing conference or who unreasonably denies or refuses to admit a fact, authenticate a document, exchange witness lists or proposed exhibits, will be precluded from denying the fact, or denying the authenticity or accuracy of the document or from introducing the exhibit or the testimony of the witness or objecting to the introduction of the exhibit or the testimony of witnesses.

18 CRR-NY 519.14

Re: OMIG Dove Transport Service LP Audit 17-1541

6/27/2021

goodtone450@aol.com,
To: kimberly.obrien@health.ny.gov,
Subject: Re: OMIG Dove Transport Service LP Audit 17-1541
Date: Fri, Jun 18, 2021 5:40 pm

July 18, 2021

From: Dove Transport Service, LP

To:   ALJ Kimberly A. O' Brien

Re:   Your Correspondence dated June 18, 2021

Dear Administrative Judge Kimberly A. O' Brien:

We are in receipt of your email correspondence dated June 18, 2021 where you've attached Rule 519.14, under "Pre-hearing Conference". Dove Transport Service, LP and Jean R. Daniel interpret such an email correspondence as a response to our notice of appeal and/or request for an internal administrative review. Please note that we are still requesting for this review and would like to be notified of the Department of Health's internal review procedures on how to do so.

Rule 519.14 does not justify your Honor's decision. It specifically states, in pertinent parts, that 'a prehearing conference will be held at least seven days in advance of the hearing date AT WHICH TIME each party MUST disclose the evidence that the party intends to introduce at the hearing, INCLUDING DOCUMENTARY EVIDENCE AND IDENTIFICATION OF WITNESSES, ETC.

Clearly, Dove Transport Service, LP, prior to the hearing, MUST contain ALL of its documentary evidence AND IDENTIFICATION of witnesses, etc. How will Dove Transport Service, LP appropriately and fully disclose its evidence if its request to compel witness and for the production of any and all relevant record be denied? Furthermore, among other reasons, because it can be expected that such a witness will not willingly comply, such an early request is appropriate, as he may want someone else to appear on his behalf, which would further delay this process.

We, therefore, respectfully request for an internal review and would like to be instructed by your Honor in order to do so.

Thank you,

Mr. George Joseph

-----Original Message-----
From: Obrien, kimberly A (HEALTH) <kimberly.obrien@health.ny.gov>
To: r <goodtone450@aol.com>; Hoffman, Philip (OMIG) <Philip.Hoffman@omig.ny.gov>; Mohammed Raushan <coachraushan@gmail.com>
Sent: Fri, Jun 18, 2021 11:40 am
Subject: OMIG Dove Transport Service LP Audit 17-1541

Dear Parties:  During our WebEx meeting on May 4, 2021, the parties agreed to meet for a prehearing conference on July 16, 2021 at 2:00pm. As we discussed, the ALJ does not attend the prehearing conference. Attached please find the prehearing conference regulation, among other things it addresses the exchange of documents and witness lists . Thank you

Kimberly A. O'Brien
Administrative Law Judge
518-402-0748

Exhibit "4"

June 29, 2021

From:  Dove Transport Service, LP
       72 Granada Circle,
       Mount Sinai, NY 11766

To:  Supervising Administrative Law Judge,
     New York State Department of Health,
     Bureau of Adjudicating Review Center,   Suite 510,
     150 Broadway,
     Menands, New York 12204

Re:  Case No.: 16-F-1959
     PACS # 17-1541

Via:  Priority Mail Dated June 29, 2021

Subj.:  NOTICE OF REQUEST TO ADJOURN PROCEDING &
        TO OBTAIN A DECLARATORY RULING

### DOVE TRANSPORT SERVICE, LP'S PETITION

Dear  Supervising Administrative Law Judge:

On May 27, 2021, Dove Transport Service filed a Motion to Compel Witness & for The Production of Any and All Record(s). The respondent is not disputing that, as USPS's record does show that both the Administrative Law Judge, Kimberly A. O' Brien and OMIG's attorney, Phillip Hoffman, received a copy of such a motion on May 29, 2021 and on June 1, 2021. See Enclosure "1".

In fact, the Respondent's attorney, Phillip Hoffman, emailed the ALJ, Kimberly A. O' Brien on June 10, 2021, nine (9) days after receiving a copy of such a motion to (1) request that such a motion not be accepted; (2) or to adjourn the matter to allow OMIG to respond to Dove's motion, needless to say that such a request was untimely. See Enclosure "2".

Also on June 10, 2021, the appellants responded to OMIG's request and asked the ALJ, Kimberly A. O' Brien not to consider the Respondent's request. The Appellants also made it clear that the Respondent had been in possession of such a motion as early as June 1, 2021 and failed to respond. See Enclosure "3".

And on June 16, 2021, the ALJ, Kimberly A. O' Brien, responded to OMIG's request and decided not to accept Dove's motion to compel on the ground that 'The parties agreed to go forward with the hearing at 10:00, on August 19, 2021, via WebEx.' The ALJ did not consider the scheduled Pre-hearing conference on July 16, 2021 where the parties must exchange their list of witnesses. The ALJ did not consider Dove's intention to compel a third-party as a witness can be burdensome; and that ample notice, time and consideration should be afforded to that party. The ALJ was aware of Appellants' intention, as such a matter was discussed with the ALJ during the May 4, 2021 WebEx meeting with her. See Enclosure "4".

*Exhibit "4g"*

On June 17, 2021, Dove responded to the Administrative Law Judge, Kimberly A. O' Brien's decision, requesting an appeal and informing the ALJ of Dove's intention to appeal.  The Appellants also requested that a formal decision be made in connection with such a decision, with full instructions on how to conduct an internal appeal.  See Enclosure "5".

On June 18, 2021, the ALJ responded by simply (1) reminding the parties that the prehearing conference is scheduled for July 16, 2021 and not July 15, 2021, as OMIG's attorney contends; (2) and provided the parties with Rule 519.14 on "Prehearing conference", implying that the Appellants need not worry and that the parties will have such an opportunity to address such an issue during the Pre-hearing conference. See Enclosure "6'.

Dove Transport Service, LP immediately responded to the ALJ's rationale and informed her that Dove Transport, Service, LP' still requires such a review and would like to be notified of the Department of Health's internal review procedures on how to do so.  Dove further instructed the ALJ that Rule 519. 14 does not justify the ALJ's decision, informing the ALJ that such a law requires a party to have all of its documentary evidence and the identification of all of its witness(s) that a  party intends to bring  during the prehearing conference.  And that since the ALJ denied Dove's request to compel a third-party co-defendant and to obtain any and all relevant record from that particular party prior to the prehearing conference, Dove will not be prepared for such coming pre-hearing conference on July 16, 2021. See Enclosure "7".

Wherefore, Dove Transport Service, LP, in accordance with the State Administrative Procedure Administrative Law, (SAPA), Section 204.1, requests that this agency make a declaratory ruling in connection with 18 NYCRR 519.14 on its relevancy or applicability for denying  Appellants' motion to compel.  Such a request requires an adjournment. Please note that pursuant to Section 241.2, a response to obtain such a declaratory ruling is expected within thirty (30) days from the time of receipt of this letter. Dove will assume that such a letter will be received five (5) days after it has been mailed to all parties.

Sincerely,

Mr. George Joseph
Cc:  Phillip Hoffman, Senior attorney
      NYS Office of the Medicaid Inspector
      General, Attn:  Office of Counsel,
      800 North Pearl Street,
      Albany, New York 12204
      Priority Mail Dated June 29, 2021

CC: Mohammed Raushan, former Junior
      Partner of Dove Transport Service, LP,
      3911 211th Street,
      Bayside, New York 11361
      Via Priority Mail Dated June 29, 2021

From: james.horan@health.ny.gov,
   To: kimberly.obrien@health.ny.gov,
   Cc: goodtone450@aol.com, Philip.Hoffman@omig.ny.gov,
Subject: RE: Webex meeting changed: Prehearing Conference - Dove Transport Service, LP, Jean Daniel, and Mohammed Raushan
   Date: Fri, Jul 9, 2021 8:51 am

There are no internal appeals to the Chief ALJ from another ALJ's rulings. There will be no declaratory ruling because there is an actual case in progress. The case will proceed as Judge O'Brien directs

**From:** Obrien, kimberly A (HEALTH) <kimberly.obrien@health.ny.gov>
**Sent:** Friday, July 9, 2021 11:40 AM
**To:** Horan, James F (HEALTH) <james.horan@health.ny.gov>
**Subject:** FW: Webex meeting changed: Prehearing Conference - Dove Transport Service, LP, Jean Daniel, and Mohammed Raushan

FYI

**From:** r <goodtone450@aol.com>
**Sent:** Thursday, July 8, 2021 10:03 PM
**To:** Hoffman, Philip (OMIG) <Philip.Hoffman@omig.ny.gov>
**Cc:** Obrien, kimberly A (HEALTH) <kimberly.obrien@health.ny.gov>; coachraushan@gmail.com
**Subject:** Re: Webex meeting changed: Prehearing Conference - Dove Transport Service, LP, Jean Daniel, and Mohammed Raushan

*ATTENTION: This email came from an external source. Do not open attachments or click on links from unknown senders or unexpected emails.*

July 8, 2021

From: Mr. George Joseph

To:   Mr. Phillip Hoffman

                                       *Exhibit "43"*

Re:   The Pre-hearing Conference of Dove Transport Service, LP

7/9/2021                 RE: Webex meeting changed: Prehearing Conference - Dove Transport Service. LP, Jean Daniel, and Mohammed Raushan

Case No.: 16-F-1959

PACS # 17-1541


Dear Mr. Hoffman:


USPS record indicates that you are in receipt of Dove Transport Service, LP's request to adjourn, based on the fact that the Administrative Law Judge's, Kimberly A. O'Brien's decision, denying Dove's motion to compel witness & for the production of record, etc.. As you know, as a result, Dove have asked the Senior Administrative Judge to review such a decision and to make a declaratory ruling in connection with 18 NYCRR 519.14 regarding such a law's relevancy or applicability for not granting Dove's motion. Such a request is legal and appropriate, in light of the fact that Dove intends to receive documents from Mr. William Rogers and to be a witness during the hearing. So any Pre-hearing conference must await the Judge's decision.


Sincerely,


Mr. George Joseph


-----Original Message-----
From: Philip Hoffman <messenger@webex.com>
To: goodtone450@aol.com
Sent: Thu, Jul 8, 2021 9:10 am
Subject: Webex meeting changed: Prehearing Conference - Dove Transport Service, LP, Jean Daniel, and Mohammed Raushan


**Philip Hoffman changed the Webex meeting information.**


When it's time, join the Webex meeting here.

RE: Webex meeting changed: Prehearing Conference - Dove Transport Service, LP, Jean Daniel, and Mohammed Raushan

Thursday, July 15, 2021

2:00 PM  |  (UTC-04:00) Eastern Time (US & Canada)  |  2 hrs 30 mins

join meeting

**More ways to join:**

**Join from the meeting link**

https://meetny.webex.com/meetny/j.php?MTID=mc74bea181e5f2ff05bd32948a9808591

**Join by meeting number**

Meeting number (access code): 161 570 1856

Meeting password: BsphPU5m6d8

**Tap to join from a mobile device (attendees only)**

+1-518-549-0500,,1615701856## USA Toll

**Join by phone**

+1-518-549-0500 USA Toll

Global call-in numbers

**Join from a video system or application**

Dial 1615701856@meetny.webex.com

You can also dial 173.243.2.68 and enter your meeting number.

Need help? Go to https://help.webex.com



Office of the
Medicaid Inspector
General

ANDREW M. CUOMO
Governor

FRANK T. WALSH, JR.
Acting Medicaid Inspector General

June 24, 2021

Via email:
Mr. George Joseph
72 Granada Circle
Mount Sinai, NY  11766

Via Email:
Mr. Mohammed Raushan
39-11 211th Street
Bayside, NY  11361

Re:     Dove Transport Service, LP, Jean Daniel, and Mohammed Raushan
Case:   16-F-1959
PACS:   17-1541

Dear Mr. Raushan and Mr. Joseph:

In preparation for the July 15, 2021 prehearing conference pursuant to 18 NYCRR 519.14, I am forwarding documents to you both via our secured delivery system, SendVault.  A link to these documents will be sent to you directly from SendVault.  You will also need the password that is being provided to you via email along with this letter.  You may wish to cut and paste the password without any additional spaces to ensure accuracy.  If you encounter any difficulty in accessing and/or downloading the documents, please let me know.

Please also be advised that the New York State Office of the Medicaid Inspector General (OMIG) has revised the associated claims with respect to the lack of licensure from the Town of Brookhaven from June 19, 2014 through April 23, 2016, set forth in Exhibit "3B" to the December 10, 2018 Notice of Proposed Agency Action and the January 17, 2020 Notice of Agency Action.  As a result, the Finding arising out of the failure to have Town of Brookhaven licensure has been reduced to 857 claims and a revised Medicaid overpayment amount of $27,690.06 plus interest.  The remaining claims for this Finding are contained within revised Exhibit "3B" that can be found in the documents being sent to you today, within Exhibit "2", the NOPAA/NOAA/Response file at Bates stamp pages 480-506.

The 6,025 claims contained within Exhibit "3C" due to the omission of driver's license and vehicle plate information from July 1, 2016 through May 13, 2017 in the amount of $132,751.47 plus interest remain unchanged.

The revised total Medicaid overpayment amount for all Findings is now $160,441.53 plus interest, and this is the overpayment amount that OMIG will defend at the hearing in this matter.  Thank you for your attention to the foregoing.

Sincerely,

Philip Hoffman
Senior Attorney

Exhibit "44"

```
================ LogistiCare Transportation Provider Network ================
```

Dove Transport Services

Trips for Friday, July 03, 2015                          **LogistiCare**

```
------------------------------------------------------------------------
```
01-19382-A            ** NEW **                    28   - Nassau
          POLLARD, DOUGLAS A                               Age: 58
08:30 PU  Residence                  Phy:         (516) 468-4776
          400A Park Blvd, Massapequa Park, NY 11762
09:27 DO  Nassau County Meth Maintaince- Phy:     (516) 572-6305
          2201 Hempstead Tpke, East Meadow, NY 11554
LOS: LIV  SMTWTFS   CPay: $0.00 PCA: 0  AEsc: 0  CEsc: 0  Seats: 0    Miles: 8
Notes: travels alone/M-F/Curb to Curb
                              Member ID: AQ37641P
Ordering Med Prov: NASSAU COUNTY METH MAINTAINCE-NASSAU HEALTHCA NPI: 1801857172
Procedure Code: A0100, S0215
```
------------------------------------------------------------------------
```
01-19382-B            ** NEW **                    28   - Nassau
          POLLARD, DOUGLAS A                               Age: 58
10:00 PU  Nassau County Meth Maintaince- Phy:     (516) 572-6305
          2201 Hempstead Tpke, East Meadow, NY 11554
11:12 DO  Residence                  Phy:         (516) 468-4776
          400A Park Blvd, Massapequa Park, NY 11762
LOS: LIV  SMTWTFS   CPay: $0.00 PCA: 0  AEsc: 0  CEsc: 0  Seats: 0    Miles: 8
Notes: travels alone/M-F/Curb to Curb
                              Member ID: AQ37641P
Ordering Med Prov: NASSAU COUNTY METH MAINTAINCE-NASSAU HEALTHCA NPI: 1801857172
Procedure Code: A0100, S0215
```
------------------------------------------------------------------------
```
01-52026-A            ** NEW **                    28   - Nassau
          FORTENBERRY, BELLA                               Age: 65
12:45 PU  Residence                  Phy:         (347) 418-1709
          779 Prospect St, Baldwin, NY 11510
13:57 DO  Freeport Library/Joseph Rotolo Phy:     (516) 379-5000
          267 W Merrick Rd, Freeport, NY 11520
LOS: LIV            CPay: $0.00 PCA: 0  AEsc: 0  CEsc: 0  Seats: 0    Miles: 1
DO Dir: Dr. Paul Freedman
Notes: Enrollee ATS
                              Member ID: FM20423E
Ordering Med Prov: Dr. Paul Freedman              NPI: 1255427746
Procedure Code: A0100
```
------------------------------------------------------------------------
```
01-52026-B            ** NEW **                    28   - Nassau
          FORTENBERRY, BELLA                               Age: 65
17:30 PU  Freeport Library/Joseph Rotolo Phy:     (516) 379-5000
          267 W Merrick Rd, Freeport, NY 11520
18:42 DO  Residence                  Phy:         (347) 418-1709
          779 Prospect St, Baldwin, NY 11510
LOS: LIV            CPay: $0.00 PCA: 0  AEsc: 0  CEsc: 0  Seats: 0    Miles: 1
PU Dir: Dr. Paul Freedman
Notes: Enrollee ATS
                              Member ID: FM20423E
Ordering Med Prov: Dr. Paul Freedman              NPI: 1255427746
Procedure Code: A0100
```

Exhibit "45"

```
====================== LogistiCare Transportation Provider Network ======================
```

Dove Transport Services

Trips for Friday, July 03, 2015

**LogistiCare**

```
------------------------------------------------------------------------------
01-75013-A                ** NEW **                          47   - Suffolk
          MCGRIFF, CRUZAN                                          Age: 53
17:30 PU  Residence                    Phy:                  (631) 772-7312
          1998 Route 112, Apt. 54B         , Coram, NY 11727
18:57 DO  Clinic                       Phy:            (631) 732-4794 x129
          15 Herkimer St, Mastic, NY 11950
LOS: LIV        CPay: $0.00 PCA: 0  AEsc: 0  CEsc: 0  Seats: 0    Miles: 12
DO Dir: Recreation Center
                              Member ID: AW54588E
Ordering Med Prov: ADULT DAY CENTER (F.R.E.E.)              NPI: 1386886232
Procedure Code: A0100, S0215
------------------------------------------------------------------------------
01-75013-B                ** NEW **                          47   - Suffolk
          MCGRIFF, CRUZAN                                          Age: 53
20:30 PU  Clinic                       Phy:            (631) 732-4794 x129
          15 Herkimer St, Mastic, NY 11950
21:57 DO  Residence                    Phy:                  (631) 772-7312
          1998 Route 112, Apt. 54B         , Coram, NY 11727
LOS: LIV        CPay: $0.00 PCA: 0  AEsc: 0  CEsc: 0  Seats: 0    Miles: 12
PU Dir: Recreation Center
                              Member ID: AW54588E
Ordering Med Prov: ADULT DAY CENTER (F.R.E.E.)              NPI: 1386886232
Procedure Code: A0100, S0215
------------------------------------------------------------------------------
01-19455-A              ** CANCELED **                       28   - Nassau
          TSOUKALIS, MARINA                                        Age: 28
09:15 PU  Residence                    Phy:                  (516) 582-0651
          45 S Gate, Hicksville, NY 11801
09:42 DO  Nassau University Medical Cent Phy:               (516) 572-6511
          2201 Hempstead Tpke, East Meadow, NY 11554
LOS: LIV  MTWTF    CPay: $0.00 PCA: 0  AEsc: 0  CEsc: 0  Seats: 0   Miles: 5
PU Dir: 516-813-5665 Please call upon arrival
Notes: Please wait - enrollee is in & out -curb to curb
                              Member ID: DP75723G
Ordering Med Prov: NASSAU UNIVERSITY MEDICAL CENTER (MH) (OP)   NPI: 1538186143
Procedure Code: A0100, S0215
------------------------------------------------------------------------------
01-19455-B              ** CANCELED **                       28   - Nassau
          TSOUKALIS, MARINA                                        Age: 28
00:00 PU  Nassau University Medical Cent Phy:               (516) 572-6511
          2201 Hempstead Tpke, East Meadow, NY 11554
00:00 DO  Residence                    Phy:                  (516) 582-0651
          45 S Gate, Hicksville, NY 11801
LOS: LIV  MTWTF    CPay: $0.00 PCA: 0  AEsc: 0  CEsc: 0  Seats: 0   Miles: 5
DO Dir: 516-813-5665 Please call upon arrival
Notes: Please wait - enrollee is in & out -curb to curb
                              Member ID: DP75723G
Ordering Med Prov: NASSAU UNIVERSITY MEDICAL CENTER (MH) (OP)   NPI: 1538186143
Procedure Code: A0100, S0215
```

## LogistiCare Transportation Provider Network

**Dove Transport Services**

Trips for Saturday, July 04, 2015

**LogistiCare**

---

```
01-30236-A            ** NEW **                        28   - Nassau
           WEFELS, JAMES D                                   Age: 33
07:15 PU   Residence                   Phy:           (516) 785-2882
           54 Croydon Dr, Bellmore, NY 11710
08:27 DO   Doctor's Office             Phy:           (631) 789-7429
           221 Broadway, Amityville, NY 11701
LOS: LIV              CPay: $0.00 PCA: 0  AEsc: 0  CEsc: 0  Seats: 0     Miles: 7
DO Dir: Dr. won,im
Notes: 1 adult escort\will call
                                   Member ID: BN58173C

Ordering Med Prov: dr.won,im                          NPI: 1710051537
Procedure Code: A0100, S0215
```

---

```
01-30236-B            ** NEW **                        28   - Nassau
           WEFELS, JAMES D                                   Age: 33
00:00 PU   Doctor's Office             Phy:           (631) 789-7429
           221 Broadway, Amityville, NY 11701
00:00 DO   Residence                   Phy:           (516) 785-2882
           54 Croydon Dr, Bellmore, NY 11710
LOS: LIV              CPay: $0.00 PCA: 0  AEsc: 0  CEsc: 0  Seats: 0     Miles: 7
PU Dir: Dr. won,im
Notes: 1 adult escort\will call
                                   Member ID: BN58173C

Ordering Med Prov: dr.won,im                          NPI: 1710051537
Procedure Code: A0100, S0215
```

```
        LogistiCare Transportation Provider Network
```

**Dove Transport Services**
Trips for Sunday, July 05, 2015

**LogistiCare**

---

```
01-8666-A              ** NEW **                    47  - Suffolk
         BAKER, DAVID                                      Age: 66
11:00 PU  Residence                      Phy:        (631) 285-3534
          28 Lillian Dr, Nesconset, NY 11767
11:57 DO  Meat Farms Giunta's (Hia- 1861 Phy:        (631) 580-4720
          318 Portion Rd, Ronkonkoma, NY 11779
LOS: LIV          CPay: $0.00 PCA: 0  AEsc: 1  CEsc: 0  Seats: 1    Miles: 3
                                  Member ID: DG24099H
Ordering Med Prov: Meat Farms Giunta's (HIA- 1861461006)     NPI: 1861461006
Procedure Code: A0100, S0215
```

---

```
01-7944-A              ** NEW **                    47  - Suffolk
         KLAFF, LLOYD E                                    Age: 60
11:45 PU  Residence                      Phy:        (631) 242-1480
          870 Little East Neck Rd N, Apt. C3      , West Babylon, NY 11704
12:57 DO  Suffolk Y Jcc (Hia Npi18614610 Phy:     (631) 543-2245
          74 Hauppauge Rd, Commack, NY 11725
LOS: LIV          CPay: $0.00 PCA: 0  AEsc: 0  CEsc: 0  Seats: 0    Miles: 10
                                  Member ID: AB18577H
Ordering Med Prov: Suffolk Y JCC (HIA npi1861461006)        NPI: 1861461006
Procedure Code: A0100, S0215
```

---

```
01-7944-B              ** NEW **                    47  - Suffolk
         KLAFF, LLOYD E                                    Age: 60
14:30 PU  Suffolk Y Jcc (Hia Npi18614610 Phy:     (631) 543-2245
          74 Hauppauge Rd, Commack, NY 11725
15:42 DO  Residence                      Phy:        (631) 242-1480
          870 Little East Neck Rd N, Apt. C3      , West Babylon, NY 11704
LOS: LIV          CPay: $0.00 PCA: 0  AEsc: 0  CEsc: 0  Seats: 0    Miles: 10
                                  Member ID: AB18577H
Ordering Med Prov: Suffolk Y JCC (HIA npi1861461006)        NPI: 1861461006
Procedure Code: A0100, S0215
```

---

```
01-8666-B              ** NEW **                    47  - Suffolk
         BAKER, DAVID                                      Age: 66
00:00 PU  Meat Farms Giunta's (Hia- 1861 Phy:       (631) 580-4720
          318 Portion Rd, Ronkonkoma, NY 11779
00:00 DO  Costco (Hia- 1861461006)       Phy:        (631) 366-1504
          3000 Middle Country Rd, Nesconset, NY 11767
LOS: LIV          CPay: $0.00 PCA: 0  AEsc: 1  CEsc: 0  Seats: 1    Miles: 3
                                  Member ID: DG24099H
Ordering Med Prov: Meat Farms Giunta's (HIA- 1861461006)     NPI: 1861461006
Procedure Code: A0100, S0215
```

---

```
01-8666-C              ** NEW **                    47  - Suffolk
         BAKER, DAVID                                      Age: 66
00:00 PU  Costco (Hia- 1861461006)       Phy:        (631) 366-1504
          3000 Middle Country Rd, Nesconset, NY 11767
00:00 DO  Residence                      Phy:        (631) 285-3534
          28 Lillian Dr, Nesconset, NY 11767
LOS: LIV          CPay: $0.00 PCA: 0  AEsc: 1  CEsc: 0  Seats: 1    Miles: 2
                                  Member ID: DG24099H
Ordering Med Prov: Meat Farms Giunta's (HIA- 1861461006)     NPI: 1861461006
Procedure Code: A0100
```







FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ AUG 09 2021 ★

BROOKLYN OFFICE

RECEIVED
AUG 09 2021
PRO SE OFFICE

August 9, 2021

From: Mr. Jean R. Daniel
P.OX Box 3168
Patchogue, NY 11713

To   The Honorable Diane Gujaradi, at the
United States District of New York,
225 Cadman Plaza East,
Brooklyn, New York 11201

Re:   Jean R. Daniel v. N.Y.S. Dep't of Health et al., 21-cv-04097 (DG)(AKT)

Via:   Hand delivery on August 9, 2021

Dear Judge Gujaradi:

While Plaintiff requests for several injunctive and/or equitable relief within his complaint and motion, Plaintiff's request to Stay all further administrative proceedings pending the outcome of Plaintiff's motion should automatically be acknowledged and accepted by the Defendants. This is a Civil Rights action, pursuant to 42 U.S. Code Sections 1981, 1983 and under the U.S. Constitution for alleged violation of Plaintiff's Civil and Constitutional rights by several State and Town officials who, apparently, are determined to continue to deprive Plaintiff of his due process and his civil and constitutional rights. On or about June 24, 2021, after the Defendant, OMIG, claimed to have re-evaluated or re-examined its alleged claim against Plaintiff by reducing such an amount by 2/3, Plaintiff requested for an explanation and for disclose for such a reduction; and although OMIG claimed to have attached a revision or an explanation for such a change within its email correspondence on July 21, 2021, no revision, no disclosure or explanation had been attached to any of its email correspondence.

In fact, OMIG's July 21, 2021 email correspondence informed all parties that the matter will be reviewed by OMIG's supervisor and a response will be provided to Plaintiff and the Defendant, ALJ, Kimberly A. O' Brien by tomorrow. And on July 22, 2021, OMIG informed Plaintiff and the Defendant, ALJ, that OMIG has no further document to produce. See Exhibit "**46**". They are email correspondences from the Defendants and Plaintiff beginning on July 15, 2021 through July 22, 2021. Even after the ALJ had received Plaintiff's July 18, 2021 email correspondence informing the ALJ of the parties' unresolved issues, and Plaintiff's assertion to the ALJ that OMIG did not fully explain its claim against Plaintiff, and that there is this possibility that OMIG may be involved in some kind of a fraudulent scheme to deprive Plaintiff, the ALJ showed no interest in resolving those issues nor made any decision to dispose of them, while continuing to insist that a hearing must take place.

The Defendant ALJ, Kimberly A. O' Brien, cannot adjourn the matter to a specific date that she chooses, hoping that Your Honor will decide on the case prior to September 28, 2021. Rather, the Defendants should wait upon Your Honor's final disposition of Plaintiff's case. Plaintiff's ultimate goal is to remedy the Defendants' violations of his constitutional and civil rights by requesting for certain equitable reliefs that would stop the Defendants from such a violation of Plaintiff's due process. In Rafael Pabon Ontega v. Isabel Llompart, et al., 18-00331, the First Circuit Court of Appeals, for the First Circuit, correctly interpreted that an automatic Stay also applies to Section 1983 cases and not just to Bankruptcy cases.

*Exhibit "46"*
*E. Copy*

Plaintiff is also aware of Defendants' William Rogers' and Town of Brookhaven's anticipated motion to dismiss. It is clear that, based on the Defendants' attorneys' assertion, that they are not familiar with the facts in this case. And that they do, in deed, need more time to respond. Plaintiff awaits their response and will provide them with an appropriate and an overwhelming response. And even though Your Honor's August 4, 2021 Order did not include a specific time in which Plaintiff should reply to any motion or to any answer, Plaintiff is confident that this Court will provide such a date or time to reply accordingly.

Lastly, all correspondences from now on should be mailed to me at P.O. Box 3168 Patchogue, New York 11772. All parties, including this Court and or Clerk may continue to send any notice, correspondence, and decision to Plaintiff at the same post office box above. Thank you for your cooperation in this matter.

Sincerely,

Mr. Jean R. Daniel

cc: James B. Cooney, Director of
    Emergency Litigation, Asst.,
    Attorney General,
    28 Liberty Street,
    New York, N.Y. 10005
    Certified Mail No.: 7019 2280 0001 0385 5403

cc: Rosenberg Calica & Birney, LLP
    100 Garden City Plaza, Suite 408,
    Garden City, New York 11530
    Certified Mail No.: 7020 0640 0001 1815 3877

8/8/2021                     OMIG - Dove Transport Service (Appellant) #17-1541 ***Adjournment Request

From: kimberly.obrien@health.ny.gov,
    To: goodtone450@aol.com, coachraushan@gmail.com, Philip.Hoffman@omig.ny.gov,
Subject: OMIG - Dove Transport Service (Appellant) #17-1541 ***Adjournment Request
   Date: Wed, Jul 21, 2021 5:22 am

Dear Parties:  Appellant  indicates that  the  July 15, 2021  pre hearing conference  was held, and  that  the Appellant is requesting an adjournment (approximately three weeks) of the August 19, 2021 hearing (see below). The Department shall immediately advise  whether it consents to the  adjournment.


Kimberly A. O'Brien

Administrative Law Judge

518-402-0748


**From:** r <goodtone450@aol.com>
**Sent:** Sunday, July 18, 2021 10:18 PM
**To:** Obrien, kimberly A (HEALTH) <kimberly.obrien@health.ny.gov>; coachraushan@gmail.com; Hoffman, Philip (OMIG) <Philip.Hoffman@omig.ny.gov>
**Subject:** Fwd: To The July 15, 2021 Prehearing Conference


*[ATTENTION - This ... came from an external source. Do not open attachments or click on links from unknown sources or unexpected emails.*


-----Original Message-----
From: r <goodtone450@aol.com>
To: kimberly.obrien@health.ny.gov <kimberly.obrien@health.ny.gov>; coachraushan@gmail.com
<coachraushan@gmail.com>
Sent: Sun, Jul 18, 2021 7:16 pm
Subject: Re: To The July 15, 2021 Prehearing Conference

July 18, 2021

From: Mr. George Joseph

To:    The Administrative Law Judge Kimberly A. O' Brien

8/8/2021                        OMIG - Dove Transport Service (Appellant) #17-1541 ***Adjournment Request

Re:   Dove Transport Service, LP
      Case No.: 16-F-1959/20-3456

Dear Administrative Law Judge:

The July 15, 2021 hearing left the parties with the following unresolved issues:

1. The respondents did not fully disclose the full reason for its claim of $160, 441.00. Dove further requested that the respondent(s) should provide us with the reason(s) for this reduction. The attorney claims that such a reason is an internal matter. This is self-serving. Appellants do not think that this is an internal matter, as such a decision as a direct affect on Appellants.

2. Upon receipt of Respondents' claim, Dove will need more time to compare any alleged amount by obtaining Dove's past bank statements, etc.,and to provide a rebuttal to such claims. It is important to obtain full disclosure on this matter, as there may be more bogus claims.

3. The Appellant,Mohammed, Raushan,mentioned to Mr, Hoffman and I that he is in the process of obtaining information from LogistCare that will prove that they would not have received an approval from Medicaid if the driver's names, driver's licenses, and vehicle information were not provided to them prior to each trip or trips. So he will need more time to retrieve such information. We think we will need an additional three (3) weeks, as long as the Respondents provide us with the needed information.

4. Dove Transport Service, LP would like to know what is currently part of your Honor's record in regards to this case.

Sincerely,

Mr. George Joseph

8/8/2021                          RE: OMIG - Dove Transport Service (Appellant) #17-1541 ***Adjournment Request

From: Philip.Hoffman@omig.ny.gov,
    To: kimberly.obrien@health.ny.gov, goodtone450@aol.com, coachraushan@gmail.com,
Subject: RE: OMIG - Dove Transport Service (Appellant) #17-1541 ***Adjournment Request
Date: Wed, Jul 21, 2021 6:39 am

Good Morning,

As I advised the Appellants prior to and at the prehearing conference, OMIG has reduced the overpayment amount that it will defend at hearing. This was a result of internal discussions and further review, and I advised as to the reason for the removal of certain claims. The revised claims attachment was provided and there is no further documentation for OMIG to disclose. As far as the mention of a response from "Respondents" in the third paragraph concerning LogistiCare and the need for 3 weeks, I am assuming this is referring to LogistiCare, however if it is meant to refer to OMIG, we would have no responsive documents for this entity.

If the Appellants still wish to adjourn this matter, I would request that I be permitted to reply tomorrow as I would need to review the request with my supervisor who is out today but will be in tomorrow.

Thank you for your consideration of the foregoing.

Best,

Phil Hoffman

From: Obrien, kimberly A (HEALTH) <kimberly.obrien@health.ny.gov>
Sent: Wednesday, July 21, 2021 8:23 AM
To: r <goodtone450@aol.com>; coachraushan@gmail.com; Hoffman, Philip (OMIG) <Philip.Hoffman@omig.ny.gov>
Subject: OMIG - Dove Transport Service (Appellant) #17-1541 ***Adjournment Request

Dear Parties: Appellant indicates that the July 15, 2021 pre hearing conference was held, and that the Appellant is requesting an adjournment (approximately three weeks) of the August 19, 2021 hearing (see below). The Department shall immediately advise whether it consents to the adjournment.

Kimberly A. O'Brien

Administrative Law Judge

518-402-0748

10/28/21, 9:28 AM

2016 population for the town of brookhaven ny - Google Search

Google   2016 population for the town of brookhaven ny   ✕ 🎤 🔍

⚙   ⠿

🔍 All   🖼 Images   📰 News   🗺 Maps   🛒 Shopping   ⋮ More   Tools

About 96,500 results (0.88 seconds)

Brookhaven / Population (2016)

# 484,389 (2016)

Sources include: United States Census Bureau   Feedback

→   Explore more

https://worldpopulationreview.com › us-cities › brookh... ⋮

### Brookhaven, New York Population 2021

The current population of Brookhaven, New York is 476,979 based on our projections of the latest US Census estimates. The US Census estimates the 2018 ...

https://www.census.gov › fact › table › PST045219 ⋮

### Brookhaven town, Suffolk County, New York - Census Bureau

Brookhaven town, Suffolk County, New York. QuickFacts provides statistics for all states and counties, and for cities and towns with a population of 5,000 ...

Missing: 2016 | Must include: 2016

https://en.wikipedia.org › wiki › Brookhaven,_New_Yo... ⋮

### Brookhaven, New York - Wikipedia

In the town, the population was spread out, with 26.7% under the age of 18, 8.9% from 18 to 24, 31.5% from 25 to 44, 22.7% from 45 to 64, and 10.1% who were 65 ...

History · Demographics · Government and politics · Transportation

https://datausa.io › profile › geo › brookhaven-ny ⋮

### Brookhaven, NY | Data USA

Brookhaven, NY is home to a population of 3.46k people, from which 94.6% are citizens. As of 2019, 17.7% of Brookhaven, NY residents were born outside of the ...

## People also ask ⋮

What towns are included in Town of Brookhaven?

Is Brookhaven NY Nice?

Is Brookhaven Long Island safe?

Feedback

---

## Brookhaven

The Town of Brookhaven is the most populous of the ten tov Suffolk County, New York, United States. Part of the New Yo metropolitan area, it is located approximately 50 miles from Manhattan. It is the only town in the county that stretches fr north shore to the south shore of Long Island. Wikipedia

**Area:** 532 mi²

**Elevation:** 79'

**Population:** 482,436 (2018)

**Hotels:** 3-star averaging $181. View hotels

**Councilman:** Dan Panico brookhavenny.gov

**Unemployment rate:** 5.4% (Jul 2021)

### Points of interest   View ›

Fire Island National Seashore | The Long Island Museum | Long Island Game F... | Smith Point County... | Cu Be Co

### Colleges and Universities

Stony Brook School o... | Suffolk County Commu... Selden | Briarcliffe College - Patchogue Patchogue | St. Joseph's College

---

http://www.city-data.com › city › Brookhaven-New-York ⋮

### Brookhaven, New York (NY 11719) profile - City-Data.com

*Exhibit "47"*

Case 2:21-cv-04097-DG-AKT   Document 55   Filed 10/29/21   Page 271 of 444 PageID #: 1837

Population density: 571 people per square mile (low)  Brookhaven, New York map · 257 residents
are foreign born (4.7% Latin America, 2.7% Europe ...

https://censusreporter.org › profiles › 79500US360330...

## Brookhaven Town (North) PUMA, NY - Profile data - Census ...

Census data for Suffolk County (North Central)--Brookhaven Town (North) PUMA, NY (pop. ...
Population by age range ... 2015-2016.

https://study-education.com › population-of-brookhave...

## Population Of Brookhaven Town Ny Education

Details: Brookhaven town, Suffolk County, New York. QuickFacts provides statistics for all states
and counties, and for cities and towns with a population ...

https://www.brookhavenny.gov › Consolidated-Fi...   PDF

## Consolidated Plan BROOKHAVEN TOWN 1

Apr 19, 2018 — The Town of Brookhaven, with an estimated population of 488,930, ... New York
State reports that there were 150 counts of rape in 2016 in ...

https://projects.newsday.com › databases › long-island

## Shifts in Long Island's population - NMGDB - Newsday

| Region | 2010 | 2011 | 2012 | 2013 |
|---|---|---|---|---|
| Region Nassau County | 2010 1,341,687 | 2011 1,346,176 | 2012 1,349,723 | 2013 1,352,399 |
| Region Suffolk County | 2010 1,494,385 | 2011 1,498,838 | 2012 1,497,037 | 2013 1,497,489 |
| Region Babylon Town | 2010 213,373 | 2011 213,840 | 2012 213,472 | 2013 213,420 |

View 115 more rows

https://statisticalatlas.com › county-subdivision › New-York

## Population of the Town of Brookhaven, Suffolk County, New ...

Population by County Subdivision in the New York Area. There are 480 county subdivisions in the
New York Area. This section compares the Town of Brookhaven ...
Missing: 2016 | Must include: 2016

## Related searches

| | |
|---|---|
| population of **suffolk county** ny | **brookhaven**, ny map |
| **brookhaven, pa** population | town of brookhaven **parks** |
| brookhaven **cdp new york** | town of brookhaven **beach pass 2021** |
| town of brookhaven **recycling** | **islip** ny population |

1 2 3 4 5 6 7 8 9 10     Next

**11434, New York** - From your IP address - Update location

Help     Send feedback     Privacy     Terms

10/28/21, 9:29 AM                    2017 population for the town of brookhaven ny - Google Search

Google    2017 population for the town of brookhaven ny    ✕  🎤  🔍                    ⚙  ⠿

🔍 All  📰 News  🖼 Images  📍 Maps  🛍 Shopping  ⋮ More                    Tools

About 102,000 results (0.83 seconds)

Brookhaven / Population (2017)

# 483,493 (2017)

Sources include: United States Census Bureau                    Feedback

→    Explore more

https://www.census.gov › fact › table › PST045219    ⋮
### Brookhaven town, Suffolk County, New York - Census Bureau
Brookhaven town, Suffolk County, New York. QuickFacts provides statistics for all states and
counties, and for cities and towns with a population of 5,000 ...
Missing: 2017 | Must include: 2017

https://worldpopulationreview.com › us-cities › brookh...    ⋮
### Brookhaven, New York Population 2021
Brookhaven is a city located in Suffolk County New York. Brookhaven has a 2020 population of
476,979. Brookhaven is currently declining at a rate of -0.40% ...

https://datausa.io › profile › geo › brookhaven-ny    ⋮
### Brookhaven, NY | Data USA
In 2019, Brookhaven, NY had a population of 3.46k people with a median age of 46.3 and a
median household income of $68884. Between 2018 and 2019 the ...

https://en.wikipedia.org › wiki › Brookhaven,_New_Yo...    ⋮
### Brookhaven, New York - Wikipedia
In the town, the population was spread out, with 26.7% under the age of 18, 8.9% from 18 to 24,
31.5% from 25 to 44, 22.7% from 45 to 64, and 10.1% who were 65 ...
History · Government and politics · Communities and locations · Transportation

### People also ask    ⋮

What towns are included in Town of Brookhaven?

What is the population of Suffolk County NY 2020?

Is Brookhaven Long Island safe?

Feedback

http://www.city-data.com › city › Brookhaven-New-York    ⋮
### Brookhaven, New York (NY 11719) profile - City-Data.com

●Stamford

Long Island

# Brookhaven

The Town of Brookhaven is the most populous of the ten to
Suffolk County, New York, United States. Part of the New Yo
metropolitan area, it is located approximately 50 miles from
Manhattan. It is the only town in the county that stretches fr
north shore to the south shore of Long Island. Wikipedia

**Area:** 532 mi²
**Elevation:** 79'
**Population:** 482,436 (2018)
**Hotels:** 3-star averaging $181. View hotels
**Councilman:** Dan Panico brookhavenny.gov
**Unemployment rate:** 5.4% (Jul 2021)

Points of interest                    View '

| Fire Island National Seashore | The Long Island Museum | Long Island Game F... | Smith Point County... | Cu Be Co |

Colleges and Universities

| Stony Brook School o... | Suffolk County Commu... Selden | Briarcliffe College - Patchogue Patchogue | St. Joseph's College |

Case 2:21-cv-04097-DG-AKT   Document 55   Filed 10/29/21   Page 273 of 444 PageID #: 1839

Population density: 571 people per square mile (low) Brookhaven, New York map. 257 residents are foreign born (4.7% Latin America, 2.7% Europe ...

https://censusreporter.org › profiles › 79500US360339... ⋮

## Brookhaven Town (North) PUMA, NY - Profile data - Census ...

Census data for Suffolk County (North Central)--Brookhaven Town (North) PUMA, NY (pop. ... Population by age range ... Since 2017. Show data/Embed ...

https://www.brookhavenny.gov › Consolidated-Fi... PDF ⋮

## Consolidated Plan BROOKHAVEN TOWN 1

Apr 19, 2018 — The Town of Brookhaven, with an estimated population of 488,930, ... as the Suffolk County Department of Health, Long Island Housing ...

https://www.brookhavenny.gov › Analysis-of-Im... PDF ⋮

## Analysis of Impediments to Fair Housing Choice 2019

Sep 9, 2019 — Town of Brookhaven, Suffolk County, New York. September 2019 ... HMDA Aggregate Loan Applications for the Town of Brookhaven, 2017 ....3-11.

https://www.brookhavenny.gov › Environmental ⋮

## Environmental - News Flash • Brookhaven, NY • CivicEngage

Farmingville, NY — On Sept 18, the Town of Brookhaven participated in the Ocean Conservancy's Annual International Coastal Clean-up at two significant ...

https://www.osc.state.ny.us › publications › pdf PDF ⋮

## Long Island Region Economic Snapshot - New York State ...

May 3, 2019 — population than the State as a whole, and much less diverse than neighboring New York City, based on 2017 data. Nassau County has the more.
12 pages

## Related searches ⋮

| | |
|---|---|
| **suffolk county** population | brookhaven **cdp new york** |
| **brookhaven, pa** population | **brookhaven, ny map** |
| **brookhaven, ga** population | town of brookhaven **parks** |
| **islip** ny population | **smithtown** population |

1 2 3 4 5 6 7 8 9 10        Next

Rosedale, Queens, NY - Based on your past activity · Update location

Help    Send feedback    Privacy    Terms

10/28/21, 9:30 AM                                      2018 population for the town of brookhaven ny - Google Search

Google    2018 population for the town of brookhaven ny    ✕   🎤   🔍                    ⚙   ⠿

🔍 All    ◎ Maps    📰 News    🖾 Images    🛒 Shopping    ⋮ More              Tools

About 101,000 results (0.99 seconds)

Brookhaven / Population (2018)

# 482,436 (2018)

Sources include: United States Census Bureau                    Feedback

→    Explore more

https://www.census.gov › fact › table › PST045219    ⋮
## Brookhaven town, Suffolk County, New York - Census Bureau
Brookhaven town, Suffolk County, New York. QuickFacts provides statistics for all states and
counties, and for cities and towns with a population of 5,000 ...

https://worldpopulationreview.com › us-cities › brookh...    ⋮
## Brookhaven, New York Population 2021
The current population of Brookhaven, New York is 476,979 based on our projections of the
latest US Census estimates. The US Census estimates the 2018 ...

### People also ask    ⋮

What towns are included in Town of Brookhaven?

Is Brookhaven Long Island safe?

Is East Setauket in Brookhaven?
                                                              Feedback

https://en.wikipedia.org › wiki › Brookhaven,_New_Yo...    ⋮
## Brookhaven, New York - Wikipedia
In the town, the population was spread out, with 26.7% under the age of 18, 8.9% from 18 to 24,
31.5% from 25 to 44, 22.7% from 45 to 64, and 10.1% who were 65 ...
History · Geography · Government and politics · Transportation

https://datausa.io › profile › geo › brookhaven-ny    ⋮
## Brookhaven, NY | Data USA
In 2019, Brookhaven, NY had a population of 3.46k people with a median age of 46.3 and a
median household income of $68384. Between 2018 and 2019 the ...

http://www.city-data.com › city › Brookhaven-New-York    ⋮
## Brookhaven, New York (NY 11719) profile - City-Data.com
Population density: 571 people per square mile (low). Brookhaven, New York map. 257 residents

# Brookhaven

The Town of Brookhaven is the most populous of the ten to...
Suffolk County, New York, United States. Part of the New Yo...
metropolitan area, it is located approximately 50 miles from
Manhattan. It is the only town in the county that stretches fr...
north shore to the south shore of Long Island. Wikipedia

**Area:** 532 mi²
**Elevation:** 79'
**Population:** 482,436 (2018)
**Hotels:** 3-star averaging $181. View hotels
**Councilman:** Dan Panico brookhavenny.gov
**Unemployment rate:** 5.4% (Jul 2021)

### Points of interest                    View '

| Fire Island | The Long | Long | Smith | Cu |
| National | Island | Island | Point | Be |
| Seashore | Museum | Game F... | County... | Co |

### Colleges and Universities

| Stony | Suffolk | Briarcliffe | St. |
| Brook | County | College - | Joseph's |
| School o... | Commu... | Patchogue | College |
| | Selden | Patchogue | |

Case 2:21-cv-04097-DG-AKT   Document 55   Filed 10/29/21   Page 275 of 444 PageID #: 1841

are foreign born (4.7% Latin America, 2.7% Europe ...

https://www.towncharts.com › USA › New York

Brookhaven, New York Demographics Data - Towncharts.com
The city with the highest overall median age of all people in the area is Middle Island CDP which
... Figure 1: Brookhaven, NY and Area 2018 Population Data.

https://statisticalatlas.com › county-subdivision › New-York

Population of the Town of Brookhaven, Suffolk County, New ...
Population by County Subdivision in the New York Area. There are 480 county subdivisions in the
New York Area. This section compares the Town of Brookhaven ...

https://www.brookhavenny.gov › Consolidated-Fi...  PDF

Consolidated Plan BROOKHAVEN TOWN 1
Apr 19, 2018 — April 19, 2018 was received from Long Island Housing Services, Inc. ... The Town
of Brookhaven, with an estimated population of 488,930, ...

https://www.brookhavenny.gov › View › Draft-C...  PDF

Consolidated Strategy and Plan Submission For Housing and ...
The Consolidated Plan covers the period of July 1, 2018 to June 30, 2023 and the ... The Town
of Brookhaven, with an estimated population of 488,930, ...

https://projects.newsday.com › databases › long-island

Shifts in Long Island's population - NMGDB - Newsday

| Region | 2010 | 2011 | 2012 | 2013 |
|---|---|---|---|---|
| Region Nassau County | 2010 1,341,687 | 2011 1,346,176 | 2012 1,349,723 | 2013 1,352,399 |
| Region Suffolk County | 2010 1,494,385 | 2011 1,498,838 | 2012 1,497,037 | 2013 1,497,489 |
| Region Babylon Town | 2010 213,373 | 2011 213,840 | 2012 213,472 | 2013 213,420 |

View 115 more rows

## Related searches

| | |
|---|---|
| **suffolk county** population | town of brookhaven **parks** |
| **brookhaven, ga** population | brookhaven **cdp new york** |
| **islip** ny population | **smithtown** population |
| **brookhaven, pa** population | **brookhaven, ny map** |

1 2 3 4 5 6 7 8 9 10        Next

Rosedale, Queens, NY - Based on your past activity - Update location

Help    Send feedback    Privacy    Terms

10/28/21, 9:31 AM
2019 population for the town of brookhaven ny - Google Search

Google    2019 population for the town of brookhaven ny    ×    🎤  🔍                                    ⚙    ⋮⋮⋮   ⋯

🔍 All   📰 News   🖼 Images   📍 Maps   🛒 Shopping   ⋮ More                    Tools

About 94,400 results (0.83 seconds)

Brookhaven / Population (2019)

# 3,455 (2019)



Sources include: United States Census Bureau                              Feedback

                    →        Explore more

## Brookhaven

Hamlet on Long Island, New York

Brookhaven is a hamlet and census-designated place in Suf
County, New York, United States. The population was 3,451
2010 census. The hamlet of Brookhaven located within and
directly governed by the Town of Brookhaven. Wikipedia

**Area:** 5.907 mi²

**Elevation:** 10'

**Population:** 3,455 (2019)

**Area code:** Area code 631

**Weather:** 54°F (12°C), Wind NE at 6 mph (10 km/h), 66% Hu
weather.com

**Local time:** Thursday 12:31 PM

https://www.census.gov › fact › table › PST045219   ⋮
### Brookhaven town, Suffolk County, New York - Census Bureau
Frequently requested statistics for: Brookhaven town, Suffolk County, New York. ... Population
estimates base, April 1, 2010, (V2019), 486,336.

https://worldpopulationreview.com › us-cities › brookh...   ⋮
### Brookhaven, New York Population 2021
The current population of Brookhaven, New York is 476,979 based on our projections of the
latest US Census estimates. The US Census estimates the 2018 ...

## Events

| Thu, Oct 28 10:00 AM | United Methodist Church Lake Ronkonk Food Distribution Center - United Metho |
| Thu, Oct 28 10:30 AM | Preschool Outdoor Education Bayard Cutting Arboretum Art Workshop |
| Thu, Oct 28 6:30 PM | GiGiFIT Adult (18+) in person GiGi's Playhouse Long Island |

View 25+ more

## People also ask   ⋮

How big is the town of Brookhaven?

What is considered town of Brookhaven?

Is Brookhaven Long Island safe?

Is Brookhaven NY Nice?

                                             Feedback

https://en.wikipedia.org › wiki › Brookhaven,_New_Yo...   ⋮
### Brookhaven, New York - Wikipedia
In the town, the population was spread out, with 26.7% under the age of 18, 8.9% from 18 to 24,
31.5% from 25 to 44, 22.7% from 45 to 64, and 10.1% who were 65 ...
History · Geography · Government and politics · Transportation

https://datausa.io › profile › geo › brookhaven-ny   ⋮
### Brookhaven, NY | Data USA
In 2019, Brookhaven, NY had a population of 3.46k people with a median age of 46.3 and a
median household income of $68884. Between 2018 and 2019 the ...

10/28/21, 9:31 AM                                    2019 population for the town of brookhaven ny - Google Search

http://www.city-data.com › City › Brookhaven-New-York :

Brookhaven, New York (NY 11719) profile - City-Data.com

Brookhaven, New York ... Population in 2010: 3,451. ... Zip codes: 11719. ... Median gross rent in
2019: $1,570. ... Put your B&M business profile right here for free.

https://censusreporter.org › profiles › 79500US360330... :

Brookhaven Town (North) PUMA, NY - Profile data - Census ...

Hispanic includes respondents of any race. Other categories are non-Hispanic.; ACS 2019 5-year
data. Show data/Embed ...

https://study-education.com › population-of-brookhave... :

Population Of Brookhaven Town Ny Education

Details: In 2019, Brookhaven Town (Central) PUMA, NY had a population of 127k people with a
median age of 41.2 and a median household income of $89,923.

https://www.brookhavenny.gov › 2020-Census-Inform... :

2020 Census Information | Brookhaven, NY

The Town of Brookhaven Counts! Complete the 2020 Census Today! What is the Census? Every
ten years, the US government conducts the Census, which asks a few ...
Missing: 2019 population

https://www.brookhavenny.gov › Consolidated-Fi...  PDF :

Consolidated Plan BROOKHAVEN TOWN 1

Apr 19, 2018 — The Town of Brookhaven, with an estimated population of 488,930, ... as the
Suffolk County Department of Health, Long Island Housing ...

https://www.suffolkcountyny.gov › Publications  PDF :

population - Suffolk County Government

Mar 22, 2019 — Population of Nassau and Suffolk Counties ... Column 5 (1960) for the Town of
Hempstead should read as follows: ... Town of Brookhaven.

## Related searches   :

| | |
|---|---|
| suffolk county population | what towns are in brookhaven |
| brookhaven, ny map | brookhaven, ga population |
| brookhaven, pa population | town of brookhaven parks |
| islip ny population | brookhaven cdp new york |

1 2 3 4 5 6 7 8 9 10        Next

Rosedale, Queens, NY - Based on your past activity - Update location

Help    Send feedback    Privacy    Terms

2/2

10/28/21, 9:33 AM                            2020 population for the town of brookhaven ny - Google Search

Google          2020 population for the town of brookhaven ny          ✕  ᷤ  🔍                    ⚙    ⠿

🔍 All   📰 News   🖼 Images   ◎ Maps   🛍 Shopping   ⋮ More                    Tools

About 122,000 results (0.85 seconds)

# 485,773

Table

**Population**

| | |
|---|---|
| Population, Census, April 1, 2020 | **485,773** |
| Population, Census, April 1, 2010 | 486,040 |
| Age and Sex | |
| Persons under 5 years, percent | 5.1% |

54 more rows

https://www.census.gov › fact › table › PST045219          ⋮

### Brookhaven town, Suffolk County, New York - Census Bureau

🔵 About featured snippets  •  🏳 Feedback

https://worldpopulationreview.com › us-cities › brookh...          ⋮
### Brookhaven, New York Population 2021
Brookhaven is a city located in Suffolk County New York. Brookhaven has a 2020 population of
476,979. Brookhaven is currently declining at a rate of -0.40% ...

## People also ask  ⋮

How big is the town of Brookhaven?

What is considered town of Brookhaven?

Is Brookhaven Long Island safe?

Is East Setauket in Brookhaven?

Feedback

https://en.wikipedia.org › wiki › Brookhaven,_New_Yo...          ⋮
### Brookhaven, New York - Wikipedia
In the town, the population was spread out, with 26.7% under the age of 18, 8.9% from 18 to 24,
31.5% from 25 to 44, 22.7% from 45 to 64, and 10.1% who were 65 ...
History · Geography · Government and politics · Transportation

https://datausa.io › profile › geo › brookhaven-ny          ⋮
### Brookhaven, NY | Data USA
Brookhaven, NY is home to a population of 3.46k people, from which 94.6% are citizens. As of
2019, 17.7% of Brookhaven, NY residents were born outside of the ...

https://www.brookhavenny.gov › 2020-Census-Inform...          ⋮
### 2020 Census Information | Brookhaven, NY
The Town of Brookhaven Counts! Complete the 2020 Census Today! What is the Census? Every
ten years, the US government conducts the Census, which asks a few ...

10/28/21, 9:33 AM                                    2020 population for the town of brookhaven ny - Google Search

https://www.citypopulation.de › usa › admin › suffolk

Brookhaven (Town, Suffolk, USA) - City Population
Brookhaven (Town, Suffolk, USA) with population statistics, charts, ... Brookhaven. Town in New
York ... -0.010% Annual Population Change (2010 → 2020).

http://www.city-data.com › city › Brookhaven-New-York      ⋮

Brookhaven, New York (NY 11719) profile - City-Data.com
Population in 2010: 3,451. Population change since 2000: -3.3%. Males: 1,695, (49.1%). Females:
1,756 ...

https://study-education.com › population-of-brookhave...      ⋮

Population Of Brookhaven Town Ny Education
Details: Brookhaven, New York Population 2021. Brookhaven is a city located in Suffolk County
New York. Brookhaven has a 2020 population of 476,979.

https://www.mapsof.net › brookhaven-ny      ⋮

Brookhaven, NY - Geographic Facts & Maps - MapSof.net
Brookhaven town in Suffolk County, New York, United States detailed ... After 10 years in 2020
city had an estimated population of 479,883 inhabitants.

https://newyork.hometownlocator.com › subdivisions      ⋮

Town Of Brookhaven NY Demographic Data and Boundary Map
Town Of Brookhaven, NY. The Town Of Brookhaven is a County Subdivision of Suffolk County.
The subdivision has a T1 Census Class Code which indicates that ...

## Related searches      ⋮

| | |
|---|---|
| **suffolk county** population | **brookhaven, ga** population |
| **brookhaven, pa** population | town of brookhaven **garbage** |
| town of brookhaven **parks** | **what towns are in** brookhaven |
| **brookhaven, ny map** | town of brookhaven **beach pass 2021** |

**Cambria Heights, Queens, NY** - From your IP address - Update location

Help      Send feedback      Privacy      Terms



**Town of Brookhaven**
**Department of Public Safety**
One Independence Hill
Farmingville, New York
Phone (631) 451-6291   Fax (631) 451-6908



## APPLICATION FOR TAXICAB BUSINESS LICENSE AND TAXICAB MEDALLION

| NON-REFUNDABLE FEE: $ 200.00 FOR BUSINESS + $125.00 PER TAXI | Date: |
|---|---|

**APPLICANT INFORMATION:**

| | | | |
|---|---|---|---|
| Name: | | | |
| Home Address: | | | |
| City, State, Zip: | | | |
| Phone: | | E-Mail: | |
| Date of Birth: | Height: | Weight: | Eye Color: | Hair Color: |
| Place of Birth: | | Are you a United States Citizen?  YES    NO | |
| IF naturalized, date and place of naturalization: | | | |
| IF you are NOT A U.S. citizen,  proof of legal entry into the United States must be submitted. | | | |
| Driver's License #: | State Issued: | Class: | Expiration Date: |
| Have you ever been convicted of misdemeanor or felony in the last five (5) years?    YES    NO | | | |
| If YES, Date of Conviction: | Original Charge(s): | | |
| Charge(s) Convicted of: | Court: | | |
| Docket, Index, Indictment or File Number: | | | |

**BUSINESS INFORMATION:**

| | |
|---|---|
| Business Name: | |
| Business Address: | |
| City,State,Zip: | |
| Physical Address (if above address is a PO Box): | |
| City,State,Zip: | E-Mail: |
| Day Phone: | Night/Weekend Phone: |
| Business is a (circle one):  Corporation      Partnership      LLC      Association      Individual      D/B/A | |
| New York State Sales Tax ID #: | Federal Employer ID #: |
| **Note:** Copies of all filed business certificates must be submitted with this application. | |
| **Note:** Certificates of insurance for the business listed must be submitted with this application. | |
| List all partners, association members, corporate officers, directors and/or shareholders owning more than 5% of outstanding stock: | |

*Exhibit "48"*

**FROM PROPERTY TAX MAP:**

| DISTRICT: | | SECTION: | | BLOCK: | | LOT: | |
|---|---|---|---|---|---|---|---|
| STREET # | | N  S  E  W  OF | | | | | |
| DISTANCE (FEET): | | N  S  E  W  OF | | | | | |
| NEAREST CROSS STREET: | | | TOWN TAX ITEM # | | | | |
| DOES PREMISES HAVE CO, CEU, CZC, OR ZBA OUTDOOR STORAGE PERMIT?     YES      NO | | | | | | | |
| TYPE: | | NUMBER: | | | DATE ISSUED: | | |
| | | | | | | | |

**Note:** If applicant is not the owner of the property, a copy of a current written and signed lease from the property owner must be submitted with this application.

**OTHER LICENSES HELD: (Includes licenses in any occupation)**

| Type of License: | License #: |
|---|---|
| Where was license issued: | Dates Held: |
| Was License ever suspended or revoked?   YES     NO | If Yes, Date and Reason: |
| | |
| | |

**VEHICLE INFORMATION: ($125.00 per vehicle)**

**Copies of the current, valid title, New York State Registration, New York State Inspection Certificate and Certificate of Insurance for each listed vehicle must be submitted with this application.**

| License Plate: | | VIN #: | |
|---|---|---|---|
| Year: | Make: | Model: | Color: |
| Fleet # of vehicle (If application): | | Medallion #: | |
| Name, Address and Telephone Number of Vehicle Owner: (if different than Business Owner) | | | |
| | | | |

| License Plate: | | VIN #: | |
|---|---|---|---|
| Year: | Make: | Model: | Color: |
| Fleet # of vehicle (If application): | | Medallion #: | |
| Name, Address and Telephone Number of Vehicle Owner: (if different than Business Owner) | | | |
| | | | |

| License Plate: | | VIN #: | |
|---|---|---|---|
| Year: | Make: | Model: | Color: |
| Fleet # of vehicle (If application): | | Medallion #: | |
| Name, Address and Telephone Number of Vehicle Owner: (if different than Business Owner) | | | |
| | | | |

| License Plate: | | VIN #: | |
|---|---|---|---|
| Year: | Make: | Model: | Color: |
| Fleet # of vehicle (If application): | | Medallion #: | |
| Name, Address and Telephone Number of Vehicle Owner: (if different than Business Owner) | | | |
| | | | |

| License Plate: | | VIN #: | |
|---|---|---|---|
| Year: | Make: | Model: | Color: |
| Fleet # of vehicle (If application): | | Medallion #: | |
| Name, Address and Telephone Number of Vehicle Owner: (if different than Business Owner) | | | |
| | | | |

| License Plate: | | VIN #: | |
|---|---|---|---|
| Year: | Make: | Model: | Color: |
| Fleet # of vehicle (If application): | | Medallion #: | |
| Name, Address and Telephone Number of Vehicle Owner: (if different than Business Owner) | | | |
| | | | |

| License Plate: | | VIN #: | |
|---|---|---|---|
| Year: | Make: | Model: | Color: |
| Fleet # of vehicle (If application): | | Medallion #: | |
| Name, Address and Telephone Number of Vehicle Owner: (if different than Business Owner) | | | |
| | | | |

| License Plate: | | VIN #: | |
|---|---|---|---|
| Year: | Make: | Model: | Color: |
| Fleet # of vehicle (If application): | | Medallion #: | |
| Name, Address and Telephone Number of Vehicle Owner: (if different than Business Owner) | | | |
| | | | |

| License Plate: | | VIN #: | |
|---|---|---|---|
| Year: | Make: | Model: | Color: |
| Fleet # of vehicle (If application): | | Medallion #: | |
| Name, Address and Telephone Number of Vehicle Owner: (if different than Business Owner) | | | |
| | | | |

By Initialing below, the undersigned agrees that he/she is responsible for ensuring that all vehicles possessing medallions are outfitted with such equipment as may be prescribed by the State of New York, County of Suffolk and Town of Brookhaven.

**Initial:**

By Initialing below, the undersigned agrees that he/she and his/her agents will take all training courses as may be prescribed by the State of New York, County of Suffolk and Town of Brookhaven designed to educate and familiarize them with customary safety standards and shall provide evidence of the satisfactory completion of such courses.

**Initial:**

I, THE UNDERSIGNED, AFFIRM UNDER PENALTIES OF PERJURY THAT THE INFORMATION CONTAINED HEREIN IS TRUE, AND THAT THE VEHICLE(S) IS/ARE EQUIPPED AS REQUIRED BY LAW. I FURTHER AFFIRM THAT THIS APPLICATION IS ACCEPTED ON THE CONDITION THAT THE PROVISIONS AND REGULATIONS OF THE TOWN OF BROOKHAVEN CODES AND THE REQUIREMENTS OF THE RESPECTIVE TOWN DEPARTMENTS SHALL BE COMPLIED WITH. IT IS UNDERSTOOD THAT ANY VIOLATION OF THE CODES OF THE TOWN OF BROOKHAVEN MAY RESULT IN THE IMMEDIATE REVOCATION OF THIS APPLICATION AND ITS ATTACHED LICENSES.

_____
**Date**

_____
**Signature of Applicant**

_____
**Clearly Print or Type Name of Applicant**

Sworn to me before this _____ day of _____ 20_____.

_____
**Notary Public**

NEW YORK STATE DEPARTMENT OF HEALTH
OFFICE OF THE MEDICAID INSPECTOR GENERAL
————————————————————————————X

DOVE TRANSPORT SERVICE, LP and Jean Daniel,
Provider ID # 03882157 (Dove Transport)

Appellants,

for a Hearing, Pursuant to Part 519 of Title 18 of
the Official Compilation of Codes, Rules and
Regulations of the State of New York to review
the Determination under 18 NYCRR Parts 515
and 518 to recover $395, 387.59, plus interest in
Medicaid overpayments, and to exclude the
Appellants for three years and until reinstated

————————————————————————————X

CASE NO.: 16-F-1959
PACS # 17-1541
TELEPHONE TRANSCRIPT
BETWEEN MR. ROGERS
& MR. JOSEPH

Dated: 05/24/2021
Time:  1057 AM-11:04 AM
CALLER'S FULL NAME: MR. GEORGE JOSEPH
RECEIVER'S FULL NAME: MR. WILLIAM ROGERS

## TELEPHONE TRANSCRIPT BETWEEN MR. WIILLIAM ROGERS & MR. GEORGE JOSEPH

## PURSUANT TO CPLR 4501

MR. ROGERS

1. Hello.

MR. JOSEPH

2. Hello, Mr. Rogers, how you doing, Good Morning?

MR. ROGERS

3. Good Morning.

MR. JOSEPH

4. Yes, I, Good morning. I was surprised to see you calling me on Friday.

MR. ROGERS

5. Yes, how's everything going?

MR. JOSEPH

6. Ah well, everything, we still need, as I said, you know, you know, I spoke to one of your attorneys, Mr. Don Roger, Mr. Don ah Don Rog, Don Domain, I spoke to one of your attorneys, and pretty much I emailed him information pretty much right now, where we standing, there's going to be   conferences, there's going to be hearings and we need those letters stating that

MR. ROGERS

7. See the problem is, I don't have, you see what happened here, George, I don't have all the file, they took it out of my hands, and so I don't know what I can get to it's a lot of stuff and I can tell that there's a lot of stuff. I am trying to figure out (there's a lot of breaking up)

MR. JOSEPH

8. You're breaking up. You're going in and out. I can't hear you.

MR. ROGERS

9. I am sorry. Hold on yes it's a lot of files I don't even have.

MR. JOSEPH

10. Alright, well, I sent Don Morain, his name just came to me, the essential or necessary document needed to know exactly what Dove Transport was, which was a, you know, operating as a Medicaid, you know, provider, and pretty much.

MR. ROGERS

11. Yes, of course.

MR. JOSEP

12. Mum Um

MR. ROGERS

13. Even if, even if, listen to me, excuse me for one second, I don't have anything you let me know what you need and what I can come up with because, I mean, we have to sit down together and go over all these things.

MR. JOSEPH

14. Yeah, well the bottom line is, as I said before, you know it's hard for me, you know, to go back and forth to even sit down because we can over the phone. The bottom line is that you have to remember the laws Code 67, under your quote, during that time, Medicaid did not require any licenses.

MR. ROGERS

15. Right

MR. JOSEPH

16. And that's exactly, If you can send a letter because at this point right now you know there's a lot of different things because including the documents that you sent earlier 2016, 2017, 2016 and you know, the conversation we had last time, they were, they were, in controver----they they contradict each other so if you can send us a letter by today or tomorrow

MR. ROGERS

17. Hold on; hold on, I am just; I am just, trying to compare my note kits while we stand here if you could hold on a second.

MR. JOSEPH

18. Not a problem. I am trying to exclude you from this issue from this problem because I don't want to have your name with our names and your name is going to the Supreme Court, U.S. Supreme Court, because this is where it is going with the State I am not gonna play games with OMIG. We may have to go to higher Court and I don't want to mix you up. You seem like a nice guy; you seem like a nice guy who really wants to do the right stuff. Probably you never had anyone suing you in your life. in your life and you don't want any lawsuit in your hand, you know.

MR. ROGERS

19. Hold on, yeah, yeah, anything you guys need when I saw that all that stuff was missing that's why I called you on Friday.

MR. JOSEPH

20. I appreciated that. That. Yeah.

MR. ROGERS

21. I wanted to get a hold of you. I figured you were busy.

MR. JOSEPH

22. Yeah

MR. ROGERS

23. You, you sound like a type of that never takes a day off.

MR. JOSEPH

24. You know what, you know what. One way or the other, even if I am retired, and I do do a lot of legal things and it does keep me busy. But I am familiar---versed with the Law. And I've done a lot legally. So I know exactly what I need to do. Yeah, that's no question about it. Ay.

MR. ROGERS

25. If I ever need a lawyer, I am gonna, I am gonna get you caught.

MR. JOSEPH

26. I appreciate that. I appreciate that. Thanks for the

MR. ROGERS

27. Yeah, George, anything we can do. You sound like a guy who's gonna get the job done.

MR. JOSEPH

28. I have no choice. I have no choice.

MR ROGERS

29. Yeah, yeah, you have people with the best interest in there.

MR. JOSEPH

30. Yeah, that's my family. Those are my family member; that I have to help them out.

MR. ROGERS

31. Well, I have that down now. I can write that down. You let me know what you need from us.

MR. JOSEPH

32. If you can, if you can email us send us a letter, you know, just making sure that you explain at that point that, you know, after review from the documents that a, in fact, I can cc a copy for you, to you.

MR. ROGERS

33. If you can send me via email, that would be perfect.

MR. JOSEPH

34. The bottom line is you can pretty much state that it was an error and you know of course, they might have actually, innocently, you know, filed papers, where some People might have instructed them to do certain things. The bottom line is they were Medicaid providers. They were not Taxi drivers, and at no time, based on the papers of Certificate.

MR. ROGERS

35. Right, they, they, they, didn't even, that was what their job were doing Medicaid runs before, they, you know, that is what their job was.

MR. JOSEPH

36. Right, that is correct. That's what their—at no time did they- I mean the confusion occurred,  as you said before, due to OMIG's determination or aggressiveness made you assume that they were Taxi, you know, operating, but at no time they were operating as a Taxi. They know that. OMIG knows that. They want you to, you know, to support them saying that they were, but in reality the law clearly states that they were not and the Town of Brookhaven law clearly shows that they were not. And if you can that would be.

MR. ROGERS

37. George Dave Harrian is our attorney. I am gonna have to run this with him. That is not a problem. Give me your number I will have him call you back in 45 minutes.

MR. JOSEPH

38. I will be available within the next forty-five (45) minutes.

MR. ROGERS

39. Yes, cause his gonna have to make the final determination.

MR. JOSEPH

40. Not a problem.

MR. ROGERS

41. Also, with him you both are lawyers. If he wants to talk to you, you can talk to him. Cause you both speak. You both know what you're talking about.


MR. JOSEPH

42. Right, absolutely

MR. ROGERS

43. Alright, I'll have him call you back. Give me an hour or so. I'll have him set things rught.

MR. JOSEPH

44. Alright, I am gonna hold off on that motion I have a motion to file it was supposed to be file on Tuesday. I'll hold off until Wednesday or Thursday. But again, I got to have that letter as soon as you can send us an official letter, you can even send it via email as long as it is an initial document to support this contention and from there on, you will be out  There's no question about it. We won't bother the Town of Brookhaven. We won't bother you guys for that once that's done.

MR, ROGERS

45. I gonna sit down with him. And will have him call you within the next hour or so.

MR. JOSEPH

46. Not a problem

MR. ROGERS

47. Alright

MR. JOSEPH

48. Alright, bye

Fwd: DOVE TRANSPORT SERVICE, LP

From: goodtone450@aol.com
To: wrogers@brookhavenny.gov
Subject: Fwd: DOVE TRANSPORT SERVICE, LP
Date: Mon, May 24, 2021 7:23 am
Attachments: DOVE TRANSPORT PROOF OF SERVICE P.   3.pdf (471K), WILLIAM ROGERS' LETTER #1.pdf (157K),
WILLIAM ROGERS' LETTER #2.pdf (235K), DOVE'S NOTICE OF CLAIM P. 1.pdf (304K),
DOVE'S NOTICE OF CLAIM P. 2.pdf (534K), DOVE'S NOTICE OF CLAIM P. 3.pdf (213K),
DOVE'S CERTIFICATE P. 1.pdf (198K), DOVE'S CERTIFICATE P. 2.pdf (376K), DOVE'S CERTIFICATE P. 3.pdf (294K)

Dated: May 24, 2021

From: Mr. George Joseph

To:   Mr. William Rogers

Re:   Your Request Today

Dear Mr. William Rogers:

I am forwarding the same documents I sent Mr. Moran regarding Dove Transport Service, LP so that you can review. If you require any additional document, please email me at Goodtone450@aol.com.

Sincerely,

Mr. George Joseph

-----Original Message-----
From: r <goodtone450@aol.com>
To: dmoran@brookhavenny.gov <dmoran@brookhavenny.gov>
Sent: Tue, May 4, 2021 9:40 am
Subject: Fwd: DOVE TRANSPORT SERVICE, LP

Good afternoon Mr. Moran.

This is Mr. George Joseph on behalf of Mr. Jean R. Daniel & Dove Transport Service, LP. As you know, on March 29, 2021,we spoke over the phone and upon your request, I provided you documents pertaining to Dove Transport Service, LP's certificate which outlined their purpose for their existence; that they were not a Taxi business, servicing the public at the Town but existed under the laws and regulations of the State of New York Medicaid system, providing services only for Medicaid recipients.

I informed you and did provide you with that fact that Mr. Roger William inadvertently categorized Dove as a Taxi business and did require Dove to pay certain fees for the same. You told me that you would either look into it or have another attorney on your Staff look into it. Dove Transport Service, LP is in dire need of this correction, as it is currently in prelitigation with OMiG. Your quick response and correction of this matter is greatly needed. I will also give you a call today and hopefully speak to you or leave a message informing you of this email.

Should you have ant question, please feel free to call me at 347-551-9786. Thank you for your cooperation in this matter. I am resubmitting the same documents I previously submitted to you on March 29, 2021.

Sincerely,

Mr. George Joseph

-----Original Message-----
From: r <goodtone450@aol.com>
To: dmoran@brookhavenny.gov <dmoran@brookhavenny.gov>
Sent: Mon, Mar 29, 2021 2:39 pm
Subject: DOVE TRANSPORT SERVICE, LP

03/29/2021

From: Mr. George Joseph

Exhibit "50"

P.O. Box 9189
Patchogue, NY 11772

To:   Mr. Moran, attorney at Law
      at the Town of Brookhaven

Re:   Our Recent Conversation about Dove Transport Service

Via:  Goodtone450@aol.com

As we discussed, I am attaching a few documents pertaining to Dove Transport Service, LP which will support my contention that Mr. Rogers' letters erroneously claimed that the Limited Partnership was a Taxi-business. Should you have any question or desire additional documents, please feel to call me at 347-5519786. Thank you.

Sincerely,

Mr. George Joseph

Cover Page
DATED: SEPTEMBER 30, 2021

COVER PAGE

CASE NO.: 21-CV-04097-DG-AKT

CASE TYPE: SECTION 1983

PLANTIFF'S  EXHIBIT "51"

CAPTION:

JEAN R. DANIEL,

Plaintiff,

V.

NYS DEPT OF HEALTH, ALJ,
KIMBERLY A. O' BRIEN, OFFICE OF THE MEDICAID
INSPECOR GENERAL (OMIG), THE DEPUTY
MEDICAID INSPECTOR GENERAL DNAIEL,
DANIEL V. COYNE, ASST. OF MEDICAID I
INSPECTOR GENERAL, STEPHANIE E. PATON, RN,
WILLIAM ROGERS, EXECUTIVE ASST. , AT THE
TOWN OF BROOKHAVEN DEPT. OF PUBLIC
SAFETY, THE TOWN OF BROOKHAVEN, John
Doe # 1 through John Doe # 10, representing
any additional agency, the State of New York,
or any additional Executive Official(s).

Defendants

---

Enclosed, please find Plaintiff's **Ex. "51"**, supplementing his Amended Complaint filed in

this Court on September 9, 2021. The content of Exhibit 51 is as follows: (1) A thirty-seven (37)

page Plaintiff's Reply in Opposition & For Reconsideration, together with a thirty-six (36) page

of Plaintiff's Memorandum of Law in Opposition & For Reconsideration, together with Plaintiff's

four (4) page Affidavit in Support of Plaintiff's Reply in Opposition & For Reconsideration.


**Exhibit "51"**

UNITED STATES DISTRICT COURT,
EASTERN DISTRICT OF NEW YORK
_____X

JEAN R. DANIEL

Plaintiff,

-against-

N.Y.S. DEPT. OF HEALTH, ALJ, KIMBERLY
A. O' BRIEN, OFFICE OF THE MEDICAID
INSPECTOR GENERAL (OMIG), THE DEPUTY
MEDICAID INSPECTOR GENERAL,
DANIEL V. COYNE, ASST. OF MEDICAID
INSPECTOR GENERAL, STETPHANIE E. PATON,
RN, WILLIAM ROGERS, EXECUTIVE ASST., AT
THE TOWN OF BROOKHAVEN DEPT. OF
PUBLIC SAFETY, THE TOWN OF BROOKHAVEN,
John Doe # 1 through John Doe # 10, representing
any additional agency, the State of New York,
or any additional Executive Official(s)
that is jointly liable,

Defendants
_____X

**PLAINTIFF'S REPLY
IN OPPOSITION & FOR
RECONSIDERATION**
Case No.: **21-cv-04097-DG-AKT**
Jurisdiction & Venue
is proper based on
where this controversy
originated.

Plaintiff, Jean R. Daniel, on behalf of himself, and representing himself, respectfully

submits this Reply in Opposition to Defendants' TOB's and William Rogers' Motion to Dismiss &

for Reconsideration of the Court's decision on September 24, 2021, denying Plaintiff's Motion

for Preliminary Injunction, pursuant to **Rule 60(1)(2)(3),** granting the New York State

Department of Health, Administrative Law Judge's, Kimberly O' Brien's, the New York State

Office of the Medicaid Inspector General's, the Deputy Medicaid Inspector General's, Daniel

Coyne's, the Assistant Medicaid Inspector General's, Stephanie E. Paton's RN's,  Motion.

In support of Plaintiff's Reply in Opposition & for Reconsideration, Plaintiff will rely upon

his Amended Complaint (AC) and any and all of its related Reply and Affidavits in Support

thereof.

<div align="center">INTRODUCTION</div>

1. Plaintiff was the senior partner of a Limited Partnership that was formed under

Section 121-201 of the N.Y.S. Revised Partnership Act on October 11, 2007. Plaintiff's limited

partnership was a non-emergency Medical transportation (NEMT)provider, pursuant to the

Department of Health and Human Resources regulations **42 CFR Section 457.1206** and under

**42 CFR Section 440.170.**  The primary reason for the formation and existence of Plaintiff's

limited partnership, as a NEMET provider, was to (1) provide a twenty-four (24) hour service for

the safe and efficient transport of persons with disabilities, sickness, injuries,  as well as persons

on stretchers to and from their designated places. See Plaintiff's AC **Ex. "1"**.


2. Plaintiff's limited partnership did not begin its operation as a NEMET provider until

July 3, 2015 when it received its first batches of Medicaid recipients in need of transportation

from logistiCare. Plaintiff, a citizen of the U. S., decided to convert a room from his home as the

limited partnership's primary place of business, at 72 Granada Circle, in Mount Sinai, NY 11766.

Plaintiff's limited partnership was accepted as a NEMET provider and was given a provider ID #

effective June 19, 2014. See AC **Ex. "2"**.

3. The Defendants N.Y.S. Dept. of Health **(DOH)** is the Department of New York State government that is responsible for Public Health, as part of the state's Executive branch, and not part of the New York State's Judicial or Legislative branch.  And the Defendant, Administrative Law Judge **(ALJ)**, Kimberly A. O' Brien, is a servant of the Department of Health, an Executive Official and not a Judicial Officer assigned to preside over Plaintiff's administrative hearing with the Office of the Medicaid Inspector General **(OMIG)**, which is also an independent, state, Executive office. See AC **Ex. "3."**

4. The Defendants, the Deputy Medicaid Inspector General, Daniel V. Coyne **(DMIG)** and the Asst. Medicaid Inspector General **(AMIG)**, Stephanie E. Paton, RN are all officers of the Medicaid Inspector General's office. The Defendant, William Rogers, is the Executive Asst. at the Town of Brookhaven's Department of Public Safety who oversees the filing of taxi/livery vehicles, cabs, and should have been able to process NEMET providers within the Town of Brookhaven **(TOB)** as well; the fourth Defendant in this caption. John Doe #1 through 10 may or will represent any agency, the State of New York, or any other Executive official replacing the current presiding official, found to be jointly responsible for Plaintiff's deprivation of rights.

<u>PROCEDURAL HISTORY</u>

5. The procedural history is set forth within Plaintiff's AC. It begins and ends on paras 8-90. Any additional or supplemental facts or laws contained within this motion should be read in pari-materia with this current Reply in Opposition and Motion for Reconsideration. Plaintiff is not waiving any of its defenses within his previous Reply in Opposition, except for those which he expressly have done below in para 99.

<u>STATEMENT OF THE CLAIM</u>

6. This is a claim arising from **42 U.S. Code 1983** in conjunction with **42 U.S. Code 1981** and the **14th** and the **5th** Amendments, where the Defendants, in this caption, have violated the **Social Security Act, 1902(a)(70)**, violated **Article 1, Section 8 of the Commerce Clause**, violated **49 U.S. Code 13506(a)(16)(I)(A)**, violated the **NYS Article 17B of the Motor Vehicle Law**, violated **42 CFR Section 1005. 9**, violated **42 CFR Section 1005.4**, violated **42 CFR Section 1005.4(5)**, violated **42 CFR 1004(6)**, violated **CFR 1005.4(11)**, violated **42 CFR Section 1005.11**, violated **42 CFR Section 1005. 13(a)(c)(e)**, **42 CFR Section 405.379**, violated **42 CFR Section 1003(3)**, violated **42 CFR Section 1003.(6)**, in violated **24 CFR Section 26.32**,  violated **42 CFR Section 447.45(d)(1)(4)**, in violation of **42 CFR Section 447.45(c)(4)**, violated **42 CFR Section 447.45(d)(1)(4)**  violated **42 CFR 447.45(d)(iii)**, violated **42 CFR 455.23(2)**, violated **CFR Section 433.316 & 42 CFR433.304** due to acts and omissions of several of DOH's and DOH's employees', the OMIG, the Deputy Medicaid Inspector General, Daniel V. Coyne's, the Asst. of Medicaid Inspector General Stephanie E. Paton, RN's, including an Administrative Law Judge, Kimberly A. O' Brien's, and from several acts and omissions of a Public official, William Rogers', and from the Town of Brookhaven's, acts and omissions, which led to Plaintiff's deprivation of his Constitutional rights, privileges and the deprivation of his due process, causing him to be deprived of his constitutional rights, his liberty and property rights, as he was, without due process, removed from his occupation as NEMET provider, placing Plaintiff in imminent danger of double jeopardy, in accordance with the **14th Amendment** and the **5th Amendment;** and such acts and omissions, in the absence of a Preliminary Injunction,  will likely cause Plaintiff to suffer irreparable injuries.

7. The Defendants did so while acting under color of state law. All of the Defendants in this caption did so as described in para 6 above in their official capacity. And that each government officials and municipality official, through their own capacity, has violated the Plaintiff's rights and the Constitution. Plaintiff now seeks special damages, compensatory damages, general damages and punitive damage against the Defendants, in this caption. And that each government official stated above, through their official's own capacity, has violated the Plaintiff's rights and the Constitution.

8. Plaintiff have requested for several preliminary injunctive reliefs and are hoping for a final and complete injunctive relief from the ALJ and OMIG; Plaintiff is also requesting that the Defendant, William Rogers, be compelled to testify as a witness in any coming hearing, produce any and all documents pertaining to the filing of Plaintiff's business, including those of similar filings with Plaintiff's business, or that he may declare, in writing, that he was, at that time, unqualified to make any decision or declaration regarding whether Plaintiff's business had been operating illegally within the TOB. That the TOB may consider the matter at its highest level and make a decision on the matter, in light of the New York State Motor Vehicle laws, in conjunction with all Federal laws.

9. Plaintiff requests that the Defendant, DOH, provide Plaintiff with a copy of his Written Confirmation that he never received when he was approved as a NEMT provider, which should serve as exculpatory evidence, dismissing the State actors' claim that Plaintiff, had, in fact, been operating his vehicles legally within the TOB. And that the TOB may return any and all of Plaintiff's former business documents, which the Defendant, TOB, confiscated from the

Defendant, William Rogers, and to produce a qualify witness to testify, under oath, unless the Defendants are willing to provide a letter disqualifying their previous letter as an error.

**As to the Defendants' TOB's & William Rogers' ARGUMENT that Plaintiff does not have a likelihood of success**

10. Plaintiff never <u>stated</u>, within any of its pleadings, that he does not want to seek any preliminary injunction relief against the TOB nor against William Rogers. And the Defendant, ALJ, O' Brien <u>did not</u> rule on Plaintiff's Motion to Compel Witness & for the Reproduction of Any and All Relevant Record(s). And therefore, there is no current order or decision that Plaintiff would have to overcome in order for the Defendant, William Rogers, to testify at the State Administrative hearing.

11. The Defendant's, William Rogers', testimony is needed for the following reasons: (a) He is the Town of Brookhaven's Executive Assistant of Public Safety and has held such a position for several years now. (b) It was the Defendant, William Rogers, who received Plaintiff's documents and assisted and processed Plaintiff's application. (c) It was the Defendant's, William Rogers' letters, and no one else within the TOB, that sparked or gave life to the State's Defendants' action against Plaintiff. (d) Defendant continues to take or assume responsibility for such a mistake and promises to have such a mistake be corrected. (e) Defendant agreed to the fact that Plaintiff did not need a license at the time that Plaintiff's business existed.(f) When the Defendant, William Rogers, was informed via email, that his presence was needed for a coming hearing and that a Motion to Compel had been filed by Plaintiff, the TOB <u>took</u> Plaintiff's business file away from the Defendant, William Rogers, so that he would not be able to provide a copy of the same to Plaintiff. (g) Defendant, TOB, through its

attorney promised to look into the matter and was adamant about resolving Plaintiff's issue but never did. (h) Defendant, William Rogers, clearly stated that it wasn't Defendant nor the TOB who determined that Plaintiff's was operating an illegal business within the TOB, it was the Defendant, OMIG, Defendant stated. (i) And now that Plaintiff filed this action against the Defendant, the Defendant, William Rogers, through his attorneys, got demoted and now expects Plaintiff and this Court to refer to him as "Town clerical assistant Rogers".

12. The point that Plaintiff is trying to make is that the Defendant, even though he now refers himself as a Town clerical assistant, and now claims he had not been designated by the TOB to testify regarding its licensing laws and their interactions with other laws, given those facts above, the Defendant is still liable for his acts and omissions and must be called to testify as to those facts above implicating the Defendants, State actors, as the antagonist.  Moreover, Plaintiff is in dire need of his file so that he may be able to examine such file to better defend himself during any scheduled hearing.

13. To deny such request is a constitutional violation under **42 U.S. Code 1981**, in conjunction with the **14th Amendment's due process**, clause and in conjunction with the **5th Amendment**. By denying the Plaintiff the right to subpoena a witness in possession of important documents pertaining to his administrative hearing where his Constitutional rights are in the balance, will cause irreparable injuries to Plaintiff's Constitutional rights. Once this occurs, Plaintiff will never be whole again. The Preliminary Injunction should have been granted to Plaintiff, since it's not adjudicating on the merits, but rather a devise for preserving the

status quo and <u>preventing</u> the irreparable loss of <u>rights</u> before judgment. See <u>Wilkins v.</u>

<u>Gipsan,</u>No., 2:19-cv-01469-CKD-P(E.D. Cal. August 19, 2019.

     14. The Defendants, William Rogers and TOB, claim that Plaintiff admitted, within his

AC, that he received those two innocuous letters upon which Plaintiff sues the Town

Defendants from 2016, and admits to have received them in 2016. Plaintiff made no such an

assertion. There is no paragraph within Plaintiff's AC that will support this. Para 20 of Plaintiff's

AC clearly points out that those letters were discovered in conjunction with the Defendant's

OMIG's NOPAA on December 10, 2018 and OMIG's NOPAA on January 17, 2020. See Plaintiff's

AC **Ex. 5 & Ex. 9.** They were attached within the  Defendant's OMIG's NOPAA and NOAA as **Ex.**

**2.**

     15. Although there is a mention within Plaintiff's Ex. 12 para 12 of Plaintiff's AC that,'
Mr. Rogers only provided DTS, LP with 1 letter on or about May 24, 2016, informing "Whom it
may concern", that DTS, LP is fully licensed and is certified as a Taxi to operate within the TOB",
Para 13, in pertinent parts, states as follows: Instead, on or about August 11, 2016, Mr. William
Rogers faxed a letter to Mr. Bedell who, at that time, was the Supervising Medical Investigator
of OMIG."

     16. Plaintiff knows this to be true because the Defendants' TOB's and William Rogers'

letter dated August 11, 2016 still bare evidence that such a letter was faxed from the TOB's

Enforcement Code Unit. And that the only time Plaintiff received a copy of those letters and the

actions taken against his business was on December 10, 2018 when he received the

Defendant's OMIG's NOPAA via certified mail.  In any event, the two (2) erroneous letters that

were written by the Defendant, William Rogers, for which the Defendant, TOB, should have also

been made aware of, could have been taken as a simple, innocent mistake, with no malice

intended. It was only after December 10, 2018, when the Defendant, OMIG, began putting

pressure on Plaintiff to provide documents to support his business, and Plaintiff, likewise, began his campaign attempts to contact the Defendant, William Rogers, and the Defendant's, apparent unwillingness to speak with Plaintiff or to his employees and representative, can a complete claim can be made against the Defendants. See Ashcroft v. Iqbal, 556, U.S. 662 (2009), where the Supreme Court has held "that defendant could be held liable under **Section Code 1983** if he failed to remedy constitutional violation after learning of it or was grossly negligent in managing subordinates who caused violation".

17. Several attempts were made for the Defendants to comply, to no avail. In fact, the Defendant, William Rogers, as Plaintiff will further discuss below admitted that Plaintiff did not need a license and that he will have his superior look-into it.  The Defendant, even though he might have given the information to his Superior, never contacted me to inform me of the TOB's final determination.

18. The claim accrues when the alleged conduct has caused the claimant harm. In Plaintiff's case at bar, when he received OMIG's NOPAA containing, inter alia, other letters aside from the ones addressed to OMIG, was well within the statute of limitation. See Veal v. Geraci, 23 f. 3d 722 (722 (2d Cir. 1994). See Wallace v. Kato, 549 U.S. 384, 388 (2007).

19. Providing the Defendant, William Rogers, with a copy of Plaintiff's Request for Administrative Hearing was to inform Defendant of the matter and to place him on "Notice" that he will be needed during the coming hearing as a witness or to provide a sworn written statement regarding the matter. See Plaintiff's **Ex. "12"** of his AC, at the bottom of para 13. Plaintiff did not state, in paras 49 and 85, as Defendants, TOB and William Rogers, contend that

'Plaintiff alleged and admitted that 'ALJ O' Brien denied Plaintiff's request to subpoena Rogers and declined to issue a subpoena compelling Rogers to testify'. Plaintiff clearly stated that the Defendant, AJJ, did not accept or consider Plaintiff's application, much less deciding on its merits. Please review Plaintiff's AC paras 59 and 85 carefully.

20. Again, Plaintiff did not expect the Defendant to willingly testify. That is why Plaintiff filed his Motion, together with its attachments. However, the Defendant, ALJ, did not accept the motion by simply saying, 'Plaintiff's motion is not accepted, etc.' .See **Ex.** of **"36"** of Plaintiff's AC, in its entirety.

21. Again, Plaintiff's claims against the TOB are also not time-barred, not only because the letters were provided to Plaintiff on December 10, 2018, as previously stated, but because, through the Defendant's William Rogers' own assertions on March 29, 2021 and again on May 24, 2021, Plaintiff  was informed that the Defendant, TOB, also shows a deliberate indifference towards Plaintiff. See <u>Johnson v. Dallas Independent School Dist.,</u> 38 f. 3d 198 (5th Cir. 1994). See also <u>Brown v. Grabowski,</u> 922 F. 2d. 1097 (3rd Cir. 1990). See also <u>Anti Police-Terror Project v. City of Oakland, 477 F. Supp. 3d 1066 (N.D. Cal. 2020).</u> See Plaintiff's para 9(f) and 9(g) above. Also see below.

22. Plaintiff is not trying to revive any "conspiracy" claim to a **42 U.S. Code 1985** between the TOB and the Defendant, OMIG.  Such a conspiracy had longed been at work and was discovered on March 29, 2021 upon a conversation that the Defendant, William Rogers, had with Plaintiff's representative. The transcript of such conversation is annexed within Plaintiff's AC as **Ex. "33"**. The Defendant, William Rogers, on p. 2, line 6, in pertinent parts,

states, "OMIG that runs Brunswick for the State they were out there 3 or 4 times about 7 years ago and they were running a cab business (Plaintiff's business) and they were not up to the code and stuff and it's not up to us (the TOB)".

23.  And again, on p. 2, line 8 of Plaintiff's Tr., **Ex. "33"**, the Defendant, William Rogers, stated, in pertinent parts, as follows: 'The OMIG that hands out the Medicaid runs they have an enforcement division and I can remember the day 5, 6, 7 years ago that they went out to their house and ticked their vehicles for not being in compliance. The Town has nothing to do with that."

24. And on May 24, 2021, upon another conversation with the Defendant, William Rogers, with Plaintiff's representative, after the TOB and the Defendant received 2 email correspondences from Plaintiff dated May 4, 2021 and May 18, 2021 informing the Defendants to preserve Plaintiff's business file, and that the Defendant, William Rogers, will be needed on August 19, 2021 at 10:00 am via video, etc.",  on May 24, 2021, during such a conversation with Plaintiff's representative, the Defendant, William Rogers, upon Plaintiff's representative's request for Plaintiff's business file and a request to obtain a letter from the Defendant, William Rogers,  the Defendant, on p. 2, line 7, of **Ex. "49"** of Plaintiff's AC, which initially intended to be Ex. "47",  states" See the problem is, I don't have, you see what happened here, George, I don't have all the file, they (Assumingly a Superior officer at the TOB) took it out of my hands, and so I don't know what I can get to it's a lot of stuff, etc."

25. This was contrary to what the Defendant informed Plaintiff during the March 29, 2021 phone conversation with Plaintiff's representative prior to receiving an email requesting

his presence to testify within a pending hearing. The Defendant, William Rogers, claimed to

have had all of his old record, implying that he had Plaintiff's record as well. See Plaintiff's AC

**Ex. "33"** p. 3, line 16.

26. In addition, during the May 24, 2021 phone conversation with Plaintiff's

representative, the Defendant agreed that Plaintiff did not need any licensing from the TOB.

See Plaintiff's **Ex. "49"**, pa. 3 lines 14-15. A statute of limitation begins to run on the date that

Plaintiff's claim accrued, which is the date the Plaintiff has a <u>complete</u> and present cause of

action and can file suit and obtain relief. See <u>Woods v. Candela,</u> 13 F. 3d 574 (2d. Cir. 1994).

See also <u>Bezera v. County of Nassau,</u> 846 F .Supp. 214 (E.D.N.Y. 1994).

27. In regards to Defendants' contention that Plaintiff does not assert a State claim

against the TOB. Please note that on or about November 21, 2020, Plaintiff did provide a Notice

of Claim to the Defendants. See Plaintiff's AC **Ex. "29"**. Such a Notice of Complaint was also sent

to the State Defendants' Counsel as well, in accordance with **NYS GML 50-a**. But make no

mistake about it, the Defendant, TOB and William violated both Federal and State laws, as

sated above and will be fully elaborated upon below.

**Contrary to the Defendants' TOB's & William Rogers' contention, Plaintiff's Taxi Statutory Analysis has merit**

28. **49 U.S. Code Section 13506(a)(2)** of the U.S. Commerce, under Miscellaneous motor

carrier transportation exemptions, in pertinent parts states, "In General, neither the Secretary

nor the Board has jurisdiction under this part over **(2)** motor vehicle providing taxicab. **Section**

**13506(a)(16)(b(1)(A)) (B)** states, "Except unless otherwise <u>necessary</u> to the extent the Secretary

or Board, as applicable, finds it necessary to exercise <u>jurisdiction</u> to carry out <u>transportation</u>

policy of **Section 13101**, neither the Secretary nor the Board has jurisdiction under this part

over **(1)** transportation provided entirely in a municipality in contiguous municipalities, or in a

zone that is adjacent to, and commercially a part of, the municipality or municipalities, EXECPT-

when the transportation is under common control, management, or arrangement for the

continuous carriage or shipment to or from a place outside the municipality, municipalities, or

zone; OR that in transporting passengers over a route between a place in a State and a place in

another State, or between a place in a State and another State through another State, the

transportation is exempt from jurisdiction under this part only if the passengers over the entire

route under the laws of each State through which the route runs.'

29. There is no question about it that Congress, under the **Social Security Act, Section**

**1902(a)(70)**, which is also codified under **42 CFR 440.170**, found it necessary to exercise

jurisdiction over the States to ensure that the Citizens within each state receive adequate

health benefits including, but not limited to, the transportation of certain qualified Medicaid

recipients to receive free NEMET to and from their designated places. Congress's intention was

to assure that qualified Medicaid recipients receive such an aid and contracted with the several

States to assure the program's success. And therefore, any mandate from a local Municipality

to also regulate such a program is in violation of the Constitution and with **Article 17B Section**

**498(2) of the NYS Department of Motor Vehicle Law**

30. While Defendants argue on p. 4, para 3, within its motion to dismiss, that (1) First,

nothing in that law exempts anyone from having to obtain a license to travel between different

licensing municipalities, and to the contrary, it requires a license to be secured. Defendants

obviously did not read the remaining portion under **Article 17B, Section 498(2)**, in pertinent

parts, which states, "Reciprocity", a. A Pre-arranged for-hire vehicle that is licensed to provide pre-arranged transportation for compensation by a licensing jurisdiction meeting the standards and requirements set forth in subdivisions three, four and six of this section shall be authorized to pick up passengers in such jurisdiction for drop off within the same jurisdiction, to pick up passengers in <u>another</u> licensing jurisdiction for drop off within the licensing jurisdiction licensing such pre-arranged for hire-vehicle, to drop off passengers in <u>another</u> licensing jurisdiction who were picked up within the licensing jurisdiction licensing such pre-arranged for-hire vehicle, and to <u>transit</u> other licensing jurisdiction. <u>No</u> other licensing jurisdiction may <u>require</u> a pre-arranged for-hire vehicle providing pre-arranged transportation for compensation, which is licensed by a licensing jurisdiction meeting the standards and requirements set forth in subdivisions three, four and six of this section, to also be licensed by such other licensing jurisdiction or to pay any pre-arranged for-hire vehicle license fee in order to be allowed to pick up or drop off passengers within or to <u>transit</u> such jurisdiction, etc.'

31. So Defendants' contention that there is nothing contained within this law that exempts for-hire motor vehicles from traveling between licensing municipalities, cities or even towns, such as the Defendant, TOB, has no merit. Defendants' second argument is that they contend that Plaintiff never told them that they were licensed; and that **Article 17B Section 498(2)** does not apply to location within the TOB to another location within the TOB.

32. The Defendants fail to understand that the "Reciprocity" rule does mention that. Again, in pertinent parts, under Reciprocity, it states,' A pre-arranged for-hire vehicle that is licensed to provide pre-arranged transportation for compensation by licensing jurisdiction meeting the standard and requirements set forth in subdivisions three, four and six of this

section shall be authorized <u>to pick up passenger in such jurisdiction for drop off within the same jurisdiction, etc."</u>

33. Plaintiff did not inform the Defendants that he was licensed by another licensing jurisdiction because (1) Plaintiff's business was also exempt under Suffolk County laws. See Plaintiff's AC para 14C. And (2) the Defendant, William Rogers, as the Assistant Executive of the TOB's Public Safety, after receiving Plaintiff's documents, including its Certificate of Incorporation, upon Plaintiff's request to correct such an error, should have corrected the same. Plaintiff's business was licensed under the Defendant, DOH, who failed to provide a copy of Plaintiff's "Written Confirmation" of his business's involvement as a NEMT provider and to electronically proclaim the same to the various nearby Counties in New York and the various Towns in Suffolk County.

34. That's a major failure by the part of the Defendant, DOH, in its obligation to regulate its affairs, trying to promulgate Congress's intent or laws under the **Social Security Act, Section 1902(a)(70)** Such information of the "Written Confirmation" letter which should have been sent to the various subdivisions within the State of New York by the Defendants is new to me. Plaintiff did hint to such a notion for the first time about a month ago. But Plaintiff did not have the time to complete his research.

35. Nowhere within the Defendants' State actors' books, pamphlets, and documents is this mentioned. Imagine the amount of information that Plaintiff would have discovered if he had the opportunity to subpoena the Defendant, William Rogers. See the remaining law under "Reciprocity", specifically under **Article 17B Section 498(2)**, towards the bottom of said law, it states, 'A licensing jurisdiction meeting three, four, and six of this section (drug testing and

fingerprinting, etc.), shall provide <u>written confirmation</u> thereof to other licensing jurisdictions, containing information sufficient to establish that such licensing jurisdiction meets all such standards and requirements, and which shall be <u>verifiable</u> by such other licensing jurisdictions. Such <u>written confirmation</u> shall be resubmitted to such other licensing jurisdictions every three years."

36. Even assuming that Defendant, William Rogers, was not properly trained by the Defendant, TOB, or was not informed of this law, or did not receive a copy of Plaintiff's written confirmation from the Defendant, DOH, when he faxed those letters to the Defendant, OMIG, he cannot now claim that he is still ignorant of such a law or that he made an innocent mistake, since Plaintiff, upon learning of the existence of those letters, eventually made contact with the Defendant, informing the Defendant of the need to immediately correct such a letter or declare that such a letter null and void, since he now admits that he is just a 'Town clerical assistant". And he is not qualified to respond to or deal with those questions pertaining to intrastate and interstate commerce.

37. Defendants' argument on p. 5, para 1, in pertinent parts, where Defendants state,' Nowhere in the Amended Complaint is there any claim that plaintiff and his former business somehow solely provided service to or from outside of the very large Town of Brookhaven where the business is located.' However, the AC made assertions that his business should have been exempt from any licensing requirement. See Plaintiff's para 14F-14G.

38. Defendant, TOB, therefore, is in violation of **Article 1, Section 8 Clause of the U.S. Constitution** which gives Congress the power to "regulate commerce." The Defendants are also in violation of **49 U.S. Code Section 13506(a)(16)**, in its entirety. As said within Plaintiff's AC, to

this day, the Defendant, TOB, failed to create new for-hire vehicle registration and licensing forms to come into compliance with Congress's intent and to regulate NEMET providers within its Town. Upon several requests by Plaintiff to correct such an error, the Defendants have shown deliberate indifference to do so, by failing to correct their own errors. Both Defendants are currently in violation of the New York State law of Motor Vehicles as stated above.

39. The controlling issue here is whether or not Plaintiff's business had been operating illegally within the TOB. Defendant, William Rogers, within his Declaration clearly states, on line 3, in pertinent parts as follows, 'Plaintiff admits and it is a fact that I never agreed with or joined in that interpretation of the Town Code." This new material fact further enhances Plaintiff's contention above.

40. Based on Plaintiff's analysis, it does appear that the Defendant, William Rogers, is somewhat honest about the entire situation; he may still be compelled by certain deceitful individuals within the TOB that "took" away Plaintiff's file so that Plaintiff would not be able to defend himself. However meager the Defendant's, William Rogers', involvement with Plaintiff's conspiracy claim and his deliberate indifference claim towards the Plaintiff, he must reveal all that he knows; like, why did his or her supervisor took Plaintiff's file away from him?  What was the Defendant's state of mind when he or she took away such needed document from the Defendant's possession?

41. In Hyland v. Wonder,117 f. 3d. 405 ((9th Cir. 1997), the City was liable where final policymaking authorities "left the internal management" to the department head "and attempted not to interfere.  The Defendant, TOB, knew or should have known that the Defendant, William Rogers, did not fully understand the mechanics of his own town's licensing

procedure, yet allowed the Defendant to process Plaintiff's NEMT application. In <u>Patel v. Kent School District,</u> 648 F. 3d 965 (9th Cir. 2011), where certain state actors recognized that there is an unreasonable risk, and actually intend to expose the Plaintiff to such risks without regard to the consequences of the Plaintiff, the Defendant was liable for its acts and omissions of acts.

**As to the Defendants' State actors, Plaintiff's case falls within the "Ex Parte Young's case and therefore meets the standards for a Preliminary Injunction**

42. As this Court knows, it has been well settled by the Supreme Court that a State or a State actor cannot make his own laws and declare, as Attorney General, (AG), that he was acting within the scope of his State's law and was, therefore, entitled to State's sovereign immunity. In <u>Ex parte Young,</u> 209 U.S. 123 (1923), which argument Plaintiff did include within his Reply in Opposition, when the State acted contrary to any federal law or contrary to the Constitution, Plaintiff is entitled to a Preliminary Injunction to preserve his status quo of a Federal claim which the State, especially where such a relief was and continues to be unavailable for Plaintiff.

43. There is no question about it that the Defendant, ALJ, literally deprived Plaintiff of his basic right since the Defendant did not accept Plaintiff's Motion to Compel Witness, etc., let alone consider on its merits. See Plaintiff's AC paras 85-90, in its entirety. There's no question about it that the Defendant, ALJ, took no Judicial notice as required by Federal law. See Plaintiff's AC para 85(C). See para 85(F) establishing Plaintiff's case of deliberate indifference, where the Defendant, ALJ, during the pending of Plaintiff's Section 1983 case, continued sending notices and insisting that Plaintiff should continue with the administrative proceedings,

even though Defendant had not resolved important and concerned issues that existed between the Defendants and Plaintiff.

44. In the Ex parte Young's case, no other standard had to be met but that there were evidence that a State actor had violated the Plaintiff's Constitutional rights. There is most recent case that was just decided on August 14, of 2021 under the same precedent with the Ex parte Young's case. See Whole Woman's Heatlh Alamo City Surgery Center, LILP, et. al v. Judge Austin Reeve Jackson, Penny Clarrston, et., al No. U.S. 21A24 (August 14, 2021).

45. Defendants, the State actors, cannot say that Plaintiff did not explain why waiting for the administrative hearing would cause irreparable harm or not having the Defendant, William Rogers, to attend the administrative hearing would harm Plaintiff. See Plaintiff's AC para 85G. At the end of Plaintiff's AC para 85G, Plaintiff's stated, "Plaintiff's cherished Constitutional rights are now in jeopardy, etc."

46. Defendants erred in believing that Plaintiff can later seek an Article 78 review if necessary. In Sam Remo Hotel, L.P v. City and County of San Francisco, 545 U.S. 323 (2005), the Supreme Court held or recognized that a state court's resolution of a claim for just compensation under state law generally has preclusive effect in any subsequent federal suit. The 'taking' Plaintiff thus finds himself in Catch-22.

47. He cannot go to federal court without going to state court first. But if he goes to state court and loses, his claim will be barred in federal court. The Federal claim dies aborning". See 17-646 Gamble v. United States (06/17/2019). See also Barton Petitioner v. State of Maryland, 395 U.S. 784, 89 S. Ct. 2056 23 L.Ed. 207.

48. See also <u>Civil Sanctions United States v. One Assistant of 89 Firearms,</u> 465 U.S. 354 (1984), holding that the prohibition of double jeopardy extends to civil sanctions which are applied in a manner that is punitive in nature." Even more important, **42 U.S. Section 1983** is, in and of itself, an automatic stay proceeding pending its final disposition. Furthermore, in <u>17-647 Knick v. Township of Scott,</u>06/19/2019), the Defendant withdrew its violation notice and agreed to stay enforcement of the ordinance during the state court proceedings.

49. The Supreme Court longed held that a Civil Rights action under **42 U.S. Section 1983** acts as an automatic stay, as a claim is now pending against the Defendants; and such a claim must first be determined before any civil enforcement proceeding can continue. See also <u>Rafael, Pabon-Ortega, v. Isabel LLompart-Zeno,</u> U.S. No. 18-331. See also Plaintiff's letter to the Court and sent to the Defendants on August 9, 2021 as **Ex. "46"**.

50. On the merit, Plaintiff claims is also likely to succeed; in that at no time within any of the Defendants' State actors' response did they provide an affirmative defense. At no time did any of the State actors rebut the fact that the Defendants did not treat Plaintiff with deliberate indifference, which, by the way, has to be examined and determined by a jury of Plaintiff's peers. Evidence of the Defendants' State actors' undertaking will to proceed with the administrative hearing, even after Plaintiff has commenced his action in Federal court, in an attempt to bypass Plaintiff's 14th and 5th Amendments rights, is astonishing. See and read **Ex. "46"** in its entirety.

**As to the State actors' Defendants', ARGUMENTS, Requirement to obtain a Preliminary Injunction, the showing of Irreparable Harm, A Likelihood of Success, Failing to assert a Liberty Interest and Ample due process vehicles through the NOPAA and NOAA**

51. Plaintiff meets the requirements for a preliminary injunction, the showing of irreparable harm, the likelihood of success and did assert a liberty interest. This is an action now brought under the 5th Amendment in conjunction with the 14th Amendment. Unlike the Defendants' contention, Plaintiff's liberty rights under the 5th and 14th Amendments have already been violated. Plaintiff will explain further below.

52. Secondly, Plaintiff's property rights had already been taking away from him when he had unjustly been removed from the Medicaid program due to an allegation that Plaintiff's vehicles were not licensed by the TOB.  It's an allegation that had been fabricated through fraudulent determinations via of OMIG's officials. See Plaintiff's AC paras 9-14 and 16-20. DOH was legally responsible and had an obligation to provide a "Written Confirmation letter to the various local Towns, Counties and Cities where Plaintiff's vehicles were called upon to enter into in order to pick up and to drop off Medicaid recipients, only. Plaintiff's business was not available to the public for-hire. See **Article 17B Section 498(2)**, in its entirety.

53. There is no question that Plaintiff did have a three (3) year contract with the State which had been renewed in June of 2017, based on the Medicaid program that he enrolled in. See **42 CFR Section 438.9.** See also **42 CFR Section 440.170**, in its entirety. See also **42 CFR Section 457.1206**. Upon enrollment and renewal, Plaintiff obtained a property interest under such a contract and was obligated, under such a program, to provide NEMT service in NYS for three (3) years, upon each renewal, to qualified Medicaid recipients.

54. New York State laws are in agreement with and have waived their rights and have decided to join this Federal program. It's well settled that the Defendant, DOH, is in agreement with and has accepted to promulgate the **Social Security Act.** Defendant's DOH's breached its three (3) year contract with Plaintiff by relying upon such lies, causing Plaintiff's removal from the Medicaid program without due process or without any prehearing and post-hearing.

55. The Defendant, ALJ, refused to even hear, on the merit, Plaintiff's Motion to Compel Witness and for the Production of Record, which is also a violation of Plaintiff's constitutional rights, as discussed within Plaintiff's AC, paras 85-90. If Plaintiff did not commence his action and obtained an automatic Stay from these Defendants, State actors, in late July of 2021, in August of 2021, Plaintiff would have suffered an irreparable Constitutional harm or damage to his 14$^{th}$ and 5$^{th}$ Amendments rights, precluding him from bringing any Federal claims in Federal court. Without this protection, Plaintiff would not keep the 'status quo", and would not be able to bring any suit against the Defendants, State actors, again.

As a result of thus, Plaintiff became financially drained, causing him great stress.

56. Such an action by the Defendants also constitutes a violation of and harm to Plaintiff's liberty rights under the 5$^{th}$ and 14$^{th}$ Amendments, which is an irreparable Constitutional damage. Plaintiff was not free to choose his own career as a NEMT provider, as such right was taken away from him. Such a removal also restricted Plaintiff from freely travelling to and from and within the Cities of New York and Suffolk County and throughout the various Cities, Towns, and Municipalities of the State of New York, which he vehemently enjoyed doing as a NEMT provider. Plaintiff's current status with DOH bars him from

requalifying or reapplying as a NEMT provider as well, constituting a continuous violation of his Constitutional rights.

57. Now in the Whole Woman's Health case in para 45 above, the U.S. Supreme Court held that the threat of imminent danger was sufficient. The Plaintiff did not need to be in immediate danger but so long as the threat exists; it was sufficient for the Supreme Court to remand the action to the Circuit court for further proceedings.

58. Given those facts above, even while Plaintiff began his Civil rights action against the Defendants, the State actors, the ALJ continued sending email correspondences to Plaintiff regarding the continuation of the proceeding and showed no interest to resolve Plaintiff's request and concern for discovery. The Defendants, OIMIG, and ALJ, showed no regard to whether or not Plaintiff fully understood OMIG's allegations and claims against him. Given those pattern of deliberate indifferences toward Plaintiff, Plaintiff stood no chance that the Defendants would provide him with any adequate due process.

59. Plaintiff could not have immediately appeal the ALJ's decision, not only because no decision was ever made, but because there was none available within the State's administrative procedure's scheme. There was no interlocutory appeal available to challenge the Defendant's, ALJ's, refusal to hear, on the merit, Plaintiff's motion. Again, there was no other remedy available for Plaintiff at the State forum, which demonstrates its inadequacy. **The Civil Rights Act of 1871** guarantees a 'federal forum for claims of unconstitutional treatment at the hands of State officials. And it has been well-settled by the Supreme Court that "exhaustion of State remedies is not an action under **42 U.S.C. Section 1983**. See the Heck v. Humphrey case previously stated above.

60. It is unclear what the Defendants, State actors, are trying to infer when they state, "that Plaintiff has ample due process vehicles through NOPAA and NOAA. Both the Notice of Proposed Agency Action had been sent on December 10, 2018 and Plaintiff cannot use that as a vehicle to appeal or for reconsideration. It's a self-serving determination, although it gives notice to Plaintiff of the agency's proposed action. Plaintiff had no part in its formulation. And the same goes with the agency's Notice of Agency Action. Defendants are trying to convince Plaintiff to go through the State's proceedings which cannot provide Plaintiff with the necessary relief that Plaintiff currently needs, and for such reason alone, Defendants' argument must fail.

### As to the Defendants' State actors, ARGUMENT, the Younger case

61. Abstention is the exception, not the rule. See Moses H. Memorial Hospital v. Mercury Corp, ,460 U.S. 1, 14, 103 S.Ct. 927, 936, 74 L.Ed. 2d 765(1983). Federal courts have a "virtually unflagging obligation" to exercise their Jurisdiction. See Deakins v. Managhan, 484 U.S. at 203, 108 S.t. at 530. Also see John v. Nyack Hosptial, U.S. D C, S. D. New York June 27, 1995.

62. This case does not fall into the Younger case. Rather, it falls under the Ex parte Younger case. This action has been commenced against Plaintiff in bad faith and simply to harass Plaintiff. The newly evidence of Defendant's William Rogers' Declaration dated August 24, 2021, together with Plaintiff's 2 Transcripts dated March 29, 2021 and May 24, 2021, demonstrate that Plaintiff have sufficient evidence to show that such a proceeding was commenced in bad faith and to harass Plaintiff. To begin with, it should now be undisputed as a matter of law fact, that, according to **Article 17B Section 498(2)**, it was the Defendant, NYS DOH,  that was supposed to, not only issue a "Written Confirmation" to demonstrate that

Plaintiff's business had been qualified as a NEMT provider that allowed Plaintiff's business vehicles to freely move around within the TOB, but it was also DOH's responsibility to provide a copy of such a Written Confirmation letter among the various counties cities, and towns, perhaps, electronically, to those regions regarding Plaintiff's business qualification.

63. Plaintiff now reasonably assumes that the Defendant, TOB, might have obtained such a Written Confirmation; and due to some deliberate indifference, refuses to provide Plaintiff with such information that would cause the dismissal of the Defendants', State actors', claim. The possibility that the Defendant, William Rogers, openly admitted to Plaintiff that he agreed with Plaintiff that Plaintiff's business did not have to be licensed by the TOB and the TOB's immediate repossession of Plaintiff's file from the Defendant is another set of facts that has to be examined by a Jury in order to determine whether such an action constitutes deliberate indifference and even malice towards Plaintiff.

64. Plaintiff does not believe that this was an error by the part of the Defendant, DOH. There are too many circumstantial occurences within this controversy, enough to raise a genuine issue of material fact that such a conspiracy exists, since to this day, not one of the Defendants have decided to "do the right thing" towards the Plaintiff. And this is why Plaintiff has no confident in the Defendants' State actors' administrative forum.

65. Plaintiff need not show any additional "exception", although a Federal court has the obligation to here "federal question" and should not leave such a responsibility to a State court. See Phelps v. Hamilton, 59 F. 3d. 1058, 1063-64 (10th Cir. 1995). Also see Tucker v. Callahan, 663, Supp. 375 (M.D. Tenn. 1967).

66. In addition, in <u>Gibbs v. Berryhill</u>, where all the parties that were supposed to issue or renew her Dental license was part of the same board, the District Court, upon reading Gibbs's Procedural history within her pleadings, held that since institutional bias rendered the administrative proceeding inadequate, the District Court refusal to abstain was proper".

67. Furthermore, the Supreme Court, in <u>New Orleans Public Service, Inc. v. Counsel of City of New Orleans,</u>, No. 88-348 U.S., clearly drew the line as to how far the Younger rule applies. It clearly delineated that the Younger rule applies <u>only</u> within these three (3) categories: (1) its application only extends to Criminal prosecution. (2) Civil enforcement proceedings, <u>such as a bar disciplinary proceeding</u> and civil involving <u>orders</u> that are uniquely in furtherance of the <u>State courts'</u> ability to perform their <u>Judicial</u> functions, such as State appellate and bond requirement used to compel compliance with a State Judgment. No matter how quasi-criminal or how identical the Defendants are trying to apply the Younger case with Plaintiff s present case at a bar, the Younger rule does not apply here. The Supreme Court has not extended such a rule to that extent, at least not at this present time.

### As to the Defendants', State Actors' 11th Amendment ARUMENT

68. The Supreme Court has held that there are three (3) ways a State can abrogate the 11th Amendment. See <u>Calvin v. Arena County,</u> 574 f. 3d 334. 344 (6th Cir 2009). Where a State has consented to join a federal-state cooperation project, it is realistic to conclude that the State has agreed to assume its obligations under that Legislation. There is nothing in the 11th to suggest a difference between suits at law and suits in equity. See <u>Parden v. Terminal R. Co,</u> 377

U.S. 184 (1964). See <u>Florida Prepaid Postsecondary Education Expenses Board v. College Savings</u> <u>Bank,</u> 527 U.S. 627 (1999).

69. Agreeing to join a federal program is one of the three. The second one is Congressional Abrogation. (3) The third one is for prospective relief to end an ongoing violation of federal law. See <u>Ex parte Young,</u>209 U.S. 123 (1908) See <u>Malo v. Hafer,</u>912 f. 2d 628,635 (3rd Cir. 1990).  In the <u>MCI Telecomm Corp. v. Illinois Bell Tel Co.,</u> state officials sued in their official capacities for injunction relief are "person" under **Section 1983** because official capacity actions for prospective relief are not treated as actions against the State. See also <u>Compo-grosso v. The</u> <u>Supreme Court of New Jersey,</u> 588 F. 3d 180 (3rd. Cir. 2009).

70. The Supreme Court, in <u>Jett v. Dallas,</u> Sch. Dist., 491 U.S. 701, 733, 36, 109 S. Ct. 2702, 2722-23, 105 L.E. Dd. 2d 598, (1989), held that (1) **42 U.S.C. Section 1983** provides the "Exclusive federal damages remedy for violations of the rights guaranteed by **Section 1981**, when the claim is against a state actor, and (ii) a plaintiff who sues a municipality under **Section 1981** may not rely upon the doctrine of respondeat superior  but must satisfy **42 U.S.C Section 1983's** policy or custom" requirement.

71. This policy or doctrine by the Supreme Court echoed throughout the different Circuits, including the 2nd Circuit. See <u>Duplan v. City of N.Y.,</u> 888 f. 3d 612 (2nd Cir. 2018). See also <u>Monell v. N.Y.C. Department of Social Services,</u> 436 U.S. 658 (1978). The Court ruled that the 11th Amendment did not bar suits under **Section 1983** against municipalities and other local governments, since official capacity suits generally represent only another way of pleading in an action against an entity of which an officer is an agent.

72. Clearly, the Defendants' State actors' claim of 11th Amendment Immunity must fall. Any of Plaintiff's State law-based claims against the State are well founded and protected by Federal laws. The **Social Security Act** had been enacted by Congress and the States have agreed to take part in it  Therefore, any contract between Plaintiff and the State actors is valid; else, the Defendants attempt to enforce its alleged overpayment  claim against the Plaintiff would also have to be null and as against Plaintiff.

73. Defendants' seem to think that the Defendants are not liable for money damages due to the 11th Amendment. This is absolutely not true. Such an "Immunity" clause does not apply here. There are three (3 exceptions to the 11th Amendment. (1 ) it does not stop a Federal court from issuing an injunction against a State official who is violating Federal law. Although the State official may be abiding by State law, he is not permitted to violate Federal law, and a Federal court can order him to stop the action with an injunction. See <u>Ex Parte Young,</u> 209 U.S. 123 (1908). Furthermore, money damages are possible against the State officer(s), as long as the damages are not attributable to the officer himself, and are not paid from State treasury. See <u>Scheuer v. Rhodes,</u> 416 U.S. 232 (1974).

74. The 11th Amendment does not automatically protect political subdivisions of the State from liability. See <u>Moor v. County of Alameda,</u> 411 U.S. 693 (1973). The main factor is whether the damages would come out of State treasury. See <u>Hess v. Port Authority Trans-Hudson Corp.,</u> 115 S. Ct. 394 (1994).

75. Even if there is an implication that such an Amendment, the 11th Amendment, acts as a shield, protecting the State from being sued by Plaintiff, the State might have knowingly

surrendered, at least a portion of their rights, or sovereign immunity that had been preserved to them by the Constitution when the 14th Amendment was adopted. The Defendants' State actors' claim under the 11th Immunity doctrine must fail.

### As to the Defendant's, ALJ's, Absolute Immunity ARUMENT

76. Absolute Immunity is a personal defense that is unavailable in official capacity action. See <u>Kentucky v. Graham,</u> 473 U.S. at 159 166-67, 105 S.Ct, 3099 3105 (1985). The only immunity that can be claimed in an official capacity action are forms of sovereign immunity that the entity, qua-entity, may possess, such as the 11th Amendment. See <u>Id at 167. 105 S. Ct. 3099.</u> See also <u>Cady v. Arena County,</u> 574 f. 3d 334, 342 (6th Cir. 2009). See <u>Cady v. ArevacCity,</u> 574 334 342 (6th Cir, 2009). See <u>Essex v. City of Livingston,</u> 518. App. K 351, 354 (6th Cir. 2013). The same holds with state actors. See <u>Steele-Brown v. Stoddard,</u> 192 f. Supp. 3d. 812 (E.D. Michigan, 2016), citing a claim can be asserted against state actors in their official capacity for injunctive relief.  Defendants offer only State authorities and administrative state authorities but failed to provide the Court with a Federal authority supporting this.

### As to the Defendants', State actors' Qualified Immunity ARGUMENT

77. To begin with, Plaintiff did not allege any individual claim against the State actors. Plaintiff's allegations deals solely regarding their official capacities as described within Plaintiff's AC. The Supreme Court established a two-part test in order to determine whether the official defendant has qualified immunity for his alleged misconduct. If the conduct closely shows: (1) that the law governing the officials' conduct was clearly established."(2) Under that "closely established law, a reasonable officer could have believed that his conduct was lawful.

78. It is undisputed that all of the Defendants, State actors, violated clear established Constitutional laws. See Plaintiff's AC paras 9-10A. They are the Defendants, DMIG's and DOH's clear Constitutional violations. See paras 10D-13. They are the Defendant's OMIG's violations of Plaintiff's Constitutional rights. See para 14A-15. They are Constitutional violations stemming from the Defendant, William Rogers and the TOB.

79. See Plaintiff's AC para 15A. It shows a Constitutional violation of OMIG. See Plaintiff's Complaint paras 49-52. It shows the Constitutional violations of the Defendant, ALJ. See para 58A-58D. Para 58E is a Constitutional violation of the Defendant, OMIG.

80. See Fowler v. Block, 2 F. Supp. 2d 1268 (C.D. Cal. 1998). See Ram v. Rubin, 118 F. 3d 1306, 1310 (9th Cir. 1997). Also, Plaintiff believes that not one of those officers above could have believed that their conducts were lawful. That may, of course, be a question for a Jury.

81. On the other hand, there is a three-part test to determine that the officials did have Qualified Immunity if: (1) the plaintiff has identified a specific federal statutory or constitutional right that has already been violated. (2) that right was so clearly established as to alert a reasonable official to its parameters. (3) a reasonable officer could have believed his or her conduct was lawful. See Sweeney v. Ada County, 119 f. 3d. at 1388, citing Newall v. Sauser, 79 f. 3d 115,117 (9th Cir. 1996). See Hope v. Pelzer, 536 U.S. 730 (2002). Also see Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L. Ed, 2d 272 (2001).

82. Now In Pearson v. Callahan, 555 U.S. 223 (2009), the Supreme Court held that while the Saucier test is helpful, it does not need to be applied in qualified immunity claims. Rather, a trial court should have more discretion in whether it should apply to Saucier. The Court also

held that an officer conducting a search is entitled to qualified immunity where clearly established law does not show that the search violated the fourth Amendment."

83. Also in 2009, the Supreme Court, in a nutshell, further broadened this power by stating that if no "clear" violation exists, then there is no constitutional violation, though it was decided in the context of school officials. See Safford United School Dist. # 1 v. Redding, 129 S. Ct. (2009).

84. Now in more recent years, in Taylor v. Riojas, , the Supreme Court held, "Because any reasonable correctional officer should have realized that Trent Taylor's conditions of confinement offended the Eight Amendment, the U.S. Court of Appeals for the 5th Circuit erred in granting the officer's qualified immunity". The two key factors from the Redding and the Riojas cases are that (1) no constitutional violation can occur unless such a violation is "clear". (2) that any reasonable officer should have realized the wrong being done. So although the Defendants OMIG, DMIG and AMIG had qualified immunity, such immunity was stripped from them just like it did with the Defendant, ALJ, and the Defendants TOB and Willian Rogers.

### As to the Defendants', the State actors, Due Process ARGUMENT

85. Plaintiff did not claim neither can he prove any "Substantive due process, although it is possible that the Defendants are involved with that. It is the Procedural due process that the Defendants have violated. The Defendants have violated several of Plaintiff's Constitutional Procedural due processes: The following is a list of the several Procedural due processes that the Defendants have violated, although, it is not limited to the additional Procedural processes that are mentioned within Plaintiff's AC and within this current Reply in Opposition and for Reconsideration within its statement of the Statement of the Claim above:

1. OMIG and DOH failed to require Plaintiff to submit all claims no later than (12) months from the date of service by claiming, after more than two years later, that Plaintiff's bills or claims were inadequate in violation of 42 CFR Section 447.45. Defendants did so by failing to return said bills so that such alleged errors can be corrected, thereby causing this overpayment. See Plaintiff's AC paras-10-12.

2. OMIG and DOH, prior to withholding of Plaintiff's payments, should have timely requested information from Plaintiff (rebilling) or be given the opportunity to correct any alleged bill. See 42 U.S. Code Section 1395w-(b)(1)(2). See also para 12, in its entirety

3. OMIG and DOH failed to accept, determine, apply or to consider that its allege overpayment should begin, or its look-back should only go as far as one (1) year, in accordance with Federal law, on December 10, 2017. See 42 CFR Section 433.316, in its entirety. Also see Plaintiff's AC para 82.

4. OMIG and DOH failed to realize, accept apply or to consider that there is a limitation on alleged overpayment. See 42 CFR Section 405.379 in its entirety.

5. The ALJ failed to make a reasonable effort to dispose of all outstanding motions prior to setting up a date for the hearing. See Plaintiff's AC paras 49-52.

6. The ALJ failed to subpoena a necessary witness and or rule on Plaintiff's motion, as its merit. By deciding not to rule on it or consider it shows a deliberate disregard to Plaintiff's Constitutional Procedural due process. See 42 CFR 1005.9 in its entirety. See Plaintiff's AC paras 49-52.

86. Those are just a few Constitutional procedural violations by the Defendants. Again, that's just a few. But the one violation of Plaintiff's Constitutional rights which sealed the disqualification of the Defendants, State actors, is that Plaintiff had been removed from the Medicaid program without any prehearing and any post-hearing as required by law. See Patterson v. Armstrong, 141 f. Supp. 2d 512 (2001). See Plaintiff's AC para 19.

**As to the Defendants', State actors', ARGUMENT of Plaintiff not having any property interest in continued participation as a Medicaid provider or in retaining the overpayments**

87. It is undisputed that Plaintiff prior to his removal had a contract with the Defendant, DOH. There is no question that such a contract was abrogated due to an alleged unlicensed fraudulent scheme that had been manufactured by the Defendant, DOH and OMIG, themselves. There is no question about it that such a contract was recognized under N.Y.S laws. See paras 52-54 above pointing to specific Federal codes. Since the Medicaid contract is a joint agreement

between federal-state, and the State of New has agreed to abide with such laws, then such a contract is valid.

88. As previously argued within Plaintiff's Reply in Support of Preliminary Injunction in paras 35-36, that there is split concerning whether a property right exists with Medicaid contracts, we know that the majority of the Circuit Courts do support that a property interest exists. See the authorities listed within Plaintiff's Reply in Support of Preliminary Injunction under paras 35-36. Defendants, the State actors, cannot require Plaintiff to return any alleged overpayments to Defendants if Defendants do not believe that Plaintiff had a legitimate contract with Plaintiff.

**As to Defendants' State actors', ARGUMENT, Public Interest Strongly Weighs in the State Defendants' Favor**

89. The Defendants presented a Supreme Court's case where an exception was made regarding the granting of a Preliminary Injunction, reversing a Preliminary Injunction that had been granted a by a District Court, in a 5-4 vote. The Supreme Court, stated, in pertinent parts, 'Regardless, the Court reasoned that in this case, the public interest in conducting naval training exercises outweighs even certain irreparable harm to marine life." Defendants' application of this authority, alone, implies that Plaintiff has, at least, demonstrated that he is at risk to a "likely" danger to occur in the absence of a Preliminary Injunction. However, Defendants fail to reason out that this case is an exception to the rules.

90. This case involves our National Security; that it is imperative that Navy is adequately trained for the Peoples' security. So it is not a surprise that the Supreme Court made this rare exception. See <u>Winter National Resources Defense Counsel, v. Inc.,</u> 555 U.S 7 (2008).

91. There is no question about it that Plaintiff is likely to succeed on the merit. Even though the Defendant, ALJ, refused to rule on discovery, Plaintiff was able to obtain the following from the Defendants. (1) That the Defendant, William Rogers, agrees that Plaintiff did not need a license to operate his vehicle within the TOB.  (2) That it wasn't the Defendant, William Rogers, who determined that Plaintiff was illegal but it was the OMIG's own aggressive actions that did so. See Plaintiff's AC **Ex "33"** and **Ex. "49"**

92 The Defendant, William Rogers, was influenced by OMIG's officials to do so. The Defendant's, William Rogers', own Declaration also supports this contention. See Defendant's William Rogers' Declaration dated August 24, 2021.

93. More importantly, the unlicensed and unregistered issues", as Plaintiff suspected from the very beginning, is a sham to deprive Plaintiff of his property, liberty and his pursuant of happiness. Plaintiff has reason to believe that the Defendants, State Actors, knew or should have known, in accordance with **49 U.S. Code 13506(a)(16)(I)(A)**, that Plaintiff was exempt from any licensing and registration requirements to operate his vehicles throughout the State of New York, since he was  exempt under Federal and State laws to do so. See Plaintiff's para 28 above.

94. Plaintiff has reason to believe that the Defendants, State actors, knew or should have known that New York State laws, **Article 17B, Section 498(2)** also clearly exempts Plaintiff from obtaining any kind of licensing from the TOB, as it was licensed by the Defendant, DOH. See Plaintiff's para 30 above, in its entirety.

95. Defendants, State Actors', contend that at least one of the laws used by Plaintiff was misplaced. In any event, Plaintiff knows that the Constitutional laws which he presented were

not followed by the Defendant, ALJ. See paras 49-52 above. As stated above, the Defendant, OMIG, claimed to have had a reason to investigate Plaintiff's business 'base on reports that some of its drivers were using their personal vehicles for trips and driving under the influence of "Meth".

96. Plaintiff did not have any knowledge of such wrong. As stated before, it was the first time that the Defendants have mentioned this. And Plaintiff's drivers did comply with all the mandatory rules. Had OMIG promptly informed Plaintiff of this, Plaintiff would have taken all the necessary steps to preserve the integrity of his business, including the immediate firing of such an individual.  Plaintiff has mentioned before, and now mentioning again, why didn't OMIG informed Plaintiff of this? Such an assertion is not contained within any of Defendants', State actors', NOPAA or its NOAA.

97. OMIG had an obligation to promptly inform not only Plaintiff, but the appropriate authority as well as stated above. But the Defendant, OMIG, failed to do so. Instead, Defendants, State actors, have concocted false information which they knew or should have known to be false in order to remove Plaintiff's business from the Medicaid program, placing his name and the name of his business within the Medicaid's data base, proclaiming to the world that Plaintiff's business is inadequate without a prehearing or a post-hearing (Irreparable damage). The Defendants above have violated Plaintiff's rights under our Constitution and there is no real defense against that; and they must be held accountable and be liable for the same.

### As to Plaintiff's Equal Protection CLAIM and his Sixth Amendment Claim

98. Plaintiff hereby withdraws his Equal Protection claim. Plaintiff also withdraws his

Sixth Amendment claim. See Plaintiff's Reply in In Support of Preliminary Injunction on p. 19

para 47.

### As to the Defendants', William Rogers', and the TOB's Motion to Dismiss
### Defendants' Motion to Dismiss is Moot and must be rejected

99. The Defendants', William Rogers' and TOB's instant Motion to dismiss should be

denied as moot. The Defendants' motion is based on Plaintiff's Complaint which had longed

been modified or amended. And the arguments that the Defendants have previously presented

is now irrelevant. Defendants must present argument to rebut Plaintiff's contention within his

new allegations. See Alverez v. Smith, 588 U.S. No. 08-361 (2009). See Red Oak Hop.,LLC v.

Macy's Inc., No. 416-cv-1783 (S.D. Fex. Nov. 2, 2017. See Tumar v. Rogers, 564 U.S. 431 (2011).

### CONCLUSION

Wherefore, and pursuant to 42 U.S. Code Section 1983, Plaintiff requests the following

injunctive relief from this Court: (A)) That a preliminary restraining order be issued, staying

DOH's and OMIG's further administrative proceedings against the Plaintiff, pending the

disposition of any hearing or any motion from this Court: (B) that the Defendant, Kimberly A. O'

Brien, secures the attendance of William Rogers, the Defendant, in this caption, for any pending

hearing (C) That the TOB may release or relinquish Plaintiff's file and return Plaintiff's file to

William Rogers. (D)  That the TOB requires its board, or the highest decision making official

decide on this matter or declare that such a matter is out of their jurisdiction. (E) That the TOB

may declare that such a letter was an error and that the Defendant, William Rogers, was not fit

to produce such a letter. (F)  That William Rogers may produce the same to Plaintiff, prior to

any hearing, including the production of any and all relevant records pertaining to Plaintiff's business and provide such other pertinent information relating to any other NEMT providers within Its Town. **(G)** That a complete ruling be made on any applicable motion for the purpose of resolving unsettled issues between Defendants and Plaintiff prior to any hearing date; **(H)** That the Defendant, OMIG, may remove Plaintiff's' name and business name from any negative and inactive list, and restore Plaintiff into the Medicaid program: **(I)** That in the event of the Defendant's, the ALJ's, voluntary recusal or necessary recusal, DOH may assign another ALJ to carry out those alphabetically,  enumerated, duties above: **(J)** That the case be transferred to this Court: **(K)** That final injunctive reliefs be granted from the Defendants, the ALJ and from the OMIG. **(L)** That the DOH should produce the Written Confirmation to Plaintiff ASAP. **(M)**That he may be granted leave to Amend is Complaint or to Supplement is Complaint to comply with any Motion to Dismiss. **(N)**That Plaintiff may be compensated with special damages, general damages, and punitive damages and presumed compensatory damages, money damage, or from any other applicable theory of recovery, from the remaining defendants, in  the aggregate amount of **$3,800.000.00**; or that Plaintiff may be awarded with any other sum as a Jury or this Court seems just and equitable.

Dated:
Suffolk, County NY

Jean R. Daniel,
72 Granada Circle,
Mount Sinai, NY 11766
Tel.: 347-551-9786
Email: Goodtone450@aol.com

NEW YORK STATE DEPARTMENT OF HEALTH
OFFICE OF THE MEDICAID INSPECTOR GENERAL
————————————————————————————X

DOVE TRANSPORT SERVICE, LP and Jean Daniel,
Provider ID # 03882157 (Dove Transport)

Appellants,

for a Hearing, Pursuant to Part 519 of Title 18 of
the Official Compilation of Codes, Rules and
Regulations of the State of New York to review
the Determination under 18 NYCRR Parts 515
and 518 to recover $395, 387.59, plus interest in
Medicaid overpayments, and to exclude the
Appellants for three years and until reinstated

————————————————————————————X

CASE NO.: 16-F-1959
PACS # 17-1541
TELEPHONE TRANSCRIPT
BETWEEN MR. ROGERS
& MR. JOSEPH

Dated: 05/24/2021
Time:  1057 AM-11:04 AM
CALLER'S FULL NAME: MR. GEORGE JOSEPH
RECEIVER'S FULL NAME: MR. WILLIAM ROGERS

TELEPHONE TRANSCRIPT BETWEEN MR. WIILLIAM ROGERS & MR. GEORGE JOSEPH

PURSUANT TO CPLR 4501

MR. ROGERS

1. Hello.

MR. JOSEPH

2. Hello, Mr. Rogers, how you doing, Good Morning?

MR. ROGERS

3. Good Morning.

MR. JOSEPH

4. Yes, I, Good morning. I was surprised to see you calling me on Friday.

*Exhibit 4 (1/9)*

MR. ROGERS

5. Yes, how's everything going?

MR. JOSEPH

6. Ah well, everything, we still need, as I said, you know, you know, I spoke to one of your attorneys, Mr. Don Roger, Mr. Don ah Don Rog, Don Domain, I spoke to one of your attorneys, and pretty much I emailed him information pretty much right now, where we standing, there's going to be   conferences, there's going to be hearings and we need those letters stating that

MR. ROGERS

7. See the problem is, I don't have, you see what happened here, George, I don't have all the file, they took it out of my hands, and so I don't know what I can get it's a lot of stuff and I can tell that there's a lot of stuff. I am trying to figure out (there's a lot of breaking up)

MR. JOSEPH

8. You're breaking up. You're going in and out. I can't hear you.

MR. ROGERS

9. I am sorry. Hold on yes it's a lot of files I don't even have.

MR. JOSEPH

10. Alright, well, I sent Don Morain, his name just came to me, the essential or necessary document needed to know exactly what Dove Transport was, which was a, you know, operating as a Medicaid, you know, provider, and pretty much.

MR. ROGERS

11. Yes, of course.

MR. JOSEP

12. Mum Um

MR. ROGERS

13. Even if, even if, listen to me, excuse me for one second, I don't have anything you let me know what you need and what I can come up with because, I mean, we have to sit down together and go over all these things.

MR. JOSEPH

14. Yeah, well the bottom line is, as I said before, you know it's hard for me, you know, to go back and forth to even sit down because we can over the phone. The bottom line is that you have to remember the laws Code 67, under your quote, during that time, Medicaid did not require any licenses.

MR. ROGERS

15. Right

MR. JOSEPH

16. And that's exactly, If you can send a letter because at this point right now you know there's a lot of different things because including the documents that you sent earlier 2016, 2017, 2016 and you know, the conversation we had last time, they were, they were, in controver----they they contradict each other so if you can send us a letter by today or tomorrow

MR. ROGERS

17. Hold on; hold on, I am just; I am just, trying to compare my note kits while we stand here if you could hold on a second.

MR. JOSEPH

18. Not a problem. I am trying to exclude you from this issue from this problem because I don't want to have your name with our names and your name is going to the Supreme Court, U.S. Supreme Court, because this is where it is going with the State I am not gonna play games with OMIG. We may have to go to higher Court and I don't want to mix you up. You seem like a nice guy; you seem like a nice guy who really wants to do the right stuff. Probably you never had anyone suing you in your life. in your life and you don't want any lawsuit in your hand, you know.

MR. ROGERS

19. Hold on, yeah, yeah, anything you guys need when I saw that all that stuff was missing that's why I called you on Friday.

MR. JOSEPH

20. I appreciated that. That. Yeah.

MR. ROGERS

21. I wanted to get a hold of you. I figured you were busy.

MR. JOSEPH

22. Yeah

MR. ROGERS

23. You, you sound like a type of that never takes a day off.

MR. JOSEPH

24. You know what, you know what. One way or the other, even if I am retired, and I do do a lot of legal things and it does keep me busy. But I am familiar---versed with the Law. And I've done a lot legally. So I know exactly what I need to do. Yeah, that's no question about it. Ay.

MR. ROGERS

25. If I ever need a lawyer, I am gonna, I am gonna get you caught.

MR. JOSEPH

26. I appreciate that. I appreciate that. Thanks for the

MR. ROGERS

27. Yeah, George, anything we can do. You sound like a guy who's gonna get the job done.

MR. JOSEPH

28. I have no choice. I have no choice.

MR ROGERS

29. Yeah, yeah, you have people with the best interest in there.

MR. JOSEPH

30. Yeah, that's my family. Those are my family member; that I have to help them out.

MR. ROGERS

31. Well, I have that down now. I can write that down. You let me know what you need from us.

MR. JOSEPH

32. If you can, if you can email us send us a letter, you know, just making sure that you explain at that point that, you know, after review from the documents that a, in fact, I can cc a copy for you, to you.

MR. ROGERS

33. If you can send me via email, that would be perfect.

MR. JOSEPH

34. The bottom line is you can pretty much state that it was an error and you know of course, they might have actually, innocently, you know, filed papers, where some People might have instructed them to do certain things. The bottom line is they were Medicaid providers. They were not Taxi drivers, and at no time, based on the papers of Certificate.

MR. ROGERS

35. Right, they, they, they, didn't even, that was what their job were doing Medicaid runs before, they, you know, that is what their job was.

 MR. JOSEPH

36. Right, that is correct. That's what their—at no time did they- I  mean the confusion occurred,  as you said before, due to OMIG's determination or aggressiveness made you assume that they were Taxi, you know, operating, but at no time they were operating as a Taxi. They know that. OMIG knows that. They want you to, you know, to support them saying that they were, but in reality the law clearly states that they were not and the Town of Brookhaven law clearly shows that they were not. And if you can that would be.

MR. ROGERS

37. George Dave Harrian is our attorney. I am gonna have to run this with him. That is not a problem. Give me your number I will have him call you back in 45 minutes.

MR. JOSEPH

38. I will be available within the next forty-five (45) minutes.

MR. ROGERS

39. Yes, cause his gonna have to make the final determination.

MR. JOSEPH

40. Not a problem.

MR. ROGERS

41. Also, with him you both are lawyers. If he wants to talk to you, you can talk to him. Cause you both speak. You both know what you're talking about.


MR. JOSEPH

42. Right, absolutely

MR. ROGERS

43. Alright, I'll have him call you back. Give me an hour or so. I'll have him set things rught.

MR. JOSEPH

44. Alright, I am gonna hold off on that motion I have a motion to file it was supposed to be file on Tuesday. I'll hold off until Wednesday or Thursday. But again, I got to have that letter as soon as you can send us an official letter, you can even send it via email as long as it is an initial document to support this contention and from there on, you will be out  There's no question about it. We won't bother the Town of Brookhaven. We won't bother you guys for that once that's done.

MR, ROGERS

45. I gonna sit down with him. And will have him call you within the next hour or so.

MR. JOSEPH

46. Not a problem

MR. ROGERS

47. Alright

MR. JOSEPH

48. Alright, bye

Case 2:21-cv-04097-DG-AKT    Document 55    Filed 10/29/21    Page 336 of 444 PageID #: 1902

From: goodtone450@aol.com,
To: wrogers@brookhavenny.gov,
Subject: Fwd: DOVE TRANSPORT SERVICE, LP
Date: Mon, May 24, 2021 7:23 am
Attachments: DOVE TRANSPORT PROOF OF SERVICE P.    3.pdf (471K), WILLIAM ROGERS' LETTER #1.pdf (157K),
WILLIAM ROGERS' LETTER #2.pdf (235K), DOVE'S NOTICE OF CLAIM P. 1.pdf (304K),
DOVE'S NOTICE OF CLAIM P. 2.pdf (534K), DOVE'S NOTICE OF CLAIM P. 3.pdf (213K),
DOVE'S CERTIFICATE P. 1.pdf (198K), DOVE'S CERTIFICATE P. 2.pdf (376K), DOVE'S CERTIFICATE P. 3.pdf (294K)

Dated: May 24, 2021

From: Mr. George Joseph

To:    Mr. William Rogers

Re:    Your Request Today

Dear Mr. William Rogers:

I am forwarding the same documents I sent Mr. Moran regarding Dove Transport Service, LP so that you can review. If you require any additional document, please email me at Goodtone450@aol.com.

Sincerely,

Mr. George Joseph

-----Original Message-----
From: r <goodtone450@aol.com>
To: dmoran@brookhavenny.gov <dmoran@brookhavenny.gov>
Sent: Tue, May 4, 2021 9:40 am
Subject: Fwd: DOVE TRANSPORT SERVICE, LP

Good afternoon Mr. Moran.

This is Mr. George Joseph on behalf of Mr. Jean R. Daniel & Dove Transport Service, LP. As you know, on March 29, 2021,we spoke over the phone and upon your request, I provided you documents pertaining to Dove Transport Service, LP's certificate which outlined their purpose for their existence; that they were not a Taxi business, servicing the public at the Town but existed under the laws and regulations of the State of New York Medicaid system, providing services only for Medicaid recipients.

I informed you and did provide you with that fact that Mr. Roger William inadvertently categorized Dove as a Taxi business and did require Dove to pay certain fees for the same. You told me that you would either look into it or have another attorney on your Staff look into it. Dove Transport Service, LP is in dire need of this correction, as it is currently in prelitigation with OMiG. Your quick response and correction of this matter is greatly needed. I will also give you a call today and hopefully speak to you or leave a message informing you of this email.

Should you have ant question, please feel free to call me at 347-551-9786. Thank you for your cooperation in this matter. I am resubmitting the same documents I previously submitted to you on March 29, 2021.

Sincerely,

Mr. George Joseph

-----Original Message-----
From: r <goodtone450@aol.com>
To: dmoran@brookhavenny.gov <dmoran@brookhavenny.gov>
Sent: Mon, Mar 29, 2021 2:39 pm
Subject: DOVE TRANSPORT SERVICE, LP

03/29/2021

From: Mr. George Joseph

Exhibit "50"

9/20/21, 9:33 PM                                    Fwd: DOVE TRANSPORT SERVICE, LP

P.O. Box 3100
Patchogue, NY 11772

To:    Mr. Moran, attorney at Law
       at the Town of Brookhaven

Re:    Our Recent Conversation about Dove Transport Service

Via:   Goodtone450@aol.com

As we discussed, I am attaching a few documents pertaining to Dove Transport Service, LP which will support my
contention that Mr. Rogers' letters erroneously claimed that the Limited Partnership was a Taxi-business. Should you have
any question or desire additional documents, please feel to call me at 347-5519786. Thank you.

Sincerely,

Mr. George Joseph

UNITED STATES DISTRICT COURT,
EASTERN DISTRICT OF NEW YORK

_____X

JEAN R. DANIEL

Plaintiff,

-against-

N.Y.S. DEPT. OF HEALTH, ALJ, KIMBERLY
A. O' BRIEN, OFFICE OF THE MEDICAID
INSPECTOR GENERAL (OMIG), THE DEPUTY
MEDICAID INSPECTOR GENERAL,
DANIEL V. COYNE, ASST. OF MEDICAID
INSPECTOR GENERAL, STETPHANIE E. PATON,
RN, WILLIAM ROGERS, EXECUTIVE ASST., AT
THE TOWN OF BROOKHAVEN DEPT. OF
PUBLIC SAFETY, THE TOWN OF BROOKHAVEN,
John Doe # 1 through John Doe # 10, representing
any additional agency, the State of New York,
or any additional Executive Official(s)
that is jointly liable,

Defendants

_____X

**PLAINTIFF'S MEMORANDUM
OFLAW IN OPPOSTION & FOR
RECONSIDERATION**
Case No.: **21-cv-04097-DG-AKT**
Jurisdiction & Venue
is proper based on
where this controversy
originated.

**PLAINTIFF'S MEMORANDUM OF LAW IN
OPPOSITION & FOR RECONSIDERATION**

Jean R. Daniel
72 Granada Circle
Mount Sinai,
New York 11766
Goodtone450@aol.com
347-551-9786

# TABLE OF CONTENTS

PAGE(S)

1. TABLE OF CONTENTS_____i-ii

2. TABLE OF CITATIONS_____ _____iii-v

3. TABLE OF AUTHORITIES_____ _____ _____ _____vi-ix

4. THE CASE'S CAPTION & TITLE_____ _____ _____1

5. BRIEF PRELIMINARY HISTORY_____2-3

6. PROCERURAL HISTORY_____3

7. STATEMENT OF THE CLAIM_____3-12

8. ARGUMENT ONE
   Contrary to the Defendants' TOB's
   William Rogers' Contention, Plaintiff's
   Taxi Statutory Analysis has mert_____12-17

9. ARGUMENT TWO
   As to the Defendants, State actors,
   Plaintiff's case falls within the "Ex-parte
   Young's case and therefore meets the
   Standards for a Preliminary Injunction_____17-20

10. ARGUMENT THREE
    As to the State actors' Defendants', Arguments,
    Requirement to obtain a Preliminary Injunction,
    the showing of Irreparable Harm, A Likelihood
    of Success, Failing to assert a Liberty Interest
    and Ample due process vehicles through the
    NOPAA and NOAA_____20-23

11. ARGUMENT FOUR
    As to the Defendants' State actors.
    Argument, the Younger case_____23-28

12. ARGUMENT FIVE
    As to the Defendant's, ALJ's
    Absolute Immunity Argument_____28-30

**TABLE OF CONTENTS CONT**

PAGE(S)

13. ARGUMENT SIX
    As to the Defendants', the State actors'
    Due Process Argument_____30-31

14. ARGUMENT SEVEN
    As to the Defendants', State actors',
    Argument of Plaintiff not having any
    Property interest in continued participation
    As a Medicaid provider or in retaining the
    Overpayments_____31-32

15. ARGUMENT EIGHT
    As to Defendants' State actors',
    Argument, Public Interest Strongly
    Weighs in State Defendants' Favor_____32-35

16. ARGUMENT NINE
    As to Plaintiff's Equal Protection Claim
    and His Sixth Amendment Claim_____35

17. ARGUMENT TEN
    As to the Defendants', Willian Rogers',
    and the TOB's Motion to Dismiss
    Defendants' Motion to Dismiss is
    Moot and must be rejected_____35

18. CONCLUSION_____35-36

## TABLE OF CITATIONS

PAGE(S)

1. 42 CFR. Section 457.1206_____ _____2

2. 42 CFR. Section 440.170_____ _____2

3.  42 U.S. Code 1983_____ ____ _____ ___3

4.  42 U. S. Code 1981_____ _____ _____3

5. The 14th Amendment_____ _____ _____3

6. Social Security Act, 1902(a)(70)_____ _____3

7. Article 1, Section 8 of the
   Commerce Clause_____ _____3

8. 49 U.S. Code 13056(a)(16)(I)(A)_____ -_____ _____ __ 3

9. NYS Article 17B of the Motor Vehicle
   Law_____ _____ _____ _____3

10.  42 CFR  Section  1005.9_____3

11.42 CFR. Section 1005. 4_____ _____3

12. 42 CFR Section 1005.4(5)_____3

13. 42 CFR 1004(6)_____3

14. 42 CFR 1005.4(11)_____3

15. 42 CFR Section 1005.11_____  _____ _____3

16. 42 CFR Section 1005. 13(a)(c)(e)_____4

17. 42 CFR Section 405.379_____4

18. 42 CFFR Section 1003(3)_____4

19. 42 CFR Section 1003,(6)_____4

20. 24 CFR Section 26.32_____4

21. 42 CFR Section 447.45(d)(!)(4)_____4

## TABLE OF CITATIONS CONT

PAGE(S)

22. 42 CFR 447.45(d)(iii)_____4

23. 42 CFR Section 445.23(2)_____4

24. 42 CFR 433.316_____4

25. 42 CFR 433.304_____4

26. The 14th Amendment_____ ____ _4

27. The 5th Amendment_____ __4

28. 42 U.S. Code 1981_____ ___7

29. The 14th Amendment_____ __7

30. The 5th Amendment_____ __7

31. Section Code 1983_____ _ __8

32.  42 U.S. Code 1985_____10

33. NYS GML 50-a_____ _ __12

34. 49 U.S. Code Section 13506(a)(2)_____ _____12

35. Section 13506(a)(16)(b)(!)(A)(B)_____ _____ _____ _12

36. Section 13101_____ _____12

37. The Social Security Act, Section
    1902(a)(70)_____ _____12

38. 42 CFR 440.170_____ _____12

39. Article 17B Section 498(2)
    of the NYS Law_____ _____ __ _____13

40. Article 17B Section 498(2)_____ _____ _____14

41. The Social Security Act, Section
    1902(a)(70)_____ _____ ___ _14

42. Article 17B Section 498(2)_____ __ _15

## TABLE OF CITATIONS CONT

PAGE(S)

43. Article 1, Section 8 Clause of the U.S. Const._____16

44. 49 U.S. Code Section 13506(a)(16)_____16

45. 42 U.S. Section 1983_____19

46. The 5<sup>th</sup> Amendment_____  _____  _____20

47. The 14<sup>th</sup> Amendment_____  _____  _____20

48. Article 17B Section 498(2)_____  _____20

49.  42 CFR Section 438.9_____  _  _____20

50. 42 CFR Section 440.170_____  _  _20

51. 42 CDF 457.1206_____20

52. Social Security Act_____21

53. The 5<sup>th</sup> Amendment_____21

54. The 14<sup>th</sup> Amendment_____  _____22

55. The Civil Rights Act_____  _____22

56. 42 U.S. C. Section  1983_____23

57. Article 17B Section 498(2)_____24

58. 42 U.S.  Section 1983_____26

59. 42 U.S.  Section 1981_____  _  _26

60. Section 1983_____27

61. The 11<sup>th</sup> Amendment_____27

62. The Social Security Act_____27

63. The 11<sup>th</sup> Amendment_____28

64. 49 U.S. Code 13506(a)(16)(I)(A)_____33

65. Article 17B Section 498(2)_____33

# TABLE OF AUTHORITIES

PAGE(S)

1. Wilkins v. Gipsan,No., 2:19-cv-01469-
   CKD-P(E.D. Cal.  August 19, 2019_____ _____7

2. Ashcroft v. Iqbal, 556, U.S. 662 (2009)_____ _____ __8

3. Veal v. Geraci, 23 f. 3d. 722 (722)
   (2d. Cir. 1994_____ __ ___ _____9

4. Wallace v. Kato,549 U.S. 384,388 (2007)____ _____ _____9

5. Johnson v. Dallas Independent School
   District, 38 f. 3d 198 (5th Cir. 1994_____ _____ __10

6. Brown v. Gabrowski.,922  f. 2d. 1097 (3rd 1990_____ __ __10

7. Anti- Police-Terror Project v. City of Oakland, 477
   F. Supp. 2d. 1097 (3rd Cir. 1990_____ _____10

8. Bezera v. County of Nassa, 846 F. Supp. 214
   E.D.N.Y. 1994)_____ ____ __ _11

9. Hyland v. Wonder, 117 f. 3d. 405 (9th Cir. 1997_____ _____ _____17

10. Patel v. Kent School District, 648 F. 3d 965
    (9th Cir. 2011)_____ ___ _____17

11. Ex parte Young, 209 U.S. 123 (1923)_____ _____17

12. Ex parte Young,_____ _____18

13. Whole Woman's Health Alamo City Surgery
    Center, LLP, et al v. Judge Austin Reeve Jackson,
    Penny Clarrston, er. a(No. U.S. 21A24(August 14, 2021_____18

14. Sam Remo Hotel, L.P v. City and County
    of Sanfransico, 545 U.S. 323 (2005)_____18

15. 17646 Gamble v. United States,  (06/17/2019)_____19

16. Barton Petitioner v. State of Maryland, 395
    U.S. 784,89 St. 2056 23 L. Ed. 207_____ _____19

## TABLE OF CITATIONS CONT

PAGE(S)

17. Civil Sanctions United States v.
One Assistant of 89 Firearms , 465 U.S. 354 1984_____ _____19

18. 17-647 Knick v. Township of Scott,
06/19/2019) _____ _____19

19. Rafael, Pabon-Ortega  v.
Isabel  LLompart-Zeno, U.S. No. 18-331_____ _____19

20. Whole Woman's Health.,_____ _____22

21. Moses H. Memorial Hospital v. Mercury Corp,
460 U.S. 1, 14, 103 S.C.t. 927, 936, 74 L.Ed. 2d.
765 (1983)_____ _____ _____23

22. Deakins v. Managhan, 484 U.S.
at 203, 108 S.t. at 530_____ __ ___23

23. Ex parte Younger _____ __ __ ___23

24. Phelps v. Hamilton, 59 F. 3d. 1058,
1063-64 (10th Cir. 1995)_____ __ __25

25. Tucker v. Callahan, 663, Supp. 375
(M.D. Tenn. 1967)_____ ___ ___25

26. Gibbs v. Berryhill.,_____ ___25

27. New Orleans Public Service, Inc. v.
Counsel  of City of New Orleans,  88-348 U.S._____25

28. Calvin v. Arena County, 574 f. 3d 334. 344
(6th Cir. 2009)_____ _ _____25

29. Paden v. Terminal R. Co.,
377 U.S. 184 (1964) _____ _____26

30. Florida Prepaid Postsecondary Education Expenses Board v.
Colllege Savings Bank, 527 U.S. 627 (1999)_____26

31. Ex parte Young,209 U.S. 123 (1908)_____26

32. Malo v. Hafer, 912 f. 2d 628, 635 (3rd Cir. 1990)_____26

33. MCI Telecomm Corp. v. Illinois Bell Tel Co. _____26

## TABLE OF CITATIONS CONT

PAGE(S)

34. Compo –grosso v. The Supreme Court
   of New Jersey., 588 F. 3d 180 (3ʳᵈ Cir. 2009)_____ __ 26

35. Jett v. Dallas, Sch. Dist., 491 U.S. 701, 733, 36,
   109 S. Ct. 2702,2722-23,105 L.E. Dd. 2d. 598, (1989)_____ _____26

36. Duplan v. City of N.Y., 888 f. 3d. 612
   (2ⁿᵈ Cir. 2018)_____ _____ _____26

37. Monell v. N.Y.C. Department of Social
   Services, 436 U.S. 658 (1978)_____ _____26

38. Ex parte Young.,_____ ____27

39. Scheuer v. Rhodes, 416 U.S. 232 (1974)_____27

40. Moor v. County of Alameda,
   411 U.S. 693 (1973)_____27

41. Hess v. Port Authority Trans-Hudson Corp.
   115 S. Ct. 394 (1994)_____ _____ _____ __28

42. Kentucky v. Graham,473
   U.S. at 159 166-67, 105 S. Ct. 3099 3105 (1995) _____28

43. Cady v. Arena County,
   574 f. 3d. 334, 342 (6ᵗʰ Cir. 2009)_____28

44. Essex v. City of Livingston,
   518. App. K. 351, 354 (6ᵗʰ Cir. 2013)_____28

45. Steele –Brown v. Stoddard,
   192 f. Supp. 3d. 812 (E.D. Michigan, 20160_____ _____28

46. Fowler v. Block, 2 F. Supp. 2d. 1268
   (C.D. Cal. 1998)_____29

47. Ram v. Rubin., 118 F. 3d 1306, 1310
   (9ᵗʰ Cir. 1997)_____ _____29

48. Sweeney v. Ada County, 119 f. 3d. at 1388_____29

49. Newall v. Sauser, 79 f. 3d. 115, 117, (9ᵗʰ Cir. 1996)_____29

## TABLE OF CITATION CONT

PAGE(S)

50. Hope v. Pelzer, 536 U.S. 730 (2002)_____ 29

51. Saucier v. Katz,
    533 U.S. 194, 201, 121 S. Ct. 2151, 150
    L. E.d. 272 (2001)_____ 29

52. Pearson v. Callan, 555 U.S. 223 (2009)_____ 30

53. Safford v. Redding,  129S. Ct. (2009)_____ 30

54. Taylor v. Riojas,_____ 30

55. Patterson v. Harmstrong,
    141 f. Supp. 2d 512 (2001)_____ 31

56. Winter National Resources Defense Counsel, v. Inc.
    555 U.S. 7 (2008)_____ 33

57. Alverez v. Smith, 588 U.S. No. 08-361 (2009)_____ 35

58. Red Oak Hos. LLC v. Macy's  Inc., No. 416 –cv-1783
    (S.D. ) Fex. Nov. 2, 2017_____ 35

59. Tumar v. Rogers, 564 U.S. 431 (2011)_____ 35

UNITED STATES DISTRICT COURT,
EASTERN DISTRICT OF NEW YORK

———————————————————————X

JEAN R. DANIEL

Plaintiff,

-against-

N.Y.S. DEPT. OF HEALTH, ALJ, KIMBERLY
A. O' BRIEN, OFFICE OF THE MEDICAID
INSPECTOR GENERAL (OMIG), THE DEPUTY
MEDICAID INSPECTOR GENERAL,
DANIEL V. COYNE, ASST. OF MEDICAID
INSPECTOR GENERAL, STETPHANIE E. PATON,
RN, WILLIAM ROGERS, EXECUTIVE ASST., AT
THE TOWN OF BROOKHAVEN DEPT. OF
PUBLIC SAFETY, THE TOWN OF BROOKHAVEN,
John Doe # 1 through John Doe # 10, representing
any additional agency, the State of New York,
or any additional Executive Official(s)
that is jointly liable,

Defendants

———————————————————————X

**PLAINTIFF'S MEMORANDUM
OFLAW IN OPPOSTION & FOR
RECONSIDERATION**
Case No.: **21-cv-04097-DG-AKT**
Jurisdiction & Venue
is proper based on
where this controversy
originated.

**PLAINTIFF'S MEMORANDUM OF LAW IN
OPPOSITION & FOR RECONSIDERATION**

Jean R. Daniel
72 Granada Circle
Mount Sinai,
New York 11766
Goodtone450@aol.com
347-551-9786

<u>BRIEF PRELIMINARY HISTORY</u>

1. Plaintiff was the senior partner of a Limited Partnership that was formed under Section 121-201 of the N.Y.S. Revised Partnership Act on October 11, 2007. Plaintiff's limited partnership was a non-emergency Medical transportation (NEMT)provider, pursuant to the Department of Health and Human Resources regulations **42 CFR Section 457.1206** and under **42 CFR Section 440.170.** The primary reason for the formation and existence of Plaintiff's limited partnership, as a NEMET provider, was to (1) provide a twenty-four (24) hour service for the safe and efficient transport of persons with disabilities, sickness, injuries,  as well as persons on stretchers to and from their designated places.

2. Plaintiff's limited partnership did not begin its operation as a NEMET provider until July 3, 2015 when it received its first batches of Medicaid recipients in need of transportation from logistiCare. Plaintiff, a citizen of the U. S., decided to convert a room from his home as the limited partnership's primary place of business, at 72 Granada Circle, in Mount Sinai, NY 11766. Plaintiff's limited partnership was accepted as a NEMET provider and was given a provider ID # effective June 19, 2014.

3. The Defendants N.Y.S. Dept. of Health **(DOH)** is the Department of New York State government that is responsible for Public Health, as part of the state's Executive branch, and not part of the New York State's Judicial or Legislative branch.  And the Defendant, Administrative Law Judge **(ALJ)**, Kimberly A. O' Brien, is a servant of the Department of Health, an Executive Official and not a Judicial Officer assigned to preside over Plaintiff's administrative hearing with the Office of the Medicaid Inspector General **(OMIG)**, which is also an independent, state, Executive office.

4. The Defendants, the Deputy Medicaid Inspector General, Daniel V. Coyne **(DMIG)** and the Asst. Medicaid Inspector General **(AMIG)**, Stephanie E. Paton, RN are all officers of the Medicaid Inspector General's office. The Defendant, William Rogers, is the Executive Asst. at the Town of Brookhaven's Department of Public Safety who oversees the filing of taxi/livery vehicles, cabs, and should have been able to process NEMET providers within the Town of Brookhaven **(TOB)** as well; the fourth Defendant in this caption. John Doe #1 through 10 may or will represent any agency, the State of New York, or any other Executive official replacing the current presiding official, found to be jointly responsible for Plaintiff's deprivation of rights.

## PROCEDURAL HISTORY

5. The procedural history is set forth within Plaintiff's AC. It begins and ends on paras 8-90. Any additional or supplemental facts or laws contained within this motion should be read in pari-materia with this current Reply in Opposition and Motion for Reconsideration. Plaintiff is not waiving any of its defenses within his previous Reply in Opposition, except for those which he expressly have done below in para 99.

## STATEMENT OF THE CLAIM

6. This is a claim arising from **42 U.S. Code 1983** in conjunction with **42 U.S. Code 1981** and the **14th** and the **5th** Amendments, where the Defendants, in this caption, have violated the **Social Security Act, 1902(a)(70)** , violated **Article 1, Section 8 of the Commerce Clause**, violated **49 U.S. Code 13506(a)(16)(I)(A)**, violated the **NYS Article 17B of the Motor Vehicle Law**, violated **42 CFR Section 1005. 9**, violated **42 CFR Section 1005.4**, violated **42 CFR Section 1005.4(5)**, violated **42 CFR 1004(6)**, violated **CFR 1005.4(11)**, violated **42 CFR Section 1005.11**,

violated **42 CFR Section 1005. 13(a)(c)(e)**, **42 CFR Section 405.379**, violated **42 CFR Section 1003(3)**, violated **42 CFR Section 1003.(6)**, in violated **24 CFR Section 26.32**,  violated **42 CFR Section 447.45(d)(1)(4)**, in violation of **42 CFR Section 447.45(c)(4)**, violated **42 CFR Section 447.45(d)(1)(4)**  violated **42 CFR 447.45(d)(iii)**, violated **42 CFR 455.23(2)**, violated **CFR Section 433.316 & 42 CFR433.304** due to acts and omissions of several of DOH's and DOH's employees', the OMIG, the Deputy Medicaid Inspector General, Daniel V. Coyne's, the Asst. of Medicaid Inspector General Stephanie E. Paton, RN's, including an Administrative Law Judge, Kimberly A. O' Brien's, and from several acts and omissions of a Public official, William Rogers', and from the Town of Brookhaven's, acts and omissions, which led to Plaintiff's deprivation of his Constitutional rights, privileges and the deprivation of his due process, causing him to be deprived of his constitutional rights, his liberty and property rights, as he was, without due process, removed from his occupation as NEMET provider, placing Plaintiff in imminent danger of double jeopardy, in accordance with the **14**[th] **Amendment** and the **5**[th] **Amendment;** and such acts and omissions, in the absence of a Preliminary Injunction,  will likely cause Plaintiff to suffer irreparable injuries.

7. The Defendants did so while acting under color of state law. All of the Defendants in this caption did so as described in para 6 above in their official capacity. And that each government officials and municipality official, through their own capacity, has violated the Plaintiff's rights and the Constitution. Plaintiff now seeks special damages, compensatory damages, general damages and punitive damage against the Defendants, in this caption. And that each government official stated above, through their official's own capacity, has violated the Plaintiff's rights and the Constitution.

8. Plaintiff have requested for several preliminary injunctive reliefs and are hoping for a final and complete injunctive relief from the ALJ and OMIG; Plaintiff is also requesting that the Defendant, William Rogers, be compelled to testify as a witness in any coming hearing, produce any and all documents pertaining to the filing of Plaintiff's business, including those of similar filings with Plaintiff's business, or that he may declare, in writing, that he was, at  that time, unqualified to make any decision or declaration regarding whether Plaintiff's business had been operating illegally within the TOB.  That the TOB may consider the matter at its highest level and make a decision on the matter, in light of the New York State Motor Vehicle laws, in conjunction with all Federal laws.

9. Plaintiff requests that the Defendant, DOH, provide Plaintiff with a copy of his Written Confirmation that he never received when he was approved as a NEMT provider, which should serve as exculpatory evidence, dismissing the State actors' claim that Plaintiff, had, in fact, been operating his vehicles legally within the TOB.  And that the TOB may return any and all of Plaintiff's former business documents, which the Defendant, TOB, confiscated from the Defendant, William Rogers, and to produce a qualify witness to testify, under oath, unless the Defendants are willing to provide a letter disqualifying their previous letter as an error.

**As to the Defendants' TOB's & William Rogers' ARGUMENT that Plaintiff does not have a likelihood of success**

10. Plaintiff never stated, within any of its pleadings, that he does not want to seek any preliminary injunction relief against the TOB nor against William Rogers. And the Defendant, ALJ, O' Brien did not rule on Plaintiff's Motion to Compel Witness & for the Reproduction of Any and All Relevant Record(s). And therefore, there is no current order or decision that Plaintiff

would have to overcome in order for the Defendant, William Rogers, to testify at the State Administrative hearing.

11. The Defendant's, William Rogers', testimony is needed for the following reasons: (a) He is the Town of Brookhaven's Executive Assistant of Public Safety and has held such a position for several years now. (b) It was the Defendant, William Rogers, who received Plaintiff's documents and assisted and processed Plaintiff's application. (c) It was the Defendant's, William Rogers' letters, and no one else within the TOB, that sparked or gave life to the State's Defendants' action against Plaintiff. (d) Defendant continues to take or assume responsibility for such a mistake and promises to have such a mistake be corrected. (e) Defendant agreed to the fact that Plaintiff did not need a license at the time that Plaintiff's business existed.(f) When the Defendant, William Rogers, was informed via email, that his presence was needed for a coming hearing and that a Motion to Compel had been filed by Plaintiff, the TOB took Plaintiff's business file away from the Defendant, William Rogers, so that he would not be able to provide a copy of the same to Plaintiff. (g) Defendant, TOB, through its attorney promised to look into the matter and was adamant about resolving Plaintiff's issue but never did. (h) Defendant, William Rogers, clearly stated that it wasn't Defendant nor the TOB who determined that Plaintiff's was operating an illegal business within the TOB, it was the Defendant, OMIG, Defendant stated. (i) And now that Plaintiff filed this action against the Defendant, the Defendant, William Rogers, through his attorneys, got demoted and now expects Plaintiff and this Court to refer to him as "Town clerical assistant Rogers".

12. The point that Plaintiff is trying to make is that the Defendant, even though he now refers himself as a Town clerical assistant, and now claims he had not been designated by the TOB to testify regarding its licensing laws and their interactions with other laws, given those facts above, the Defendant is still liable for his acts and omissions and must be called to testify as to those facts above implicating the Defendants, State actors, as the antagonist.  Moreover, Plaintiff is in dire need of his file so that he may be able to examine such file to better defend himself during any scheduled hearing.

13. To deny such request is a constitutional violation under **42 U.S. Code 1981**, in conjunction with the **14<sup>th</sup> Amendment's due process**, clause and in conjunction with the **5<sup>th</sup> Amendment**. By denying the Plaintiff the right to subpoena a witness in possession of important documents pertaining to his administrative hearing where his Constitutional rights are in the balance, will cause irreparable injuries to Plaintiff's Constitutional rights. Once this occurs, Plaintiff will never be whole again. The Preliminary Injunction should have been granted to Plaintiff, since it's not adjudicating on the merits, but rather a devise for preserving the status quo and preventing the irreparable loss of rights before judgment. See Wilkins v. Gipsan,No., 2:19-cv-01469-CKD-P(E.D. Cal. August 19, 2019.

14. The Defendants, William Rogers and TOB, claim that Plaintiff admitted, within his AC, that he received those two innocuous letters upon which Plaintiff sues the Town Defendants from 2016, and admits to have received them in 2016. Plaintiff made no such an assertion. There is no paragraph within Plaintiff's AC that will support this. Para 20 of Plaintiff's

AC clearly points out that those letters were discovered in conjunction with the Defendant's

OMIG's NOPAA on December 10, 2018 and OMIG's NOPAA on January 17, 2020. .

15. Although there is a mention within Plaintiff's Ex. 12 para 12 of Plaintiff's AC that,' Mr. Rogers only provided DTS, LP with 1 letter on or about May 24, 2016, informing "Whom it may concern", that DTS, LP is fully licensed and is certified as a Taxi to operate within the TOB", Para 13, in pertinent parts, states as follows: Instead, on or about August 11, 2016, Mr. William Rogers faxed a letter to Mr. Bedell who, at that time, was the Supervising Medical Investigator of OMIG."

16. Plaintiff knows this to be true because the Defendants' TOB's and William Rogers' letter dated August 11, 2016 still bare evidence that such a letter was faxed from the TOB's Enforcement Code Unit. And that the only time Plaintiff received a copy of those letters and the actions taken against his business was on December 10, 2018 when he received the Defendant's OMIG's NOPAA via certified mail.  In any event, the two (2) erroneous letters that were written by the Defendant, William Rogers, for which the Defendant, TOB, should have also been made aware of, could have been taken as a simple, innocent mistake, with no malice intended. It was only after December 10, 2018, when the Defendant, OMIG, began putting pressure on Plaintiff to provide documents to support his business, and Plaintiff, likewise, began his campaign attempts to contact the Defendant, William Rogers, and the Defendant's, apparent unwillingness to speak with Plaintiff or to his employees and representative, can a complete claim can be made against the Defendants. See Ashcroft v. Iqbal, 556, U.S. 662 (2009), where the Supreme Court has held "that defendant could be held liable under **Section Code 1983** if he failed to remedy constitutional violation after learning of it or was grossly negligent in managing subordinates who caused violation".

17. Several attempts were made for the Defendants to comply, to no avail. In fact, the Defendant, William Rogers, as Plaintiff will further discuss below admitted that Plaintiff did not need a license and that he will have his superior look-into it.  The Defendant, even though he might have given the information to his Superior, never contacted me to inform me of the TOB's final determination.

18. The claim accrues when the alleged conduct has caused the claimant harm. In Plaintiff's case at bar, when he received OMIG's NOPAA containing, inter alia, other letters aside from the ones addressed to OMIG, was well within the statute of limitation. See Veal v. Geraci, 23 f. 3d 722 (722 (2d Cir. 1994). See Wallace v. Kato, 549 U.S. 384, 388 (2007).

19. Providing the Defendant, William Rogers, with a copy of Plaintiff's Request for Administrative Hearing was to inform Defendant of the matter and to place him on "Notice" that he will be needed during the coming hearing as a witness or to provide a sworn written statement regarding the matter. Plaintiff did not state, in paras 49 and 85, as Defendants, TOB and William Rogers, contend that 'Plaintiff alleged and admitted that 'ALJ O' Brien denied Plaintiff's request to subpoena Rogers and declined to issue a subpoena compelling Rogers to testify'. Plaintiff clearly stated that the Defendant, AJJ, did not accept or consider Plaintiff's application, much less deciding on its merits. Please review Plaintiff's AC paras 59 and 85 carefully.

20. Again, Plaintiff did not expect the Defendant to willingly testify. That is why Plaintiff filed his Motion, together with its attachments. However, the Defendant, ALJ, did not accept the motion by simply saying, 'Plaintiff's motion is not accepted, etc.'

21. Again, Plaintiff's claims against the TOB are also not time-barred, not only because the letters were provided to Plaintiff on December 10, 2018, as previously stated, but because, through the Defendant's William Rogers' own assertions on March 29, 2021 and again on May 24, 2021, Plaintiff  was informed that the Defendant, TOB, also shows a deliberate indifference towards Plaintiff. See Johnson v. Dallas Independent School Dist., 38 f. 3d 198 (5th Cir. 1994). See also Brown v. Grabowski, 922 F. 2d. 1097 (3rd Cir. 1990). See also Anti Police-Terror Project v. City of Oakland, 477 F. Supp. 3d 1066 (N.D. Cal. 2020). See Plaintiff's para 9(f) and 9(g) above. Also see below.

22. Plaintiff is not trying to revive any "conspiracy" claim to a **42 U.S. Code 1985** between the TOB and the Defendant, OMIG.  Such a conspiracy had longed been at work and was discovered on March 29, 2021 upon a conversation that the Defendant, William Rogers, had with Plaintiff's representative. The Defendant, William Rogers, on p. 2, line 6, in pertinent parts, states, "OMIG that runs Brunswick for the State they were out there 3 or 4 times about 7 years ago and they were running a cab business (Plaintiff's business) and they were not up to the code and stuff and it's not up to us (the TOB)".

23. The Defendant, William Rogers, stated, in pertinent parts, as follows: 'The OMIG that hands out the Medicaid runs they have an enforcement division and I can remember the day 5, 6, 7 years ago that they went out to their house and ticked their vehicles for not being in compliance. The Town has nothing to do with that."

24. And on May 24, 2021, upon another conversation with the Defendant, William Rogers, with Plaintiff's representative, after the TOB and the Defendant received 2 email

correspondences from Plaintiff dated May 4, 2021 and May 18, 2021 informing the Defendants to preserve Plaintiff's business file, and that the Defendant, William Rogers, will be needed on August 19, 2021 at 10:00 am via video, etc.",  on May 24, 2021, during such a conversation with Plaintiff's representative, the Defendant, William Rogers, upon Plaintiff's representative's request for Plaintiff's business file and a request to obtain a letter from the Defendant, William Rogers,  the Defendant, states" See the problem is, I don't have, you see what happened here, George, I don't have all the file, they (Assumingly a Superior officer at the TOB) took it out of my hands, and so I don't know what I can get to it's a lot of stuff, etc."

25. This was contrary to what the Defendant informed Plaintiff during the March 29, 2021 phone conversation with Plaintiff's representative prior to receiving an email requesting his presence to testify within a pending hearing. The Defendant, William Rogers, claimed to have had all of his old record, implying that he had Plaintiff's record as well.

26. In addition, during the May 24, 2021 phone conversation with Plaintiff's representative, the Defendant agreed that Plaintiff did not need any licensing from the TOB. A statute of limitation begins to run on the date that Plaintiff's claim accrued, which is the date the Plaintiff has a complete and present cause of action and can file suit and obtain relief. See Woods v. Candela, 13 F. 3d 574 (2d. Cir. 1994).  See also Bezera v. County of Nassau, 846 F .Supp. 214 (E.D.N.Y. 1994).

27. In regards to Defendants' contention that Plaintiff does not assert a State claim against the TOB. Please note that on or about November 21, 2020, Plaintiff did provide a Notice of Claim to the Defendants.  Such a Notice of Complaint was also sent to the State Defendants'

Counsel as well, in accordance with **NYS GML 50-a**. But make no mistake about it, the

Defendant, TOB and William violated both Federal and State laws, as sated above and will be

fully elaborated upon below.

**Contrary to the Defendants' TOB's & William Rogers' contention, Plaintiff's Taxi Statutory Analysis has merit**

28. **49 U.S. Code Section 13506(a)(2)** of the U.S. Commerce, under Miscellaneous motor

carrier transportation exemptions, in pertinent parts states, "In General, neither the Secretary

nor the Board has jurisdiction under this part over **(2)** motor vehicle providing taxicab. **Section**

**13506(a)(16)(b)(1)(A)) (B)** states, "Except unless otherwise <u>necessary</u> to the extent the Secretary

or Board, as applicable, finds it necessary to exercise <u>jurisdiction</u> to carry out <u>transportation</u>

<u>policy</u> of **Section 13101**, neither the Secretary nor the Board has jurisdiction under this part

over **(1)** transportation provided entirely in a municipality in <u>contiguous</u> municipalities, or in a

zone that is adjacent to, and commercially a part of, the municipality or municipalities, EXECPT-

when the transportation is under common control, management, or <u>arrangement</u> for the

<u>continuous</u> carriage or shipment to or from a place outside the municipality, municipalities, or

zone; OR that in transporting <u>passengers</u> over a route <u>between</u> a place in a <u>State</u> and a place in

<u>another</u> State, or between a place <u>in</u> a State and <u>another</u> State <u>through</u> another State, the

transportation is <u>exempt</u> from jurisdiction under this part only if the passengers over the <u>entire</u>

route under the laws of each State through which the route runs.'

29. There is no question about it that Congress, under the **Social Security Act, Section**

**1902(a)(70)**, which is also codified under **42 CFR 440.170**, found it necessary to exercise

jurisdiction over the States to ensure that the Citizens within each state receive adequate

health benefits including, but not limited to, the transportation of certain qualified Medicaid

recipients to receive free NEMET to and from their designated places. Congress's intention was to assure that qualified Medicaid recipients receive such an aid and contracted with the several States to assure the program's success. And therefore, any mandate from a local Municipality to also regulate such a program is in violation of the Constitution and with **Article 17B Section 498(2) of the NYS Department of Motor Vehicle Law**

30. While Defendants argue on p. 4, para 3, within its motion to dismiss, that (1) First, nothing in that law exempts anyone from having to obtain a license to travel between different licensing municipalities, and to the contrary, it requires a license to be secured. Defendants obviously did not read the remaining portion under **Article 17B**, **Section 498(2)**, in pertinent parts, which states, "Reciprocity", a. A Pre-arranged for-hire vehicle that is licensed to provide pre-arranged transportation for compensation by a licensing jurisdiction meeting the standards and requirements set forth in subdivisions three, four and six of this section shall be authorized to pick up passengers in such jurisdiction for drop off within the same jurisdiction, to pick up passengers in another licensing jurisdiction for drop off within the licensing jurisdiction licensing such pre-arranged for hire-vehicle, to drop off passengers in another licensing jurisdiction who were picked up within the licensing jurisdiction licensing such pre-arranged for-hire vehicle, and to transit other licensing jurisdiction. No other licensing jurisdiction may require a pre-arranged for-hire vehicle providing pre-arranged transportation for compensation, which is licensed by a licensing jurisdiction meeting the standards and requirements set forth in subdivisions three, four and six of this section, to also be licensed by such other licensing jurisdiction or to pay any pre-arranged for-hire vehicle license fee in order to be allowed to pick up or drop off passengers within or to transit such jurisdiction, etc.'

31. So Defendants' contention that there is nothing contained within this law that exempts for-hire motor vehicles from traveling between licensing municipalities, cities or even towns, such as the Defendant, TOB, has no merit. Defendants' second argument is that they contend that Plaintiff never told them that they were licensed; and that **Article 17B Section 498(2)** does not apply to location within the TOB to another location within the TOB.

32. The Defendants fail to understand that the "Reciprocity" rule does mention that. Again, in pertinent parts, under Reciprocity, it states,' A pre-arranged for-hire vehicle that is licensed to provide pre-arranged transportation for compensation by licensing jurisdiction meeting the standard and requirements set forth in subdivisions three, four and six of this section shall be authorized <u>to pick up passenger in such jurisdiction for drop off within the same jurisdiction, etc."</u>

33. Plaintiff did not inform the Defendants that he was licensed by another licensing jurisdiction because (1) Plaintiff's business was also exempt under Suffolk County laws. (2) the Defendant, William Rogers, as the Assistant Executive of the TOB's Public Safety, after receiving Plaintiff's documents, including its Certificate of Incorporation, upon Plaintiff's request to correct such an error, should have corrected the same. Plaintiff's business was licensed under the Defendant, DOH, who failed to provide a copy of Plaintiff's "Written Confirmation" of his business's involvement as a NEMT provider and to electronically proclaim the same to the various nearby Counties in New York and the various Towns in Suffolk County.

34. That's a major failure by the part of the Defendant, DOH, in its obligation to regulate its affairs, trying to promulgate Congress's intent or laws under the **Social Security Act, Section 1902(a)(70)** Such information of the "Written Confirmation" letter which should have been sent

to the various subdivisions within the State of New York by the Defendants is new to me. Plaintiff did hint to such a notion for the first time about a month ago. But Plaintiff did not have the time to complete his research.

35. Nowhere within the Defendants' State actors' books, pamphlets, and documents is this mentioned. Imagine the amount of information that Plaintiff would have discovered if he had the opportunity to subpoena the Defendant, William Rogers. See the remaining law under "Reciprocity", specifically under **Article 17B Section 498(2)** , towards the bottom of said law, it states, 'A licensing jurisdiction meeting three, four, and six of this section (drug testing and fingerprinting, etc.), shall provide written confirmation thereof to other licensing jurisdictions, containing information sufficient to establish that such licensing jurisdiction meets all such standards and requirements, and which shall be verifiable by such other licensing jurisdictions. Such written confirmation shall be resubmitted to such other licensing jurisdictions every three years."

36. Even assuming that Defendant, William Rogers, was not properly trained by the Defendant, TOB, or was not informed of this law, or did not receive a copy of Plaintiff's written confirmation from the Defendant, DOH, when he faxed those letters to the Defendant, OMIG, he cannot now claim that he is still ignorant of such a law or that he made an innocent mistake, since Plaintiff, upon learning of the existence of those letters, eventually made contact with the Defendant, informing the Defendant of the need to immediately correct such a letter or declare that such a letter  null and void, since he now admits that he is just a 'Town clerical assistant". And he is not qualified to respond to or deal with those questions pertaining to intrastate and interstate commerce.

37. Defendants' argument on p. 5, para 1, in pertinent parts, where Defendants state,' Nowhere in the Amended Complaint is there any claim that plaintiff and his former business somehow solely provided service to or from outside of the very large Town of Brookhaven where the business is located.' However, the AC made assertions that his business should have been exempt from any licensing requirement. See Plaintiff's para 14F-14G.

38. Defendant, TOB, therefore, is in violation of **Article 1, Section 8 Clause of the U.S. Constitution** which gives Congress the power to "regulate commerce." The Defendants are also in violation of **49 U.S. Code Section 13506(a)(16)**, in its entirety. As said within Plaintiff's AC, to this day, the Defendant, TOB, failed to create new for-hire vehicle registration and licensing forms to come into compliance with Congress's intent and to regulate NEMET providers within its Town. Upon several requests by Plaintiff to correct such an error, the Defendants have shown deliberate indifference to do so, by failing to correct their own errors. Both Defendants are currently in violation of the New York State law of Motor Vehicles as stated above.

39. The controlling issue here is whether or not Plaintiff's business had been operating illegally within the TOB. Defendant, William Rogers, within his Declaration clearly states, on line 3, in pertinent parts as follows, '<u>Plaintiff admits </u>and it is a fact that I never agreed with or joined in that interpretation of the Town Code." This new material fact further enhances Plaintiff's contention above.

40. Based on Plaintiff's analysis, it does appear that the Defendant, William Rogers, is somewhat honest about the entire situation; he may still be compelled by certain deceitful individuals within the TOB that "took" away Plaintiff's file so that Plaintiff would not be able to defend himself. However meager the Defendant's, William Rogers', involvement with Plaintiff's

conspiracy claim and his deliberate indifference claim towards the Plaintiff, he must reveal all that he knows; like, why did his or her supervisor took Plaintiff's file away from him?  What was the Defendant's state of mind when he or she took away such needed document from the Defendant's possession?

41. In Hyland v. Wonder,117 f. 3d. 405 ((9th Cir. 1997), the City was liable where final policymaking authorities "left the internal management" to the department head "and attempted not to interfere.  The Defendant, TOB, knew or should have known that the Defendant, William Rogers, did not fully understand the mechanics of his own town's licensing procedure, yet allowed the Defendant to process Plaintiff's NEMT application. In Patel v. Kent School District, 648 F. 3d 965 (9th Cir. 2011), where certain state actors recognized that there is an unreasonable risk, and actually intend to expose the Plaintiff to such risks without regard to the consequences of the Plaintiff, the Defendant was liable for its acts and omissions of acts.

**As to the Defendants' State actors, Plaintiff's case falls within the "Ex Parte Young's case and therefore meets the standards for a Preliminary Injunction**

42. As this Court knows, it has been well settled by the Supreme Court that a State or a State actor cannot make his own laws and declare, as Attorney General, (AG), that  he was acting within the scope of his State's law and was, therefore, entitled to State's sovereign immunity. In Ex parte Young, 209 U.S. 123 (1923), which argument Plaintiff did include within his Reply in Opposition, when the State acted contrary to any federal law or contrary to the Constitution, Plaintiff is entitled to a Preliminary Injunction to preserve his status quo of a Federal claim which the State, especially where such a relief was and continues to be unavailable for Plaintiff.

43. There is no question about it that the Defendant, ALJ, literally deprived Plaintiff of his basic right since the Defendant did not accept Plaintiff's Motion to Compel Witness, etc., let alone consider on its merits. See Plaintiff's AC paras 85-90, in its entirety. There's no question about it that the Defendant, ALJ, took no Judicial Notice as required by Federal law. Plaintiff's case of deliberate indifference, where the Defendant, ALJ, during the pending of Plaintiff's Section 1983 case, continued sending notices and insisting that Plaintiff should continue with the administrative proceedings, even though Defendant had not resolved important and concerned issues that existed between the Defendants and Plaintiff.

44. In the Ex parte Young's case, no other standard had to be met but that there were evidence that a State actor had violated the Plaintiff's Constitutional rights. There is most recent case that was just decided on August 14, of 2021 under the same precedent with the Ex parte Young's case. See Whole Woman's Heatlh Alamo City Surgery Center, LILP, et. al v. Judge Austin Reeve Jackson, Penny Clarrston, et., al No. U.S. 21A24 (August 14, 2021).

45. Defendants, the State actors, cannot say that Plaintiff did not explain why waiting for the administrative hearing would cause irreparable harm or not having the Defendant, William Rogers to attend the administrative hearing would harm Plaintiff. Plaintiff's stated, "Plaintiff's cherished Constitutional rights are now in jeopardy, etc."

46. Defendants erred in believing that Plaintiff can later seek an Article 78 review if necessary. In Sam Remo Hotel, L.P v. City and County of San Francisco, 545 U.S. 323 (2005), the Supreme Court held or recognized that a state court's resolution of a claim for just

compensation under state law generally has preclusive effect in any subsequent federal suit. The 'taking' Plaintiff thus finds himself in Catch-22.

47. He cannot go to federal court without going to state court first. But if he goes to state court and loses, his claim will be barred in federal court. The Federal claim dies aborning". See 17-646 Gamble v. United States (06/17/2019). See also Barton Petitioner v. State of Maryland, 395 U.S. 784, 89 S. Ct. 2056 23 L.Ed. 207.

48. See also Civil Sanctions United States v. One Assistant of 89 Firearms, 465 U.S. 354 (1984), holding that the prohibition of double jeopardy extends to civil sanctions which are applied in a manner that is punitive in nature." Even more important, **42 U.S. Section 1983** is, in and of itself, an automatic stay proceeding pending its final disposition. Furthermore, in 17-647 Knick v. Township of Scott ,06/19/2019), the Defendant withdrew its violation notice and agreed to stay enforcement of the ordinance during the state court proceedings.

49. The Supreme Court longed held that a Civil Rights action under **42 U.S. Section 1983** acts as an automatic stay, as a claim is now pending against the Defendants.  And such a claim must first be determined before any civil enforcement proceeding can continue. See also Rafael, Pabon-Ortega, v. Isabel LLompart-Zeno, U.S. No. 18-331.

50. On the merit, Plaintiff claims is also likely to succeed; in that at no time within any of the Defendants' State actors' response did they provide an affirmative defense. At no time did any of the State actors rebut the fact that the Defendants did not treat Plaintiff with deliberate indifference, which, by the way, has to be examined and determined by a jury of Plaintiff's peers. Evidence of the Defendants' State actors' undertaking will to proceed with the administrative hearing, even after Plaintiff has commenced his action in Federal court, in an

attempt to bypass Plaintiff's 14th and 5th Amendments rights, is astonishing. See and read **Ex. "46"** in its entirety.

**As to the State actors' Defendants', ARGUMENTS, Requirement to obtain a Preliminary Injunction, the showing of Irreparable Harm, A Likelihood of Success, Failing to assert a Liberty Interest and Ample due process vehicles through the NOPAA and NOAA**

51. Plaintiff meets the requirements for a preliminary injunction, the showing of irreparable harm, the likelihood of success and did assert a liberty interest. This is an action now brought under the 5th Amendment in conjunction with the 14th Amendment. Unlike the Defendants' contention, Plaintiff's liberty rights under the 5th and 14th Amendments have already been violated. Plaintiff will explain further below.

52. Secondly, Plaintiff's property rights had already been taking away from him when he had unjustly been removed from the Medicaid program due to an allegation that Plaintiff's vehicles were not licensed by the TOB.  It's an allegation that had been fabricated through fraudulent determinations via of OMIG's officials. See Plaintiff's AC paras 9-14 and 16-20. DOH was legally responsible and had an obligation to provide a "Written Confirmation letter to the various local Towns, Counties and Cities where Plaintiff's vehicles were called upon to enter into in order to pick up and to drop off Medicaid recipients, only. Plaintiff's business was not available to the public for-hire. See **Article 17B Section 498(2),** in its entirety.

53. There is no question that Plaintiff did have a three (3) year contract with the State which had been renewed in June of 2017, based on the Medicaid program that he enrolled in. See **42 CFR Section 438.9.** See also **42 CFR Section 440.170**, in its entirety. See also **42 CFR Section 457.1206**. Upon enrollment and renewal, Plaintiff obtained a property interest under

such a contract and was obligated, under such a program, to provide NEMT service in NYS for three (3) years, upon each renewal, to qualified Medicaid recipients.

54. New York State laws are in agreement with and have waived their rights and have decided to join this Federal program. It's well settled that the Defendant, DOH, is in agreement with and has accepted to promulgate the **Social Security Act.** Defendant's DOH's breached its three (3) year contract with Plaintiff by relying upon such lies, causing Plaintiff's removal from the Medicaid program without due process or without any prehearing and post-hearing.

55. The Defendant, ALJ, refused to even hear, on the merit, Plaintiff's Motion to Compel Witness and for the Production of Record, which is also a violation of Plaintiff's constitutional rights, as discussed within Plaintiff's AC, paras 85-90. If Plaintiff did not commence his action and obtained an automatic Stay from these Defendants, State actors, in late July of 2021, in August of 2021, Plaintiff would have suffered an irreparable Constitutional harm or damage to his 14th and 5th Amendments rights, precluding him from bringing any Federal claims in Federal court. Without this protection, Plaintiff would not keep the 'status quo", and would not be able to bring any suit against the Defendants, State actors, again.

As a result of thus, Plaintiff became financially drained, causing him great stress.

56. Such an action by the Defendants also constitutes a violation of and harm to Plaintiff's liberty rights under the 5th and 14th Amendments, which is an irreparable Constitutional damage. Plaintiff was not free to choose his own career as a NEMT provider, as such right was taken away from him.  Such a removal also restricted Plaintiff from freely travelling to and from and within the Cities of New York and Suffolk County and throughout the various Cities, Towns, and Municipalities of the State of New York, which he vehemently

enjoyed doing as a NEMT provider. Plaintiff's current status with DOH bars him from requalifying or reapplying as a NEMT provider as well, constituting a continuous violation of his Constitutional rights.

57. Now in the <u>Whole Woman's Health</u> case in para 45 above, the U.S. Supreme Court held that the <u>threat</u> of imminent danger was sufficient. The Plaintiff did not need to be in immediate danger but so long as the threat exists; it was sufficient for the Supreme Court to remand the action to the Circuit court for further proceedings.

58. Given those facts above, even while Plaintiff began his Civil rights action against the Defendants, the State actors, the ALJ continued sending email correspondences to Plaintiff regarding the continuation of the proceeding and showed no interest to resolve Plaintiff's request and concern for discovery. The Defendants, OIMIG, and ALJ, showed no regard to whether or not Plaintiff fully understood OMIG's allegations and claims against him. Given those pattern of deliberate indifferences toward Plaintiff, Plaintiff stood no chance that the Defendants would provide him with any adequate due process.

59. Plaintiff could not have immediately appeal the ALJ's decision, not only because no decision was ever made, but because there was none available within the State's administrative procedure's scheme. There was no interlocutory appeal available to challenge the Defendant's, ALJ's, refusal to hear, on the merit, Plaintiff's motion. Again, there was no other remedy available for Plaintiff at the State forum, which demonstrates its inadequacy. **The Civil Rights Act of 1871** guarantees a 'federal forum for claims of unconstitutional treatment at the hands of State officials. And it has been well-settled by the Supreme Court that "exhaustion of State

remedies is not an action under **42 U.S.C. Section 1983**. See the <u>Heck v. Humphrey </u>case

previously stated above.

60. It is unclear what the Defendants, State actors, are trying to infer when they state,

"that Plaintiff has ample due process vehicles through NOPAA and NOAA. Both the Notice of

Proposed Agency Action had been sent on December 10, 2018 and Plaintiff cannot use that as a

vehicle to appeal or for reconsideration. It's a self-serving determination, although it gives

notice to Plaintiff of the agency's proposed action. Plaintiff had no part in its formulation. And

the same goes with the agency's Notice of Agency Action. Defendants are trying to convince

Plaintiff to go through the State's proceedings which cannot provide Plaintiff with the necessary

relief that Plaintiff currently needs, and for such reason alone, Defendants' argument must fail.


**As to the Defendants' State actors, ARGUMENT, the Younger case**

61. Abstention is the exception, not the rule. See <u>Moses H. Memorial Hospital v.</u>

<u>Mercury Corp, </u>460 U.S. 1, 14, 103 S.Ct. 927, 936, 74 L.Ed. 2d 765(1983). Federal courts have a

"virtually unflagging obligation" to exercise their Jurisdiction. See <u>Deakins v. Managhan,</u> 484

U.S. at 203, 108 S.t. at 530. Also see <u>John v. Nyack Hosptial,</u> U.S. D C, S. D. New York June 27,

1995.

62. This case does not fall into the <u>Younger </u>case. Rather, it falls under the <u>Ex parte</u>

<u>Younger</u> case. This action has been commenced against Plaintiff in bad faith and simply to

harass Plaintiff. The newly evidence of Defendant's William Rogers' Declaration dated August

24, 2021, together with Plaintiff's 2 Transcripts dated March 29, 2021 and May 24, 2021,

demonstrate that Plaintiff have sufficient evidence to show that such a proceeding was

commenced in bad faith and to harass Plaintiff. To begin with, it should now be undisputed as a matter of law fact, that, according to **Article 17B Section 498(2)**, it was the Defendant, NYS DOH,  that was supposed to, not only issue a "Written Confirmation" to demonstrate that Plaintiff's business had been qualified as a NEMT provider that allowed Plaintiff's business vehicles to freely move around within the TOB, but it was also DOH's responsibility to provide a copy of such a Written Confirmation letter among the various counties cities, and towns, perhaps, electronically, to those regions regarding Plaintiff's business qualification.

63. Plaintiff now reasonably assumes that the Defendant, TOB, might have obtained such a Written Confirmation; and due to some deliberate indifference, refuses to provide Plaintiff with such information that would cause the dismissal of the Defendants', State actors', claim. The possibility that the Defendant, William Rogers, openly admitted to Plaintiff that he agreed with Plaintiff that Plaintiff's business did not have to be licensed by the TOB and the TOB's immediate repossession of Plaintiff's file from the Defendant is another set of facts that has to be examined by a Jury in order to determine whether such an action constitutes deliberate indifference and even malice towards Plaintiff.

64. Plaintiff does not believe that this was an error by the part of the Defendant, DOH. There are too many circumstantial occurrence within this controversy, enough to raise a genuine issue of material fact that such a conspiracy exists, since to this day, not one of the Defendants have decided to "do the right thing" towards the Plaintiff. And this is why Plaintiff has no confident in the Defendants' State actors' administrative forum.

65. Plaintiff need not show any additional "exception", although a Federal court has the obligation to here "federal question" and should not leave such a responsibility to a State court. See Phelps v. Hamilton, 59 F. 3d. 1058, 1063-64 (10th Cir. 1995). Also see Tucker v. Callahan, 663, Supp. 375 (M.D. Tenn. 1967).

66. In addition, in Gibbs v. Berryhill , where all the parties that were supposed to issue or renew her Dental license was part of the same board, the District Court, upon reading Gibbs's Procedural history within her pleadings,  held that since institutional bias rendered the administrative proceeding inadequate, the District Court refusal to abstain was proper".

67. Furthermore, the Supreme Court, in New Orleans Public Service, Inc. v. Counsel of City of New Orleans,, No. 88-348 U.S., clearly drew the line as to how far the Younger rule applies. It clearly delineated that the Younger rule applies only within these three (3) categories: (1) its application only extends to Criminal prosecution. (2) Civil enforcement proceedings, such as a bar disciplinary proceeding and civil involving orders that are uniquely in furtherance of the State courts' ability to perform their Judicial functions, such as State appellate and bond requirement used to compel compliance with a State Judgment. No matter how quasi-criminal or how identical the Defendants are trying to apply the Younger case with Plaintiff s present case at a bar, the Younger rule does not apply here.  The Supreme Court has not extended such a rule to that extent, at least not at this present time.

### As to the Defendants', State Actors' 11th Amendment ARUMENT

68. The Supreme Court has held that there are three (3) ways a State can abrogate the 11th Amendment. See Calvin v. Arena County, 574 f. 3d 334. 344 (6th Cir  2009). Where a State

has consented to join a federal-state cooperation project, it is realistic to conclude that the

State has agreed to assume its obligations under that Legislation.  There is nothing in the 11th to

suggest a difference between suits at law and suits in equity. See Parden v. Terminal R. Co, 377

U.S. 184 (1964). See Florida Prepaid Postsecondary Education Expenses Board v. College Savings

Bank, 527 U.S. 627 (1999).

69. Agreeing to join a federal program is one of the three. The second one is

Congressional Abrogation. (3) The third one is for prospective relief to end an ongoing violation

of federal law. See Ex parte Young,209 U.S. 123 (1908) See Malo v. Hafer,912 f. 2d 628,635 (3rd

Cir. 1990).  In the MCI Telecomm Corp. v. Illinois Bell Tel Co., state officials sued in their official

capacities for injunction relief are "person" under **Section 1983** because official capacity actions

for prospective relief are not treated as actions against the State. See also Compo-grosso v. The

Supreme Court of New Jersey, 588 F. 3d 180 (3rd. Cir. 2009).

70. The Supreme Court, in Jett v. Dallas, Sch. Dist., 491 U.S. 701, 733, 36, 109 S. Ct. 2702,

2722-23, 105 L.E. Dd. 2d 598, (1989), held that (1) **42 U.S.C. Section 1983** provides the

"Exclusive federal damages remedy for violations of the rights guaranteed by **Section 1981**,

when the claim is against a state actor, and (ii) a plaintiff who sues a municipality under **Section**

**1981** may not rely upon the doctrine of respondeat superior  but must satisfy **42 U.S.C Section**

**1983's** policy or custom" requirement.

71. This policy or doctrine by the Supreme Court echoed throughout the different

Circuits, including the 2nd Circuit. See Duplan v. City of N.Y., 888 f. 3d 612 (2nd Cir. 2018). See

also Monell v. N.Y.C. Department of Social Services, 436 U.S. 658 (1978). The Court ruled that

the 11th Amendment did not bar suits under **Section 1983** against municipalities and other local governments, since official capacity suits generally represent only another way of pleading in an action against an entity of which an officer is an agent.

72. Clearly, the Defendants' State actors' claim of **11th Amendment** Immunity must fall. Any of Plaintiff's State law-based claims against the State are well founded and protected by Federal laws. The **Social Security Act** had been enacted by Congress and the States have agreed to take part in it  Therefore, any contract between Plaintiff and the State actors is valid; else, the Defendants attempt to enforce its alleged overpayment  claim against the Plaintiff would also have to be null and as against Plaintiff.

73. Defendants' seem to think that the Defendants are not liable for money damages due to the **11th Amendment**. This is absolutely not true. Such an "Immunity" clause does not apply here. There are three (3 exceptions to the **11th Amendment**. (1 ) it does not stop a Federal court from issuing an injunction against a State official who is violating Federal law. Although the State official may be abiding by State law, he is not permitted to violate Federal law, and a Federal court can order him to stop the action with an injunction. See Ex Parte Young, 209 U.S. 123 (1908). Furthermore, money damages are possible against the State officer(s), as long as the damages are not attributable to the officer himself, and are not paid from State treasury. See Scheuer v. Rhodes, 416 U.S. 232 (1974).

74. The **11th Amendment** does not automatically protect political subdivisions of the State from liability. See Moor v. County of Alameda, 411 U.S. 693 (1973). The main factor is

whether the damages would come out of State treasury. See <u>Hess v. Port Authority Trans-Hudson Corp.,</u> 115 S. Ct. 394 (1994).

75. Even if there is an implication that such an Amendment, the **11th Amendment**, acts as a shield, protecting the State from being sued by Plaintiff, the State might have knowingly surrendered, at least a portion of their rights, or sovereign immunity that had been preserved to them by the Constitution when the 14th Amendment was adopted. The Defendants' State actors' claim under the **11th Amendment** doctrine must fail.

### As to the Defendant's, ALJ's, Absolute Immunity ARUMENT

76. Absolute Immunity is a personal defense that is unavailable in official capacity action. See <u>Kentucky v. Graham,</u> 473 U.S. at 159 166-67, 105 S.Ct, 3099 3105 (1985). The only immunity that can be claimed in an official capacity action are forms of sovereign immunity that the entity, quà-entity, may possess, such as the 11th Amendment. See <u>Id at 167. 105 S. Ct. 3099.</u> See also <u>Cady v. Arena County,</u> 574 f. 3d 334, 342 (6th Cir. 2009). See <u>Cady v. ArevacCity,</u> 574 334 342 (6th Cir, 2009). See <u>Essex v. City of Livingston,</u> 518. App. K 351, 354 (6th Cir. 2013). The same holds with state actors. See <u>Steele-Brown v. Stoddard,</u> 192 f. Supp. 3d. 812 (E.D. Michigan, 2016), citing a claim can be asserted against state actors in their official capacity for injunctive relief. Defendants offer only State authorities and administrative state authorities but failed to provide the Court with a Federal authority supporting this.

### As to the Defendants', State actors' Qualified Immunity ARGUMENT

77. To begin with, Plaintiff did not allege any individual claim against the State actors. Plaintiff's allegations deals solely regarding their official capacities as described within Plaintiff's

AC. The Supreme Court established a two-part test in order to determine whether the official defendant has qualified immunity for his alleged misconduct. If the conduct closely shows: (1) that the law governing the officials' conduct was clearly established."(2) Under that "closely established law, a reasonable officer could have believed that his conduct was lawful.

78. It is undisputed that all of the Defendants, State actors, violated clear established Constitutional laws. See Plaintiff's AC para 9-10A. They are the Defendants' OMIG's and DOH's clear Constitutional violations. See paras 10D-13. They are the Defendant's OMIG's violations of Plaintiff's Constitutional rights. See para 14A-15. They are Constitutional violations stemming from the Defendant, William Rogers and the TOB.

79. See Plaintiff's AC para 15A. It shows a Constitutional violation of OMIG. See Plaintiff's Complaint paras 49-52. It shows the Constitutional violations of the Defendant, ALJ. See para 58A-58D. Para 58E is a Constitutional violation of the Defendant, OMIG.

80. See Fowler v. Block, 2 F. Supp. 2d 1268 (C.D. Cal. 1998). See Ram v. Rubin, 118 F. 3d 1306, 1310 (9th Cir. 1997). Also, Plaintiff believes that not one of those officers above could have believed that their conducts were lawful. That may, of course, be a question for a Jury.

81. On the other hand, there is a three-part test to determine that the officials did have Qualified Immunity if: (1) the plaintiff has identified a specific federal statutory or constitutional right that has already been violated. (2) that right was so clearly established as to alert a reasonable official to its parameters. (3) a reasonable officer could have believed his or her conduct was lawful. See Sweeney v. Ada County, 119 f. 3d. at 1388, citing Newall v. Sauser, 79 f. 3d 115,117 (9th Cir. 1996). See Hope v. Pelzer, 536 U.S. 730 (2002). Also see Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L. Ed, 2d 272 (2001).

82. Now In <u>Pearson v. Callahan,</u> 555 U.S. 223 (2009), the Supreme Court held that while the Saucier test is helpful, it does not need to be applied in qualified immunity claims. Rather, a trial court should have more discretion in whether it should apply to Saucier. The Court also held that an officer conducting a search is entitled to qualified immunity where clearly established law does not show that the search violated the fourth Amendment."

83. Also in 2009, the Supreme Court, in a nutshell, further broadened this power by stating that if no "clear" violation exists, then there is no constitutional violation, though it was decided in the context of school officials. See <u>Safford United School Dist. # 1 v. Redding,</u> 129 S. Ct. (2009).

84. Now in more recent years, in <u>Taylor v. Riojas,</u> , the Supreme Court held, "Because any reasonable correctional officer should have realized that Trent Taylor's conditions of confinement offended the Eight Amendment, the U.S. Court of Appeals for the 5th Circuit erred in granting the officer's qualified immunity". The two key factors from the <u>Redding</u> and the <u>Riojas</u> cases are that (1) no constitutional violation can occur unless such a violation is "clear". (2) that any reasonable officer should have realized the wrong being done. So although the Defendants OMIG, DMIG and AMIG had qualified immunity, such immunity was stripped from them just like it did with the Defendant, ALJ, and the Defendants TOB and Willian Rogers.

### As to the Defendants', the State actors, Due Process ARGUMENT

85. Plaintiff did not claim neither can he prove any "Substantive due process, although it is possible that the Defendants are involved with that. It is the Procedural due process that the Defendants have violated. The Defendants have violated several of Plaintiff's Constitutional Procedural due processes: The following is a list of the several Procedural due processes that

the Defendants have violated, although, it is not limited to the additional Procedural processes

that are mentioned within Plaintiff's AC and within this current Reply in Opposition and for

Reconsideration within its statement of the Statement of the Claim above:

1. OMIG and DOH failed to require Plaintiff to submit all claims no later than (12) months from the date of service by claiming, after more than two years later, that Plaintiff's bills or claims were inadequate in violation of 42 CFR Section 447.45. Defendants did so by failing to return said bills so that such alleged errors can be corrected, thereby causing this overpayment. See Plaintiff's AC paras-10-12.

2. OMIG and DOH, prior to withholding of Plaintiff's payments, should have timely requested information from Plaintiff (rebilling) or be given the opportunity to correct any alleged bill. See 42 U.S. Code Section 1395w-(b)(1)(2). See also para 12, in its entirety.

3. OMIG and DOH failed to accept, determine, apply or to consider that its allege overpayment should begin, or its look-back should only go as far as one (1) year, in accordance with Federal law, on December 10, 2017. See 42 CFR Section 433.316, in its entirety. Also see Plaintiff's AC para 82.

4. OMIG and DOH failed to realize, accept apply or to consider that there is a limitation on alleged overpayment. See 42 CFR Section 405.379 in its entirety.

5. The ALJ failed to make a reasonable effort to dispose of all outstanding motions prior to setting up a date for the hearing. See Plaintiff's AC paras 49-52.

6. The ALJ failed to subpoena a necessary witness and or rule on Plaintiff's motion, as its merit. By deciding not to rule on it or consider it shows a deliberate disregard to Plaintiff's Constitutional Procedural due process. See 42 CFR 1005.9 in its entirety. See Plaintiff's AC paras 49-52.

86. Those are just a few Constitutional procedural violations by the Defendants. Again,

that's just a few. But the one violation of Plaintiff's Constitutional rights which sealed the

disqualification of the Defendants, State actors, is that Plaintiff had been removed from the

Medicaid program without any prehearing and any post-hearing as required by law. See

Patterson v. Armstrong, 141 f. Supp. 2d 512 (2001). See Plaintiff's AC para 19.

**As to the Defendants', State actors', ARGUMENT of Plaintiff not having any property interest in continued participation as a Medicaid provider or in retaining the overpayments**

87. It is undisputed that Plaintiff prior to his removal had a contract with the Defendant,

DOH.  There is no question that such a contract was abrogated due to an alleged unlicensed

fraudulent scheme that had been manufactured by the Defendant, DOH and OMIG, themselves.

There is no question about it that such a contract was recognized under N.Y.S laws. See paras 52-54 above pointing to specific Federal codes. Since the Medicaid contract is a joint agreement between federal-state, and the State of New has agreed to abide with such laws, then such a contract is valid.

88. As previously argued within Plaintiff's Reply in Support of Preliminary Injunction in paras 35-36, that there is split concerning whether a property right exists with Medicaid contracts, we know that the majority of the Circuit Courts do support that a property interest exists. See the authorities listed within Plaintiff's Reply in Support of Preliminary Injunction under paras 35-36. Defendants, the State actors, cannot require Plaintiff to return any alleged overpayments to Defendants if Defendants do not believe that Plaintiff had a legitimate contract with Plaintiff.

**As to Defendants' State actors', ARGUMENT, Public Interest Strongly Weighs in the State Defendants' Favor**

89.The Defendants presented a Supreme Court's case where an exception was made regarding the granting of a Preliminary Injunction, reversing a Preliminary Injunction that had been granted a by a District Court, in a 5-4 vote. The Supreme Court, stated, in pertinent parts, 'Regardless, the Court reasoned that in this case, the public interest in conducting naval training exercises outweighs even certain irreparable harm to marine life." Defendants' application of this authority, alone, implies that Plaintiff has, at least, demonstrated that he is at risk to a "likely" danger to occur in the absence of a Preliminary Injunction. However, Defendants fail to reason out that this case is an exception to the rules.

90. This case involves our National Security; that it is imperative that Navy is adequately trained for the Peoples' security. So it is not a surprise that the Supreme Court made this rare exception. See <u>Winter National Resources Defense Counsel, v. Inc.,</u> 555 U.S 7 (2008).

91. There is no question about it that Plaintiff is likely to succeed on the merit. Even though the Defendant, ALJ, refused to rule on discovery, Plaintiff was able to obtain the following from the Defendants. (1) That the Defendant, William Rogers, agrees that Plaintiff did not need a license to operate his vehicle within the TOB.  (2) That it wasn't the Defendant, William Rogers, who determined that Plaintiff was illegal but it was the OMIG's own aggressive actions that did so.

92 The Defendant, William Rogers, was influenced by OMIG's officials to do so. The Defendant's, William Rogers', own Declaration also supports this contention. See Defendant's William Rogers' Declaration dated August 24, 2021.

93. More importantly, the unlicensed and unregistered issues", as Plaintiff suspected from the very beginning, is a sham to deprive Plaintiff of his property, liberty and his pursuant of happiness. Plaintiff has reason to believe that the Defendants, State Actors, knew or should have known, in accordance with **49 U.S. Code 13506(a)(16)(I)(A)**, that Plaintiff was exempt from any licensing and registration requirements to operate his vehicles throughout the State of New York, since he was  exempt under Federal and State laws to do so. See Plaintiff's para 28 above.

94. Plaintiff has reason to believe that the Defendants, State actors, knew or should have known that New York State laws, **Article 17B, Section 498(2)** also clearly exempts Plaintiff

from obtaining any kind of licensing from the TOB, as it was licensed by the Defendant, DOH. See Plaintiff's para 30 above, in its entirety.

95. Defendants, State Actors', contend that at least one of the laws used by Plaintiff was misplaced. In any event, Plaintiff knows that the Constitutional laws which he presented were not followed by the Defendant, ALJ. See paras 49-52 above. As stated above, the Defendant, OMIG, claimed to have had a reason to investigate Plaintiff's business 'base on reports that some of its drivers were using their personal vehicles for trips and driving under the influence of "Meth".

96. Plaintiff did not have any knowledge of such wrong. As stated before, it was the first time that the Defendants have mentioned this. And Plaintiff's drivers did comply with all the mandatory rules. Had OMIG promptly informed Plaintiff of this, Plaintiff would have taken all the necessary steps to preserve the integrity of his business, including the immediate firing of such an individual.  Plaintiff has mentioned before, and now mentioning again, why didn't OMIG informed Plaintiff of this? Such an assertion is not contained within any of Defendants', State actors', NOPAA or its NOAA.

97. OMIG had an obligation to promptly inform not only Plaintiff, but the appropriate authority as well as stated above. But the Defendant, OMIG, failed to do so. Instead, Defendants, State actors, have concocted false information which they knew or should have known to be false in order to remove Plaintiff's business from the Medicaid program, placing his name and the name of his business within the Medicaid's data base, proclaiming to the world that Plaintiff's business is inadequate without a prehearing or a post-hearing (Irreparable damage). The Defendants above have violated Plaintiff's rights under our Constitution and

there is no real defense against that; and they must be held accountable and be liable for the same.

### As to Plaintiff's Equal Protection CLAIM and his Sixth Amendment Claim

98. Plaintiff hereby withdraws his Equal Protection claim. Plaintiff also withdraws his Sixth Amendment claim. See Plaintiff's Reply in In Support of Preliminary Injunction on p. 19 para 47.

### As to the Defendants', William Rogers', and the TOB's Motion to Dismiss Defendants' Motion to Dismiss is Moot and must be rejected

99. The Defendants', William Rogers' and TOB's instant Motion to dismiss should be denied as moot. The Defendants' motion is based on Plaintiff's Complaint which had longed been modified or amended. And the arguments that the Defendants have previously presented is now irrelevant. Defendants must present argument to rebut Plaintiff's contention within his new allegations. See Alverez v. Smith, 588 U.S. No. 08-361 (2009). See Red Oak Hop.,LLC v. Macy's Inc., No. 416-cv-1783 (S.D. Fex. Nov. 2, 2017. See Tumar v. Rogers, 564 U.S. 431 (2011).

### CONCLUSION

Wherefore, and pursuant to 42 U.S. Code Section 1983, Plaintiff requests the following injunctive relief from this Court: **(A)**) That a preliminary restraining order be issued, staying DOH's and OMIG's further administrative proceedings against the Plaintiff, pending the disposition of any hearing or any motion from this Court: **(B)** that the Defendant, Kimberly A. O' Brien, secures the attendance of William Rogers, the Defendant, in this caption, for any pending hearing **(C)** That the TOB may release or relinquish Plaintiff's file and return Plaintiff's file to William Rogers. **(D)** That the TOB requires its board, or the highest decision making official decide on this matter or declare that such a matter is out of their jurisdiction. **(E)** That the TOB

may declare that such a letter was an error and that the Defendant, William Rogers, was not fit to produce such a letter. **(F)** That William Rogers may produce the same to Plaintiff, prior to any hearing, including the production of any and all relevant records pertaining to Plaintiff's business and provide such other pertinent information relating to any other NEMT providers within Its Town. **(G)** That a complete ruling be made on any applicable motion for the purpose of resolving unsettled issues between Defendants and Plaintiff prior to any hearing date; **(H)** That the Defendant, OMIG, may remove Plaintiff's' name and business name from any negative and inactive list, and restore Plaintiff into the Medicaid program: **(I)** That in the event of the Defendant's, the ALJ's, voluntary recusal or necessary recusal, DOH may assign another ALJ to carry out those alphabetically, enumerated, duties above: **(J)** That the case be transferred to this Court: **(K)** That final injunctive reliefs be granted from the Defendants, the ALJ and from the OMIG. **(L)** That the DOH should produce the Written Confirmation to Plaintiff ASAP. **(M)**That he may be granted leave to Amend is Complaint or to Supplement is Complaint to comply with any Motion to Dismiss. **(N)**That Plaintiff may be compensated with special damages, general damages, and punitive damages and presumed compensatory damages, money damage, or from any other applicable theory of recovery, from the remaining defendants, in the aggregate amount of **$3,800.000.00**; or that Plaintiff may be awarded with any other sum as a Jury or this Court seems just and equitable.

Dated:
Suffolk, County NY

Jean R. Daniel,
72 Granada Circle,
Mount Sinai, NY 11766
Tel.: 347-551-9786
Email: Goodtone450@aol.com

UNITED STATES DISTRICT COURT,
EASTERN DISTRICT OF NEW YORK
_____X

JEAN R. DANIEL

Plaintiff,

-against-

N.Y.S. DEPT. OF HEALTH, ALJ, KIMBERLY
A. O' BRIEN, OFFICE OF THE MEDICAID
INSPECTOR GENERAL (OMIG), THE DEPUTY
MEDICAID INSPECTOR GENERAL,
DANIEL V. COYNE, ASST. OF MEDICAID
INSPECTOR GENERAL, STETPHANIE E. PATON,
RN, WILLIAM ROGERS, EXECUTIVE ASST., AT
THE TOWN OF BROOKHAVEN DEPT. OF
PUBLIC SAFETY, THE TOWN OF BROOKHAVEN,
John Doe # 1 through John Doe # 10, representing
any additional agency, the State of New York,
or any additional Executive Official(s)
that is jointly liable,

Defendants
_____X

**AFFIDAVIT IN SUPPORT OF
PLAINTIFF'S REPLY
IN OPPOSTION & FOR
RECONSIDERATION**
Case No.: **21-cv-04097-DG-AKT**
Jurisdiction & Venue
is proper based on
where this controversy
originated.

I, **JEAN R. DANIEL**, am the Plaintiff in this action. I am familiar with the facts that are

contained in this action. I am making this Affidavit in Support of my Reply in Opposition to the

Defendants', TOB and William Rogers' Motion to Dismiss and not for my Motion for

Reconsideration, in accordance with this Court's local rule. And that I am prepared to give

testimony at trial regarding the facts in connection with my case.

1. It is undisputed that prior to my removal I had a contract with the Defendant, DOH. There is no question that such a contract was broken due to an alleged unlicensed fraudulent scheme that had been manufactured by the Defendant, DOH and OMIG, There is no question about it that such a contract was recognized under N.Y.S laws. The Medicaid contract is a joint agreement between federal-state and the State agreed to abide with such laws, confirming the validity of my contract with the State.

2. As previously argued within my Reply in Support of Preliminary Injunction, there is a split concerning whether a property right exists with Medicaid contracts, we know that the majority of the Circuit Courts do support that a property interest exists. Defendants, the State actors, cannot require me to return any alleged overpayments to Defendants if Defendants do not believe that I had a legitimate contract with Defendants. The Defendants presented a Supreme Court's case where an exception was made regarding the granting of a Preliminary Injunction, reversing a Preliminary Injunction that had been granted by a District Court, in a 5-4 vote.

3. The Supreme Court stated, in pertinent parts, 'Regardless, the Court reasoned that in this case, the public interest in conducting naval training exercises outweighs even certain irreparable harm to marine life." Defendants' application of this authority, alone, implies that I demonstrated that I am at risk to a "likely" danger to occur in the absence of a Preliminary Injunction. However, Defendants fail to realize that this case is an exception to the rules.

4. This case involves our National Security; since it is imperative that the Navy is adequately trained for this Country's security. So it is not a surprise that the Supreme Court made this rare exception.  There is no question about it that I am likely to succeed on the merit.

Even though the Defendant, ALJ, refused to rule on discovery, I was able to obtain the following from the Defendants. (1) That the Defendant, William Rogers, agrees that I did not need a license to operate my vehicles within the TOB.  (2) That it wasn't the Defendant, William Rogers, who determined that my business was illegal but it was the OMIG's own aggressive actions that did so.

5. The Defendant, William Rogers, was influenced by OMIG's officials to do so. The Defendant's, William Rogers', own Declaration also supports this contention. See Defendant's William Rogers' Declaration dated August 24, 2021. More importantly, the unlicensed and unregistered issues", as I longed suspected, is a scam to deprive me of my property, liberty and my pursuant of happiness. I have reason to believe that the Defendants, State Actors, knew or should have known, in accordance with **49 U.S. Code 13506(a)(16)(I)(A)**, that I was exempt from any licensing and registration requirements to operate my vehicles throughout the State of New York, since I was  exempt under Federal and State laws to do so. .

6. I have reason to believe that the Defendants, State actors, knew or should have known that New York State laws, **Article 17B, Section 498(2)** also clearly exempts me from obtaining any kind of licensing from the TOB, as it was licensed by the Defendant, DOH. Defendants, State Actors', contend that at least one of the laws used by me was misplaced. In any event, I know that the Constitutional laws which I presented were not followed by the Defendant, ALJ.

7. The Defendant, OMIG, claimed to have had a reason to investigate my business 'base on reports that some of my drivers were using their personal vehicles for trips and driving under the influence of "Meth". I did not have any knowledge of such wrong. As stated before, it

was the first time that the Defendants have mentioned this. And my drivers did comply with all the mandatory rules. Had OMIG promptly informed me of this, I would have taken all the necessary steps to preserve the integrity of my business, including the immediate firing of such an individual. As I mentioned before, and now mentioning again, why didn't OMIG informed me of this? Such an assertion and accusation is not contained within any of Defendants', State actors', NOPAA or within its NOAA.

8. OMIG had an obligation to promptly inform not only me, but the appropriate authority as well as stated above. But the Defendant, OMIG, failed to do so. Instead, Defendants, State actors, have concocted false information which they knew or should have known to be false in order to remove me from the Medicaid program, placing my name and the name of my business within the Medicaid's data base, proclaiming to the world that my business is inadequate without a prehearing or a post-hearing (Irreparable damage).

9. The Defendants above violated my rights under our Constitution and there is no real defense against that; they must be held accountable and be liable for the same. I do not have any pending application before this Court or before any other Court requesting a Preliminary Injunction pending the outcome of this case after a trial by a Jury.

JEAN R. DANIEL

Sworn to me this Day,
29TH
of September 29, 2021

_____
NOTARY PUBLIC

EDSON VLADIMIR DELACRUZ
Notary Public - State of New York
NO. 01DE6233374
Qualified in Queens County
My Commission Expires 12/21/22

J.P.Morgan

Customer Service
Mail Code TX1-0053
14800 Frye Road
Fort Worth, TX 76155

DOVE TRANSPORT SERVICE, L.P.
72 GRANADA CIR

MOUNT SINAI NY 117662811

04-Apr-18

Here are the images you requested

Dear DOVE TRANSPORT SERVICE, L.P.:

Thank you for contacting us. We've enclosed the image(s) you requested on
04-Apr-18 for your account ending in 3928.

If you have questions, please call us anytime and reference Case Number 04Apr18-313.

Personal accounts: 1-800-935-9935
Business accounts: 1-800-CHASE38 (1-800-242-7338) or contact your business banker

Sincerely,

Quentin G. Bohrer
Executive Director
Chase Customer Service

Enclosed:
Image(s)

Confidentiality Notice: This is intended for the use of the individual or entity to which
it is addressed, and it may contain information that is confidential or privileged under
law. If the reader of this message is not the intended recipient, you are hereby notified
that retention, dissemination, distribution or copying of this message is strictly
prohibited. If you received this in error, please notify the sender immediately by
telephone and destroy the original. Thank you.

PHOTO1
JPMorgan Chase Bank, N.A. Member FDIC

39

Exhibit "52"

04-Apr-18

04Apr18-313

THIS PAGE IS PART OF A STATEMENT REQUEST
GROUP ID G04Apr18-313

## CHASE ⬡

JPMorgan Chase Bank, N.A.
P O Box 659754
San Antonio, TX 78265 - 9754

December 31, 2016 through January 31, 2017
Primary Account: 000000220003928

**CUSTOMER SERVICE INFORMATION**

| | |
|---|---|
| Web site: | Chase.com |
| Service Center: | 1-800-242-7338 |
| Deaf and Hard of Hearing: | 1-800-242-7383 |
| Para Espanol: | 1-888-622-4273 |
| International Calls: | 1-713-262-1679 |

00115063 DRE 802 219 03217 NNNNNNNNNN  1 000000000 62 0000
DOVE TRANSPORT SERVICE L.P.
3911 211TH ST
BAYSIDE NY 11361-1957



### We changed how we explain ATM Withdrawal Limits

We revised the Deposit Account Agreement to change how we explain ATM withdrawal limits.

Below is the explanation provided in the Deposit Account Agreement for business accounts.

*Your ATM withdrawal limits may be different depending on which type of ATM you use:*

- *When you use a Staffed ATM, the following limitations apply and are separate from all other limits:*

  *Each cardholder can withdraw up to $3,000 each day from all linked accounts of each business. This separate limit does not apply to an Associate card.*

- *When you use an Enhanced ATM, the following limitations apply:*

  *All withdrawals made with any cardholder's ATM, debit or prepaid cards for the same business count toward every card's daily withdrawal limit.*

- *When you use non-Chase ATMs and Chase ATMs that are not Enhanced, you can withdraw up to the card's daily withdrawal limit. Withdrawals using other cards will not count towards that card's daily withdrawal limit.*

You can get the latest Deposit Account Agreement on chase.com, at a branch or by request when you call us. The parts of the Deposit Account Agreement that changed will be in the Change in Terms section.

If you have questions, please call the number on your statement.

## ASSETS

| Checking & Savings | ACCOUNT | BEGINNING BALANCE THIS PERIOD | ENDING BALANCE THIS PERIOD |
|---|---|---|---|
| Chase BusinessSelect Checking | 000000220003928 | $70.24 | -$874.04 |
| Chase Business Savings | 000003567191605 | 20.00 | 20.00 |
| Total | | $90.24 | -$854.04 |
| | | | |
| **TOTAL ASSETS** | | $90.24 | -$854.04 |

Page 1 of 8

04-Apr-18

THIS PAGE IS PART OF A STATEMENT REQUEST
GROUP ID G04Apr18-313

 CHASE

December 31, 2016 through January 31, 2017
Primary Account: 000000220003928

All Summary Balances shown are as of January 31, 2017 unless otherwise stated.   For details of your retirement
accounts, credit accounts or securities accounts, you will receive separate statements.  Balance summary information for
annuities is provided by the issuing insurance companies and believed to be reliable without guarantee of its completeness
or accuracy.

DOVE TRANSPORT SERVICE L.P.

Account Number: 000000220003928

## CHECKING SUMMARY

|  | INSTANCES | AMOUNT |
|---|---|---|
| Beginning Balance |  | $70.24 |
| Deposits and Additions | 5 | 7,412.51 |
| ATM & Debit Card Withdrawals | 41 | -2,269.09 |
| Electronic Withdrawals | 8 | -5,074.20 |
| Fees | 32 | -1,013.50 |
| Ending Balance | 86 | -$874.04 |

Thank you for your military service and commitment to our country. Your monthly service fee was waived as a benefit of
Chase Military Banking.

## DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | | | AMOUNT |
|---|---|---|---|---|
| 01/05 | Nys Doh | Hcclaimpmt 03882157 | CCD ID: 1141797357 | $1,583.33 |
| 01/12 | Nys Doh | Hcclaimpmt 03882157 | CCD ID: 1141797357 | 1,823.10 |
| 01/19 | Nys Doh | Hcclaimpmt 03882157 | CCD ID: 1141797357 | 1,208.80 |
| 01/19 | Online Transfer From Mma ...0306 Transaction#: 5946698288 | | | 1,200.00 |
| 01/26 | Nys Doh | Hcclaimpmt 03882157 | CCD ID: 1141797357 | 1,597.28 |
| **Total Deposits and Additions** | | | | **$7,412.51** |

## ATM & DEBIT CARD WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 01/03 | Card Purchase        12/30 Glen Cove Grocery & Del Glen Cove NY Card 9771 | $12.07 |
| 01/03 | Card Purchase        12/30 Nycdot Parking Meters Long Is City NY Card 8024 | 1.00 |
| 01/03 | Card Purchase With Pin  12/31 Sunoco 0350576503 Ronkonkoma NY Card 7853 | 21.40 |
| 01/03 | Card Purchase        01/02 Tmobile*Postpaid Tel 800-937-8997 WA Card 9771 | 104.30 |
| 01/03 | Card Purchase        01/02 229 Linden Restauran Cambria Heigh NY Card 5924 | 11.95 |
| 01/04 | Card Purchase        01/03 The Community Thrift Sh Huntington NY Card 5924 | 17.76 |
| 01/04 | Card Purchase With Pin  01/04 Elmont Conv & Gas Elmont NY Card 9771 | 21.50 |
| 01/05 | Card Purchase        01/05 Burger King #900 Huntington NY Card 5924 | 4.33 |
| 01/05 | ATM Withdrawal       01/05 23939 Linden Blvd Elmont NY Card 9771 | 160.00 |
| 01/06 | Card Purchase        01/06 Burger King #405 Garden City P NY Card 5924 | 10.96 |
| 01/06 | Card Purchase With Pin  01/06 Elmont Conv & Gas Elmont NY Card 9771 | 21.50 |
| 01/09 | Card Purchase        01/06 Glen Cove Grocery & Del Glen Cove NY Card 5924 | 9.91 |
| 01/09 | Card Purchase With Pin  01/07 Walgreens Store 119 Cambria Heigh NY Card 9771 | 6.01 |
| 01/09 | Card Purchase With Pin  01/07 Walgreens Store 119 Cambria Heigh NY Card 9771 | 13.77 |

04-Apr-18

04Apr18-313

THIS PAGE IS PART OF A STATEMENT REQUEST
GROUP ID G04Apr18-313



December 31, 2016 through January 31, 2017
Primary Account: 000000220003928



## ATM & DEBIT CARD WITHDRAWALS   (continued)

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 01/09 | Card Purchase With Pin  01/08 Merrick Farm Country Laurelton NY Card 9771 | 76.96 |
| 01/11 | Card Purchase With Pin  01/11 Elmont Conv & Gas Elmont NY Card 9771 | 11.70 |
| 01/12 | ATM Withdrawal          01/12 23939 Linden Blvd Elmont NY Card 9771 | 160.00 |
| 01/17 | Card Purchase With Pin  01/14 Elmont Conv & Gas Elmont NY Card 9771 | 12.70 |
| 01/17 | Card Purchase With Pin  01/14 Nnt Petland Discnts5 Springfield G NY Card 9771 | 13.39 |
| 01/17 | Card Purchase           01/14 229 Linden Restauran Cambria Heigh NY Card 9771 | 13.03 |
| 01/17 | Card Purchase With Pin  01/17 Elmont Conv & Gas Elmont NY Card 9771 | 13.20 |
| 01/18 | Card Purchase           01/17 Speedway 07817 Long Island C NY Card 8617 | 54.00 |
| 01/18 | Card Purchase           01/17 229 Linden Restauran Cambria Heigh NY Card 9771 | 10.86 |
| 01/19 | ATM Withdrawal          01/19 23939 Linden Blvd Elmont NY Card 9771 | 20.00 |
| 01/19 | Card Purchase With Pin  01/19 Elmont Conv & Gas Elmont NY Card 9771 | 21.50 |
| 01/20 | Card Purchase           01/19 229 Linden Restauran Cambria Heigh NY Card 9771 | 13.03 |
| 01/23 | Card Purchase           01/21 Burger King #11039 Elmont NY Card 9771 | 12.82 |
| 01/23 | Card Purchase           01/20 Elmont Deli Plus Elmont NY Card 9771 | 13.50 |
| 01/23 | Card Purchase           01/20 Szechuan Delight. Elmont NY Card 9771 | 21.45 |
| 01/23 | Card Purchase With Pin  01/21 Merrick Farm Country Laurelton NY Card 9771 | 20.29 |
| 01/23 | Card Purchase W/Cash    01/22 The Home Depot #1238 Jamaica NY Card 9771  Purchase $13.00 Cash Back $50.00 | 63.00 |
| 01/24 | Card Purchase With Pin  01/24 Elmont Conv & Gas Elmont NY Card 9771 | 12.70 |
| 01/26 | Card Purchase With Pin  01/26 Elmont Conv & Gas Elmont NY Card 9771 | 12.70 |
| 01/26 | Card Purchase W/Cash    01/26 The Home Depot #1238 Jamaica NY Card 9771  Purchase $5.52 Cash Back $50.00 | 55.52 |
| 01/27 | Card Purchase           01/26 Boot/Tow Releasenyc 855-4223495 NJ Card 8617 | 849.06 |
| 01/27 | Card Purchase           01/27 Burger King #11039 Elmont NY Card 9771 | 10.86 |
| 01/27 | Card Purchase           01/26 Tmobile*Postpaid Ivr 800-937-8997 WA Card 9771 | 182.69 |
| 01/27 | Card Purchase W/Cash    01/27 The Home Depot #1238 Jamaica NY Card 9771  Purchase $10.87 Cash Back $50.00 | 60.87 |
| 01/27 | Card Purchase With Pin  01/27 Merrick Farm Country Laurelton NY Card 9771 | 46.41 |
| 01/30 | Card Purchase With Pin  01/28 Elmont Conv & Gas Elmont NY Card 9771 | 11.70 |
| 01/31 | Card Purchase W/Cash    01/31 The Home Depot #1238 Jamaica NY Card 9771  Purchase $8.69 Cash Back $50.00 | 58.69 |
| **Total ATM & Debit Card Withdrawals** | | **$2,269.09** |

## ATM & DEBIT CARD SUMMARY

Brenda Larsen  Card 5924

| | |
|---|---|
| Total ATM Withdrawals & Debits | $0.00 |
| Total Card Purchases | $54.91 |
| Total Card Deposits & Credits | $0.00 |

Niquette Daniel  Card 7853

| | |
|---|---|
| Total ATM Withdrawals & Debits | $0.00 |
| Total Card Purchases | $21.40 |
| Total Card Deposits & Credits | $0.00 |

John Raphael  Card 8024

| | |
|---|---|
| Total ATM Withdrawals & Debits | $0.00 |
| Total Card Purchases | $1.00 |
| Total Card Deposits & Credits | $0.00 |

Mohammed S Raushan  Card 8617

| | |
|---|---|
| Total ATM Withdrawals & Debits | $0.00 |

04-Apr-18                                                                                          04Apr18-313



December 31, 2016 through January 31, 2017
Primary Account: 000000220003928

| | |
|---|---|
| Total Card Purchases | $903.06 |
| Total Card Deposits & Credits | $0.00 |
| **Jean R Daniel  Card 9771** | |
| Total ATM Withdrawals & Debits | $340.00 |
| Total Card Purchases | $948.72 |
| Total Card Deposits & Credits | $0.00 |
| **ATM & Debit Card Totals** | |
| Total ATM Withdrawals & Debits | $340.00 |
| Total Card Purchases | $1,929.09 |
| Total Card Deposits & Credits | $0.00 |

## ELECTRONIC WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 01/05 | 01/05 Online Payment 5915712579 To Pfs Financing Corporation | $1,100.00 |
| 01/12 | 01/12 Online Transfer To Mma ...0306 Transaction#: 5931290273 | 1,500.00 |
| 01/19 | 01/19 Online Payment 5884197179 To Csc Logic Inc | 250.00 |
| 01/19 | 01/19 Online Payment 5946696345 To Pfs Financing Corporation | 800.00 |
| 01/19 | 01/19 Online Payment 5946699902 To Pfs Financing Corporation | 1,000.00 |
| 01/25 | ADP Payroll Fees ADP - Fees 2Rgzx   1682909 CCD ID: 9659605001 | 147.50 |
| 01/26 | 01/26 Online Payment 5944146088 To Csc Logic Inc | 250.00 |
| 01/27 | ADP Payroll Fees ADP - Fees 2Rgzx   2693211 CCD ID: 9659605001 | 26.70 |
| **Total Electronic Withdrawals** | | **$5,074.20** |

## FEES

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 01/03 | Insufficient Funds Fee For A S104.30 Card Purchase - Details:      0102Tmobile*Postpaid Tel 800-937-8997 WA 04563310024799771 01 | $34.00 |
| 01/03 | Insufficient Funds Fee For A S11.95 Card Purchase - Details:      0102229 Linden Restauran Cambria Heigh NY04563330000955924 05 | 34.00 |
| 01/04 | Insufficient Funds Fee For A S17.76 Card Purchase - Details:      0103The Community Thrift Sh Huntington NY04563330000955924 05 | 34.00 |
| 01/04 | Insufficient Funds Fee For A S21.50 Card Purchase With Pin - Details: 0742370104Elmont Conv & Gas Elmont NY    04563310024799771 00 | 34.00 |
| 01/09 | Insufficient Funds Fee For A S76.96 Card Purchase With Pin - Details: 0140940108Merrick Farm Country Laurelton NY    04563310024799771 00 | 34.00 |
| 01/11 | Insufficient Funds Fee For A S11.70 Card Purchase With Pin - Details: 0759510111Elmont Conv & Gas Elmont NY    04563310024799771 00 | 34.00 |
| 01/17 | Online Payroll: Monthly Service Fee | 10.00 |
| 01/17 | Insufficient Funds Fee For A S12.70 Card Purchase With Pin - Details: 0165590114Elmont Conv & Gas Elmont NY    04563310024799771 00 | 34.00 |
| 01/17 | Insufficient Funds Fee For A S13.39 Card Purchase With Pin - Details: 0212430114Nnt Petland Discnts5 Springfield G NY04563310024799771 00 | 34.00 |
| 01/17 | Insufficient Funds Fee For A S13.03 Card Purchase - Details:      0114229 Linden Restauran Cambria Heigh NY04563310024799771 05 | 34.00 |
| 01/17 | Insufficient Funds Fee For A S13.20 Card Purchase With Pin - Details: 8378540117Elmont Conv & Gas Elmont NY    04563310024799771 00 | 34.00 |

04-Apr-18

04Apr18-313

THIS PAGE IS PART OF A STATEMENT REQUEST
GROUP ID G04Apr18-313



December 31, 2016 through January 31, 2017
Primary Account: 000000220003928



| | **FEES** (continued) | |
|---|---|---|
| **DATE** | **DESCRIPTION** | **AMOUNT** |
| 01/18 | Insufficient Funds Fee For A $54.00 Card Purchase - Details:      0117Speedway 07817 Long Island C NY   04563310025118617 90 | 34.00 |
| 01/18 | Insufficient Funds Fee For A $10.86 Card Purchase - Details:      0117229 Linden Restauran Cambria Heigh NY04563310024799771 05 | 34.00 |
| 01/19 | Insufficient Funds Fee For A $21.50 Card Purchase With Pin - Details: 0174170119Elmont Conv & Gas Elmont NY   04563310024799771 00 | 34.00 |
| 01/20 | Insufficient Funds Fee For A $13.03 Card Purchase - Details:      0119229 Linden Restauran Cambria Heigh NY04563310024799771 05 | 34.00 |
| 01/23 | Insufficient Funds Fee For A $12.82 Card Purchase - Details:      0121Burger King #11039 Elmont NY   04563310024799771 90 | 34.00 |
| 01/23 | Insufficient Funds Fee For A $13.50 Card Purchase - Details:      0120Elmont Deli Plus Elmont NY   04563310024799771       05 | 34.00 |
| 01/23 | Insufficient Funds Fee For A $21.45 Card Purchase - Details:      0120Szechuan Delight. Elmont NY   04563310024799771 01 | 34.00 |
| 01/23 | Insufficient Funds Fee For A $20.29 Card Purchase With Pin - Details: 3945570121Merrick Farm Country Laurelton NY   04563310024799771 00 | 34.00 |
| 01/23 | Insufficient Funds Fee For A $63.00 Card Purchase W/Cash - Details:      0122The Home Depot #1238 Jamaica NY   04563310024799771      Purchase $13.00 Cash Back $50.00 00 | 34.00 |
| 01/24 | Insufficient Funds Fee For A $12.70 Card Purchase With Pin - Details: 0292920124Elmont Conv & Gas Elmont NY   04563310024799771 00 | 34.00 |
| 01/24 | Extended Overdraft Fee | 15.00 |
| 01/25 | Insufficient Funds Fee For A $147.50 Item - Details: ADP Payroll Fees ADP - Fees 2Rgzx 1682909 CCD ID: 9659605001 | 34.00 |
| 01/26 | Non-Chase ATM Fee-Inq | 2.50 |
| 01/27 | Insufficient Funds Fee For A $849.06 Card Purchase - Details:      0126Boot/Tow Releasenyc 855-4223495 NJ   04563310025118617 01 | 34.00 |
| 01/27 | Insufficient Funds Fee For A $10.86 Card Purchase - Details:      0127Burger King #11039 Elmont NY   04563310024799771 90 | 34.00 |
| 01/27 | Insufficient Funds Fee For A $182.69 Card Purchase - Details:      0126Tmobile*Postpaid Ivr 800-937-8997 WA 04563310024799771 01 | 34.00 |
| 01/27 | Insufficient Funds Fee For A $60.87 Card Purchase W/Cash - Details:      0127The Home Depot #1238 Jamaica NY   04563310024799771      Purchase $10.87 Cash Back $50.00 00 | 34.00 |
| 01/27 | Insufficient Funds Fee For A $46.41 Card Purchase With Pin - Details: 7921540127Merrick Farm Country Laurelton NY   04563310024799771 00 | 34.00 |
| 01/27 | Insufficient Funds Fee For A $26.70 Item - Details: ADP Payroll Fees ADP - Fees 2Rgzx 2693211 CCD ID: 9659605001 | 34.00 |
| 01/30 | Insufficient Funds Fee For A $11.70 Card Purchase With Pin - Details: 5034960128Elmont Conv & Gas Elmont NY   04563310024799771 00 | 34.00 |
| 01/31 | Insufficient Funds Fee For A $58.69 Card Purchase W/Cash - Details:      0131The Home Depot #1238 Jamaica NY   04563310024799771      Purchase $8.69 Cash Back $50.00 00 | 34.00 |
| **Total Fees** | | **$1,013.50** |

THIS PAGE IS PART OF A STATEMENT REQUEST
GROUP ID G04Apr18-313

 **CHASE**

December 31, 2016 through January 31, 2017
Primary Account: 000000220003928

## DAILY ENDING BALANCE

| DATE | AMOUNT | DATE | AMOUNT | DATE | AMOUNT |
|------|--------|------|--------|------|--------|
| 01/03 | -$148.48 | 01/12 | 7.55 | 01/24 | -450.12 |
| 01/04 | -255.74 | 01/17 | -190.77 | 01/25 | -631.62 |
| 01/05 | 63.26 | 01/18 | -323.63 | 01/26 | 644.94 |
| 01/06 | 30.80 | 01/19 | -40.33 | 01/27 | -735.65 |
| 01/09 | -109.85 | 01/20 | -87.36 | 01/30 | -781.35 |
| 01/11 | -155.55 | 01/23 | -388.42 | 01/31 | -874.04 |

## SERVICE CHARGE SUMMARY

| TRANSACTIONS FOR SERVICE FEE CALCULATION | NUMBER OF TRANSACTIONS |
|---|---|
| Checks Paid / Debits | 43 |
| Deposits / Credits | 4 |
| Deposited Items | 0 |
| Transaction Total | 47 |

| SERVICE FEE CALCULATION | AMOUNT |
|---|---|
| Service Fee | $0.00 |
| Service Fee Credit | $0.00 |
| Net Service Fee | $0.00 |
| Excessive Transaction Fees (Above 200) | $0.00 |
| Total Service Fees | $0.00 |

DOVE TRANSPORT SERVICE, L.P.                Account Number: 000003567191605

## SAVINGS SUMMARY

| | INSTANCES | AMOUNT |
|---|---|---|
| Beginning Balance | | $20.00 |
| Ending Balance | 0 | $20.00 |
| Annual Percentage Yield Earned This Period | | 0.00% |

The monthly service fee for this account was waived as an added feature of Chase BusinessSelect Checking account.

10 deposited items are provided with your account each month.  There is a $0.20 fee for each additional deposited item.

04-Apr-18

04Apr18-313

THIS PAGE IS PART OF A STATEMENT REQUEST
GROUP ID G04Apr18-313



December 31, 2016 through January 31, 2017
Primary Account: 000000220003928

**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS:** Call or write us at the phone number or address on the front of this statement (non-personal accounts contact Customer Service) if you think your statement or receipt is incorrect or if you need more information about a transfer listed on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error appeared. Be prepared to give us the following information:

- Your name and account number
- The dollar amount of the suspected error
- A description of the error or transfer you are unsure of, why you believe it is an error, or why you need more information.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days (or 20 business days for new accounts) to do this, we will credit your account for the amount you think is in error so that you will have use of the money during the time it takes us to complete our investigation.

**IN CASE OF ERRORS OR QUESTIONS ABOUT NON-ELECTRONIC TRANSACTIONS:** Contact the bank immediately if your statement is incorrect or if you need more information about any non-electronic transactions (checks or deposits) on this statement. If any such error appears, you must notify the bank in writing no later than 30 days after the statement was made available to you. For more complete details, see the Account Rules and Regulations or other applicable account agreement that governs your account.

 JPMorgan Chase Bank, N.A. Member FDIC



04-Apr-18

THIS PAGE IS PART OF A STATEMENT REQUEST
GROUP ID G04Apr18-313



December 31, 2016 through January 31, 2017
Primary Account: **000000220003928**

This Page Intentionally Left Blank

04-Apr-18

THIS PAGE IS PART OF A STATEMENT REQUEST
GROUP ID G04Apr18-313

04Apr18-313

 **CHASE**

JPMorgan Chase Bank, N.A.
P O Box 659754
San Antonio, TX 78265 - 9754

February 01, 2017 through February 28, 2017
Primary Account: **000000220003928**

00125471 DRE 802 219 06017 NNNNNNNNNNN  1 000000000 62 0000
DOVE TRANSPORT SERVICE L.P.
3911 211TH ST
BAYSIDE NY 11361-1957

### CUSTOMER SERVICE INFORMATION

| | |
|---|---|
| Web site: | Chase.com |
| Service Center: | 1-800-242-7338 |
| Deaf and Hard of Hearing: | 1-800-242-7383 |
| Para Espanol: | 1-888-622-4273 |
| International Calls: | 1-713-262-1679 |



███████████████████████████

## ASSETS

| Checking & Savings | ACCOUNT | BEGINNING BALANCE THIS PERIOD | ENDING BALANCE THIS PERIOD |
|---|---|---|---|
| Chase BusinessSelect Checking | 000000220003928 | -$874.04 | -$108.08 |
| Chase Business Savings | 000003567191605 | 20.00 | 10.00 |
| **Total** | | **-$854.04** | **-$98.08** |

| TOTAL ASSETS | | -$854.04 | -$98.08 |
|---|---|---|---|

All **Summary Balances** shown are as of February 28, 2017 unless otherwise stated.   For details of your retirement accounts, credit accounts or securities accounts, you will receive separate statements.  Balance summary information for annuities is provided by the issuing insurance companies and believed to be reliable without guarantee of its completeness or accuracy.

████████████████████████████████

DOVE TRANSPORT SERVICE L.P.                                    Account Number: 000000220003928

## CHECKING SUMMARY

| | INSTANCES | AMOUNT |
|---|---|---|
| **Beginning Balance** | | **-$874.04** |
| Deposits and Additions | 8 | 2,130.94 |
| Checks Paid | 3 | -190.43 |
| ATM & Debit Card Withdrawals | 16 | -344.55 |
| Electronic Withdrawals | 2 | -500.00 |
| Other Withdrawals | 1 | -252.00 |
| Fees | 3 | -78.00 |
| **Ending Balance** | 33 | **-$108.08** |

04-Apr-18

04Apr18-313

THIS PAGE IS PART OF A STATEMENT REQUEST
GROUP ID G04Apr18-313



February 01, 2017 through February 28, 2017
Primary Account: 000000220003928

Thank you for your military service and commitment to our country. Your monthly service fee was waived as a benefit of Chase Military Banking.

## DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | | AMOUNT |
|---|---|---|---|
| 02/02 | Nys Doh     Hcclaimpmt 03882157 | CCD ID: 1141797357 | $1,310.92 |
| 02/09 | Nys Doh     Hcclaimpmt 03882157 | CCD ID: 1141797357 | 360.02 |
| 02/21 | Online Transfer From Sav ...3625 Transaction#: 6020220098 | | 70.00 |
| 02/21 | Online Transfer From Sav ...1605 Transaction#: 6020218686 | | 10.00 |
| 02/22 | Online Transfer From Sav ...3625 Transaction#: 6025452271 | | 10.00 |
| 02/23 | Online Transfer From Mma ...0306 Transaction#: 6028764128 | | 200.00 |
| 02/24 | Online Transfer From Chk ...7342 Transaction#: 6031038295 | | 150.00 |
| 02/24 | Online Transfer From Sav ...3625 Transaction#: 6031040797 | | 20.00 |
| **Total Deposits and Additions** | | | **$2,130.94** |

## CHECKS PAID

| CHECK NO. | DESCRIPTION | | | | DATE PAID | AMOUNT |
|---|---|---|---|---|---|---|
| 240 | Check # 240 | Cvs Caremark | 8007467287 | Boc ID: 58167801J1 | 02/16 | $85.43 |
| 242 * ^ | | | | | 02/27 | 80.00 |
| 376 * ^ | | | | | 02/22 | 25.00 |
| **Total Checks Paid** | | | | | | **$190.43** |

If you see a description in the Checks Paid section, it means that we received only electronic information about the check, not the original or an image of the check. As a result, we're not able to return the check to you or show you an image.

\* All of your recent checks may not be on this statement, either because they haven't cleared yet or they were listed on one of your previous statements.

^ An image of this check may be available for you to view on Chase.com.

## ATM & DEBIT CARD WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 02/01 | Card Purchase          01/31 229 Linden Restauran Cambria Heigh NY Card 9771 | $15.20 |
| 02/02 | Card Purchase          01/31 Elmont Deli Plus Elmont NY Card 9771 | 11.50 |
| 02/13 | Card Purchase With Pin  02/11 Tridev Corp. Bayside NY Card 8024 | 10.00 |
| 02/13 | Card Purchase With Pin  02/13 366 Middle Corp Coram NY Card 8024 | 40.00 |
| 02/14 | Card Purchase          02/13 Usi Bellport Gasoline Bellport NY Card 8024 | 20.00 |
| 02/16 | Card Purchase With Pin  02/16 Brookville Auto Svc Glen Head NY Card 8024 | 20.12 |
| 02/17 | Card Purchase With Pin  02/17 Kings Ronkonkoma C-Sto Ronkonkoma NY Card 8024 | 19.71 |
| 02/17 | Card Purchase With Pin  02/17 Kings Ronkonkoma C-Sto Ronkonkoma NY Card 8024 | 27.00 |
| 02/21 | Card Purchase With Pin  02/19 Hospital Road Valero East Patchogu NY Card 8024 | 25.00 |
| 02/21 | Card Purchase With Pin  02/20 Hospital Road Valero East Patchogu NY Card 8024 | 20.00 |
| 02/22 | Card Purchase With Pin  02/22 Wheeler Development Hauppauge NY Card 8024 | 25.00 |
| 02/23 | Card Purchase          02/22 Usi Bellport Gasoline Bellport NY Card 8024 | 20.00 |
| 02/23 | Card Purchase With Pin  02/23 Michael T. Lynch Garden City NY Card 8024 | 20.00 |
| 02/27 | Card Purchase With Pin  02/26 Valero Main St 910 S East Patchogu NY Card 8024 | 21.01 |
| 02/27 | Card Purchase With Pin  02/27 Wheeler Development Hauppauge NY Card 8024 | 25.01 |
| 02/27 | Card Purchase With Pin  02/27 Valero Main St 910 S East Patchogu NY Card 8024 | 25.00 |
| **Total ATM & Debit Card Withdrawals** | | **$344.55** |

04-Apr-18

THIS PAGE IS PART OF A STATEMENT REQUEST
GROUP ID G04Apr18-313

 CHASE

February 01, 2017 through February 28, 2017
Primary Account: 000000220003928



## ATM & DEBIT CARD SUMMARY

John Raphael  Card 8024

| | |
|---|---|
| Total ATM Withdrawals & Debits | $0.00 |
| Total Card Purchases | $317.85 |
| Total Card Deposits & Credits | $0.00 |

Jean R Daniel  Card 9771

| | |
|---|---|
| Total ATM Withdrawals & Debits | $0.00 |
| Total Card Purchases | $26.70 |
| Total Card Deposits & Credits | $0.00 |

ATM & Debit Card Totals

| | |
|---|---|
| Total ATM Withdrawals & Debits | $0.00 |
| Total Card Purchases | $344.55 |
| Total Card Deposits & Credits | $0.00 |

## ELECTRONIC WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 02/02 | 02/02 Online Payment 5942105839 To Wells Fargo Dealer Services | $300.00 |
| 02/10 | 02/10 Online Transfer To Chk ...7342 Transaction#: 5999337011 | 200.00 |
| | **Total Electronic Withdrawals** | **$500.00** |

## OTHER WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 02/24 | 02/24 Withdrawal | $252.00 |
| | **Total Other Withdrawals** | **$252.00** |

## FEES

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 02/01 | Insufficient Funds Fee For A $15.20 Card Purchase - Details:     0131229 Linden Restauran Cambria Heigh NY04563310024799771 05 | $34.00 |
| 02/15 | Online Payroll: Monthly Service Fee | 10.00 |
| 02/27 | Insufficient Funds Fee For Check #242 IN The Amount of $80.00 | 34.00 |
| | **Total Fees** | **$78.00** |

## DAILY ENDING BALANCE

| DATE | AMOUNT | DATE | AMOUNT | DATE | AMOUNT |
|---|---|---|---|---|---|
| 02/01 | -$923.24 | 02/14 | 166.20 | 02/22 | -1.06 |
| 02/02 | 76.18 | 02/15 | 156.20 | 02/23 | 158.94 |
| 02/09 | 436.20 | 02/16 | 50.65 | 02/24 | 76.94 |
| 02/10 | 236.20 | 02/17 | 3.94 | 02/27 | -108.08 |
| 02/13 | 186.20 | 02/21 | 38.94 | | |

04-Apr-18

04Apr18-313



February 01, 2017 through February 28, 2017
Primary Account: 000000220003928

## SERVICE CHARGE SUMMARY

| TRANSACTIONS FOR SERVICE FEE CALCULATION | NUMBER OF TRANSACTIONS |
|---|---|
| Checks Paid / Debits | 20 |
| Deposits / Credits | 2 |
| Deposited Items | 0 |
| Transaction Total | 22 |

| SERVICE FEE CALCULATION | AMOUNT |
|---|---|
| Service Fee | $0.00 |
| Service Fee Credit | $0.00 |
| Net Service Fee | $0.00 |
| Excessive Transaction Fees (Above 200) | $0.00 |
| Total Service Fees | $0.00 |

DOVE TRANSPORT SERVICE, L.P.                    Account Number: 000003567191605

## SAVINGS SUMMARY

| | INSTANCES | AMOUNT |
|---|---|---|
| Beginning Balance | | $20.00 |
| Electronic Withdrawals | 1 | -10.00 |
| Ending Balance | 1 | $10.00 |

Annual Percentage Yield Earned This Period                    0.00%

The monthly service fee for this account was waived as an added feature of Chase BusinessSelect Checking account.

## TRANSACTION DETAIL

| DATE | DESCRIPTION | AMOUNT | BALANCE |
|---|---|---|---|
| | Beginning Balance | | $20.00 |
| 02/21 | 02/19 Online Transfer To Chk ...3928 Transaction#: 6020218686 | -10.00 | 10.00 |
| | Ending Balance | | $10.00 |

10 deposited items are provided with your account each month.  There is a $0.20 fee for each additional deposited item.

04-Apr-18

04Apr18-313

THIS PAGE IS PART OF A STATEMENT REQUEST
GROUP ID G04Apr18-313



February 01, 2017 through February 28, 2017
Primary Account: 000000220003928



**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS:** Call or write us at the phone number or address on the front of this statement (non-personal accounts contact Customer Service) if you think your statement or receipt is incorrect or if you need more information about a transfer listed on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error appeared. Be prepared to give us the following information:

- Your name and account number
- The dollar amount of the suspected error
- A description of the error or transfer you are unsure of, why you believe it is an error, or why you need more information.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days (or 20 business days for new accounts) to do this, we will credit your account for the amount you think is in error so that you will have use of the money during the time it takes us to complete our investigation.

**IN CASE OF ERRORS OR QUESTIONS ABOUT NON-ELECTRONIC TRANSACTIONS:** Contact the bank immediately if your statement is incorrect or if you need more information about any non-electronic transactions (checks or deposits) on this statement. If any such error appears, you must notify the bank in writing no later than 30 days after the statement was made available to you. For more complete details, see the Account Rules and Regulations or other applicable account agreement that governs your account.

 JPMorgan Chase Bank, N.A. Member FDIC

04-Apr-18

04Apr18-313

THIS PAGE IS PART OF A STATEMENT REQUEST
GROUP ID G04Apr18-313



February 01, 2017 through February 28, 2017
Primary Account: 000000220003928

This Page Intentionally Left Blank

04-Apr-18

04Apr18-313

THIS PAGE IS PART OF A STATEMENT REQUEST
GROUP ID G04Apr18-313

# CHASE ⬡

JPMorgan Chase Bank, N.A.
P O Box 659754
San Antonio, TX 78265-9754

March 01, 2017 through March 31, 2017
Primary Account: 000000220003928

### CUSTOMER SERVICE INFORMATION

| | |
|---|---|
| Web site: | Chase.com |
| Service Center: | 1-800-242-7338 |
| Deaf and Hard of Hearing: | 1-800-242-7383 |
| Para Espanol: | 1-888-622-4273 |
| International Calls: | 1-713-262-1679 |

00123166 DRE 602 21809117 NNNNNNNNNNN   1 000000000 62 0000
DOVE TRANSPORT SERVICE L.P.
3911 211TH ST
BAYSIDE NY 11361-1957

## ASSETS

| Checking & Savings | ACCOUNT | BEGINNING BALANCE THIS PERIOD | ENDING BALANCE THIS PERIOD |
|---|---|---|---|
| Chase BusinessSelect Checking | 000000220003928 | -$108.08 | $1,747.90 |
| Chase Business Savings | 000003567191605 | 10.00 | 2.78 |
| **Total** | | **-$98.08** | **$1,750.68** |

| TOTAL ASSETS | -$98.08 | $1,750.68 |
|---|---|---|

All **Summary Balances** shown are as of March 31, 2017 unless otherwise stated.   For details of your retirement accounts, credit accounts or securities accounts, you will receive separate statements.  Balance summary information for annuities is provided by the issuing insurance companies and believed to be reliable without guarantee of its completeness or accuracy.

DOVE TRANSPORT SERVICE L.P.                                           Account Number: 000000220003928

## CHECKING SUMMARY

| | INSTANCES | AMOUNT |
|---|---|---|
| **Beginning Balance** | | **-$108.08** |
| Deposits and Additions | 27 | 16,223.05 |
| Checks Paid | 8 | -2,502.00 |
| ATM & Debit Card Withdrawals | 35 | -1,272.39 |
| Electronic Withdrawals | 6 | -6,186.18 |
| Other Withdrawals | 13 | -4,016.00 |
| Fees | 17 | -390.50 |
| **Ending Balance** | **106** | **$1,747.90** |

04-Apr-18

04Apr18-313

THIS PAGE IS PART OF A STATEMENT REQUEST
GROUP ID G04Apr18-313



March 01, 2017 through March 31, 2017
Primary Account: **000000220003928**

Thank you for your military service and commitment to our country. Your monthly service fee was waived as a benefit of Chase Military Banking.

## DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 03/02 | Nys Doh      Hcclaimpmt 03882157      CCD ID: 1141797357 | $667.63 |
| 03/02 | Online Transfer From Mma ...0306 Transaction#: 6047622435 | 350.00 |
| 03/03 | ATM Check Deposit      03/03 4711 Queens Blvd Sunnyside NY Card 8617 | 80.50 |
| 03/03 | Online Transfer From Mma ...0306 Transaction#: 6049967614 | 200.00 |
| 03/06 | Deposit      1665485826 | 344.25 |
| 03/07 | Deposit      876962250 | 180.00 |
| 03/07 | Online Transfer From Mma ...0306 Transaction#: 6059618103 | 100.00 |
| 03/09 | Deposit      1601024829 | 180.00 |
| 03/09 | Nys Doh      Hcclaimpmt 03882157      CCD ID: 1141797357 | 334.19 |
| 03/15 | Deposit      874108891 | 90.00 |
| 03/15 | Online Transfer From Mma ...0306 Transaction#: 6078722682 | 50.00 |
| 03/16 | Deposit      1661672037 | 340.00 |
| 03/16 | Nys Doh      Hcclaimpmt 03882157      CCD ID: 1141797357 | 1,260.10 |
| 03/20 | Deposit      877082455 | 1,212.61 |
| 03/20 | Online Transfer From Sav ...1605 Transaction#: 6085961722 | 10.00 |
| 03/20 | Online Transfer From Sav ...3625 Transaction#: 6085962207 | 10.00 |
| 03/23 | Nys Doh      Hcclaimpmt 03882157      CCD ID: 1141797357 | 1,593.87 |
| 03/23 | Nys Doh      Hcclaimpmt 03882157      CCD ID: 1141797357 | 60.73 |
| 03/29 | Reversal of Check      123117 | 982.00 |
| 03/29 | Insufficient Funds Fee Refund | 34.00 |
| 03/29 | Insufficient Funds Fee Refund | 34.00 |
| 03/30 | Reversal of Check      70681 | 492.00 |
| 03/30 | Reversal of Check      70680 | 488.00 |
| 03/30 | Insufficient Funds Fee Refund | 34.00 |
| 03/30 | Insufficient Funds Fee Refund | 34.00 |
| 03/30 | Online Transfer From Chk ...5168 Transaction#: 6111761689 | 5,000.00 |
| 03/30 | Nys Doh      Hcclaimpmt 03882157      CCD ID: 1141797357 | 2,061.17 |
| **Total Deposits and Additions** | | **$16,223.05** |

04-Apr-18

04Apr18-313

THIS PAGE IS PART OF A STATEMENT REQUEST
GROUP ID G04Apr18-313

 CHASE

March 01, 2017 through March 31, 2017
Primary Account: 000000220003928



## CHECKS PAID

| CHECK NO. | DESCRIPTION | DATE PAID | AMOUNT |
|---|---|---|---|
| 243 ^ | 03/02 | 03/02 | $60.00 |
| 244 ^ | 03/02 | 03/02 | 40.00 |
| 379 * ^ | | 03/01 | 100.00 |
| 380 ^ | | 03/03 | 140.00 |
| 70613 * ^ | | 03/29 | 200.00 |
| 70680 * ^ | | 03/29 | 488.00 |
| 70681 ^ | | 03/29 | 492.00 |
| 123117 * ^ | | 03/28 | 982.00 |
| **Total Checks Paid** | | | **$2,502.00** |

If you see a description in the Checks Paid section, it means that we received only electronic information about the check,
not the original or an image of the check. As a result, we're not able to return the check to you or show you an image.

\* All of your recent checks may not be on this statement, either because they haven't cleared yet or they were listed on
  one of your previous statements.

^ An image of this check may be available for you to view on Chase.com.

## ATM & DEBIT CARD WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 03/02 | Card Purchase With Pin  03/02 Conoco Medford Medford NY Card 8024 | $10.00 |
| 03/06 | Card Purchase          03/04 Michaels Stores 7770 Medford NY Card 4215 | 15.16 |
| 03/06 | Card Purchase          03/04 Michaels Stores 7770 Medford NY Card 4215 | 7.58 |
| 03/06 | Card Purchase With Pin  03/05 Convenience Manageme Centereach NY Card 4215 | 33.17 |
| 03/07 | Card Purchase          03/06 Usi Bellport Gasoline Bellport NY Card 4215 | 20.00 |
| 03/07 | Card Purchase          03/06 Usi Bellport Gasoline Bellport NY Card 8024 | 30.00 |
| 03/07 | Card Purchase          03/06 Usi Bellport Gasoline Bellport NY Card 8024 | 25.00 |
| 03/08 | ATM Withdrawal          03/08 10 Farber DR Ste 49 Bellport NY Card 4215 | 80.00 |
| 03/09 | Card Purchase          03/08 Usi Bellport Gasoline Bellport NY Card 8024 | 30.00 |
| 03/09 | Card Purchase With Pin  03/09 Hospital Road Valero East Patchogu NY Card 8024 | 36.10 |
| 03/10 | Card Purchase          03/09 Usi Bellport Gasoline Bellport NY Card 8024 | 25.00 |
| 03/10 | Card Purchase With Pin  03/10 Hospital Road Valero East Patchogu NY Card 8024 | 25.00 |
| 03/16 | Card Purchase With Pin  03/16 Hospital Road Valero East Patchogu NY Card 4215 | 15.01 |
| 03/16 | Card Purchase With Pin  03/16 B&P Auto Service Inc Islandia NY Card 4215 | 36.05 |
| 03/17 | Card Purchase          03/16 New York State Dmv Riverhead NY Card 4215 | 12.50 |
| 03/20 | Card Purchase          03/17 Q T Nail Spa East Patchogu NY Card 4215 | 10.00 |
| 03/20 | Card Purchase          03/17 Penny Saver New Carrie 631-6988400 NY Card 4215 | 168.00 |
| 03/20 | Card Purchase          03/17 Speedway 07817 Long Island C NY Card 8617 | 50.01 |
| 03/20 | Card Purchase          03/17 Usi Bellport Gasoline Bellport NY Card 4215 | 28.71 |
| 03/20 | Card Purchase          03/18 Usi Bellport Gasoline Bellport NY Card 4215 | 40.00 |
| 03/22 | Card Purchase          03/21 Usi Bellport Gasoline Bellport NY Card 4215 | 30.00 |
| 03/23 | Card Purchase          03/21 Sunoco 0789752300 Lindenhurst NY Card 4215 | 31.39 |
| 03/23 | Card Purchase          03/22 Usi Bellport Gasoline Bellport NY Card 4215 | 30.00 |
| 03/24 | Card Purchase          03/23 Speedway 07817 Long Island C NY Card 8617 | 25.00 |
| 03/27 | Card Purchase          03/26 Gulf Oil 92054534 Amityville NY Card 8617 | 46.00 |
| 03/27 | Card Purchase          03/26 Usi Bellport Gasoline Bellport NY Card 4215 | 25.00 |
| 03/27 | Card Purchase With Pin  03/27 3173 Gas Corp Medford NY Card 4215 | 19.65 |
| 03/28 | Card Purchase          03/27 Usi Bellport Gasoline Bellport NY Card 4215 | 26.51 |
| 03/28 | Card Purchase          03/27 Sq *Greenpoint Auto Long Island C NY Card 8617 | 43.55 |

04-Apr-18

04Apr18-313

 CHASE

March 01, 2017 through March 31, 2017
Primary Account: 000000220003928

## ATM & DEBIT CARD WITHDRAWALS *(continued)*

| DATE | DESCRIPTION | | AMOUNT |
|------|-------------|---|--------|
| 03/29 | Card Purchase | 03/28 Usi Bellport Gasoline Bellport NY Card 4215 | 15.00 |
| 03/30 | Card Purchase | 03/29 Usi Bellport Gasoline Bellport NY Card 4215 | 25.00 |
| 03/30 | Card Purchase | 03/29 Usi Bellport Gasoline Bellport NY Card 4215 | 25.00 |
| 03/31 | Card Purchase | 03/30 Usi Bellport Gasoline Bellport NY Card 4215 | 25.00 |
| 03/31 | Card Purchase | 03/30 Penny Saver New Carrie 631-6988400 NY Card 4215 | 168.00 |
| 03/31 | Card Purchase | 03/30 Speedway 07676 Medford NY Card 4215 | 40.00 |
| **Total ATM & Debit Card Withdrawals** | | | **$1,272.39** |

## ATM & DEBIT CARD SUMMARY

Jean R Daniel  Card 4215

| | | |
|---|---|---|
| | Total ATM Withdrawals & Debits | $80.00 |
| | Total Card Purchases | $846.73 |
| | Total Card Deposits & Credits | $0.00 |

John Raphael  Card 8024

| | | |
|---|---|---|
| | Total ATM Withdrawals & Debits | $0.00 |
| | Total Card Purchases | $181.10 |
| | Total Card Deposits & Credits | $0.00 |

Mohammed S Raushan  Card 8617

| | | |
|---|---|---|
| | Total ATM Withdrawals & Debits | $0.00 |
| | Total Card Purchases | $164.56 |
| | Total Card Deposits & Credits | $80.50 |

ATM & Debit Card Totals

| | | |
|---|---|---|
| | Total ATM Withdrawals & Debits | $80.00 |
| | Total Card Purchases | $1,192.39 |
| | Total Card Deposits & Credits | $80.50 |

## ELECTRONIC WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 03/02 | 03/02 Online Payment 6012006257 To Wells Fargo Dealer Services | $300.00 |
| 03/03 | ADP Payroll Fees ADP - Fees 2Rgzx   1465799 CCD ID: 9659605001 | 26.70 |
| 03/10 | 03/10 Online Transfer To Sav ...1605 Transaction#: 6066005423 | 382.78 |
| 03/23 | 03/23 Online Payment 6096054757 To Auto Loan 2704 | 300.00 |
| 03/30 | 03/30 Online Wire Transfer Via: First Landmark Bk/061121119 A/C: Sovereign Risk Solutions Trust Acctmarietta GA 30067 US Ref: 2017-2018 Dove Transport Service Vehicle Insurance Downpayment/Bnf/Sov Ereign Risk Solutions Dove Transpor T Vehicle Insurance Downp Ayment Imad: 0330B1Qgc03C003309 Trn: 3761900089Es | 5,150.00 |
| 03/31 | ADP Payroll Fees ADP - Fees 2Rgzx   4917772 CCD ID: 9659605001 | 26.70 |
| **Total Electronic Withdrawals** | | **$6,186.18** |

04-Apr-18

04Apr18-313



March 01, 2017 through March 31, 2017
Primary Account: 000000220003928



## OTHER WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 03/02 | 03/02 Withdrawal | $350.00 |
| 03/02 | 03/02 Withdrawal | 20.00 |
| 03/03 | 03/03 Withdrawal | 200.00 |
| 03/06 | 03/04 Withdrawal | 130.00 |
| 03/09 | 03/09 Withdrawal | 50.00 |
| 03/13 | 03/11 Transfer To Sav Xxxxxx1605 | 40.00 |
| 03/13 | 03/13 Withdrawal | 30.00 |
| 03/15 | 03/15 Withdrawal | 25.00 |
| 03/16 | 03/16 Withdrawal | 815.00 |
| 03/20 | 03/18 Withdrawal | 500.00 |
| 03/20 | 03/18 Withdrawal | 500.00 |
| 03/20 | 03/18 Withdrawal | 500.00 |
| 03/24 | 03/24 Withdrawal | 856.00 |
| **Total Other Withdrawals** | | **$4,016.00** |

## FEES

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 03/01 | Insufficient Funds Fee For Check #379 IN The Amount of $100.00 | $34.00 |
| 03/03 | Insufficient Funds Fee For Check #380 IN The Amount of $140.00 | 34.00 |
| 03/03 | Insufficient Funds Fee For A $26.70 Item - Details: ADP Payroll Fees ADP - Fees 2Rgzx 1465799 CCD ID: 9659605001 | 34.00 |
| 03/06 | Extended Overdraft Fee | 15.00 |
| 03/13 | Non-Chase ATM Fee-Inq | 2.50 |
| 03/15 | Online Payroll: Monthly Service Fee | 10.00 |
| 03/16 | Official Checks Charge | 8.00 |
| 03/20 | Official Checks Charge | 8.00 |
| 03/20 | Official Checks Charge | 8.00 |
| 03/24 | Official Checks Charge | 8.00 |
| 03/28 | Returned Item Fee For An Unpaid Check #123113 IN The Amount of $1,498.00 | 34.00 |
| 03/28 | Insufficient Funds Fee For Check #123117 IN The Amount of $982.00 | 34.00 |
| 03/29 | Insufficient Funds Fee For Check #70681 IN The Amount of $492.00 | 34.00 |
| 03/29 | Insufficient Funds Fee For Check #70680 IN The Amount of $488.00 | 34.00 |
| 03/29 | Insufficient Funds Fee For Check #70613 IN The Amount of $200.00 | 34.00 |
| 03/29 | Returned Item Fee For An Unpaid Check #70612 IN The Amount of $200.00 | 34.00 |
| 03/30 | Online Domestic Wire Fee | 25.00 |
| **Total Fees** | | **$390.50** |

## DAILY ENDING BALANCE

| DATE | AMOUNT | DATE | AMOUNT | DATE | AMOUNT |
|------|--------|------|--------|------|--------|
| 03/01 | -$242.08 | 03/07 | 189.69 | 03/13 | 2.50 |
| 03/02 | -4.45 | 03/08 | 109.69 | 03/15 | 107.50 |
| 03/03 | -158.65 | 03/09 | 507.78 | 03/16 | 833.54 |
| 03/06 | -15.31 | 03/10 | 75.00 | 03/17 | 821.04 |

04-Apr-18

THIS PAGE IS PART OF A STATEMENT REQUEST
GROUP ID G04Apr18-313

04Apr18-313

 **CHASE**

March 01, 2017 through March 31, 2017
Primary Account: 000000220003928

## DAILY ENDING BALANCE (continued)

| DATE | AMOUNT | DATE | AMOUNT | DATE | AMOUNT |
|------|--------|------|--------|------|--------|
| 03/20 | 240.93 | 03/24 | 615.14 | 03/29 | -876.57 |
| 03/22 | 210.93 | 03/27 | 524.49 | 03/30 | 2,007.60 |
| 03/23 | 1,504.14 | 03/28 | -595.57 | 03/31 | 1,747.90 |

## SERVICE CHARGE SUMMARY

| TRANSACTIONS FOR SERVICE FEE CALCULATION | NUMBER OF TRANSACTIONS |
|---|---|
| Checks Paid / Debits | 56 |
| Deposits / Credits | 13 |
| Deposited Items | 8 |
| **Transaction Total** | 77 |

| SERVICE FEE CALCULATION | AMOUNT |
|---|---|
| Service Fee | $0.00 |
| Service Fee Credit | $0.00 |
| **Net Service Fee** | **$0.00** |
| Excessive Transaction Fees (Above 200) | $0.00 |
| **Total Service Fees** | **$0.00** |

| CASH PROCESSING | AMOUNT |
|---|---|
| Cash Deposits Immediate Verification | $340.00 |
| Cash Deposits Post Verification/Night Drop | $0.00 |
| **Cash Deposits Total** | **$340.00** |
| Cash Deposits Allowed | $7,500.00 |
| **Excess Cash Deposits** | **$0.00** |

██████████████████████████████

DOVE TRANSPORT SERVICE, L.P.                              Account Number: 000003567191605

## SAVINGS SUMMARY

| | INSTANCES | AMOUNT |
|---|---|---|
| **Beginning Balance** | | $10.00 |
| Deposits and Additions | 2 | 422.78 |
| Electronic Withdrawals | 1 | -10.00 |
| Other Withdrawals | 1 | -420.00 |
| **Ending Balance** | 4 | $2.78 |

Annual Percentage Yield Earned This Period                    0.00%

The monthly service fee for this account was waived as an added feature of Chase BusinessSelect Checking account.

04-Apr-18

THIS PAGE IS PART OF A STATEMENT REQUEST
GROUP ID G04Apr18-313

 CHASE

March 01, 2017 through March 31, 2017
Primary Account: 000000220003928

## TRANSACTION DETAIL

| DATE | DESCRIPTION | AMOUNT | BALANCE |
|---|---|---|---|
| | Beginning Balance | | $10.00 |
| 03/10 | Online Transfer From Chk ...3928 Transaction#: 6066005423 | 382.78 | 392.78 |
| 03/13 | Transfer From Chk Xxxxx3928 | 40.00 | 432.78 |
| 03/13 | 03/11 Withdrawal | -420.00 | 12.78 |
| 03/20 | 03/18 Online Transfer To Chk ...3928 Transaction#: 6085961722 | -10.00 | 2.78 |
| | Ending Balance | | $2.78 |

10 deposited items are provided with your account each month.  There is a $0.20 fee for each additional deposited item.



**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS:** Call or write us at the phone number or address on the front of this statement (non-personal accounts contact Customer Service) if you think your statement or receipt is incorrect or if you need more information about a transfer listed on the statement or receipt.  We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error appeared.  Be prepared to give us the following information:
 • Your name and account number
 • The dollar amount of the suspected error
 • A description of the error or transfer you are unsure of, why you believe it is an error, or why you need more information.
We will investigate your complaint and will correct any error promptly.  If we take more than 10 business days (or 20 business days for new accounts) to do this, we will credit your account for the amount you think is in error so that you will have use of the money during the time it takes us to complete our investigation.

**IN CASE OF ERRORS OR QUESTIONS ABOUT NON-ELECTRONIC TRANSACTIONS:** Contact the bank immediately if your statement is incorrect or if you need more information about any non-electronic transactions (checks or deposits) on this statement.  If any such error appears, you must notify the bank in writing no later than 30 days after the statement was made available to you.  For more complete details, see the Account Rules and Regulations or other applicable account agreement that governs your account.

 **JPMorgan Chase Bank, N.A. Member FDIC**

04-Apr-18

04Apr18-313

**THIS PAGE IS PART OF A STATEMENT REQUEST**
**GROUP ID G04Apr18-313**

 CHASE

March 01, 2017 through March 31, 2017
Primary Account: **000000220003928**

This Page Intentionally Left Blank

04-Apr-18

04Apr18-313

THIS PAGE IS PART OF A STATEMENT REQUEST
GROUP ID G04Apr18-313

# CHASE ◈

JPMorgan Chase Bank, N.A.
P O Box 659754
San Antonio, TX 78265 - 9754

April 01, 2017 through April 28, 2017
Primary Account: 000000220003928

### CUSTOMER SERVICE INFORMATION

| | |
|---|---|
| Web site: | Chase.com |
| Service Center: | 1-800-242-7338 |
| Deaf and Hard of Hearing: | 1-800-242-7383 |
| Para Espanol: | 1-888-622-4273 |
| International Calls: | 1-713-262-1679 |

00123934 DRE 802 219 11917 NNNNNNNNNNN  1 000000000 62 0000
DOVE TRANSPORT SERVICE L.P.
3911 211TH ST
BAYSIDE NY 11361-1957

---

### ASSETS

| Checking & Savings | ACCOUNT | BEGINNING BALANCE THIS PERIOD | ENDING BALANCE THIS PERIOD |
|---|---|---|---|
| Chase BusinessSelect Checking | 000000220003928 | $1,747.90 | -$975.50 |
| Chase Business Savings | 000003567191605 | 2.78 | 7.00 |
| Total | | $1,750.68 | -$968.50 |

| TOTAL ASSETS | | $1,750.68 | -$968.50 |
|---|---|---|---|

All Summary Balances shown are as of April 28, 2017 unless otherwise stated.   For details of your retirement accounts, credit accounts or securities accounts, you will receive separate statements.  Balance summary information for annuities is provided by the issuing insurance companies and believed to be reliable without guarantee of its completeness or accuracy.

---

DOVE TRANSPORT SERVICE L.P.                          Account Number: 000000220003928

### CHECKING SUMMARY

| | INSTANCES | AMOUNT |
|---|---|---|
| Beginning Balance | | $1,747.90 |
| Deposits and Additions | 15 | 9,250.68 |
| Checks Paid | 9 | -2,979.39 |
| ATM & Debit Card Withdrawals | 28 | -2,326.58 |
| Electronic Withdrawals | 5 | -4,560.11 |
| Other Withdrawals | 5 | -1,520.00 |
| Fees | 18 | -588.00 |
| Ending Balance | 80 | -$975.50 |

04-Apr-18                                                                                        04Apr18-313

 **CHASE** ⬟

April 01, 2017 through April 28, 2017
Primary Account: 000000220003928

Thank you for your military service and commitment to our country. Your monthly service fee was waived as a benefit of Chase Military Banking.

## DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 04/03 | Fee Reversal | $34.00 |
| 04/03 | Fee Reversal | 34.00 |
| 04/04 | Reversal | 200.00 |
| 04/05 | Reversal of Check        70709 | 889.39 |
| 04/05 | Insufficient Funds Fee Refund | 34.00 |
| 04/06 | Nys Doh        Hcclaimpmt 03882157        CCD ID: 1141797357 | 1,712.32 |
| 04/07 | Insufficient Funds Fee Refund | 34.00 |
| 04/07 | Insufficient Funds Fee Refund | 34.00 |
| 04/07 | Transfer From Chk Xxxxxx7342 | 128.44 |
| 04/13 | Nys Doh        Hcclaimpmt 03882157        CCD ID: 1141797357 | 1,435.15 |
| 04/14 | Deposit        1680519638 | 90.00 |
| 04/19 | ATM Check Deposit        04/19 4122 Bell Blvd Bayside NY Card 9027 | 70.50 |
| 04/20 | Nys Doh        Hcclaimpmt 03882157        CCD ID: 1141797357 | 2,086.97 |
| 04/24 | Online Transfer From Mma ...0306 Transaction#: 6170008363 | 50.00 |
| 04/27 | Nys Doh        Hcclaimpmt 03882157        CCD ID: 1141797357 | 2,417.91 |
| **Total Deposits and Additions** | | **$9,250.68** |

## CHECKS PAID

| CHECK NO. | DESCRIPTION | DATE PAID | AMOUNT |
|-----------|-------------|-----------|--------|
| 246  ^ | | 04/26 | $200.00 |
| 247  ^ | | 04/21 | 100.00 |
| 273  * ^ | 04/01 | 04/03 | 700.00 |
| 274  ^ | 04/01 | 04/03 | 500.00 |
| 275  ^ | 04/01 | 04/03 | 100.00 |
| 383  * ^ | | 04/03 | 140.00 |
| 386  * ^ | | 04/28 | 150.00 |
| 70612  * ^ | | 04/03 | 200.00 |
| 70709  * ^ | | 04/04 | 889.39 |
| **Total Checks Paid** | | | **$2,979.39** |

If you see a description in the Checks Paid section, it means that we received only electronic information about the check, not the original or an image of the check. As a result, we're not able to return the check to you or show you an image.
* All of your recent checks may not be on this statement, either because they haven't cleared yet or they were listed on one of your previous statements.
^ An image of this check may be available for you to view on Chase.com.

## ATM & DEBIT CARD WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 04/06 | Card Purchase        04/05 Gulf Oil 92040053 Bayside NY Card 8617 | $20.00 |
| 04/07 | Card Purchase        04/06 Windham NY Workers 800-9690059 NH Card 8617 | 166.66 |
| 04/14 | Card Purchase        04/12 Hess Station #32269 Patchogue NY Card 3229 | 26.44 |
| 04/14 | Card Purchase        04/13 Gascon Coram NY Card 3229 | 32.57 |
| 04/14 | Card Purchase With Pin  04/14 Wal-Mart #2915 South Setauke NY Card 3229 | 217.82 |

04-Apr-18                                                                                                      04Apr18-313

THIS PAGE IS PART OF A STATEMENT REQUEST
GROUP ID G04Apr18-313



April 01, 2017 through April 28, 2017
Primary Account: 000000220003928

## ATM & DEBIT CARD WITHDRAWALS *(continued)*

| DATE | DESCRIPTION | | AMOUNT |
|------|-------------|---|--------|
| 04/17 | Card Purchase | 04/13 Rocco's Pizza MT Sinai NY Card 3229 | 44.48 |
| 04/17 | Card Purchase | 04/13 Nataloni Pediatrics Mount Sinai NY Card 3229 | 70.00 |
| 04/17 | Card Purchase | 04/15 Roccos Amici Express Mount Sinai NY Card 3229 | 61.62 |
| 04/17 | Card Purchase | 04/15 Stop & Shop 0579 Coram NY Card 3229 | 27.47 |
| 04/17 | Card Purchase | 04/17 Bp#9572728366 Middle CO Coram NY Card 3229 | 30.00 |
| 04/18 | Card Purchase | 04/17 Hertz Rent-A-Car Patchogue NY Card 3229 | 195.40 |
| 04/18 | Card Purchase | 04/17 Planet Gas Greenlawn NY Card 3229 | 30.00 |
| 04/18 | Card Purchase | 04/17 Bgc* 00000000000069816 Dallas TX Card 3229 | 39.95 |
| 04/18 | Card Purchase | 04/17 Progressive *Insuranc 800-776-4737 OH Card 3229 | 283.20 |
| 04/19 | Card Purchase | 04/18 Bp#9572728366 Middle CO Coram NY Card 3229 | 30.00 |
| 04/21 | Card Purchase | 04/20 7-Eleven 32873 Brentwood NY Card 3229 | 33.19 |
| 04/24 | Card Purchase | 04/21 Exxonmobil   97498547 Farmingdale NY Card 3229 | 39.40 |
| 04/24 | Card Purchase | 04/22 Sunoco 0007361909 Port Jefferso NY Card 3229 | 19.00 |
| 04/24 | ATM Withdrawal | 04/22 60 N Country Rd Port Jefferso NY Card 3229 | 140.00 |
| 04/24 | Card Purchase | 04/22 Sunoco 0725413901 Port Jefferso NY Card 3229 | 40.40 |
| 04/25 | Card Purchase W/Cash   04/25 Ideal Supermarket Port Jefferso NY Card 3229<br>Purchase $8.33 Cash Back $20.00 | | 28.33 |
| 04/26 | Card Purchase | 04/24 Sunoco 0103879300 Hewlett NY Card 3229 | 36.73 |
| 04/26 | Card Purchase | 04/25 Exxonmobil   99156796 Ronkonkoma NY Card 3229 | 10.00 |
| 04/26 | Card Purchase | 04/26 Papa John's #02995 516-697-2297 NY Card 3229 | 19.54 |
| 04/28 | Card Purchase | 04/26 Exxonmobil   97602999 Mount Sinai NY Card 3229 | 5.61 |
| 04/28 | Card Purchase | 04/26 Exxonmobil   97602999 Mount Sinai NY Card 3229 | 2.16 |
| 04/28 | Card Purchase | 04/28 Suffolk County Water 631-589-5200 NY Card 3229 | 598.96 |
| 04/28 | Card Purchase | 04/27 Bp#95712091099 Horseb Farmingville NY Card 3229 | 77.65 |
| **Total ATM & Debit Card Withdrawals** | | | **$2,326.58** |

## ATM & DEBIT CARD SUMMARY

Jean R Daniel  Card 3229

| | | |
|---|---|---|
| | Total ATM Withdrawals & Debits | $140.00 |
| | Total Card Purchases | $1,999.92 |
| | Total Card Deposits & Credits | $0.00 |

Mohammed S Raushan  Card 8617

| | | |
|---|---|---|
| | Total ATM Withdrawals & Debits | $0.00 |
| | Total Card Purchases | $186.66 |
| | Total Card Deposits & Credits | $0.00 |

Mohammed S Raushan  Card 9027

| | | |
|---|---|---|
| | Total ATM Withdrawals & Debits | $0.00 |
| | Total Card Purchases | $0.00 |
| | Total Card Deposits & Credits | $70.50 |

ATM & Debit Card Totals

| | | |
|---|---|---|
| | Total ATM Withdrawals & Debits | $140.00 |
| | Total Card Purchases | $2,186.58 |
| | Total Card Deposits & Credits | $70.50 |

04-Apr-18

04Apr18-313

THIS PAGE IS PART OF A STATEMENT REQUEST
GROUP ID G04Apr18-313

 CHASE

April 01, 2017 through April 28, 2017
Primary Account: 00000022000 3928

## ELECTRONIC WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 04/07 | 04/07 Online Transfer To  Chk ...7342 Transaction#: 6099178480 | $2,000.00 |
| 04/20 | 04/20 Online Payment 6047617106 To Csc Logic Inc | 250.00 |
| 04/21 | 04/21 Online Payment 6166393551 To Auto Loan 2704 | 280.41 |
| 04/27 | 04/27 Online Transfer To Sav ...1605 Transaction#: 6178691388 | 2,000.00 |
| 04/28 | ADP Payroll Fees ADP - Fees 2Rgzx   1093800 CCD ID: 9659605001 | 29.70 |
| **Total Electronic Withdrawals** | | **$4,560.11** |

## OTHER WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 04/04 | 04/04 Withdrawal | $30.00 |
| 04/13 | 04/13 Withdrawal | 800.00 |
| 04/13 | 04/13 Withdrawal | 300.00 |
| 04/14 | 04/14 Withdrawal | 90.00 |
| 04/20 | 04/20 Withdrawal | 300.00 |
| **Total Other Withdrawals** | | **$1,520.00** |

## FEES

| DATE | DESCRIPTION | | AMOUNT |
|------|-------------|--|--------|
| 04/04 | Insufficient Funds Fee For Check #70709 IN The Amount of $889.39 | | $34.00 |
| 04/17 | Online Payroll: Monthly Service Fee | | 10.00 |
| 04/17 | Insufficient Funds Fee For A $61.62 Card Purchase - Details: Mount Sinai NY  04563310026033229 01 | 0415Roccos Amici Express | 34.00 |
| 04/17 | Insufficient Funds Fee For A $27.47 Card Purchase - Details: Coram NY   04563310026033229 05 | 0415Stop & Shop 0579 | 34.00 |
| 04/17 | Insufficient Funds Fee For A $30.00 Card Purchase - Details: CO Coram NY  04563310026033229 90 | 0417Bp#9572728366 Middle | 34.00 |
| 04/18 | Insufficient Funds Fee For A $195.40 Card Purchase - Details: Patchogue NY   04563310026033229 01 | 0417Hertz Rent-A-Car | 34.00 |
| 04/18 | Insufficient Funds Fee For A $30.00 Card Purchase - Details: NY   04563310026033229 90 | 0417Planet Gas Greenlawn | 34.00 |
| 04/18 | Insufficient Funds Fee For A $39.95 Card Purchase - Details: 00000000000069816 Dallas TX   04563310026033229 01 | 0417Bgc* | 34.00 |
| 04/18 | Insufficient Funds Fee For A $283.20 Card Purchase - Details: 800-776-4737 OH0456310026033229 01 | 0417Progressive *Insuranc | 34.00 |
| 04/19 | Insufficient Funds Fee For A $30.00 Card Purchase - Details: CO Coram NY   04563310026033229 90 | 0418Bp#9572728366 Middle | 34.00 |
| 04/26 | Insufficient Funds Fee For A $36.73 Card Purchase - Details: Hewlett NY   04563310026033229 90 | 0424Sunoco 0103879300 | 34.00 |
| 04/26 | Insufficient Funds Fee For A $10.00 Card Purchase - Details: Ronkonkoma NY 04563310026033229 90 | 0425Exxonmobil   99156796 | 34.00 |

04-Apr-18

04Apr18-313



April 01, 2017 through April 28, 2017
Primary Account: 000000220003928



## FEES *(continued)*

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 04/26 | Insufficient Funds Fee For A S19.54 Card Purchase - Details:       0426Papa John's #02995<br>516-697-2297 NY   04563310026033229<br>01 | 34.00 |
| 04/26 | Insufficient Funds Fee For Check #246 IN The Amount of $200.00 | 34.00 |
| 04/28 | Insufficient Funds Fee For A S598.96 Card Purchase - Details:       0428Suffolk County Water<br>631-589-5200 NY 04563310026033229<br>01 | 34.00 |
| 04/28 | Insufficient Funds Fee For A S77.65 Card Purchase - Details:       0427Bp#95712091099<br>Horseb Farmingville NY04563310026033229<br>90 | 34.00 |
| 04/28 | Insufficient Funds Fee For Check #386 IN The Amount of $150.00 | 34.00 |
| 04/28 | Insufficient Funds Fee For A S29.70 Item - Details: ADP Payroll Fees ADP - Fees 2Rgzx<br>1093800 CCD ID: 9659605001 | 34.00 |
| **Total Fees** | | **$588.00** |

## DAILY ENDING BALANCE

| DATE | AMOUNT | DATE | AMOUNT | DATE | AMOUNT |
|---|---|---|---|---|---|
| 04/03 | $175.90 | 04/14 | 126.32 | 04/24 | 37.27 |
| 04/04 | -577.49 | 04/17 | -219.25 | 04/25 | 8.94 |
| 04/05 | 345.90 | 04/18 | -903.80 | 04/26 | -393.33 |
| 04/06 | 2,038.22 | 04/19 | -897.30 | 04/27 | 24.58 |
| 04/07 | 68.00 | 04/20 | 639.67 | 04/28 | -975.50 |
| 04/13 | 403.15 | 04/21 | 226.07 | | |

## SERVICE CHARGE SUMMARY

| TRANSACTIONS FOR SERVICE FEE CALCULATION | NUMBER OF TRANSACTIONS |
|---|---|
| Checks Paid / Debits | 42 |
| Deposits / Credits | 6 |
| Deposited Items | 2 |
| **Transaction Total** | **50** |

| SERVICE FEE CALCULATION | AMOUNT |
|---|---|
| Service Fee | $0.00 |
| Service Fee Credit | $0.00 |
| **Net Service Fee** | **$0.00** |
| Excessive Transaction Fees (Above 200) | $0.00 |
| **Total Service Fees** | **$0.00** |

Case 2:21-cv-04097-DG-AKT   Document 55   Filed 10/29/21   Page 416 of 444 PageID #: 1982

04-Apr-18

THIS PAGE IS PART OF A STATEMENT REQUEST
GROUP ID G04Apr18-313



April 01, 2017 through April 28, 2017
Primary Account: 000000220003928

DOVE TRANSPORT SERVICE, L.P.                                  Account Number: 000003567191605

## SAVINGS SUMMARY

| | INSTANCES | AMOUNT |
|---|---|---|
| Beginning Balance | | $2.78 |
| Deposits and Additions | 1 | 2,000.00 |
| Electronic Withdrawals | 1 | -560.78 |
| Other Withdrawals | 2 | -1,435.00 |
| Ending Balance | 4 | $7.00 |
| Annual Percentage Yield Earned This Period | | 0.00% |

The monthly service fee for this account was waived as an added feature of Chase BusinessSelect Checking account.

## TRANSACTION DETAIL

| DATE | DESCRIPTION | AMOUNT | BALANCE |
|---|---|---|---|
| | Beginning Balance | | $2.78 |
| 04/27 | Online Transfer From Chk ...3928 Transaction#: 6178691388 | 2,000.00 | 2,002.78 |
| 04/27 | 04/27 Withdrawal | -735.00 | 1,267.78 |
| 04/27 | 04/27 Withdrawal | -700.00 | 567.78 |
| 04/28 | 04/28 Online Transfer To Sav ...3625 Transaction#: 6181403231 | -560.78 | 7.00 |
| | Ending Balance | | $7.00 |

10 deposited items are provided with your account each month.  There is a $0.20 fee for each additional deposited item.

**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS:** Call or write us at the phone number or address on the front of this statement (non-personal accounts contact Customer Service) if you think your statement or receipt is incorrect or if you need more information about a transfer listed on the statement or receipt.  We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error appeared.  Be prepared to give us the following information:
- Your name and account number
- The dollar amount of the suspected error
- A description of the error or transfer you are unsure of, why you believe it is an error, or why you need more information.
We will investigate your complaint and will correct any error promptly.  If we take more than 10 business days (or 20 business days for new accounts) to do this, we will credit your account for the amount you think is in error so that you will have use of the money during the time it takes us to complete our investigation.

**IN CASE OF ERRORS OR QUESTIONS ABOUT NON-ELECTRONIC TRANSACTIONS:** Contact the bank immediately if your statement is incorrect or if you need more information about any non-electronic transactions (checks or deposits) on this statement.  If any such error appears, you must notify the bank in writing no later than 30 days after the statement was made available to you. For more complete details, see the Account Rules and Regulations or other applicable account agreement that governs your account.

 JPMorgan Chase Bank, N.A. Member FDIC

04-Apr-18

THIS PAGE IS PART OF A STATEMENT REQUEST
GROUP ID G04Apr18-313

04Apr18-313



JPMorgan Chase Bank, N.A.
P O Box 659754
San Antonio, TX 78265 - 9754

April 29, 2017 through May 31, 2017
Primary Account: 000000220003928

### CUSTOMER SERVICE INFORMATION

| | |
|---|---|
| Web site: | Chase.com |
| Service Center: | 1-800-242-7338 |
| Deaf and Hard of Hearing: | 1-800-242-7383 |
| Para Espanol: | 1-888-622-4273 |
| International Calls: | 1-713-262-1679 |

00124355 DRE 802 219 15217 NNNNNNNNNNN  1 000000000 62 0000
DOVE TRANSPORT SERVICE L.P.
3911 211TH ST
BAYSIDE NY 11361-1957



## ASSETS

| Checking & Savings | ACCOUNT | BEGINNING BALANCE THIS PERIOD | ENDING BALANCE THIS PERIOD |
|---|---|---|---|
| Chase BusinessSelect Checking | 000000220003928 | -$975.50 | -$610.26 |
| Chase Business Savings | 000003567191605 | 7.00 | 11.34 |
| Total | | -$968.50 | -$598.92 |

| TOTAL ASSETS | | -$968.50 | -$598.92 |
|---|---|---|---|

**All Summary Balances** shown are as of May 31, 2017 unless otherwise stated.   For details of your retirement accounts, credit accounts or securities accounts, you will receive separate statements.  Balance summary information for annuities is provided by the issuing insurance companies and believed to be reliable without guarantee of its completeness or accuracy.

DOVE TRANSPORT SERVICE L.P.

Account Number: 000000220003928

## CHECKING SUMMARY

| | INSTANCES | AMOUNT |
|---|---|---|
| Beginning Balance | | -$975.50 |
| Deposits and Additions | 17 | 13,157.05 |
| Checks Paid | 2 | -575.00 |
| ATM & Debit Card Withdrawals | 37 | -2,594.73 |
| Electronic Withdrawals | 12 | -7,415.08 |
| Other Withdrawals | 2 | -1,400.00 |
| Fees | 25 | -807.00 |
| Ending Balance | 95 | -$610.26 |

04-Apr-18

04Apr18-313

THIS PAGE IS PART OF A STATEMENT REQUEST
GROUP ID G04Apr18-313

 **CHASE**

April 29, 2017 through May 31, 2017
Primary Account: 000000220003928

Thank you for your military service and commitment to our country. Your monthly service fee was waived as a benefit of
Chase Military Banking.

## DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 05/02 | Card Purchase Return   05/01 Staples      00102236 Commack NY Card 3229 | $38.01 |
| 05/04 | Nys Doh      Hcclaimpmt 03882157          CCD ID: 1141797357 | 3,637.90 |
| 05/11 | Insuficient Funds Fee Refund | 34.00 |
| 05/11 | Nys Doh      Hcclaimpmt 03882157          CCD ID: 1141797357 | 2,879.16 |
| 05/11 | Chase Quickpay Electronic Transfer 6216375213 From Rose T Joseph | 400.00 |
| 05/12 | Fedwire Credit Via: First Century Bank, NA/061121368 B/O: Green Trust 8664790784 Hays, MT 59527 Ref: Chase Nyc/Ctr/Bnf=Dove Transport Service L.P. Bayside, NY 113611957/Ac -000000002200 Rfb=O/B First Centry Imad: 0512Qmgft013001095 Trn: 3950309132Ff | 350.00 |
| 05/12 | Online Transfer From Sav ...1605 Transaction#: 6219849870 | 80.00 |
| 05/17 | Prog Specialty   Ins Prem          PPD ID: 9409348146 | 26.69 |
| 05/17 | Prog Specialty   Ins Prem          PPD ID: 9409348146 | 4.00 |
| 05/18 | Nys Doh      Hcclaimpmt 03882157          CCD ID: 1141797357 | 2,237.85 |
| 05/25 | Nys Doh      Hcclaimpmt 03882157          CCD ID: 1141797357 | 2,933.75 |
| 05/31 | 05/30/2017 Reversal: City Wide Sewer & Dra 516-483-4488 N | 237.83 |
| 05/31 | 05/30/2017 Reversal: The Home Depot #1229 Coram NY | 165.00 |
| 05/31 | 05/30/2017 Reversal: The Home Depot #1229 Coram NY | 30.86 |
| 05/31 | 05/30/2017 Reversal: Insufficient Funds Fee For A $237.83 | 34.00 |
| 05/31 | 05/30/2017 Reversal: Insufficient Funds Fee For A $165.00 | 34.00 |
| 05/31 | 05/30/2017 Reversal: Insufficient Funds Fee For A $65.95 | 34.00 |
| | **Total Deposits and Additions** | **$13,157.05** |

## CHECKS PAID

| CHECK NO. | DESCRIPTION | DATE PAID | AMOUNT |
|---|---|---|---|
| 248  ^ | | 05/09 | $200.00 |
| 250  * ^ | | 05/09 | 375.00 |
| | **Total Checks Paid** | | **$575.00** |

If you see a description in the Checks Paid section, it means that we received only electronic information about the check,
not the original or an image of the check. As a result, we're not able to return the check to you or show you an image.
* All of your recent checks may not be on this statement, either because they haven't cleared yet or they were listed on
  one of your previous statements.
^ An image of this check may be available for you to view on Chase.com.

## ATM & DEBIT CARD WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 05/01 | Card Purchase With Pin  05/01 Walgreens Store 5001 J Commack NY Card 3229 | $9.18 |
| 05/02 | Card Purchase      05/01 Staples      00102236 Commack NY Card 3229 | 38.01 |
| 05/02 | Card Purchase      05/01 Speedway 07642 Commack NY Card 3229 | 43.71 |
| 05/02 | Card Purchase      05/01 Apple Store  #R068 Huntington St NY Card 3229 | 32.53 |
| 05/08 | Card Purchase      05/04 Mcdonald's F15767 Jericho NY Card 3229 | 8.57 |
| 05/08 | Card Purchase      05/04 Sunoco 0975167800 Stony Brook NY Card 3229 | 39.00 |
| 05/08 | Card Purchase      05/05 Nataloni Pediatrics Mount Sinai NY Card 3229 | 20.00 |
| 05/10 | Card Purchase With Pin  05/10 Liberty Gas West Babylon NY Card 7487 | 30.00 |

04-Apr-18                                                                              04Apr18-313

THIS PAGE IS PART OF A STATEMENT REQUEST
GROUP ID G04Apr18-313

 CHASE

April 29, 2017 through May 31, 2017
Primary Account: 000000220003928

## ATM & DEBIT CARD WITHDRAWALS *(continued)*



| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 05/11 | Card Purchase        05/10 Liberty Gas West Babylon NY Card 7487 | 37.19 |
| 05/11 | Card Purchase W/Cash    05/11 Rite Aid Store - 10650 Medford NY Card 7487 Purchase $4.12 Cash Back $40.00 | 44.12 |
| 05/11 | Card Purchase W/Cash    05/11 Rite Aid Store - 10650 Medford NY Card 7487 Purchase $0.75 Cash Back $40.00 | 40.75 |
| 05/11 | Card Purchase W/Cash    05/11 Rite Aid Store - 10650 Medford NY Card 7487 Purchase $2.63 Cash Back $40.00 | 42.63 |
| 05/12 | Card Purchase        05/11 Windham NY Workers 800-9690059 NH Card 9027 | 333.32 |
| 05/12 | Card Purchase        05/11 OK Petroleum - Coram Coram NY Card 7487 | 30.00 |
| 05/12 | Card Purchase        05/11 John T Mather Memorial 631-4731320 NY Card 7487 | 19.81 |
| 05/15 | Card Purchase        05/12 Rent A Center E-Comme 800-275-2696 TX Card 7487 | 66.74 |
| 05/17 | Card Purchase With Pin  05/17 7-Eleven Brentwood NY Card 7487 | 23.15 |
| 05/17 | Card Purchase        05/17 Family Dollar #8324 Brentwood NY Card 7487 Purchase $103.11 Cash Back $25.00 | 128.11 |
| 05/19 | Card Purchase With Pin  05/19 The Home Depot #1229 Coram NY Card 7487 | 129.40 |
| 05/22 | Card Purchase        05/19 Gulf Oil 92040053 Bayside NY Card 9027 | 15.00 |
| 05/22 | Card Purchase        05/20 Jen's Chinese Food Mount Sinai NY Card 7487 | 44.12 |
| 05/22 | Card Purchase W/Cash    05/20 Giunta's Meat Farms Port Jeff Sta NY Card 7487 Purchase $226.52 Cash Back $20.00 | 246.52 |
| 05/22 | Card Purchase        05/20 Rent A Center E-Comme 800-275-2696 TX Card 7487 | 66.74 |
| 05/22 | Card Purchase With Pin  05/21 366 Middle Corp Coram NY Card 7487 | 30.62 |
| 05/22 | Card Purchase        05/21 Bp#9572728366 Middle CO Coram NY Card 7487 | 3.48 |
| 05/22 | Card Purchase        05/21 A & R Card & Gift NY Port Jeff Sta NY Card 7487 | 10.85 |
| 05/22 | Card Purchase        05/21 Conoco - Lakegrove Mart Lake Grove NY Card 9027 | 41.00 |
| 05/24 | Card Purchase        05/24 Optimum 7840 914-378-8900 NY Card 7487 | 104.98 |
| 05/30 | Card Purchase        05/28 City Wide Sewer & Dra 516-483-4488 NY Card 7487 | 237.83 |
| 05/30 | Card Purchase        05/27 The Home Depot #1229 Coram NY Card 7487 | 165.00 |
| 05/30 | Card Purchase W/Cash    05/27 Family Dollar #4408 Coram NY Card 7487 Purchase $15.95 Cash Back $50.00 | 65.95 |
| 05/30 | Card Purchase With Pin  05/27 The Home Depot #1229 Coram NY Card 7487 | 72.94 |
| 05/30 | Card Purchase With Pin  05/27 Wal Wal-Mart Store 6 Centereach (L NY Card 7487 | 100.00 |
| 05/30 | Card Purchase        05/27 AT&T*Bill Payment Www.Att.Com TX Card 7487 | 183.62 |
| 05/30 | Card Purchase        05/28 Gulf Oil 92040053 Bayside NY Card 9027 | 10.00 |
| 05/30 | Card Purchase        05/28 Speedway 07641 Lake Ronkonko NY Card 9027 | 49.00 |
| 05/30 | Card Purchase        05/28 The Home Depot #1229 Coram NY Card 7487 | 30.86 |

| **Total ATM & Debit Card Withdrawals** | **$2,594.73** |
|---|---|

## ATM & DEBIT CARD SUMMARY

Jean R Daniel  Card 3229

| | |
|---|---|
| Total ATM Withdrawals & Debits | $0.00 |
| Total Card Purchases | $191.00 |
| Total Card Deposits & Credits | $38.01 |

Jean R Daniel  Card 7487

| | |
|---|---|
| Total ATM Withdrawals & Debits | $0.00 |
| Total Card Purchases | $1,955.41 |
| Total Card Deposits & Credits | $0.00 |

04-Apr-18                                                                           04Apr18-313

THIS PAGE IS PART OF A STATEMENT REQUEST
GROUP ID G04Apr18-313

 CHASE

April 29, 2017 through May 31, 2017
Primary Account: 000000220003928

Mohammed S Raushan  Card 9027

| | | |
|---|---|---|
| Total ATM Withdrawals & Debits | | $0.00 |
| Total Card Purchases | | $448.32 |
| Total Card Deposits & Credits | | $0.00 |

ATM & Debit Card Totals

| | | |
|---|---|---|
| Total ATM Withdrawals & Debits | | $0.00 |
| Total Card Purchases | | $2,594.73 |
| Total Card Deposits & Credits | | $38.01 |

## ELECTRONIC WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 05/04 | 05/04 Online Payment 6198382951 To Pls Financing Corporation | $2,300.00 |
| 05/08 | 05/06 Online Transfer To Chk ...7342 Transaction#: 6204570318 | 19.41 |
| 05/11 | 05/11 Online Transfer To Sav ...1605 Transaction#: 6216437092 | 2,037.34 |
| 05/12 | 05/12 Online Transfer To Sav ...1605 Transaction#: 6218894801 | 347.00 |
| 05/18 | 05/18 Online Payment 6230194987 To Auto Loan 2704 | 300.00 |
| 05/18 | Chase Quickpay Electronic Transfer 6232928586 To Carline Daniel | 400.00 |
| 05/19 | 05/19 Online Payment 6235680487 To Glen Iurato | 250.00 |
| 05/25 | 05/25 Online Payment 6247557900 To Glen Iurato | 500.00 |
| 05/25 | 05/25 Online Payment 6228869055 To Wells Fargo Dealer Services | 300.00 |
| 05/26 | 05/26 Online Payment 6250520616 To Auto Loan 2704 | 630.41 |
| 05/26 | Wells Fargo Dlr  Fee & Pmts 9670060121    Tel ID: 9330291646 | 174.69 |
| 05/26 | Optimum07840     Tele Pmt14              PPD ID: 9182656001 | 156.23 |
| **Total Electronic Withdrawals** | | **$7,415.08** |

## OTHER WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 05/18 | 05/18 Withdrawal | $900.00 |
| 05/25 | 05/25 Withdrawal | 500.00 |
| **Total Other Withdrawals** | | **$1,400.00** |

## FEES

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 05/01 | Insufficient Funds Fee For A $9.18 Card Purchase With Pin - Details: 8338780501Walgreens Store 5001 J Commack NY   04563310026033229 00 | $34.00 |
| 05/01 | Returned Item Fee For An Unpaid Check #384 In The Amount of $610.86 | 34.00 |
| 05/02 | Insufficient Funds Fee For A $38.01 Card Purchase - Details:     0501Staples      00102236 Commack NY   04563310026033229 05 | 34.00 |
| 05/02 | Insufficient Funds Fee For A $43.71 Card Purchase - Details:     0501Speedway 07642 Commack NY    04563310026033229 90 | 34.00 |
| 05/02 | Insufficient Funds Fee For A $32.53 Card Purchase - Details:     0501Apple Store  #R068 Huntington St NY 04563310026033229 05 | 34.00 |
| 05/08 | Returned Item Fee For An Unpaid Check #387 In The Amount of $900.00 | 34.00 |
| 05/09 | Insufficient Funds Fee For Check #250 In The Amount of $375.00 | 34.00 |
| 05/09 | Insufficient Funds Fee For Check #248 In The Amount of $200.00 | 34.00 |

04-Apr-18

04Apr18-313

THIS PAGE IS PART OF A STATEMENT REQUEST
GROUP ID G04Apr18-313



April 29, 2017 through May 31, 2017
Primary Account: 000000220003928



## FEES (continued)

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 05/10 | Insufficient Funds Fee For A $30.00 Card Purchase With Pin - Details: 8490130510Liberty Gas West Babylon NY   04563310026277487 00 | 34.00 |
| 05/12 | Domestic Incoming Wire Fee | 15.00 |
| 05/15 | Online Payroll: Monthly Service Fee | 10.00 |
| 05/17 | Insufficient Funds Fee For A $128.11 Card Purchase W/Cash - Details:     0517Family Dollar #8324 Brentwood NY   0456331002627487    Purchase $103.11 Cash Back $25.00 00 | 34.00 |
| 05/22 | Insufficient Funds Fee For A $246.52 Card Purchase W/Cash - Details:     0520Giunta's Meat Farms Port Jeff Sta NY 04563310026277487    Purchase $226.52 Cash Back $20.00 00 | 34.00 |
| 05/22 | Insufficient Funds Fee For A $66.74 Card Purchase - Details:    0520Rent A Center E-Comme 800-275-2696 TX04563310026277487 01 | 34.00 |
| 05/22 | Insufficient Funds Fee For A $30.62 Card Purchase With Pin - Details: 7502740521366 Middle Corp Coram NY   04563310026277487 00 | 34.00 |
| 05/22 | Insufficient Funds Fee For A $10.85 Card Purchase - Details:    0521A & R Card & Gift NY Port Jeff Sta NY04563310026277487 05 | 34.00 |
| 05/22 | Insufficient Funds Fee For A $41.00 Card Purchase - Details:    0521Conoco - Lakegrove Mart Lake Grove NY04563310026129027 90 | 34.00 |
| 05/24 | Insufficient Funds Fee For A $104.98 Card Purchase - Details:    0524Optimum 7840 914-378-8900 NY   04563310026277487 01 | 34.00 |
| 05/30 | Insufficient Funds Fee For A $237.83 Card Purchase - Details:    0528City Wide Sewer & Dra 516-483-4488 NY04563310026277487 01 | 34.00 |
| 05/30 | Insufficient Funds Fee For A $165.00 Card Purchase - Details:    0527The Home Depot #1229 Coram NY   04563310026277487 05 | 34.00 |
| 05/30 | Insufficient Funds Fee For A $65.95 Card Purchase W/Cash - Details:     0527Family Dollar #4408 Coram NY   04563310026277487    Purchase $15.95 Cash Back $50.00 00 | 34.00 |
| 05/30 | Insufficient Funds Fee For A $72.94 Card Purchase With Pin - Details: 1835540527The Home Depot #1229 Coram NY   04563310026277487 00 | 34.00 |
| 05/30 | Insufficient Funds Fee For A $100.00 Card Purchase With Pin - Details: 3931220527Wal Wal-Mart Store 6 Centereach (L NY04563310026277487 00 | 34.00 |
| 05/30 | Insufficient Funds Fee For A $183.62 Card Purchase - Details:    0527AT&T*Bill Payment Www.Att.Com TX   04563310026277487 01 | 34.00 |
| 05/31 | Returned Item Fee For An Unpaid Check #348 IN The Amount of $610.86 | 34.00 |
| **Total Fees** | | **$807.00** |

## DAILY ENDING BALANCE

| DATE | AMOUNT | DATE | AMOUNT | DATE | AMOUNT |
|------|--------|------|--------|------|--------|
| 05/01 | -$1,052.68 | 05/08 | -14.00 | 05/11 | 390.13 |
| 05/02 | -1,230.92 | 05/09 | -657.00 | 05/12 | 75.00 |
| 05/04 | 106.98 | 05/10 | -721.00 | 05/15 | -1.74 |

04-Apr-18                                                                                04Apr18-313


**CHASE**

April 29, 2017 through May 31, 2017
Primary Account: 000000220003928

## DAILY ENDING BALANCE  (continued)

| DATE | AMOUNT | DATE | AMOUNT | DATE | AMOUNT |
|------|--------|------|--------|------|--------|
| 05/17 | -156.31 | 05/22 | -526.19 | 05/26 | 7.25 |
| 05/18 | 481.54 | 05/24 | -665.17 | 05/30 | -1,111.95 |
| 05/19 | 102.14 | 05/25 | 968.58 | 05/31 | -610.26 |

## SERVICE CHARGE SUMMARY

| TRANSACTIONS FOR SERVICE FEE CALCULATION | NUMBER OF TRANSACTIONS |
|------|------|
| Checks Paid / Debits | 42 |
| Deposits / Credits | 7 |
| Deposited Items | 0 |
| **Transaction Total** | 49 |

| SERVICE FEE CALCULATION | AMOUNT |
|------|------|
| Service Fee | $0.00 |
| Service Fee Credit | $0.00 |
| **Net Service Fee** | $0.00 |
| Excessive Transaction Fees (Above 200) | $0.00 |
| **Total Service Fees** | $0.00 |

███████████████████████████████

DOVE TRANSPORT SERVICE, L.P.                     Account Number: 000003567191605

## SAVINGS SUMMARY

| | INSTANCES | AMOUNT |
|------|------|------|
| **Beginning Balance** | | $7.00 |
| Deposits and Additions | 2 | 2,384.34 |
| Electronic Withdrawals | 1 | -80.00 |
| Other Withdrawals | 2 | -2,300.00 |
| Ending Balance | 5 | $11.34 |
| Annual Percentage Yield Earned This Period | | 0.00% |

The monthly service fee for this account was waived as an added feature of Chase BusinessSelect Checking account.

04-Apr-18                                                                                    04Apr18-313

THIS PAGE IS PART OF A STATEMENT REQUEST
GROUP ID G04Apr18-313



April 29, 2017 through May 31, 2017
Primary Account: 000000220003928

## TRANSACTION DETAIL



| DATE | DESCRIPTION | AMOUNT | BALANCE |
|------|-------------|--------|---------|
|  | Beginning Balance |  | $7.00 |
| 05/11 | Online Transfer From Chk ...3928 Transaction#: 6216437092 | 2,037.34 | 2,044.34 |
| 05/12 | Online Transfer From Chk ...3928 Transaction#: 6218894801 | 347.00 | 2,391.34 |
| 05/12 | 05/12 Withdrawal | -1,800.00 | 591.34 |
| 05/12 | 05/12 Withdrawal | -500.00 | 91.34 |
| 05/12 | 05/12 Online Transfer To Chk ...3928 Transaction#: 6219849870 | -80.00 | 11.34 |
|  | Ending Balance |  | $11.34 |

10 deposited items are provided with your account each month.  There is a $0.20 fee for each additional deposited item.

IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS: Call or write us at the phone number or address on the front of this statement (non-personal accounts contact Customer Service) if you think your statement or receipt is incorrect or if you need more information about a transfer listed on the statement or receipt.  We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error appeared.  Be prepared to give us the following information:
- Your name and account number
- The dollar amount of the suspected error
- A description of the error or transfer you are unsure of, why you believe it is an error, or why you need more information.
We will investigate your complaint and will correct any error promptly.  If we take more than 10 business days (or 20 business days for new accounts) to do this, we will credit your account for the amount you think is in error so that you will have use of the money during the time it takes us to complete our investigation.

IN CASE OF ERRORS OR QUESTIONS ABOUT NON-ELECTRONIC TRANSACTIONS: Contact the bank immediately if your statement is incorrect or if you need more information about any non-electronic transactions (checks or deposits) on this statement.  If any such error appears, you must notify the bank in writing no later than 30 days after the statement was made available to you.  For more complete details, see the Account Rules and Regulations or other applicable account agreement that governs your account.

 JPMorgan Chase Bank, N.A. Member FDIC

04-Apr-18

04Apr18-313

THIS PAGE IS PART OF A STATEMENT REQUEST
GROUP ID G04Apr18-313



April 29, 2017 through May 31, 2017
Primary Account: 000000220003928

This Page Intentionally Left Blank

04-Apr-18

THIS PAGE IS PART OF A STATEMENT REQUEST
GROUP ID G04Apr18-313

# CHASE ◆

JPMorgan Chase Bank, N.A.
P O Box 659754
San Antonio, TX 78265 - 9754

June 01, 2017 through June 30, 2017
Primary Account: 000000220003928

| CUSTOMER SERVICE INFORMATION | |
|---|---|
| Web site: | Chase.com |
| Service Center: | 1-800-242-7338 |
| Deaf and Hard of Hearing: | 1-800-242-7383 |
| Para Espanol: | 1-888-622-4273 |
| International Calls: | 1-713-262-1679 |

00118692 DRE 802 219 18217 NNNNNNNNNNNN  1 000000000 62 0000
DOVE TRANSPORT SERVICE L.P.
3911 211TH ST
BAYSIDE NY 11361-1957



## Chase BusinessSelect Checking® is changing

We appreciate your business and want to make sure you know about changes we're making to Chase BusinessSelect Checking.

Starting August 27, 2017, you'll gain access to additional services; you'll be able to:
- Deposit and withdraw as much cash as you need; there will no longer be a limit on those transactions.
- Send international wire transfers. The fee to send an international wire is $40 from chase.com or S50 from a branch.

All other features of your account remain the same. If you have any questions, please call the number on your statement.

## ASSETS

| Checking & Savings | ACCOUNT | BEGINNING BALANCE THIS PERIOD | ENDING BALANCE THIS PERIOD |
|---|---|---|---|
| Chase BusinessSelect Checking | 000000220003928 | -$610.26 | -$65.92 |
| Chase Business Savings | 000003567191605 | 11.34 | 11.34 |
| Total | | -$598.92 | -$54.58 |

| TOTAL ASSETS | | -$598.92 | -$54.58 |
|---|---|---|---|

**All Summary Balances** shown are as of June 30, 2017 unless otherwise stated.   For details of your retirement accounts, credit accounts or securities accounts, you will receive separate statements.  Balance summary information for annuities is provided by the issuing insurance companies and believed to be reliable without guarantee of its completeness or accuracy.

04-Apr-18

04Apr18-313

THIS PAGE IS PART OF A STATEMENT REQUEST
GROUP ID G04Apr18-313



June 01, 2017 through June 30, 2017
Primary Account: 000000220003928

DOVE TRANSPORT SERVICE L.P.                          Account Number: 000000220003928

## CHECKING SUMMARY

|  | INSTANCES | AMOUNT |
|---|---|---|
| Beginning Balance |  | -$610.26 |
| Deposits and Additions | 8 | 2,369.86 |
| ATM & Debit Card Withdrawals | 2 | -18.01 |
| Electronic Withdrawals | 8 | -1,461.51 |
| Other Withdrawals | 1 | -200.00 |
| Fees | 5 | -146.00 |
| Ending Balance | 24 | -$65.92 |

Thank you for your military service and commitment to our country. Your monthly service fee was waived as a benefit of Chase Military Banking.

## DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 06/07 | 05/30/2017 Reversal: Wal Wal-Mart Store 6 Centereach (L N | $100.00 |
| 06/07 | 05/30/2017 Reversal: The Home Depot #1229 Coram NY | 72.94 |
| 06/07 | 05/30/2017 Reversal: Family Dollar #4408 Coram NY | 65.95 |
| 06/07 | 05/30/2017 Reversal: Insufficient Funds Fee For A $183.62 | 34.00 |
| 06/07 | 05/30/2017 Reversal: Insufficient Funds Fee For A $72.94 | 34.00 |
| 06/07 | 05/30/2017 Reversal: Insufficient Funds Fee For A $100.00 | 34.00 |
| 06/22 | Nys Doh    Hcclaimpml 03882157      CCD ID: 1141797357 | 1,357.55 |
| 06/23 | Deposit      1679919628 | 671.42 |
| **Total Deposits and Additions** |  | **$2,369.86** |

## ATM & DEBIT CARD WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 06/26 | Card Purchase      06/24 Movieland Cinemas 112 Coram NY Card 5896 | $8.00 |
| 06/29 | Card Purchase      06/27 Cocel Inc Sinai MT Sinai NY Card 5896 | 10.01 |
| **Total ATM & Debit Card Withdrawals** |  | **$18.01** |

## ATM & DEBIT CARD SUMMARY

| Jean R Daniel  Card 5896 |  |
|---|---|
| Total ATM Withdrawals & Debits | $0.00 |
| Total Card Purchases | $18.01 |
| Total Card Deposits & Credits | $0.00 |
| ATM & Debit Card Totals |  |
| Total ATM Withdrawals & Debits | $0.00 |

04-Apr-18                                                                          04Apr18-313

THIS PAGE IS PART OF A STATEMENT REQUEST
GROUP ID G04Apr18-313

 CHASE

June 01, 2017 through June 30, 2017
Primary Account: 000000220003928

| | |
|---|---|
| Total Card Purchases | $18.01 |
| Total Card Deposits & Credits | $0.00 |

## ELECTRONIC WITHDRAWALS

| DATE | DESCRIPTION | | AMOUNT |
|---|---|---|---|
| 06/01 | Green Trust Cash 1111111111 | PPD ID: 9004240162 | $135.52 |
| 06/02 | ADP Payroll Fees ADP - Fees 2Rgzx   5593355 CCD ID: 9659605001 | | 29.70 |
| 06/15 | Green Trust Cash 1111111111 | PPD ID: 9004240162 | 120.52 |
| 06/22 | 06/22 Online Payment 6313722462 To Glen Iurato | | 250.00 |
| 06/22 | 06/22 Online Payment 6313724422 To Auto Loan 2704 | | 380.41 |
| 06/23 | Liberty Mutual  Insrnc Pmt 6300550 | Tel ID: 0000061050 | 215.66 |
| 06/26 | 06/24 Online Transfer To Mma ...0306 Transaction#: 6319058059 | | 300.00 |
| 06/30 | ADP Payroll Fees ADP - Fees 2Rgzx   8422580 CCD ID: 9659605001 | | 29.70 |
| **Total Electronic Withdrawals** | | | **$1,461.51** |

## OTHER WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 06/23 | 06/23 Withdrawal | $200.00 |
| **Total Other Withdrawals** | | **$200.00** |

## FEES

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 06/01 | Insufficient Funds Fee For A $135.52 Item - Details: Green Trust Cash 1111111111 PPD ID: 9004240162 | $34.00 |
| 06/02 | Insufficient Funds Fee For A $29.70 Item - Details: ADP Payroll Fees ADP - Fees 2Rgzx 5593355 CCD ID: 9659605001 | 34.00 |
| 06/15 | Online Payroll: Monthly Service Fee | 10.00 |
| 06/15 | Insufficient Funds Fee For A $120.52 Item - Details: Green Trust Cash 1111111111 PPD ID: 9004240162 | 34.00 |
| 06/30 | Insufficient Funds Fee For A $29.70 Item - Details: ADP Payroll Fees ADP - Fees 2Rgzx 8422580 CCD ID: 9659605001 | 34.00 |
| **Total Fees** | | **$146.00** |

## DAILY ENDING BALANCE

| DATE | AMOUNT |
|---|---|
| 06/01 | -$779.78 |
| 06/02 | -843.48 |
| 06/07 | -502.59 |
| 06/15 | -667.11 |
| 06/22 | 80.03 |
| 06/23 | 315.79 |
| 06/26 | 7.79 |
| 06/29 | -2.22 |
| 06/30 | -65.92 |

04-Apr-18

04Apr18-313

THIS PAGE IS PART OF A STATEMENT REQUEST
GROUP ID G04Apr18-313



June 01, 2017 through June 30, 2017
Primary Account: 000000220003928

## SERVICE CHARGE SUMMARY

| TRANSACTIONS FOR SERVICE FEE CALCULATION | NUMBER OF TRANSACTIONS |
|---|---|
| Checks Paid / Debits | 6 |
| Deposits / Credits | 2 |
| Deposited Items | 1 |
| **Transaction Total** | **9** |

| SERVICE FEE CALCULATION | AMOUNT |
|---|---|
| Service Fee | $0.00 |
| Service Fee Credit | $0.00 |
| **Net Service Fee** | **$0.00** |
| Excessive Transaction Fees (Above 200) | $0.00 |
| **Total Service Fees** | **$0.00** |

DOVE TRANSPORT SERVICE, L.P.

Account Number: 000003567191605

## SAVINGS SUMMARY

| | INSTANCES | AMOUNT |
|---|---|---|
| Beginning Balance | | $11.34 |
| Ending Balance | 0 | $11.34 |
| Annual Percentage Yield Earned This Period | | 0.00% |

The monthly service fee for this account was waived as an added feature of Chase BusinessSelect Checking account.

10 deposited items are provided with your account each month.  There is a $0.20 fee for each additional deposited item.

**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS:** Call or write us at the phone number or address on the front of this statement (non-personal accounts contact Customer Service) if you think your statement or receipt is incorrect or if you need more information about a transfer listed on the statement or receipt.  We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error appeared.  Be prepared to give us the following information:
  • Your name and account number
  • The dollar amount of the suspected error
  • A description of the error or transfer you are unsure of, why you believe it is an error, or why you need more information.
We will investigate your complaint and will correct any error promptly.  If we take more than 10 business days (or 20 business days for new accounts) to do this, we will credit your account for the amount you think is in error so that you will have use of the money during the time it takes us to complete our investigation.

**IN CASE OF ERRORS OR QUESTIONS ABOUT NON-ELECTRONIC TRANSACTIONS:** Contact the bank immediately if your statement is incorrect or if you need more information about any non-electronic transactions (checks or deposits) on this statement.  If any such error appears, you must notify the bank in writing no later than 30 days after the statement was made available to you.  For more complete details, see the Account Rules and Regulations or other applicable account agreement that governs your account.

 JPMorgan Chase Bank, N.A. Member FDIC

04-Apr-18                                                                                    04Apr18-313

THIS PAGE IS PART OF A STATEMENT REQUEST
GROUP ID G04Apr18-313



JPMorgan Chase Bank, N.A.
P O Box 659754
San Antonio, TX 78265-9754

July 01, 2017 through July 31, 2017
Account Number:   000000220003928

### CUSTOMER SERVICE INFORMATION

| | |
|---|---|
| Web site: | Chase.com |
| Service Center: | 1-800-242-7338 |
| Deaf and Hard of Hearing: | 1-800-242-7383 |
| Para Espanol: | 1-888-622-4273 |
| International Calls: | 1-713-262-1679 |

00124538 DRE 802 219 21317 NNNNNNNNNNNN  1 000000000 62 0000
DOVE TRANSPORT SERVICE L.P.
3911 211TH ST
BAYSIDE NY 11361-1957



## CHECKING SUMMARY   Chase BusinessSelect Checking

| | INSTANCES | AMOUNT |
|---|---|---|
| Beginning Balance | | -$65.92 |
| Deposits and Additions | 12 | 2,343.41 |
| Electronic Withdrawals | 7 | -1,701.15 |
| Other Withdrawals | 2 | -268.69 |
| Fees | 3 | -83.00 |
| Ending Balance | 24 | $224.65 |

Thank you for your military service and commitment to our country. Your monthly service fee was waived as a benefit of
Chase Military Banking.

## DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 07/06 | Nys Doh        Hcclaimpmt 03882157        CCD ID: 1141797357 | $1,616.29 |
| 07/24 | 06/01/2017 Reversal: Green Trust Cash 1111111111 | 135.52 |
| 07/24 | 07/17/2017 Reversal: Green Trust Cash 1111111111 | 120.52 |
| 07/24 | 07/03/2017 Reversal: Green Trust Cash 1111111111 | 120.52 |
| 07/24 | 06/15/2017 Reversal: Green Trust Cash 1111111111 | 120.52 |
| 07/24 | 07/17/2017 Reversal: Insufficient Funds Fee For A $120.52 | 34.00 |
| 07/24 | 07/03/2017 Reversal: Insufficient Funds Fee For A $120.52 | 34.00 |
| 07/24 | 06/15/2017 Reversal: Insufficient Funds Fee For A $120.52 | 34.00 |
| 07/24 | 06/01/2017 Reversal: Insufficient Funds Fee For A $135.52 | 34.00 |
| 07/24 | 07/17/2017 Reversal: Extended Overdraft Fee Claimid: 5743 | 15.00 |
| 07/24 | Transfer From Sav Xxxxxx1605 | 49.34 |
| 07/28 | ADP Payroll Fees ADP - Fees 2Rgzx   2659471 CCD ID: 9659605001 | 29.70 |
| **Total Deposits and Additions** | | **$2,343.41** |

## ELECTRONIC WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 07/03 | Green Trust Cash 1111111111        PPD ID: 9004240162 | $120.52 |
| 07/06 | 07/06 Online Payment 6348104893 To Glen Iurato | 300.00 |
| 07/06 | 07/06 Online Payment 6348108865 To Auto Loan 2704 | 780.41 |
| 07/06 | 07/06 Online Transfer To Sav ...1605 Transaction#: 6348113960 | 50.00 |

Page 1 of 4

THIS PAGE IS PART OF A STATEMENT REQUEST
GROUP ID G04Apr18-313

 CHASE

July 01, 2017 through July 31, 2017
Account Number:   000000220003928

## ELECTRONIC WITHDRAWALS *(continued)*

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 07/17 | Green Trust Cash 1111111111          PPD ID: 9004240162 | 120.52 |
| 07/28 | ADP Payroll Fees ADP - Fees 2Rgzx   2273720 CCD ID: 9659605001 | 29.70 |
| 07/31 | 07/31 Online Payment 6373255547 To Wells Fargo Dealer Services | 300.00 |
| **Total Electronic Withdrawals** | | **$1,701.15** |

## OTHER WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 07/05 | Reversal: City Wide Sewer & Dra 516-483-4488 N | $237.83 |
| 07/10 | Reversal: The Home Depot #1229 Coram NY | 30.86 |
| **Total Other Withdrawals** | | **$268.69** |

## FEES

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 07/03 | Insufficient Funds Fee For A $120.52 Item - Details: Green Trust Cash 1111111111 PPD ID: 9004240162 | $34.00 |
| 07/17 | Insufficient Funds Fee For A $120.52 Item - Details: Green Trust Cash 1111111111 PPD ID: 9004240162 | 34.00 |
| 07/17 | Extended Overdraft Fee | 15.00 |
| **Total Fees** | | **$83.00** |

## DAILY ENDING BALANCE

| DATE | AMOUNT |
|---|---|
| 07/03 | -$220.44 |
| 07/05 | -458.27 |
| 07/06 | 27.61 |
| 07/10 | -3.25 |
| 07/17 | -172.77 |
| 07/24 | 524.65 |
| 07/28 | 524.65 |
| 07/31 | 224.65 |

## SERVICE CHARGE SUMMARY

| TRANSACTIONS FOR SERVICE FEE CALCULATION | NUMBER OF TRANSACTIONS |
|---|---|
| Checks Paid / Debits | 0 |
| Deposits / Credits | 3 |
| Deposited Items | 0 |
| **Transaction Total** | **3** |

| SERVICE FEE CALCULATION | AMOUNT |
|---|---|
| Service Fee | $0.00 |
| Service Fee Credit | $0.00 |
| **Net Service Fee** | **$0.00** |
| Excessive Transaction Fees (Above 200) | $0.00 |
| **Total Service Fees** | **$0.00** |

04-Apr-18

04Apr18-313

THIS PAGE IS PART OF A STATEMENT REQUEST
GROUP ID G04Apr18-313



July 01, 2017 through July 31, 2017
Account Number:   000000220003928



**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS:** Call or write us at the phone number or address
on the front of this statement (non-personal accounts contact Customer Service) if you think your statement or receipt is incorrect or if you need
more information about a transfer listed on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST
statement on which the problem or error appeared. Be prepared to give us the following information:

- Your name and account number
- The dollar amount of the suspected error
- A description of the error or transfer you are unsure of, why you believe it is an error, or why you need more information.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days (or 20 business days for new
accounts) to do this, we will credit your account for the amount you think is in error so that you will have use of the money during the time it takes
us to complete our investigation.

**IN CASE OF ERRORS OR QUESTIONS ABOUT NON-ELECTRONIC TRANSACTIONS:** Contact the bank immediately if your statement is
incorrect or if you need more information about any non-electronic transactions (checks or deposits) on this statement. If any such error appears,
you must notify the bank in writing no later than 30 days after the statement was made available to you. For more complete details, see the
Account Rules and Regulations or other applicable account agreement that governs your account.

 JPMorgan Chase Bank, N.A. Member FDIC

Page 3 of 4

04-Apr-18

04Apr18-313



July 01, 2017 through July 31, 2017

Account Number:   000000220003928

This Page Intentionally Left Blank

04-Apr-18

04Apr18-313

THIS PAGE IS PART OF A STATEMENT REQUEST
GROUP ID G04Apr18-313

 **CHASE**
JPMorgan Chase Bank, N.A.
P O Box 659754
San Antonio, TX 78265-9754

August 01, 2017 through August 31, 2017
Account Number:   000000220003928

### CUSTOMER SERVICE INFORMATION

| | |
|---|---|
| Web site: | Chase.com |
| Service Center: | 1-800-242-7338 |
| Deaf and Hard of Hearing: | 1-800-242-7383 |
| Para Espanol: | 1-888-622-4273 |
| International Calls: | 1-713-262-1679 |

00016796 DRE 802 141 24417 NNNNNNNNNNN T 1 000000000 62 0000
DOVE TRANSPORT SERVICE L.P.
72 GRANADA CIR
MOUNT SINAI NY 11766-2811



**We updated our Deposit Account Agreement**

On August 27, 2017, we published an updated version of our Deposit Account Agreement.

You can get the latest Deposit Account Agreement at chase.com/disclosures, at a branch or by request when you call us.
Please review the Overdrafts section (General Account Terms, Section C) where we have added language to explain that
we rely on transaction coding sent to us by the merchant or third party to determine whether a transaction is everyday or
recurring.

Please call us at the number on this statement if you have any questions.

### CHECKING SUMMARY     Chase BusinessSelect Checking

| | INSTANCES | AMOUNT |
|---|---|---|
| Beginning Balance | | $224.65 |
| Other Withdrawals | 1 | -224.65 |
| Ending Balance | 1 | $0.00 |

### OTHER WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 08/10 | 08/10 Withdrawal | $224.65 |
| Total Other Withdrawals | | $224.65 |

### DAILY ENDING BALANCE

| DATE | AMOUNT |
|---|---|
| 08/10 | $0.00 |

### SERVICE CHARGE SUMMARY

| TRANSACTIONS FOR SERVICE FEE CALCULATION | NUMBER OF TRANSACTIONS |
|---|---|
| Checks Paid / Debits | 1 |
| Deposits / Credits | 0 |
| Deposited Items | 0 |
| Transaction Total | 1 |

| SERVICE FEE CALCULATION | AMOUNT |
|---|---|
| Service Fee | $0.00 |

04-Apr-18                                                                                04Apr18-313

THIS PAGE IS PART OF A STATEMENT REQUEST
GROUP ID G04Apr18-313


**CHASE**

August 01, 2017 through August 31, 2017
Account Number:    000000220003928

## SERVICE CHARGE SUMMARY  *(continued)*

| SERVICE FEE CALCULATION | AMOUNT |
|---|---|
| Service Fee Credit | $0.00 |
| Net Service Fee | $0.00 |
| Excessive Transaction Fees (Above 200) | $0.00 |
| **Total Service Fees** | $0.00 |

**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS:** Call us at 1-866-564-2262 or write us at the address on the front of this statement (non-personal accounts contact Customer Service) immediately if you think your statement or receipt is incorrect or if you need more information about a transfer listed on the statement or receipt.
For personal accounts only: We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error appeared.  Be prepared to give us the following information:
  • Your name and account number
  • The dollar amount of the suspected error
  • A description of the error or transfer you are unsure of, why you believe it is an error, or why you need more information.
We will investigate your complaint and will correct any error promptly.  If we take more than 10 business days (or 20 business days for new accounts) to do this, we will credit your account for the amount you think is in error so that you will have use of the money during the time it takes us to complete our investigation.

**IN CASE OF ERRORS OR QUESTIONS ABOUT NON-ELECTRONIC TRANSACTIONS:** Contact the bank immediately if your statement is incorrect or if you need more information about any non-electronic transactions (checks or deposits) on this statement.  If any such error appears, you must notify the bank in writing no later than 30 days after the statement was made available to you.  For more complete details, see the Account Rules and Regulations or other applicable account agreement that governs your account. Deposit products and services are offered by JPMorgan Chase Bank, N.A.  Member FDIC

   JPMorgan Chase Bank, N.A. Member FDIC

# Medicaid Decisions for Years 2010-2021

- 2021
- 2020
- 2019
- 2018
- 2017
- 2016
- 2015
- 2014
- 2013
- 2012
- 2011
- 2010

## 2021

- Harry's Nurses Registry, Inc. – October 4, 2021 (PDF)
  - From a determination by the NYS Office of the Medicaid Inspector General to recover Medicaid Program overpayments
- Atlantis Rehabilitation and Residential Health Care Facility, LLC – September 24, 2021 (PDF)
  - From a determination to recover Medicaid Program overpayments
- New York Center for Rehabilitation and Nursing – August 31, 2021 (PDF)
  - From a determination to recover Medicaid Program overpayments
- Cooperstown Center for Rehabilitation and Nursing – August 19, 2021 (PDF)
  - From a determination by the NYS Office of the Medicaid Inspector General to recover Medicaid Program Overpayments
- River Manor Care Center – July 8, 2021 (PDF)
  - From a determination by the NYS Office of the Medicaid Inspector General to recover Medicaid Program overpayments
- Associated Dental Arts, P.C. – June 18, 2021 (PDF)
  
  For a hearing pursuant to Part 519 of Title 18 of the Official Compilation of Codes, Rules and Regulations of the State of New York (NYCRR) to review a determination to recover Medicaid overpayments
- Staten Island Care Center – April 21, 2021 (PDF)
  - From a determination by the NYS Office of the Medicaid Inspector General to recover Medicaid Program overpayments
- David M. Poole – March 8, 2021 (PDF)
  - From a determination by the NYS Office of the Medicaid Inspector General to recover Medicaid Program overpayments.
- Maplewood Assisted Living – March 3, 2021 (PDF)
  - From a determination by the NYS Office of the Medicaid Inspector General to recover Medicaid Program overpayments.
- Kings Harbor Multicare Center – February 17, 2021 (PDF)
  - From a determination by the NYS Office of the Medicaid Inspector General to recover Medicaid Program overpayments.
- Richmond Center for Rehabilitation and Specialty Healthcare – January 28, 2021 (PDF)
  - From a determination by the NYS Office of the Medicaid Inspector General to recover Medicaid Program overpayments.

*Ex '53 ''*

# 2020

- <u>Dr. Neal J. Auerbach – October 2, 2020</u> (PDF)
  - From a determination by the NYS Office of the Medicaid Inspector General to recover Medicaid Program overpayments.
- <u>Putnam Ridge – September 22, 2020</u> (PDF)
  - From a determination to recover Medicaid Program overpayments.
- <u>Dr. Michael L. Sherman, D.D.S – August 17, 2020</u> (PDF)
  - From a hearing pursuant to Part 519 of Title 18 of the Official Compilation of Codes, Rules, and Regulations of the State of New York (18 NYCRR) to review the Determination under 18 NYCRR Parts 517 and 518 to recover $21,250.00 in Medicaid Overpayments.
- <u>Northern Metropolitan RHCF Inc. – November 19, 2020</u> (PDF)
  - From a determination by the NYS Office of the Medicaid Inspector General to recover Medicaid Program overpayments
- <u>Kiddin' Around Town, Inc. – November 19, 2020</u> (PDF)
  - For a hearing pursuant to Part 519 of Title 18 of the Official Compilation of Codes, Rules and Regulations of the State of new York (NYCRR) to review a determination to recover Medicaid overpayments.
- <u>Madison York Assisted Living Community – October 30, 2020</u> (PDF)
  - From a determination by the NYS Office of the Medicaid Inspector General to recover Medicaid Program overpayments
- <u>David A. Petti, D.D.S. – July 3, 2020</u> (PDF)
  - For a hearing pursuant to Part 519 of Title 18 of the Official Compilation of Codes, Rules and Regulations of the State of New York (18 NYCRR) to review a Determination under 18 NYCRR Parts 515, 517 and 518 to exclude David A. Petti D.D.S. ,as a provider in the Medicaid Program for a period of three years, pursuant to 18 NYCRR § 515.3(a)(1), and until reinstated pursuant to 18 NYCRR § 515.10 and to recover $25,007.00 in Medicaid overpayments. Audit # 13-F-2272 and 16-2419
- <u>Sarah Neuman Center for Healthcare and Rehabilitation – May 21, 2020</u> (PDF)
  - From a determination by the NYS Office of the Medicaid Inspector General to recover Medicaid Program overpayments. Audit # 16-6651
- <u>Dental Specialty Associates, P.C. – May 14, 2020</u> (PDF)
  - From determinations by the NYS Office of the Medicaid Inspector General to recovery Medicaid Program overpayments. Audit # 18-8163, 18-8164, 18-8166, 18-8168, 18-8169, 18-8170, 18-8172, 18-8173
- <u>The New Jewish Home, Manhattan – May 11, 2020</u> (PDF)
  - From a determination to recover Medicaid Program overpayments. Audit # 17-6148
- <u>Suffolk Center for Rehabilitation and Nursing – April 27, 2020</u> (PDF)
  - From a determination by the NYS Office of the Medicaid Inspector General to recover Medicaid Program overpayments. Audit # 14-4118
- <u>Beth Israel Medical Center – April 24, 2020</u> (PDF)
  - From a determination by the NYS Office of the Medicaid Inspector General to recover Medicaid Program overpayments. Audit # 17-8064
- <u>David S. Gaylin, D.D.S. – April 20, 2020</u> (PDF)
  - For a hearing pursuant to Part 519 of Title 18 of the Official Compilation of Codes, Rules and Regulations of the State of New York (NYCRR) to review a determination to recover Medicaid overpayments. Audit # 16-4611
- <u>Ema's Ambulette, Inc. - January 29, 2020</u> (PDF)
- <u>Presbyterian Home for Central New York - January 13, 2020</u> (PDF)
- <u>Dr. Carmen Arzola - January 6, 2020</u> (PDF)

# 2019

- Byram Healthcare Centers, Inc. - December 16, 2019 (PDF)
- Christine Wise-Vasquez - November 26, 2019 (PDF)
- Affinity Skilled Living and Rehabilitation Center - October 30, 2019 (PDF)
- Karen Watson, D.D.S - October 7, 2019 (PDF)
- Owen Golden, M.D., and Owen Golden, M.D., P.C., - September 12, 2019 (PDF)
- Sigma Transportation, Inc. - July 3, 2019 (PDF)
- Achieve Rehabilitation and Nursing Facility - June 3, 2019 (PDF)
  - From a determination by NYS Office of the Medicaid Inspector General to recover Medicaid Program overpayments - Audit Number: 14-4901
- William J. Green, DDS - May 23, 2019 (PDF)
- Allcare Transportation, Inc. Appellant - March 5, 2019 (PDF)
  - for a hearing pursuant to Title 18 of the Official Compilation of Codes, Rules and Regulations of the State of New York (18 NYCRR)
- Carnine Louissaint (Appellant)- March 25, 2019 (PDF)
  - For a hearing pursuant to Part 519 of Title 18 of the Official Compilation of Codes, Rules and Regulations of the State of New York (18 NYCRR) to review the Determination of the Department to recover $21,250.00 in Medicaid Overpayments. - Project Number: 16-4335
- Chelsea Express Transportation, Inc. - May 24, 2019 (PDF)
  - For a hearing pursuant to Part 519 of Title 18 of the Official Compilation of Codes, Rules and Regulations of the State of New York (NYCRR) to review a determination to recover Medicaid overpayments. - Audit Number: 11-5528
- Eliot Silber, DDS Appellant - March 5, 2019 (PDF)
  - for a hearing pursuant to Part 519 of Title 18 of the Official Compilation of Codes, Rules and Regulations of the State of New York (18 NYCRR) to review a Determination under 18 NYCRR Parts 515 to 518 to impose the sanction of 3 years exclusion and to recover $46,521.00 in the Medicaid Overpayments.
- Highland Nursing Home Decision - May 8, 2019 (PDF)
  - From a determination by NYS Office of the Medicaid Inspector General to recover Medicaid Program overpayments - Audit Number: 13-4391
- Madison York Assisted Living Community Decision - April 22, 2019 (PDF)
  - From a determination by NYS Office of the Medicaid Inspector General to recover Medicaid Program overpayments - Audit Number: 14-3479
- Murray Fryd, DDS - June 4, 2019 (PDF)
  - For a hearing pursuant to Title 18 of the Official Compilation of Codes, Rules and Regulations of the State of New York (18 NYCRR) - Audit Number: 18-6536
- Palm Gardens Center for Nursing and Rehabilitation, Appellant - March 14, 2019 (PDF)
  - From a determination by NYS Office of the Medicaid Inspector General to recover Medicaid Program overpayments - Audit Number: 14-1139
- Pediatric Dental Associates, PC and Elan Kaufman, DMD, Appellant - January 28, 2019 (PDF)
  - for a hearing pursuant to Title 18 of the Official Compilation of Codes, Rules and Regulations of the State of New York (18 NYCRR 517)
- Suffolk Center Decision on Motion- May 14, 2019 (PDF)
  - In the Matter of Suffolk Center for Rehabilitation and Nursing, et al. - Audit Number: 14-4118
- Sullivan Taxi, Inc. administrative Law Judge Default Order - May 1, 2019 (PDF)
  - For a Hearing pursuant to Title 18 (Family Assistance) of the Official Compilation of Codes, Rules and Regulations of the State of New York (NYCRR) to review a Determination under 18 NYCRR Parts 517 and 518 to recover $6,317.08 in Medicaid Program overpayments. - Audit Number: 2012Z31-077D
- Tamar Transportation Corp., Appellant - January 16, 2019 (PDF)
  - for a hearing pursuant to Title 18 of the Official Compilation of Codes, Rules and Regulations of the State of New York (18 NYCRR Part 519) from charges of unacceptable practices and a determination to recover Medicaid Program overpayments.
- Vezire Sarak, DDS Appellant - March 7, 2019 (PDF)

Case 2:21-cv-04097-DG-AKT   Document 55   Filed 10/29/21   Page 438 of 444 PageID #: 2004

  - ○ from charges of unacceptable practices and a determination: to recover Medicaid Program overpayments : Audit Number: 15-5195

# 2018

- Avon Nursing Home MDS, Appellant - January 19, 2018 (PDF)
  - ○ From a determination by NYS Office of the Medicaid Inspector General to recover Medicaid Program overpayments.
- Bronx Park Rehabilitation and Nursing Center, Appellant - August 20, 2018 (PDF)
  - ○ For a hearing pursuant to Title 18 of the Official Compilation of Codes, Rules and Regulations of the State of New York (18 NYCRR).
- Caring Harts Transport, Inc., Appellant - November 30, 2018 (PDF)
  - ○ From a determination by NYS Office of the Medicaid Inspector General to recover Medicaid Program overpayments.
- Dr. Marcrid Ardashes Garjarian, Appellant - July 30, 2018 (PDF)
  - ○ For a hearing pursuant to Title 18 of the Official Compilation of Codes, Rules and Regulations of the State of New York (18 NYCRR Part 519).
- Dr. Rony Mashihi/Brooklyn Dental, Appellant - May 14, 2018 (PDF)
  - ○ For a hearing pursuant to Part 519 of Title 18 of the Official Compilation of Codes, Rules and Regulations of the State of New York (18 NYCRR) to review a Determination under 18 NYCRR parts 517 and 518 to recover $21,250.00 in Medicaid Overpayments.
- DTS, Inc., Appellant - December 21, 2018 (PDF)
  - ○ for a hearing pursuant to Title 18 of the Official Compilation of Codes, Rules and Regulations of the State of New York (18 NYCRR)
- Elderwood at Cheektowaga, Appellant - April 11, 2018 (PDF)
  - ○ From a determination by NYS Office of the Medicaid Inspector General to recover Medicaid Program overpayments.
- Every Boro Ambulette Service Inc. & Jaycinth Blackman, Appellant - February 5, 2018 (PDF)
  - ○ From charges of unacceptable practices and a determination to recover Medicaid Program overpayments.
- Garden Care Center, Appellant - February 15, 2018 (PDF)
  - ○ From a determination to recover Medicaid Program overpayments.
- Gowanda Rehabilitation and Nursing Center, Appellant - November 29, 2018 (PDF)
  - ○ for a hearing pursuant to Title 18 of the Official Compilation of Codes, Rules and Regulations of the State of New York (18 NYCRR)
- Grandell Rehabilitation and Nursing Center, Appellant - December 19, 2018 (PDF)
  - ○ from a determination by the NYS Office of the : Audit Number: 15-5357 Medicaid Inspector General to recover Medicaid Program overpayments.
- G & M Ambulette Services, Inc., Appellant, - July 30, 2018 (PDF)
  - ○ From a determination to recover Medicaid Program overpayments.
- Raga Massih, M.D., Appellant - July 13, 2018 (PDF)
  - ○ For a hearing pursuant to Title 18 of the Official Compilation of Codes, Rules and Regulations of the State of New York (18 NYCRR Part 519).
- Richard Saline, D.M.D., Appellant - July 6, 2018 (PDF)
  - ○ From a determination by NYS Office of the Medicaid Inspector General to recover Medicaid Program overpayments.
- The Grove at Valhalla Rehabilitation and Nursing Center, Appellant - January 31, 2018 (PDF)
  - ○ From a determination by NYS Office of the Medicaid Inspector General to recover Medicaid Program overpayments.
- United Cerebral Palsy Association of Putnam and Southern Dutchess, a/k/a Hudson Valley Cerebral Palsy - December 21, 2018 (PDF)
  - ○ For a hearing pursuant to Part 519 of Title 18 of the: Official Compilation of Codes, Rules and Regulations: of the State of New York (NYCRR) to review a: Audit #13-5288 determination to

## 2017

- Elderwood-Grand Isle MDS - December 5, 2017 (PDF)
  - From a determination by NYS Office of the Medicaid Inspector General to recover Medicaid Program overpayments.
- Fast Help Ambulette - May 25, 2017 (PDF)
  - For a hearing pursuant to Part 519 of Title 18 of the Official Compilation of Codes, Rules and Regulations of the State of New York (NYCRR) to review a determination to recover Medicaid overpayments.
- Huntington Living Center MDS - December 5, 2017 (PDF)
  - From a determination by NYS Office of the Medicaid Inspector General to recover Medicaid Program overpayments.
- Hurlbut Nursing & Rehabilitation MDS - December 5, 2017 (PDF)
  - From a determination by NYS Office of the Medicaid Inspector General to recover Medicaid Program overpayments.
- Niagara Rehab MDS - December 5, 2017 (PDF)
  - From a determination by NYS Office of the Medicaid Inspector General to recover Medicaid Program overpayments.
- Nataliya Berger, D.D.S., Appellant - August 16, 2017 (PDF)
  - For a hearing pursuant to Part 519 of Title 18 of the Official Compilation of Codes, Rules and Regulations of the State of New York (NYCRR) to review a determination to recover Medicaid overpayments and censure the provider.
- NRI Group LLC, Appellant - April 4, 2017 (PDF)
  - From a determination to seek restitution of Medicaid Program overpayments.
- Orchard Manor Rehab & Nursing Center, Appellant - April 20, 2017 (PDF)
  - From a determination to seek restitution of Medicaid Program overpayments.
- Our Lady of Peace Nursing Care Residence, Appellant - January 12, 2017 (PDF)
  - From a determination to seek restitution of Medicaid Program overpayments.
- Persistent Car Service Corp., Appellant - November 4, 2016 (PDF)
  - For a hearing pursuant to Part 519 of Title 18 of the Official Compilation of Codes, Rules and Regulations of the State of New York ("NYCRR") to review a determination to recover Medicaid overpayments.
- Prompt Transit Service Inc. & Malena, Gregorio, Appellant - August 10, 2017 (PDF)
  - From charges of unacceptable practices and a determination to recover Medicaid Program overpayments.
- Saratoga County A.R.C., Appellant - June 16, 2017 (PDF)
  - For a hearing pursuant to Part 519 of Title 18 of the Official Compilation of Codes, Rules and Regulations of the State of New York ("NYCRR") to review a determination to recover Medicaid overpayments.
- Springville Pharmacy Infusion, Appellant - September 8, 2016 (PDF)
  - For a hearing pursuant to Part 519 of Title 18 of the Official Compilation of Codes, Rules and Regulations of the State of New York ("NYCRR") to review a determination to recover Medicaid overpayments.
- Volga Transportation Corporation, Appellant - October 20, 2017 (PDF)
  - Appealing a determination to recover Medicaid program overpayments.

## 2016

- Allan Roffe, MD; Appellant - June 16, 2016 (PDF)
  - For a hearing pursuant to Part 519 of Title 18 of the Official Compilation of Codes, Rules and Regulations of the State of New York (18 NYCRR) to review the Determination of the Department

Case 2:21-cv-04097-DG-AKT   Document 55   Filed 10/29/21   Page 440 of 444 PageID #: 2006

to recover $21,250.00 in Medicaid overpayments.
- Allcare Transportation Inc.; Appellant - April 15, 2016 (PDF)
  - From a determination by the NYS Office of the Medicaid Inspector General to recover Medicaid Program overpayments of $4,675.92.
- Clearview Center, Inc.; Appellant - 2016 (PDF)
  - For a hearing pursuant to Part 519 of Title 18 of the Official Compilation of Codes, Rules and Regulations of the State of New York ("NYCRR") to review a determination to recover Medicaid overpayments.
- IMI Transport Inc.; Appellant - July 21, 2016 (PDF)
  - For a hearing pursuant to Part 519 of Title 18 of the Official Compilation of Codes, Rules and Regulation of the State of New York (NYCRR) to review a determination to recover Medicaid overpayments.
- Long Island Medical Associates; Appellant - March 22, 2016 (PDF)
  - From a determination to recover Medicaid overpayments.
- Rachel Liyun Sun, DMD; Appellant - March 30, 2016 (PDF)
  - For a hearing pursuant to Part 519 of Title 18 of the Official Compilation of Codes, Rules and Regulations of the State of New York ("NYCRR") to review the determination of the Department to exclude her from the Medicaid Program for period of three years and to recover $24,945.00 in Medicaid overpayments.
- Reliance Ambulette, Inc.; Appellant - August 23, 2016 (PDF)
  - For a hearing pursuant to Part 519 of Title 18 of the Official Compilation of Codes, Rules and Regulations of the State of New York (NYCRR) to review a determination to recover Medicaid overpayments.
- Renaissance Rehabilitation and Nursing Care Center; Appellant - September 26, 2016 (PDF)
  - From a determination by the NYS Office of the Medicaid Inspector General to recover Medicaid Program overpayments.
- Rite Aid of New York Store #1852; Appellant - May 27, 2016 (PDF)
  - For a hearing pursuant to Part 519 of Title 18 of the Official Compilation of Codes, Rules and Regulations of the State of New York (18 NYCRR) to review the determination of the Office of the Medicaid Inspector General to censure Rite Aid of New York, Inc. #1852 and to recover $4,664,966.95 in Medicaid overpayments.
- Riverhead Care Center, Inc.; Appellant - March 15, 2016 (PDF)
  - Appealing a determination to recover Medicaid Program overpayments.

# 2015

- Dr. Andrew L. Satrane; Appellant - March 12, 2015 (PDF)
  - For a Hearing, pursuant to Part 519 of Title 18 of the Official Compilation of Codes, Rules and Regulations of the State of New York, to review the determination to recover Medicaid overpayments
- Amida Care Inc.; Appellant - March 16, 2015 (PDF)
  - From a determination by the NYS Office of the Medicaid Inspector General to recover Medicaid Program overpayments
- Edward R. Mayo, D.D.S.; Appellant - November 16, 2015 (PDF)
  - For a hearing pursuant to Part 519 of Title 18 of the Official Compilation of Codes, Rules and Regulations of the State of New York (NYCRR) to review a determination to recover Medicaid overpayments
- Eric Ploumis, D.M.D.; Appellant - December 28, 2015 (PDF)
  - Appealing a determination to recover Medicaid Program overpayments.
- Island Wide Ambulette Service; Appellant - February 17, 2015 (PDF)
  - For a Hearing Pursuant to Part 519 of Title 18 of the Official Compilation of Codes, Rules and Regulations of the State of New York to Review the Determination of the Department to Recover $1,708,489 in Medicaid Overpayments.

Case 2:21-cv-04097-DG-AKT   Document 55   Filed 10/29/21   Page 441 of 444 PageID #: 2007

- M.J. Trans. Corp.; Appellant - January 27, 2015 (PDF)
  - For a hearing pursuant to Part 519 of Title 18 of the Official Compilation of Codes, Rules and Regulations of the State of New York (18 NYCRR) to review the Determination of the Office of the Medicaid Inspector General to recover $26,862.59 in Medicaid Overpayments.
- Meadowbrook Healthcare; Appellant - June, 2015 (PDF)
  - For Hearing pursuant to Part 519 of Title 18 of the Official Compilation of Codes, Rules and Regulations of the State of New York ("NYCRR") to review the determination of the Department to recover $310,081.00 in Medicaid overpayments
- Mercy Medical Center; Appellant - December 11, 2015 (PDF)
  - For a hearing pursuant to Part 519 of Title 18 of the Official Compilation of Codes, Rules and Regulations of the State of New York ("NYCRR") to review the determination of the Department to recover $9,553.96 in Medicaid overpayments.
- Norwegian Christian Home and Health Center; Appellant - September 10, 2015 (PDF)
  - Appealing a determination to recover Medicaid Program overpayments.
- Statewide Ambulette Service, Inc.; Appellant - October 28, 2015 (PDF)
  - From charges of unacceptable practices and a determination to recover Medicaid Program overpayments.
- Sunrise Handicap Transport Co.; Appellant - August 28, 2015 (PDF)
  - For a hearing pursuant to Part 519 of Title 18 of the Official Compilation of Codes, Rules and Regulations of the State of New York (NYCRR) to review a determination to recover Medicaid overpayments.
- Tatiana Gouskova, M.D.; Appellant - December 09, 2015 (PDF)
  - For a hearing pursuant to Part 519 of Title 18 of the Official Compilation of Codes, Rules and Regulations of the State of New York (NYCRR) to review a determination to recover Medicaid overpayments

# 2014

- Ali John Jazayeri, D.D.S.; Appellant - April 3, 2014 (PDF)
  - For a hearing pursuant to Part 519 of Title 18 of the Official Compilation of Codes, Rules and Regulations of the State of New York (NYCRR) to review a determination to recover Medicaid ovetpayments
- Ambulette P.R.N., Inc.; Appellant - May 1, 2014 (PDF, 178KB)
  - For a hearing pursuant to Part 5:9 of Title 18 of the Official Compilation of Codes, Rules and Regulations of the State of New York (NYCRR) to review a determination to recover Medicaid overpayments
- Coalo Ambulette Service Inc. and Azaire Paul (AKA Paul Azaire); Appellant - November 10, 2014 (PDF, 119KB)
  - For a hearing pursuant to Part 519 of Title 18 of the Official Compilation of Codes, Rules and Regulations of the State of New York (18 NYCRR) to review the Determination of the Office of the Medicaid Inspector General to exclude the Appellants for a period of three (3) Years and to recover $152,275.20 in Medicaid Overpayments
- Devendra Kumar Shrivastava, M.D.; Appellant - November 10, 2014 (PDF, 100KB)
  - For a hearing pursuant to 18 NYCRR Part 519 to review a determination to recover Medicaid overpayments
- Lake Grove, Durham and Maple Valley Schools; Appellant- April 30, 2014 (PDF, 43KB)
  - From a determination by the NYS Office of the Medicaid Inspector General to recover Medicaid Program overpayments
- Lifeline Infusion Services, Inc.; Appellant - October 28, 2014 (PDF, 29KB)
  - For a hearing pursuant to 18 NYCRR Part 519 to review a determination to recover Medicaid overpayments
- Rite Aid of New York, Inc., Pharmacy Store # 10824, formerly dba Eckerd Corporation, Pharmacy Store # 5021; Appellant - October 3, 2014 (PDF, 1.81MB)

Case 2:21-cv-04097-DG-AKT    Document 55    Filed 10/29/21    Page 442 of 444 PageID #: 2008

- o For a hearing pursuant to 18 NYCRR Part 519 to review a determination to recover Medicaid overpayments
- Soundview Healthcare Network; Appellant- January 10, 2013 (PDF, 40KB)
  - o Arising out of alleged violations of Article 28 of the Public Health Law of the State of New York and Title 10 (Health) of the Official Compilation of Codes, Rules and Regulations of the State of New York (NYCRR)
- St. Barnabas Hospital; Appellant- May 23, 2014 (PDF, 23KB)
  - o For a hearing pursuant to Part 519 of Title 18 of the Official Compilation of Codes, Rules and Regulations of the State of New York (NYCRR) to review a determination to recover Medicaid overpayments.
- Tejet Express Transportation, Inc.; Appellant- June 9, 2014 (PDF, 29KB)
  - o For a hearing pursuant to Part 519 of Title 18 of the Official Compilation of Codes, Rules and Regulations of the State of New York (NYCRR) to review a determination to recover Medicaid overpayments.

## 2013

- B.O.G. Health Supplies Corp.; Appellant- December 16, 2013 (PDF, 25KB)
  - o For a hearing pursuant to Part 519 of Title 18 of the Official Compilation of Codes, Rules and Regulations of the State of New York (18 NYCRR) to review the Determination of the Office of the Medicaid Inspector General to recover $164,135.30 in Medicaid overpayments.
- Christian Ambulette, Inc.; Appellant- October 9, 2013 (PDF, 29KB)
  - o For a hearing pursuant to Part 519 of Title 18 of the Official Compilation of Codes, Rules and Regulations of the State of New York (NYCRR) to review a determination to recover Medicaid overpayments.
- LIN-WIL Transportation, Inc.; Appellant- April, 25, 2013 (PDF, 56KB)
  - o For a hearing pursuant to Part 519 of Title 18 of the: Official Compilation of Codes, Rules and Regulations: of the State of New York (NYCRR) to review a: determination to recover Medicaid overpayments
- Michael Lance Klein, M.D.; Appellant- January 29, 2013 (PDF, 46KB)
  - o For a hearing pursuant to Part 519 of Title 18 of the: Official Compilation of Codes, Rules and Regulations: of the State of New York (NYCRR) to Review a: Determination to Recover Medicaid Overpayments
- Rx Now Inc., d/b/a Procare Pharamcy; Appellant - November 19, 2013 (PDF, 61KB)
  - o For a hearing pursuant to Part 519 of Title 18 of the Official Compilation of Codes, Rules and Regulations of the State of New York (18 NYCRR) to review the Determination of the Office of the Medicaid Inspector General to exclude those named above from the Medicaid Program and to recover $1,836,847.64 in Medicaid overpayments for the period April 17, 2009 through March 18, 2010.
- Saratoga County Maplewood Manor, Audit #07-4424; Appellant- January 16, 2013 (PDF, 39KB)
  - o Pursuant to Part 519 of Title 18 of the Official Compilation of Codes, Rules and Regulations of the State of New York
- Scott R. Michel, Evelyn Gerber, NuTech Healthcare Management Ltd.; Appellant- February 5, 2013 (PDF, 22KB)
  - o Pursuant to Part 519 of Title 18 of the Official Compilation of Codes, Rules and Regulations of the State of New York

Return to top

## 2012

- Concourse Rehabilitation & Nursing Center, Inc.; Appellant- March 13, 2012 (PDF, 27KB, 7pgs.)
  - o From a determination to recover Medicaid Program overpayments

Case 2:21-cv-04097-DG-AKT  Document 55  Filed 10/29/21  Page 443 of 444 PageID #: 2009

- Independent Bronx Consultation Center; Appellant - July 5, 2012 (PDF, 19KB)
  - From a determination to recover Medicaid Program overpayments
- Laurence L. Rezkalla M.D.; Appellant - April 23, 2012 (PDF, 87KB, 9pgs.)
  - From a determination by the NYS Office of the Medicaid Inspector General to recover Medicaid program overpayments
- Multiple Billing Services, Inc. d/b/a MBS Transport; Appellant - May 21, 2012 (PDF, 49KB)
  - From a determination by the NYS Office of the Medicaid Inspector General to recover Medicaid program overpayments
- New York Service Network, Inc.; Appellant- April 24, 2012 (PDF, 91KB, 25pgs.)
  - From a determination by the NYS Office of the Medicaid Inspector General to recover Medicaid Program overpayments
- Rite Aid of New York, Inc./ Eckerd Store #10825; Appellant - June 26, 2012 (PDF, 13KB)
  - From a determination to seek restitution of Medicaid Program overpayments
- Vito Frank Taverna, M.D.; Appellant - April 27 2012 (PDF, 82KB, 9pgs.)
  - For a hearing pursuant to Part 519 of Title 18 of the Official Compilation of Codes, Rules and Regulations of the State of New York (NYCRR) to Review a Determination to Recover Medicaid Overpayments

Return to top

# 2011

- Dumont Masonic Home, Appellant - July 15, 2011 (PDF, 240KB, 29pgs.)
  - From a determination to recover Medicaid Program overpayments

- Mahmoud Alam, R. Ph., Essex Street Corp.; Appellant - April 29, 2011 (PDF, 118KB, 12pgs.)
  - For a hearing pursuant to Part 519 of Title 18 of the Official Compilation of Codes, Rules and Regulations of the State of New York (18 NYCRR) to review the Determination of the Department to recover $3,304.29 in Medicaid overpayments

- Michael Malotz Skilled Nursing Pavilion, Appellant - July 20, 2011 (PDF, 14KB, 2pgs.)
  - From a determination to seek restitution of Medicaid Program overpayments.

- Niagara Pharmacy, Appellant - July 25, 2011 (PDF, 222KB, 27pgs.)
  - From a determination by the NYS Office of the Medicaid Inspector General to recover Medicaid Program overpayments

- Odd Fellow & Rebekah Rehabilitation and Health Care Center, Inc. (PDF, 175KB, 27pgs.)
  - From a determination to recover Medicaid Program overpayments

- Susquehanna Nursing & Rehabilitation Center, Appellant - October 14, 2011 (PDF, 279KB, 31pgs.)
  - For a hearing pursuant to Part 519 of Title 18 of the Official Compilation of Codes, Rules and Regulations of the State of New York (18 NYCRR) to review the Determination of the Department to recover $9,662.57 in Medicaid overpayments.

- Vijay Vasireddy, SBV Pharmacy, Inc.; Appellant - June 1, 2011 (PDF, 104KB, 8pgs.)
  - For a hearing pursuant to Part 519 of Title 18 of the Official Compilation of Codes, Rules and Regulations of the State of New York (18 NYCRR) to review the Determination of the Department to recover $9,662.57 in Medicaid overpayments.

Return to top

# 2010

Case 2:21-cv-04097-DG-AKT   Document 55   Filed 10/29/21   Page 444 of 444 PageID #: 2010

- <u>Episcopal Residential Health Care Facility, Inc., Appellant - November 18, 2010</u> (PDF, 33KB, 9pgs.)
  - From a determination to recover Medicaid Program overpayments.

- <u>Lemberg Home and Geriatric Institute, Appellant - January 19, 2010</u> (PDF, 237KB, 17pgs.)
  - From Audit # 06-7423, a Determination of the Office of the Medicaid Inspector General to Recover Medicaid Overpayments and Interest Pursuant to 18 NYCRR Part 518

- <u>Rite Aid of New York, Inc., formerly Hearing d/b/a Eckerd Corporation Store 10839; Appellant - Juy 7, 2010</u> (PDF, 222KB, 42pgs.)
  - From a determination by the NYS Office of the Medicaid Inspector General to recover Medicaid Program overpayments

- <u>West Midtown Medical Group, Inc., Appellant - November 19, 2010</u> (PDF, 24KB, 5pgs.)
  - Proceeding to determine the timeliness of an appeal from final audit findings under Article 2 of the Social Services Law of the State of New York and Title 18 (Social Services) of the Official Compilation of Codes, Rules and Regulations of the State of New York (18 NYCRR).

<u>Return to top</u>