UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------X
JEAN R. DANIEL,

                                                                    **REPORT AND**
                                                                    **RECOMMENDATION**
                                        Plaintiff,                  CV 21–4097 (DG)(AYS)


                    -against-


NEW YORK STATE DEPARTMENT
OF HEALTH, ADMINISTRATIVE LAW
JUDGE KIMBERLY A. O'BRIEN, THE
NEW YORK STATE OFFICE OF THE
OF THE MEDICAID INSPECTOR
GENERAL, DANIEL V. COYNE,
ASSISTANT MEDICAID INSEPECTOR
GENERAL STEPHANIE E. PATON, RN,
WILLIAM ROGERS, EXECUTIVE
ASSISTANT AT THE TOWN OF
BROOKHAVEN'S DEPARTMENT OF
PUBLIC SAFETY, THE TOWN OF
BROOKHAVEN, AND JOHN DOES #1-10,

                                        Defendants.
--------------------------------------------------X
**SHIELDS, Magistrate Judge,**

        Pro se plaintiff Jean R. Daniel ("Daniel" or "Plaintiff") commenced this action against

the New York State Department of Health ("DOH"), Administrative Law Judge Kimberly

O'Brien ("ALJ O'Brien"), New York State Office of the Medicaid Inspector General ("OMIG"),

Deputy Medicaid Inspector General Daniel Coyne ("DMIG"), and Assistant Medicaid Inspector

General Stephanie E. Paton ("AMIG") (collectively the "State Defendants"), as well as William

Rogers ("Rogers"), Executive Assistant at the Town of Brookhaven's Department of Public

Safety, and the Town of Brookhaven ("Brookhaven") (collectively the "Town Defendants")

alleging inter alia violations of his rights under the: (1) Due Process Clause of the Fourteenth

Amendment; (2) Equal Protection Clause of the Fourteenth and Fifth Amendments; (3) Seventh

Amendment; (4) Takings Clause of the Fifth Amendment; and (5) State Administrative

Procedure Act, 42 CFR Section 457.1206, and 42 CFR Section 447.45(d)(1)(4). Plaintiff also

seeks a stay of his administrative appeal pending disposition of this Court and seeks to: (1)

compel the appearance of Rogers and the production of records pertaining to Plaintiff's company

in an administrative hearing; (2) compel OMIG to remove Plaintiff and his company from any

negative and excluded lists and to restore them to the Medicaid program; and (3) to transfer the

administrative hearing to this Court. Additionally, Plaintiff seeks $3,8000,000 in damages.

Presently before this Court, upon referral by the Honorable Diane Gujarati for Report and

Recommendation, see Order Referring Motions dated 03/07/2022, is the Town Defendants'

motion to dismiss the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of

Civil Procedure, see Docket Entry ("DE") [48], and the State Defendants' motion to dismiss the

Amended Complaint pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure.

See DE [50]. As discussed below, this Court respectfully recommends that the Town

Defendants' motion to dismiss be granted, the State Defendants' motion to dismiss be granted,

and Plaintiff be granted leave to replead with respect to any claim not dismissed with prejudice.

BACKGROUND

I.    Documents Considered

As is required in the context of this motion to dismiss, the factual allegations in the

Complaint, though disputed by Defendants, are accepted to be true for purposes of this motion,

and all reasonable inferences are drawn therefrom in favor of the Plaintiff.

While facts to consider in the context of a Rule 12 motion to dismiss are generally limited

to those set forth in the pleadings, a court may consider matters outside of the pleadings under

certain circumstances. Specifically, in the context of a Rule 12(b)(6) motion, a court may

consider: (1) documents attached to the Complaint as exhibits or incorporated by reference therein; (2) matters of which judicial notice may be taken; or (3) documents upon the terms and effects of which the Complaint "relies heavily" and which are, thus, rendered "integral" to the Complaint." Chambers v. Time Warner, Inc., 282 F.3d 147, 152-153 (2d Cir. 2002); see Int'l Audiotext Network, Inc. v. Am. Tel. and Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995). Moreover. "[a] court may take judicial notice of documents filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." Glob. Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 157 (2d Cir. 2006) (quoting Int'l Star Class Yacht Racing Ass'n Tommy Hilfiger U.S.A., Inc., 146 F.3d 66, 70 (2d Cir. 1998)).

Where, as here, the amended complaint was filed pro se, it must be construed liberally with "special solicitude" and interpreted to raise the strongest claims that it suggests. Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011) (internal quotation marks omitted). Nonetheless, a pro se complaint must state a plausible claim for relief. See Harris v. Mills, 572 F.3d 66, 73 (2d Cir. 2009).

The Court turns now to discuss the facts set forth in Plaintiff's Amended Complaint, construed in his favor.

II.   Facts

A.   Background

1.   Facts Relevant to Plaintiff's Claims Against the State Defendants

Plaintiff was a partner at Dove Transport Service, LP ("Dove"), a transportation provider with its principal place of business at 72 Granada Circle, Mount Sinai, NY 11766, located in the Town of Brookhaven. See Amended Complaint ("AC") ¶¶ 1-2, Ex. 1, DE [34]. On June 19,

2014, Dove enrolled as a provider in the Medicaid program under the category of service 0603, as a "taxi." See AC Ex. 2. At the time of the enrollment Plaintiff's business and his drivers did not have a Brookhaven issued taxi license because Plaintiff believed that because their clientele were Medicaid recipients, this constituted an exemption from licensing. See AC ¶¶ 14A-J, 69-71. In April of 2016 Dove applied for and received a taxi license from Brookhaven. See AC ¶10A, 20, Exs. 5, 14.

Subsequent to Dove's enrollment, OMIG determined it was not licensed to operate as a taxi or transportation provider until April of 2016. See AC ¶ 10A, Exs. 5, 14. After an investigation, OMIG concluded that "all of the claims which Dove submitted to the Medicaid program between July 1, 2016 and May 13, 2017 failed to include the driver's license and vehicle license plate numbers." See AC, Ex. 5. On May 30, 2017, OMIG issued a letter informing Plaintiff of its "preliminary findings of unacceptable practices and/or significant overpayments," and that it would temporarily withhold 25% of Dove's current and future Medicaid claims for no more than 90 days "unless a written Draft Audit Report or Notice of Proposed Agency Action is issued." AC, Ex. 8 ("Withhold Letter"). The Withhold Letter further notified Dove that, within 30 days of the notice, it could submit written arguments and documentation that the withhold letter should be removed." Id.

On December 10, 2018, OMIG issued a Notice of Proposed Agency Action ("NOPAA"), which set forth its findings that Dove had: (1) improperly provided taxi services without licensure between Jun 19, 2014 to April 23, 2016; (2) submitted claims to the Medicaid program between July 1, 2016 and May 13, 2017 without including the driver's license and vehicle plate numbers; and (3) failed to produce records requested by OMIG investigators in order to demonstrate the right to receive payment under the Medicaid program pursuant to 18 NYCRR

504.3(a): Duties of the Provider." See AC, Ex. 5. OMIG also determined that, "in accordance with 18 NYCRR 515.3, as an affiliate and owner of Dove, the conduct giving rise to the unacceptable practices alleged herein was accomplished within the course of the duties of Dove, and Daniel knew or should have known of the conduct, or the conduct was effected with Daniel's knowledge and consent." Id. The NOPAA specifically listed all of the claims that were rejected. See id. The NOPAA further notified Plaintiff and Dove that they had thirty days to respond. Id.

On January 9, 2019, Plaintiff responded, stating that: "Jean R. Daniel cannot be excluded . . . because he has currently moved on to a different field and has no intention of ever rejoining the Medicaid program." AC, Ex. 7, ¶ 27. "OMIG cannot exclude Dove Transport Service, LP from participating as a provider in the Medicaid program . . . . The partnership has been cancelled and no longer exists as of May of 2018." AC, Ex. 7, ¶ 26. "[D]ue to the fact that this partnership no longer exists, we will need more time to comply with the six (6) year rule in providing the necessary records needed to justify what was actually billed by us. We may need at least sixty (60) days." AC, Ex. 7, ¶ 30.

Plaintiff claims that "[p]rior to OMIG's issuance of such a NOPAA on December 10, 2018, OMIG did not return any of the claims submitted by [p]laintiff between July 1, 2016 and May 13, 2017 [] which it allegedly believed to have been missing the driver's license and vehicle license plate numbers so that [p]laintiff could correct." AC ¶ 9. Plaintiff further alleges that the NOPAA "failed to provide [p]laintiff with specific instruction on how to resubmit claims." AC ¶ 9.

On January 17, 2020, OMIG issued a Notice of Agency Action ("NOAA"), notifying Plaintiff that: (1) he will be excluded from participating in the Medicaid program for three years

and until reinstated, and (2) jointly and severally liable to repay an overpayment of $395,387.59 plus interest. AC ¶ 9. OMIG later reduced the amount to $160,441.53. AC ¶ 64, Ex. 44. On February 6, 2020, OMIG placed Plaintiff, his partner and Dove on a list of excluded Medicaid providers. AC, Ex. 13.

On March 9, 2020, Plaintiff requested an administrative hearing in response to the NOAA. AC ¶ 18. The administrative hearing was scheduled, adjourned to August 19, 2021, adjourned again and remains pending. AC ¶¶ 46, 87, Exs. 31, 35, 37, 39, 41.

### 2.   Facts Relevant to Plaintiff's Claims Against the Town

On May 24, 2016, defendant Rogers, an employee of Brookhaven's Division of Public Safety, issued a letter stating "Please be advised that Dove Transport is a fully licensed and certified taxi operation within The Town of Brookhaven." AC, Ex. 14. On August 11, 2016, Rogers issued a letter to the OMIG stating:

> Jean Daniel registered his Taxi Business with the Town of Brookhaven on 4/24/16. His business name is Dove Transport and is located at 72 Granada Circle, Mount Sinai, N.Y. Prior to this date, Mr. Daniel made no attempt to obtain a valid Taxi license from the Town of Brookhaven. The reason he contacted the Town of Brookhaven to come into compliance was due to your on site inspection conducted by N.Y.S. OMIG, prior to 4/24/16.

AC ¶ 20; Ex. 14.

Plaintiff claims that Rogers' letters are not correct and wants Rogers to provide an "explanation" to the State and to correct the letters. AC ¶¶ 20, 45. Plaintiff also seeks Rogers' testimony on his behalf at the upcoming State administrative hearing and states  that ALJ O'Brien has denied his application to subpoena Rogers to testify, and objects that Rogers has declined to voluntarily testify without a subpoena. AC ¶¶ 14A-14J, 48.

Plaintiff alleges that the Town Defendants should know about the various and ever-changing statutes which Plaintiff premises his case on, and believes that Rogers should testify

about them at the administrative hearing, and should provide testimony to support Plaintiff's theory that the State or that the State and Brookhaven are conspiring against him. AC ¶¶ 14A-14J, 48.

Plaintiff alleges that Rogers and Brookhaven have not sufficiently returned his telephone calls or inquiries. However, Plaintiff refers to conversations that Plaintiff or his "representative" George Joseph had with Rogers in 2021. Plaintiff claims that during the conversations Rogers indicated that an attorney for Brookhaven would look into Plaintiff's claims to see if Brookhaven could be of any assistance to Plaintiff. Plaintiff cites one such conversation between George Joseph and Rogers on May 24, 2021, in which Rogers confirmed that Plaintiff did not require a Brookhaven taxi license. See AC, Ex. 49 at 38-43, DE [44].[1] The transcript indicates that Rogers conveyed that he did not have the necessary documents in his office and that a Brookhaven attorney would need to look everything over and make the final determination. See id. Following these 2021 communications, Brookhaven did not issue any letters supporting Plaintiff's legal claims and made no further contact. AC ¶ 46B.

B.     Procedural History

Plaintiff commenced this action on July 1, 2021.  See Compl., DE [1]. That same day Plaintiff filed a preliminary injunction motion. See DE [2]. Plaintiff's request for emergency relief was denied on September 24, 2021. See Minute Order, DE [43]. Following denial of the Preliminary Injunction Plaintiff filed an interlocutory appeal, DE [45], and moved the District Court for reconsideration of the denial. DE [44], [47]. On October 29, 2021, Plaintiff's request

---

[1]. At ¶ 46B, the Amended Complaint indicates that the transcript would be separately provided as "Exhibit '47'", however, Plaintiff marked the transcript as Exhibit 49, while another document appears as Exhibit 47.

for reconsideration of the District Court's denial of Plaintiff's motion for a preliminary injunction was denied. See Order dated 10/29/2021.

The Town Defendants moved to dismiss the Complaint on August 26, 2021. DE [22]. On September 9, 2021, Plaintiff filed an amended complaint. DE [34]. In light of the filing of the Amended Complaint, the Court denied the Town Defendants' motion to dismiss as moot, without prejudice to refiling in response to the Amended Complaint. See Order dated 9/13/2021. On October 7, 2021, the Town Defendants filed a motion to dismiss the Amended Complaint. See DE [48]. On October 8, 2021, the State Defendants filed their motion to dismiss to the Amended Complaint. DE [50]. In response to the motions to dismiss, on October 29, 2021, Plaintiff filed his opposition, DE [56], as well as the second amended complaint. DE [55]. On March 7, 2022, the Honorable Diane Gujarati referred both motions to dismiss to the undersigned for report and recommendation. See Order Referring Motions dated 03/07/2022.

III.    The Motions to Dismiss

Both the Town and State Defendants move to dismiss all claims.  The Town Defendants assert that the various federal, New York State, Suffolk County, and Town of Brookhaven statutes upon which Plaintiff rests his claims that he and Dove never needed a taxi license do not support his claims. The Town Defendants further argue that Rogers possess qualified immunity and that Brookhaven has no municipal liability.

The State Defendants contend that Younger abstention precludes federal court interference with the State's ongoing enforcement proceeding. Next, the State Defendants argue that Plaintiff's official capacity damages and state law claims are barred by the Eleventh Amendment. The State Defendants assert that ALJ O'Brien has judicial immunity and that the

DMIG and AMIG are protected by qualified immunity from any individual capacity damages claims. Finally, the State Defendants argue that Plaintiff's constitutional claims are meritless.

The Court now turns to the merits of the motions.

DISCUSSION

I.    Legal Principles: Standards Applicable on Motions to Dismiss

A.    Rule 12(b)(1)

When a defendant moves to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, and also moves to dismiss on other grounds, the Court must consider the Rule 12(b)(1) motion first. Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir. 1990). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). Here, the State Defendants ask the Court to dismiss Plaintiff's claims pursuant to Rule 12(b)(1) under the Younger abstention doctrine, Eleventh Amendment immunity, and absolute judicial immunity.

1.    The Younger Abstention Doctrine

To the extent Plaintiff seeks injunctive relief pertaining to OMIG's pending enforcement proceedings, the Younger abstention doctrine and its progeny prohibit this Court from exercising jurisdiction over this matter, which concerns an ongoing proceeding in state court. See Younger v. Harris, 401 U.S. 37, 44, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971). Younger abstention is mandatory when: (1) there is an ongoing state proceeding; (2) an important state interest is involved; and (3) the plaintiff has an adequate opportunity for judicial review of his constitutional claims during or after the proceeding. Spargo v. N.Y. State Comm'n on Judicial Conduct, 351 F.3d 65, 75 (2d Cir. 2003).

In <u>Sprint Communications, Inc. v. Jacobs</u>, the Supreme Court clarified that <u>Younger</u> abstention is triggered by only three categories of state court proceedings: (1) "state criminal prosecutions"; (2) "civil enforcement proceedings"; and (3) civil proceedings that "implicate a State's interest in enforcing the orders and judgments of its courts." "571 U.S. 69, 73, 134 S. Ct. 584, 187 L. Ed. 2d 505 (2013).  If the state-level proceeding does fall into one of these three buckets, courts in the Second Circuit will consider three additional, non-dispositive factors "1) whether there is a pending state proceeding, 2) whether that proceeding implicates an important state interest, and 3) whether the state proceedings affords an adequate opportunity for judicial review of ... federal constitutional claims." <u>Lowell v. Vermont Dep't of Children and Families</u>, 835 F. App'x 637, 639 (2d Cir. 2020) (internal quotations and citations omitted).

Whether or not <u>Younger</u> divests the court of jurisdiction over this action, therefore, depends on whether it can be accurately characterized as a civil enforcement proceeding within the meaning of <u>Sprint</u>. In <u>Sprint</u>, the Supreme Court defined the civil enforcement proceeding category as "akin to a criminal prosecution in important respects." <u>Sprint</u>, 571 U.S. at 79, 134 S. Ct. 584 (internal quotations and citations omitted). More specifically, the genre of civil enforcement actions that come within the scope of <u>Younger</u> "are characteristically initiated to sanction the federal plaintiff, <u>i.e.</u>, the party challenging the state action for some wrongful act." <u>Id.</u> "[A] state actor is routinely a party to the state proceeding" as well, and "often initiates the action." <u>Id.</u> Finally, such proceedings "commonly involve[ ]" investigations and "often culminat[e] in the filing of a formal complaint or charges." <u>Id.</u> However, "[w]hile [the Supreme Court has] expanded <u>Younger</u> beyond criminal proceedings, and even beyond proceedings in courts, [it] ha[s] never extended it to proceedings that are not judicial in

nature." New Orleans Pub. Serv., Inc. v. Council of City of New Orleans, 491 U.S. 350, 369-70, 109 S. Ct. 2506, 105 L. Ed. 2d 298 (1989) (internal quotations and citations omitted).

Here, the court concludes that the Younger abstention doctrine precludes it from exercising jurisdiction over the an ongoing State civil enforcement proceeding. The proceeding at issue here clearly falls into the second Sprint category. Further, as explained in Sprint, a "state-initiated disciplinary proceeding[ ] against a lawyer for violation of state ethics rules," Sprint, 134 S. Ct. at 592, substantiated by a state investigation and the issuance of a formal complaint, was a "noncriminal proceeding[ ] bear [ing] a close relationship to proceedings criminal in nature, " such that it merited deference under Younger." Id.

Similarly, in Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc., 477 U.S. 619 (1986), the Supreme Court examined the proceedings of the Ohio Civil Rights Commission ("OCRC"). This body was responsible for allegations of civil rights violations such as, as implicated in Dayton Christian Schools, sex discrimination. An individual could file a complaint alleging civil rights violations with the OCRC; in Dayton Christian Schools, an aggrieved employee filed an initial complaint of sex discrimination. After initiation, the OCRC would conduct a preliminary investigation. If it determined that probable cause existed to believe that the allegation was true, it would either seek to resolve the dispute amicably via consent order or file a formal complaint against the accused individual or entity and initiate administrative proceedings against that individual or entity; the individual or entity would then be required to file an answer. Id. at 623–24.

In Sprint, the Court pointed to Dayton Christian Schools as an example of "state-initiated administrative proceedings to enforce state civil rights laws," involving a state-conducted

"preliminary investigation and complaint" that was another example of "an act of civil enforcement of the kind to which <u>Younger</u> has been extended." <u>Sprint</u>, 134 S. Ct. at 592.

Just as described in <u>Sprint</u>, OMIG is a state entity that initiated an enforcement proceeding pursuant to its statutory authority to investigate and prosecute fraud, waste and abuse in the Medicaid program. OMIG issued a NOAA that formally charged Plaintiff with unacceptable practices under Medicaid, and notified him that he would be subject to sanctions including being barred from Medicaid for a period of time and liable for overpayments.

There is a plain resemblance between the OMIG's proceedings and those that the Supreme Court found in <u>Sprint</u> typified the category

of civil enforcement actions where <u>Younger</u> abstention was appropriate. In all three cases, the proceedings involve "adjudicative authority ... invoked ... to sanction [the federal plaintiff] for commission of a wrongful act." <u>Sprint</u>, 134 S. Ct. at 593. All involve action initiated by a state body in its sovereign capacity, subject to a finding of probable cause substantiated by that body's investigation. All three were, in short, "akin to a criminal prosecution in important respects." <u>Id.</u> at 592 (internal quotation marks omitted). There can be no question that the category identified in <u>Sprint</u> covers the OMIG's actions here.

The OMIG's proceeding satisfies the non-dispositive factors as well. First, there is no question that there is an ongoing state proceeding: its pendency is the very reason for Plaintiff's application for emergent relief. Second, the State holds an important interest in protecting the integrity of the Medicaid program. <u>See</u> <u>Louie v. Perales</u>, No. 91-CV-4038 (LLM), 1991 WL 167978, *4 (S.D.N.Y. Aug . 20, 1991) (applying <u>Younger</u> where "the Department's proposed censure and restitution clearly implicate New York State's important interest in administering the Medicaid program in accordance with its regulations providing for censure and restitution where

appropriate."). Third, the state proceedings allow Plaintiff adequate opportunity for judicial review of federal constitutional claims, including the right to present his constitutional challenges in an Article 78 proceeding. See Mir v. Shah, No. 11-CV-5211 (BS) (KNF), 2012 WL 3229308, at *3 (S.D.N.Y. Aug. 8, 2012) (an Article 78 proceeding is an adequate forum for addressing federal constitutional claims.); 18 NYCRR 519.22(e).

Further, no exception to Younger abstention applies. Younger explained that federal courts may entertain claims from which they should otherwise abstain when a plaintiff shows "bad faith, harassment, or any other unusual circumstance that would call for equitable relief." Younger, 401 U.S. at 54. Here, Plaintiff argues that Younger does not apply because OMIG's enforcement proceeding was commenced against him in bad faith and simply to harass him. See DE [56] at ¶ 55. However, the Amended Complaint is devoid of any indication of bad faith or harassment on the part of the OMIG.

First, Plaintiff cannot claim that he is being forced to submit to an unfair tribunal. As set out at length above, Plaintiff has offered no evidence beyond conclusory assertions to suggest that he will face unfairness or bias from the OMIG.

Second, the bad faith exception focuses on "the subjective motivation of the state authority in bringing the proceeding." Diamond "D" Const. Corp. v. McGowan, 282 F.3d 191, 199 (2d Cir. 2002). To invoke the bad faith exception, "the federal plaintiff must show that the state proceeding was initiated with and is animated by a retaliatory, harassing, or other illegitimate motive." Id. A contested "proceeding that is legitimate in its purposes, but unconstitutional in its execution—even when the violations of constitutional rights are egregious—will not warrant the application of the bad faith exception." Id. Plaintiff's argument

that ALJ O'Brien unfairly refused to compel Rogers to testify before the pre-hearing conference, amounts to no more than the latter and thus cannot show bad faith under Younger.

Nor do any unusual circumstances exist here. The Supreme Court has offered two examples of what might fall into the latter category: when a statute is " 'flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it,'" Younger, 401 U.S. at 53–54 (quoting Watson v. Buck, 313 U.S. 387, 402 (1941)), and "when the state administrative agency 'was incompetent by reason of bias to adjudicate the issues pending before it,'" Diamond "D," 282 F.3d at 201 (quoting Gibson v. Berryhill, 411 U.S. 564, 577 (1973)).

Though Plaintiff undoubtedly insists that the OMIG is so biased against him as to foreclose any chance at a fair hearing, he has offered no reason whatsoever to believe that that is so. Nor is this a case, as the Second Circuit has discussed, where there is no state remedy "to meaningfully, timely, and adequately" resolve the alleged constitutional violation, and "the litigant will suffer 'great and immediate' harm if the federal court does not intervene." Diamond "D," 282 F.3d at 201 (quoting Trainor v. Hernandez, 431 U.S. 434, 441–42, 97 S. Ct. 1911, 52 L. Ed. 2d 486 (1977)). Further, Plaintiff can avail himself of an Article 78 proceeding to vindicate any subsequent injury. "[W]here such state remedies are available, 'a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary.'" Id.

Accordingly, as Younger abstention is mandatory, this Court respectfully recommends that the Court abstain from hearing it.

2.    Eleventh Amendment Immunity

The Eleventh Amendment provides that:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. As a result, "[a] State is thus immune from suits in federal court brought by its own citizens and such immunity extends to officers acting on behalf of the State." Winokur v. Office of Court Admin., 190 F. Supp. 2d 444, 448 (E.D.N.Y. 2002) (internal citations omitted). This immunity extends to state agencies as well. See e.g., Emmons v. City Univ. of N.Y., 715 F. Supp. 2d 394, 406 (E.D.N.Y. 2010).

There are only three exceptions to this rule. "First, a State may waive its Eleventh Amendment defense." Winokur, 190 F. Supp. 2d at 448 (citing Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 670, 119 S. Ct. 2219, 144 L. Ed. 2d 605 (1999)). "Second, Congress may abrogate the sovereign immunity of the States by acting pursuant to a grant of constitutional authority." Id. (citing Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 80, 120 S. Ct. 631, 145 L. Ed. 2d 522 (2000)). "Third, under the *Ex parte Young* doctrine, the Eleventh Amendment does not bar a suit against a state official when that suit seeks ... prospective injunctive relief." Id. (internal quotation marks omitted) (citing Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 73, 116 S. Ct. 1114, 134 L. Ed. 2d 252 (1996)) (italics and ellipsis in original).

A State that has not consented to being sued is immune from suits brought in federal courts by its own citizens as well as by citizens of another state. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984). In order to be sued in federal court, a state must expressly and in no uncertain terms waive its Eleventh Amendment immunity. Port Authority Trans–Hudson Corp. v. Feeney, 495 U.S. 299, 305, 110 S. Ct. 1868, 109 L. Ed. 2d 264 (1990) ("The Court will give effect to a State's

waiver of Eleventh Amendment immunity only where stated by the most express language or by such overwhelming implication from the text as [will] leave no room for any other reasonable construction.") (internal quotations omitted). In the absence of consent, a suit for monetary damages in which the State, or one of its agencies or departments, is named as the defendant is proscribed by the Eleventh Amendment.

When a suit is brought against state officials, it is not always clear whether that suit is a suit against the State itself. Pennhurst, 465 U.S. at 101, 104 S. Ct. 900. "The Eleventh Amendment bars a suit against state officials when the state is the real, substantial party in interest." Id. (internal citation omitted). The general rule, then, is that relief sought nominally against a state official is in fact against the state if the decree would operate against the latter. Id.  There is an important, though limited, exception to this general rule: a suit challenging the constitutionality of a state official's action is not one against the State. Id. at 102, 104 S. Ct. 900.

In Edelman v. Jordan, 415 U.S. 651, 94 S. Ct. 1347, 39 L. Ed. 2d 662, (1974), the Supreme Court emphasized that the Eleventh Amendment bars some forms of injunctive relief against state officials for violation of federal law. See Pennhurst, 465 U.S. at 102, 104 S. Ct. 900; Edelman, 415 U.S. at 666–67, 94 S. Ct. 1347. In particular, Edelman, held that when a plaintiff sues a state official alleging a violation of federal law, the federal court may award an injunction that governs the official's future conduct, but not one that awards retroactive monetary relief. 415 U.S. at 666–67, 94 S. Ct. 1347; Pennhurst, 465 U.S. at 102–03, 104 S. Ct. 900. "[S]uch a suit would not be one against the State since the federal-law allegation would strip the state officer of his official authority. Nevertheless, retroactive relief [is] barred by the Eleventh Amendment." Pennhurst, 465 U.S. at 103, 104 S. Ct. 900; see also Kentucky v.

16

Graham, 473 U.S. 159, 165–167 n. 14, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985) (suit for damages against state officer in official capacity is barred by Eleventh Amendment).

Plaintiff's claims against OMIG and DOH, as well as his official capacity claims for monetary relief against ALJ O'Brien, the AMIG and the DMIG, are all barred. Pennhurst, 465 U.S. at 100–03, 104 S. Ct. 900 (Eleventh Amendment precludes federal suit against the state for money damages and retroactive relief).

Plaintiff argues that the State's participation in the Medicaid program waives its Eleventh Amendment immunity. See DE [56], ¶¶ 62-63, 66. However, "[s]tate participation in a federal program . . . does not itself constitute a waiver, rather waiver will be found only if stated in 'express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction." Yorktown Med. Lab, Inc. v. Perales, 948 F.2d 84, 88 (2d Cir. 1991). As Plaintiff has failed to cite to any such waiver of the State's Eleventh Amendment immunity by its participation in the Medicaid program, Plaintiff's claims for damages against the State Defendants in their official capacities are barred.

Similarly, Plaintiff's claim for injunctive relief for alleged violations of state law are barred by the State Defendants' immunity. Under the Ex-parte Young doctrine, "suit against state officers acting in their official capacities that seek prospective injunctive relief to prevent a continuing violation of federal law" are permitted. Kelly v. N.Y. Civil Serv. Comm'n, 632 F. Appx 17, 18 (2d Cir. 2016). However, "Young does not allow a federal court to issue an injunction for a violation of state law." Id. "[A] claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment." Treistman v. McGinty, 804 F. App'x 98, 99, (2d Cir. 2020).

Accordingly, Plaintiff's claims under the State Administrative Procedure Act, NYCRR, General Municipal Law, New York State Vehicle and Traffic Law, and any state law claims are barred.

      3.    <u>Absolute Judicial Immunity</u>

Judges are absolutely immune from suit for damages for any actions taken within the scope of their judicial responsibilities. <u>Mireles v. Waco</u>, 502 U.S. 9, 11, 112 S. Ct. 286, 116 L. Ed. 2d 9 (1991). Generally, "acts arising out of, or related to, individual cases before the judge are considered judicial in nature." <u>Bliven v. Hunt</u>, 579 F.3d 204, 210 (2d Cir. 2009). "Even allegations of bad faith or malice cannot overcome judicial immunity." <u>Id.</u> (citations omitted). This is because "[w]ithout insulation from liability, judges would be subject to harassment and intimidation ...." <u>Young v. Selsky</u>, 41 F.3d 47, 51 (2d Cir. 1994).

As an ALJ, Defendant O'Brien performs adjudicatory functions within a government agency, and as such is entitled to absolute immunity from damages liability for their judicial acts. <u>See</u> <u>Butz v. Economou</u>, 438 U.S. 478, 514, 98 S. Ct. 2894, 57 L. Ed. 2d 895 (1978) (adjudicators within federal agencies entitled to absolute immunity); <u>Levitant v. Workers Comp. Bd. of New York</u>, 16 Civ. 6990 (ER), 2018 WL 1274734, at* 5 (S.D.N.Y. Mar. 8, 2018) (observing that "[a]bsolute judicial immunity extends to ALJs," and applying such immunity to Commissioners of the New York State Workers Compensation Board) (quoting <u>Phillips v. New York State Dep't of Labor Unemployment Ins. Appeal Bd.</u>, No. 11 Civ. 1633 (JS), 2011 WL 2837499, at *2 (E.D.N.Y. 2011)); <u>see also</u> <u>Durant v. New York City Haus. Auth.</u>, No. 12-CV-00937 (NNG) (JMA), 2012 WL 928343, at **1–2 (E.D.N.Y. Mar. 19, 2012) ("[A]bsolute judicial immunity has been further applied to non-federal administrative hearing officers.") (collecting cases).

Judicial immunity does not apply when the judge acts "outside" his judicial capacity, or when the judge takes action that, although judicial in nature, is taken "in absence of jurisdiction." Mireles, 502 U.S. at 9–10, 112 S. Ct. 286; see also Bliven, 579 F.3d at 209–10 (describing actions that are judicial in nature). But "the scope of [a] judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." Stump v. Sparkman, 435 U.S. 349, 356, 98 S. Ct. 1099, 55 L. Ed. 2d 331 (1978). Plaintiff has not alleged that ALJ O'Brien took nonjudicial actions or that she acted in the absence of jurisdiction.

In sum, ALJ O'Brien is shielded from Plaintiff's claims by the doctrine of absolute judicial immunity. All claims against ALJ O'Brien are therefore dismissed with prejudice.

B.    Rule 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009) (quoting, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Arista Records, LLC v. Doe 3, 604 F.3d 110, 119–20 (2d Cir. 2010). Facial plausibility is established by pleading sufficient factual content to allow a court to reasonably infer the defendant's liability. Twombly, 550 U.S. at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 555. Nor is a pleading that offers nothing more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," sufficient. Iqbal, 556 U.S. at 678 (2009) (quoting Twombly, 550 U.S. at 555).

District courts are "obligated to construe pro se complaint [s] liberally," Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009), interpreting them "to raise the strongest arguments that

they suggest," Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006).  Courts may not, however, read into pro se submissions claims inconsistent with the pro se litigant's allegations, Phillips v. Girdich, 408 F.3d 124, 127 (2d Cir. 2005) (citation omitted), or arguments that the submissions themselves do not "suggest," Pabon v. Wright, 459 F.3d 241, 248 (2d Cir. 2006).  Pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law."  Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983) (citation omitted).

With these standards in mind, the Court turns to assess the viability of Plaintiff's claims.

II.    Failure to State a Claim

A.    Due Process

Both the Town and State Defendants move to dismiss Plaintiff's due process claims (both substantive and procedural) on the grounds that Plaintiff has not alleged the deprivation of a constitutionally-protected interest and that he has received adequate notices. The Town Defendants further argue that Rogers is entitled to qualified immunity on every claim because he has not violated any clearly established right.

To establish these claims, Plaintiff must allege that Defendants deprived him of a constitutionally cognizable interest in life, liberty, or property. E.g., Plaza Health Labs., Inc. v. Perales, 878 F.2d 577, 581 (2d Cir. 1989); see also DLC Mgmt. Corp. v. Town of Hyde Park, 163 F.3d 124, 130 (2d Cir. 1998) (where a plaintiff claims it was deprived of property right in violation of the substantive due process doctrine, the court must begin "by determining whether a constitutionally cognizable property interest is at stake").

"Liberty and property are broad and majestic terms," and "property" extends "well beyond actual ownership of real estate, chattels, or money." Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 571-72, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972). Still, when the asserted

property interest is a government benefit, "a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Id. at 577. "A person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke it at a hearing." Perry v. Sindermann, 408 U.S. 593, 601 (1972).

The Due Process Clause of the Fourteenth Amendment provides that no state may "deprive any person of life, liberty, or property, without due process of law [.]" In order to assert a violation of procedural due process rights, a plaintiff must "first identify a property right, second show that the state has deprived him of that right, and third show that the deprivation was effected without due process." Local 342, Long Island Pub. Serv. Employees v. Town Bd. of Huntington, 31 F.3d 1191, 1194 (2d Cir. 1994). When alleging a property interest in a public benefit, a plaintiff must first show "a legitimate claim of entitlement" to such interest. Bd. of Regents v. Roth, 408 U.S. at 577.

Due process also protects against arbitrary government action that deprives individuals of a protected interest. County of Sacramento v. Lewis, 523 U.S. 833, 845, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998). "In order for a plaintiff to maintain a substantive due process claim against a municipality, the plaintiff must demonstrate that the municipality's actions were willful, arbitrary, conscience-shocking or oppressive in a constitutional sense." Collins v. City of Marker Heights, 503 U.S. 115, 126–28, 112 S. Ct. 1061, 117 L. Ed. 2d 261 (1992). It does not forbid governmental actions that might fairly be deemed arbitrary or capricious and for that reason correctable in a state court lawsuit seeking review of administrative action. Id. It also does not

provide protection against state actions which are merely "incorrect or ill-advised." <u>Lowrance v. Achtyl</u>, 20 F.3d 529, 537 (2d Cir. 1994).

    1.   <u>The State Defendants</u>

Plaintiff claims (1) Defendants aggressively began an investigation without just cause, since there was no evidence of fraud or abuse by the part of the Plaintiff," AC ¶ 63; (2) OMIG and the DMIG, "within their NOPAA, seek to recover alleged inappropriate claims that were submitted between July 1, 2016 and May 13, 2017, more than two (2) years from the date of their NOPAA, AC ¶ 59; and (3) DOH, OMIG, and the DMIG failed to provide the Plaintiff with instructions on how to resubmit any rejected claims, AC ¶ 62.

At the outset, the Second Circuit and the New York Court of Appeals have clearly stated that providers have no cognizable property interest in continued participation as a Medicaid provider, <u>see</u> <u>Senape v. Constantino</u>, 935 F.2d 687, 691 (2d Cir. 1991); <u>Tekkno Lab., Inc.</u>, 933 F.2d at 1098 (same), nor in future Medicaid reimbursements, <u>see</u> <u>Concord Home Care Providers, Inc. v. Cuomo</u>, 783 F.3d 77, 91-92 (2d Cir. 2015); <u>Kelly Kare, Ltd, v. O'Rourke</u>, 930 F.2d 170, 176 (2d. Cir. 1991); or in Medicaid reimbursements before the completion of audits. <u>See</u> <u>Cortland Nursing Home v. Axelrod</u>, 66 N.Y.2d 169, 178-79 (1985).

Additionally, Plaintiff's claims fail because Plaintiff lacks any liberty interest to support his claims.  To prove such a deprivation, the plaintiff must show, <u>inter alia</u>, that the stigmatizing information is false and that it was published by the government. <u>See</u> <u>Quinn v. Syracuse Model Neighborhood Corp.</u>, 613 F.2d 438, 446 (2d Cir. 1980); <u>Gentile v. Wallen</u>, 562 F.2d 193, 197 (2d Cir. 1977). Plaintiff's claim must be dismissed because he has failed to allege sufficient facts to show that the government published false and stigmatizing information.

Plaintiff claims that the DOH, OMIG, and DMIG Coyne "unlawfully and maliciously claimed plaintiff to be a taxi service within the December 10, 2018 NOPAA . . .  while their real motive [was] to deprive plaintiff of his liberty (being free from oppression) . . . ." AC ¶ 63. However, Plaintiff's conclusory claim fails because Plaintiff admits that he was enrolled in the Medicaid program as a taxi service. See AC Exs. 2 and 7. Thus, nothing false nor stigmatizing was published.

Finally, Plaintiff has had ample notice and process to contest any purported errors by OMIG. Plaintiff has been provided a NOPAA, a NOAA, a pending administrative hearing, and can challenge OMIG's findings in a Article 78 proceeding if necessary. Fleming v. Kerlikowske, 201 F.3d 431 (2d Cir. 1999) ("Article 78 proceeding is a sufficient post-deprivation hearing for due process purposes"); Cutie v. Sheehan, No. 1:11-CV-66 MAD/RFT, 2014 WL 4794195, at *17-18 (N.D.N.Y. Sept. 25, 2014), aff'd, 645 F. App'x 93 (2d Cir. 2016) (plaintiffs received adequate due process because they were notified of the administrative appeal process and could challenge the result in an Article 78 proceeding).

Accordingly, Plaintiff has failed to state any due process claim against the State Defendants.

2.    The Town Defendants

The Amended Complaint is devoid of any facts that Brookhaven or Rogers' actions deprived Plaintiff of any property interest or were willful, arbitrary, conscience-shocking or oppressive in nature. As explained supra, Plaintiff has no property interest in continued participation in the Medicaid program. Thus, none of Rogers' actions could have denied him of any property interest because no such property interest exists. Further, once Plaintiff applied for the taxi license, Brookhaven did indeed issue such a license. Prior to 2016, Plaintiff did not have

any such license. Therefore, Rogers stating such a fact in the two letters he issued on Plaintiff's behalf could not possibly deprive Plaintiff of property interest. Finally, the alleged conversations between Plaintiff's representative and Rogers do not deprive Plaintiff of any property interest nor rise to the level of arbitrary or conscience-shocking. At most the conversations show Rogers deferring to the Town's legal counsel when seeking to determine whether he or the Town could be of assistance to Plaintiff. Nothing about deferring to legal counsel is conscience shocking or oppressive in nature. Even if deferring to legal counsel can be deemed "incorrect or ill-advised," see Lowrance, 20 F.3d at 537, it does not fall into the purview of a due process violation.

As the Town Defendants are not parties to the state administrative hearing and Plaintiff has no right to subpoena witnesses in administrative hearings, see N.Y. State Administrative Proc. Act § 304 (presiding officer in a state administrative proceeding may issue non-party subpoenas) and § 306 (ALJ can exclude testimony), Rogers' failure to testify on Plaintiff's behalf does not constitute a deprivation of due process.

Accordingly, Plaintiff has likewise failed to state any due process claim against the Town Defendants.

B.    § 1983 Equal Protection and § 1981

1.    § 1981

At the outset, Plaintiff's § 1981 claim is dismissed because § 1981 does not provide a separate private right of action against state actors. Duplan v. City of New York, 888 F.3d 612, 621 (2d Cir. 2018) (affirming dismissal of § 1981 claim against the City because § 1981 does not provide a private right of action against state actors); see also Collymore v. City of New York, 767 F. App'x 42, 45 n.2 (2d Cir. 2019) (concluding that the

district court properly construed § 1981 claims against the City and individual defendants as § 1983 claims).

Municipalities and municipal employees are state actors. See, e.g., Whaley v. City Univ. of N.Y., 555 F. Supp. 2d 381, 400-01 (S.D.N.Y. 2008). As a consequence, courts in the Second Circuit have dismissed § 1981 claims against municipalities and their employees—even when the employees are sued in their individual capacities. Duplan, 888 F.3d at 616, 621 (dismissing § 1981 retaliation claim against City of New York because § 1983 was sole remedy). Accordingly, Plaintiff's § 1981 claims against the State and Town Defendants are dismissed with prejudice.

2.      § 1983 Equal Protection

The Equal Protection Clause of the Fourteenth Amendment requires the government to treat similarly situated persons alike. See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985). A plaintiff who does not claim to be a member of a constitutionally protected class may bring an Equal Protection claim on one of two theories: selective enforcement or "class of one." See Cobb v. Pozzi, 363 F.3d 89, 109–10 (2d Cir. 2004) (distinguishing "selective prosecution" and "class of one" Equal Protection claims). The two are treated (at least formally) as separate claims in the Second Circuit. See Casciani v. Nesbitt, 392 F. App'x 887, 888 (2d Cir. 2010) (summary order); Cobb, 363 F.3d at 109–10; Gentile v. Nulty, 769 F. Supp. 2d 573, 579 (S.D.N.Y. 2011) (noting that courts in the Second Circuit "have generally treated selective enforcement and class of one theories as distinct theories with distinct elements of proof." (internal quotation marks omitted)).

To state a claim for selective enforcement, a plaintiff must allege facts supporting a conclusion that 1) he was "treated differently from other similarly situated" comparators, and 2)

"that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778, 790 (2d Cir. 2007) (internal quotation marks omitted); see also Zahra v. Town of Southold, 48 F.3d 674, 683 (2d Cir. 1995) (same). A class-of-one claim requires the plaintiff to allege facts showing that the plaintiff "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Analytical Diagnostic Labs, Inc. v. Kusel, 626 F.3d 135, 140 (2d Cir. 2010) (quoting Vill. of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000) (per curiam)).

> Class-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves. Accordingly, to succeed on a class-of-one claim, a plaintiff must establish that (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake.

Ruston v. Town Bd. for the Town of Skaneateles, 610 F.3d 55, 59–60 (2d Cir. 2010) (alterations, citations, and internal quotation marks omitted). Courts are split within the Second Circuit whether this "high degree of similarity" standard, which applies to class-of-one claims, also applies to selective enforcement claims. See Wood v. Town of E. Hampton, No. 08–CV–4197, 2010 WL 3924847, at *19–20 (E.D.N.Y. Sept. 30, 2010) (discussing cases). Courts utilizing a lower standard for selective enforcement claims have required plaintiffs to show that plaintiff and comparators were "similarly situated in all material respects," Vassallo v. Lando, 591 F. Supp. 2d 172, 184 (E.D.N.Y. 2008) (internal quotation marks omitted), or that "a prudent person, looking objectively at the incidents, would think them roughly equivalent," Yajure v. DiMarzo, 130 F. Supp. 2d 568, 572 (S.D.N.Y. 2001). At least one court has combined these two

standards. See Local 621 v. City of New York, No. 99–CV–9025, 2002 WL 31151355, at *6 (S.D.N.Y. Sept. 26, 2002). Under any applicable test, the plaintiff must allege facts showing that he is similarly situated to other persons with respect to the specific incident or incidents that are alleged to be examples of differential treatment. See, e.g., Vassallo, 591 F. Supp. 2d at 184 (noting that plaintiff and comparator must be similarly situated in "all material respects" (internal quotation marks omitted)).

Taking all the facts alleged in the Amended Complaint as true, none of the incidents Plaintiff cites supports an Equal Protection claim (either on a selective enforcement or class-of-one theory) because they are either inadequately pled or insufficient as a matter of law.

Plaintiff fails to allege that he was treated differently from any similarly situated person. In this case, another Medicaid transportation provider that operated without a license or which did not proffer the appropriate support for its reimbursement claims. Plaintiff also fails to allege any selective treatment was "based on impermissible consideration such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494, 499 (2d Cir. 2001). Plaintiff claims that: (1) "plaintiff's ability to give evidence, and to the full and equal benefit of the laws and proceedings for the security of persons (his personal protection) and property as enjoyed by white citizens (was not equally enjoyed)," AC ¶ 90; (2) "DOH and OMIG unlawfully and maliciously [claimed that plaintiff was a taxi service]," AC ¶ 63; and (3) "OMIG, without any notice, without any clear explanation, maliciously, and while acting under the color of law, continued to withhold 25% of plaintiff's Medicaid payments, forcing plaintiff to withdraw from his own account to pay his employees." AC ¶ 81. Such conclusory allegations of selective treatment are insufficient to defeat a motion to dismiss.

Lastly, the Amended Complaint does not allege that Plaintiff is a member of a protected class or that any of the State or Town Defendants' behavior was motivated by Plaintiff's status of a member of a protected class. Thus, Plaintiff has failed to set forth any plausible Equal Protection claim against either the State or Town Defendants. Accordingly, the State and Town Defendants' motions to dismiss the Equal Protection claim are granted.

       3.     <u>Fifth Amendment Takings Claim</u>

The Fifth Amendment's Takings Clause states that no "private property [shall] be taken for public use, without just compensation[.]" U.S. Const. Amend. V. There are two types of cases cognizable under the Takings Clause: physical takings and regulatory takings. <u>1256 Hertel Ave. Associates, LLC v. Calloway</u>, 761 F.3d 252, 263 (2d Cir. 2014).

A physical taking "occur[s] when the government physically takes possession of an interest in property for some public purpose," <u>Buffalo Teachers Fed. v. Tobe</u>, 464 F.3d 362, 374 (2d Cir. 2006). There has been no physical taking here. Neither that Town nor State Defendants have taken physical possession of any property belonging to Plaintiff.

A regulatory taking is an interference with property rights that "arises from a public program adjusting the benefits and burdens of economic life to promote the public good[.]" <u>Id.</u> (quoting <u>Penn Cent. Transp. Co. v. City of New York</u>, 438 U.S. 104, 124 (1978)). The Supreme Court has articulated two guidelines for determining when a regulation is so burdensome that it constitutes a taking. <u>Murr v. Wisconsin</u>, 137 S. Ct. 1933, 1942, 198 L. Ed. 2d 497 (2017). "First, 'with certain qualifications ... a regulation which denies all economically beneficial or productive use of land will require compensation under the Takings Clause.'" <u>Id.</u> at 1942–43 (quoting <u>Palazzolo v. Rhode Island</u>, 533 U.S. 606, 617 (2001)). If the regulation does not deny all economically beneficial use of the land, courts are instructed to weigh factors

including "(1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action." Id. at 1943 (citing Palazzolo, 533 U.S. at 617).

In the instant action, Plaintiff contends that the State Defendants deprived him of his property by "taking away his money," "the contract with DOH," and "money he would have made if such an action had not been taken against him." AC ¶¶ 63, 69, 70. This argument is unavailing because as previously discussed supra, Plaintiff has no valid property interest in continued participation as a Medicaid provider, in retaining overpayments, or in future reimbursement payments. See Concord Home Care Providers, Inc., 783 F.3d at 91-92 (no property interest in Medicaid reimbursements); Kelly Kare Ltd., 930 F.2d at 176 (Medicaid providers in New York have no property interest in continued participation in Medicaid programs): Senape, 936 F.2d at 691 (no property right to continued enrollment as a qualified provider); Grossman v. Axelrod, 646 F.2d 768, 771 (2d Cir. 1981) ("under New York law, Medicaid providers have no property right in prospective reimbursement) (internal quotation and citation omitted).

Additionally, no taking has yet occurred. Plaintiff contends that his property will be taken at a future date at the conclusion of the pending state administrative hearing, should he lose. Thus, no actual taking has occurred as of the filing of this action.

The Amended Complaint also fails to allege a non-categorical Takings claim. Plaintiff fails to assert allegations regarding economic impact that are non-conclusory. Kabrovski v. City of Rochester, N.Y., 149 F. Supp. 3d 413, 424 (W.D.N.Y. 2015) (dismissing takings claims where "the Complaint does not indicate the economic impact that the Defendants' actions have had on the Plaintiffs, except in vague and conclusory terms").

29

Similarly, the investment-backed expectation requirement also weighs against Plaintiff. Plaintiff was a transportation provider under the Medicaid program and was aware that it is a heavily regulated business. "[W[here a service provider voluntarily participates in a price-regulated program or activity, there is no legal compulsion to provide service and thus there can be no taking." Garelick v. Sullivan, 987 F.2d 913, 916 (2d Cir. 1993)

Finally, as the goal of the enforcement proceeding is to prevent abuse within the Medicaid program, OMIG's enforcement proceeding promotes the public good. West Midtown Mgt. Grp., Inc. v. OMIG, 31 N.Y.3d 533, 535-36 (2018) (OMIG is "the sole state agency focusing on prevention, detection, and investigation of fraud and abuse within the Medicaid program"); Cortland Nursing Home, 66 N.Y. 2d at 182 ("There exists a strong, defined public policy of this State to recover public funds improperly received."). Thus, Plaintiff has failed to state a plausible Takings claim.

### 4.    Seventh Amendment Claim

The Amended Complaint seems to assert a cause of action seeking a jury trial in the state administrative proceeding. However, Plaintiff appears to have abandoned his Seventh Amendment claim as he has not addressed it in his opposition to the motion to dismiss.  See Levers v. Mount St. Mary Coll., No. 19-cv-10458, 2020 WL 1922645, at *1 n. 1 (S.D.N.Y. Apr. 21, 2020) (claim not addressed in opposition to dismiss was deemed abandoned). Nevertheless, Plaintiff's Seventh Amendment claim is unavailing because the right to a jury trial is "inapplicable in administrative proceedings, where jury trials would be incompatible with the whole concept of administrative adjudication. . . ." Curtis v. Loether, 415 U.S. 189, 194 (1974).

### 5.    Municipal Liability

In order to state a claim for municipal liability under <u>Monell v. Dep't of Soc. Serv.</u>, 436 U.S. 658 (1978), a plaintiff must allege that "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted or promulgated by officers." <u>Id.</u> at 690. The municipality "may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the official decisionmaking channels." <u>Id.</u> at 690-91.

There can be no municipal liability without an underlying constitutional violation. <u>See</u> <u>City of Los Angeles v. Heller</u>, 475 U.S. 796, 799 (1986) ("[The City agencies] were sued only because they were thought legally responsible for [the officer's] actions; if the latter inflicted no constitutional injury on respondent, it is inconceivable that petitioners could be liable to respondent."); <u>see also</u> <u>Curley v. Village of Suffern</u>, 268 F.3d 65, 71 (2d Cir. 2001) ("[W]e have recognized that a municipality cannot be liable for inadequate training or supervision when the officers involved in [an incident] did not violate the plaintiff's constitutional rights.").

The Court may not reach the issue of whether any derivative liability flows to Brookhaven as it has granted the Town's motion to dismiss on the due process, equal protection, and Fifth Amendment Takings claim. <u>See</u> discussion <u>supra</u>. Because Plaintiff has failed to plead any plausible constitutional deprivations, his claims of municipal liability necessarily fail. Accordingly, this Court respectfully recommends that the Town Defendants' motion to dismiss the municipal liability claim be granted.

III.    <u>Leave to Amend</u>

The Second Circuit has stated that "[w]hen a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." Hayden v. Cnty. of Nassau, 180 F.3d 42, 53 (2d Cir. 1999); see also Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). "Nonetheless, courts may deny leave to replead where amendment qualifies as futile." Herbert v. Delta Airlines, No. 12–CV–1250, 2014 WL 4923100, at *5 (E.D.N.Y. Sept. 30, 2014) (citing Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000)).

Plaintiff has already once amended his complaint. His amended pleading, while voluminous, is insufficient to allege a plausible claim against either the State or Town Defendants. To be clear, the Court strains to conceive of any amendment that Plaintiff could make to his pleading to allege any valid claims. However, out of an abundance of caution, this Court respectfully recommends that should Plaintiff choose, he be granted leave to amend the Complaint with respect to any causes of actions not dismissed with prejudice, in accordance with the law as set forth in this report and recommendation.

## CONCLUSION

For the foregoing reasons, this Court respectfully recommends that the Town Defendants' motion to dismiss, found at docket entry No. 48 herein, be granted in its entirety, and that the State Defendants' motion to dismiss, found at docket entry No. 50 herein, be granted in its entirety. Specifically, this Court recommends that: (1) the Court abstain from hearing Plaintiff's claims for injunctive relief against OMIG's enforcement proceedings as Younger abstention is mandatory; (2) Plaintiff's official capacity damage claims and state-law based claims against the State Defendants be dismissed with prejudice; (3) claims against ALJ O'Brien be dismissed with prejudice; (4) Plaintiff's due process claims be dismissed; (5) Plaintiff's equal protection claims be dismissed; (6) Plaintiff's § 1981 claims be dismissed with prejudice; (7) Plaintiff's Fifth

Amendment Takings claims be dismissed; (8) Plaintiff's Seventh Amendment claim be dismissed with prejudice; and (9) any claims of municipal liability against Brookhaven be dismissed.

The Court further recommends that Plaintiff be granted leave to amend the Complaint with respect to any causes of actions not dismissed with prejudice, in accordance with the law as set forth in this report and recommendation.

<u>OBJECTIONS</u>

A copy of this Report and Recommendation is being provided to Defendants' counsel via ECF. Furthermore, the Court directs Defense counsel (1) to serve a copy of this Report and Recommendation by first class mail to Plaintiff at his last known address, and (2) to file proof of service on ECF by August 30, 2022. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of filing of this report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the District Judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or Court of Appeals. <u>Thomas v. Arn</u>, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); <u>Caidor v. Onondaga Cnty.</u>, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision").

Dated: Central Islip, New York
       August 27, 2022

                                    /s/ Anne Y. Shields
                                    Anne Y. Shields
                                    United States Magistrate Judge